DANIEL B. ASIMOW (SBN 165661)
Daniel.Asimow@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:     (415) 471-3100
Facsimile:     (415) 471-3400

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (admitted *pro hac vice*)
MICHAEL BERNSTEIN (admitted *pro hac vice*)
KOLYA D. GLICK (admitted *pro hac vice*)
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone:     (202) 942-5000
Facsimile:     (202) 942-5999

Attorneys for Defendant, THE KROGER CO.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE WHALEN, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE KROGER CO., ALBERTSONS COMPANIES, INC., and CERBERUS CAPITAL MANAGEMENT, L.P.,<br><br>    Defendants. | Case No. 3:23-cv-00459-VC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT THE KROGER CO. TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Vince Chhabria<br><br>Date: May 18, 2023<br>Time: 10:00 a.m.<br>Courtroom: 5 – 17th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 18, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 17th Floor, Courtroom 4, Defendant The Kroger Co. ("Kroger") will and hereby does respectfully move for an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing, their claims are not ripe, and they fail to state a claim upon which relief may be granted.

This motion is based on this notice of motion and motion; the memorandum of points and authorities contained herein; any reply papers that The Kroger Co. may file; upon all pleadings, records, and papers on file in this action; and upon such further arguments as may be presented to the Court at or prior to the hearing on the motion.

1

## **Table of Contents**

2    MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

3    ISSUES TO BE DECIDED ................................................................................ 2

4    FACTUAL BACKGROUND ............................................................................... 3

5                A.    Kroger and Albertsons' Merger Agreement and the Special
                       Dividend ...................................................................................... 3
6
                B.    Plaintiffs' Allegations ................................................................... 4
7
8    LEGAL STANDARDS ...................................................................................... 4

9    ARGUMENT ................................................................................................... 5

10          I.    This Court Should Dismiss Plaintiffs' Clayton Act Claim ..................... 5

11                A.    Plaintiffs Have Failed to Allege a Relevant Market or
                       Anticompetitive Effects ................................................................. 5
12
                B.    Plaintiffs Lack Standing ................................................................ 8
13
                C.    Plaintiffs' Clayton Act Claim Is Not Ripe .................................... 10
14
            II.   Plaintiffs Fail to State a Sherman Act Claim ................................... 11
15
                A.    Plaintiffs' Requested Remedies Are Not Legally Authorized ......... 12
16
                B.    Plaintiffs Fail to Allege an Unlawful Agreement Regarding the
17                     Dividend ..................................................................................... 13

18    CONCLUSION .............................................................................................. 14

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Addington v. US Airline Pilots Ass'n*,
    606 F.3d 1174 (9th Cir. 2010).................................................................. 10

5

6

*In re AMR Corp.*,
    No. 22-901, 2023 WL 2563897 (2d Cir. Mar. 20, 2023)........................... 8

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................4-5

8

9

*AT & T Mobility LLC v. Bernardi*,
    Nos. 11-CV-03992, 11-cv-04412, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011)...................... 11

10

11

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017)................................................................... 12

12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................... 5, 7, 14

13

14

*Bradt v. T-Mobile US, Inc.*,
    No. 19-cv-07752, 2020 WL 1233939 (N.D. Cal. Mar. 13, 2020)................. 8

15

*California v. Sutter Health Sys.*,
    130 F. Supp. 2d 1109 (N.D. Cal. 2001) .................................................. 6

16

17

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986).............................................................................. 9

18

19

*Carter Hawley Hale Stores, Inc. v. Ltd., Inc.*,
    587 F. Supp. 246 (C.D. Cal. 1984)......................................................... 9

20

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    No. 07-cv-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016)................... 13

21

22

*City of Rohnert Park v. Harris*,
    601 F.2d 1040 (9th Cir. 1979)................................................................ 9

23

24

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................ 8, 9

25

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
    771 F. Supp. 2d 1195 (N.D. Cal. 2011) ................................................ 13

26

27

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
    817 F.3d 46 (2d Cir. 2016).................................................................... 7

28

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS          Case No. 3:23-cv-00459-VC

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) ................................................................................................. 13

*DeHoog v. Anheuser-Busch InBev SA/NA*,
    899 F.3d 758 (9th Cir. 2018) .................................................................................. 5, 7

*Delco LLC v. Giant of Md., LLC*,
    No. 07-cv-3522, 2007 WL 3307018 (D.N.J. Nov. 8, 2007) ....................................... 6

*DeMartini v. Microsoft Corp.*,
    No. 3:22-cv-08991-JSC (N.D. Cal. Mar. 20, 2023) .......................................... 1, 5, 8

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................................... 12

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
    391 U.S. 253 (1968) ................................................................................................. 13

*Fount-Wip, Inc. v. Reddi-Wip, Inc.*,
    568 F.2d 1296 (9th Cir. 1978) ................................................................................... 6

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ..................................................................................... 5

*FTC v. RAG-Stiftung*,
    436 F. Supp. 3d 278 (D.D.C. 2020) ........................................................................... 6

*FTC v. Whole Foods Mkt., Inc.*,
    502 F. Supp. 2d 1 (D.D.C. 2007) ............................................................................... 6

*Hateley v. SEC*,
    8 F.3d 653 (9th Cir. 1993) ....................................................................................... 12

*Hein v. Freedom From Religion Found., Inc.*,
    551 U.S. 587 (2007) ................................................................................................... 9

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d 898 (N.D. Cal. 2016) ....................................................................... 7

*Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*,
    No. 14-cv-05239-VC, 2015 WL 3766754 (N.D. Cal. June 16, 2015) ......................... 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 9

*Malaney v. UAL Corp.*,
    No. 3:10-cv-02858, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010) ........................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................. 13

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS          Case No. 3:23-cv-00459-VC

*McKee & Co. v. First Nat. Bank of San Diego*,
   397 F.2d 248 (9th Cir. 1968) ................................................................................ 12

*Med Vets, Inc. v. VIP Petcare Holdings, Inc.*,
   811 F. App'x 422 (9th Cir. 2020) ........................................................................... 8

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ............................................................................................. 13

*In re Multidistrict Vehicle Air Pollution*,
   538 F.2d 231 (9th Cir. 1976) ............................................................................... 13

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   562 F. Supp. 3d 1073 (E.D. Cal. 2021) ................................................................. 7

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018) .......................................................................................... 5

*S. Austin Coal. Comty. Council v. SBC Commc'ns, Inc.*,
   191 F.3d 842 (7th Cir. 1999) .......................................................................... 2, 11

*Safe Air For Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .............................................................................. 5

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
   778 F.3d 775 (9th Cir. 2015) ................................................................................ 5

*Saxton v. Cnty. of Sonoma*,
   No. 21-cv-09499, 2022 WL 3549779 (N.D. Cal. Aug. 17, 2022) ...................... 9, 10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ......................................................................................... 9, 10

*SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*,
   No. 17-cv-127, 2017 WL 3658948 (S.D. Tex. Aug. 24, 2017) ............................ 10

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) .............................................................................. 6

*Texas v. United States*,
   523 U.S. 296 (1998) ............................................................................................ 10

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .......................................................................................... 8

*Trump v. New York*,
   141 S. Ct. 530 (2020) .......................................................................................... 10

*United States v. Baker Hughes Inc.*,
   908 F.2d 981 (D.C. Cir. 1990) .............................................................................. 7

- v -

*United States v. Marine Bancorp., Inc.*,
   418 U.S. 602 (1974) .................................................................................... 6

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ......................................................................... 12, 13

**Statutes**

15 U.S.C. § 18 ............................................................................................. 5, 7

15 U.S.C. § 18a(e)(2) ........................................................................................ 3

15 U.S.C. § 26 ................................................................................................ 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 2, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 4

**Other Authorities**

Herbert Hovenkamp & Phillip Areeda, *Antitrust Law* (4th ed. 2019) .................................................. 9

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS          Case No. 3:23-cv-00459-VC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2       Plaintiffs bring this challenge to a proposed merger between Defendants The Kroger Co.

3   ("Kroger") and Albertsons Companies, Inc. ("Albertsons") based on the incredible theory that every

4   "non-trivial [merger] between significant rivals" constitutes a *per se* violation of the Clayton Act.

5   Compl. ¶ 13 (ECF No. 1). But just last month, another Judge of this Court rejected that exact same

6   theory, explaining that Plaintiffs' "argument ignores binding Ninth Circuit precedent." Order

7   Granting Mot. to Dismiss, *DeMartini v. Microsoft Corp.*, No. 3:22-cv-08991-JSC (N.D. Cal. Mar. 20,

8   2023), ECF No. 74, at 10 ("*Microsoft* Order"). Indeed, no court has *ever* enjoined a merger in

9   circumstances such as these, where private individuals have challenged a merger months before its

10  planned consummation date, while multiple governmental entities are reviewing the merger, and

11  before anyone even knows which stores will ultimately be acquired in the deal. This Court should

12  reject Plaintiffs' claims and dismiss their two-count Complaint.

13      Plaintiffs' Clayton Act claim challenging Kroger and Albertsons' proposed merger (Count I)

14  fails because Plaintiffs fail to plead a plausible relevant market or the requisite harm in any such

15  market. The Clayton Act requires Plaintiffs to demonstrate a likely reduction in competition as a result

16  of the merger, yet Plaintiffs implausibly suggest that the "relevant geographic market" for evaluating

17  competition among supermarkets is the *entire* United States. Compl. ¶ 51; *see id.* ¶¶ 8, 21. Even the

18  Complaint contradicts Plaintiffs' alleged nationwide market, asserting that "[c]ompetition for

19  supermarkets is local in nature." *Id.* ¶ 52. By proposing a nationwide market, Plaintiffs ask this Court

20  to infer that consumers would take cross-country trips to do their grocery shopping in response to

21  small price changes. Moreover, even if Plaintiffs' vague references to the existence of Kroger and

22  Albertsons stores in California (or Chicago and Seattle) are meant to allege smaller markets, Plaintiffs

23  have not even *attempted* to demonstrate that the merger would substantially reduce competition in

24  any of those (inadequately defined) markets. Plaintiffs' failures to define a market or plausibly allege

25  anticompetitive effects in those markets are independently fatal to their Clayton Act claim.

26      The named plaintiffs also lack standing to pursue their Clayton Act claim. Their alleged harm

27  is supported by the lone allegation that they shopped at some Albertsons or Kroger store at some point

28  in the past four years, *id.* ¶ 29, and the conclusory assertion that prices may rise in the future, *id.* ¶ 44.

- 1 -

1    But Plaintiffs have not established that these alleged increased prices are either particularized or likely

2    to occur. The proposed merger is in the early stages of regulatory review and, as a part of that process,

3    Defendants expect to divest a number of stores. *See id.* ¶ 20. If Kroger does not ultimately acquire an

4    Albertsons store in a geographic market in which a named plaintiff resides, that individual will have

5    no conceivable injury even under their own theory, much less the concrete and particularized injury

6    necessary to demonstrate standing.

7        Because the proposed merger is actively under review by the Federal Trade Commission

8    ("FTC") and state antitrust enforcers, Plaintiffs' pre-divestiture claim is not ripe either: Litigating the

9    hypothetical effects of a hypothetical transaction is premature, "an expensive challenge to a moving

10   target," and "a waste of everyone's time." *S. Austin Coal. Cmty. Council v. SBC Commc'ns, Inc.*, 191

11   F.3d 842, 845 (7th Cir. 1999). Any theoretical competitive effects of the merger are neither known

12   nor knowable when the scope of the merger has yet to be determined.

13       Plaintiffs' Sherman Act claim challenging Albertsons' payment of a Special Dividend

14   ("Dividend") to its shareholders (Count II) is frivolous. *See* Compl. ¶¶ 4, 80-89. Indeed, Plaintiffs do

15   not even request a cognizable legal remedy. Their claim for injunctive relief is moot because

16   Albertsons issued the Dividend before Plaintiffs filed this Complaint. And their alternative request

17   for disgorgement is not an authorized remedy for private antitrust plaintiffs. It is also nonsensical as

18   applied to Kroger: Kroger did not pay or receive the Dividend and has nothing to disgorge. Finally,

19   prior to this suit, four separate courts (in two separate suits brought by four state attorneys general)

20   rejected materially identical conspiracy claims related to the Dividend. Those courts uniformly held

21   that Kroger never *agreed* with Albertsons to issue the Dividend and that the plaintiffs had no viable

22   Sherman Act claim because they could not demonstrate an antitrust agreement. Plaintiffs' Complaint

23   provides no reason to depart from those well-reasoned decisions here.

                                **ISSUES TO BE DECIDED**

24

25       The issues to be decided are: (1) whether the Complaint should be dismissed for failure to

26   state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) whether the Complaint

27   should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

28   12(b)(1).

1

2

**FACTUAL BACKGROUND**

    **A.**    **Kroger and Albertsons' Merger Agreement and the Special Dividend**

On October 13, 2022, Kroger signed a contract to purchase Albertsons ("Merger Agreement"). Compl. ¶ 82. But as Plaintiffs have recognized, the merger will not close until 2024. *See* Pls.' Mot. for Prelim. Inj. 23-24 (ECF No. 28); Stip. and Order Modifying Briefing Schedule and Hearing Date for Pls.' Mot. for Prelim. Inj. ¶ 6 (ECF No. 30). Meanwhile, the Merger's closing depends on a number of contingencies, including the FTC's review and approval of the acquisition. *See, e.g.*, 15 U.S.C. § 18a(e)(2). As part of that review, the Merger Agreement recognizes that Kroger will not acquire all Albertsons stores, but instead contemplates the divestiture of "as many as 650" stores to alleviate any competition-related concerns from regulators. Compl. ¶ 20. The Complaint does not allege—and the Merger Agreement does not identify—which *specific* Albertsons stores Kroger will ultimately purchase. While government review is ongoing, that fact is neither known nor knowable.

The Merger Agreement contains a provision that adjusts the per-share price that Kroger will pay to acquire Albertsons in the event that Albertsons unilaterally decides to issue a "Special Dividend" ("Dividend") of up to $4 billion. *See* Compl. ¶ 4. The Merger Agreement does not require Albertsons to pay the Dividend, allow Kroger to force Albertsons to pay the Dividend, or provide Kroger with a remedy if Albertsons choses not pay the Dividend.

Before this lawsuit was filed, on January 20, 2023, Albertsons paid the Dividend. *See* Order, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir. Feb. 23, 2023) (dismissing appeal as moot after refusing to enjoin the Dividend and after Albertsons paid the Dividend). As discussed below, it did so only after four separate courts—in two separate lawsuits brought by four state attorneys general (including California)—all declined to enjoin Albertsons's payment of the Dividend, concluding that Plaintiffs were unlikely to succeed in their claims that (1) there was an agreement between Kroger and Albertsons to issue the Dividend, and (2) that there would be anticompetitive effects if Albertsons choose to do so. *See id.*; *infra* at note 5. After Albertsons paid the Dividend, the plaintiff attorneys general voluntarily dismissed their respective complaints.

1

### B.     Plaintiffs' Allegations

The named plaintiffs in this case are an assortment of 25 individuals in 11 states whose participation in this lawsuit depends on a single personal fact: that they shopped at an unidentified Kroger or Albertsons store at some point in the past four years. Compl. ¶ 29. Plaintiffs do not allege that they live in states (much less cities or neighborhoods) that have both Albertsons and Kroger stores. Indeed, at least nine of the Plaintiffs live in states in which the companies do *not* both own stores. *Compare id.* ¶ 29 (Plaintiffs' residences), *with id.* ¶ 42 (map of Defendants' stores). Parroting the Clayton Act, Plaintiffs allege that the merger is likely to "substantially lessen competition" and will increase prices for groceries and consumer goods. *Id.* ¶¶ 13-14, 44.

As to the critical question of *where* the merger might lessen competition, Plaintiffs provide very few details, alleging that "[t]he relevant geographic market is the entire United States for grocery stores, and smaller local relevant geographic markets within individual states." *Id.* ¶ 16. Plaintiffs allege that "[c]ompetition for supermarkets is local in nature as consumers typically do their grocery shopping at stores located close to where they live or work," *id.* ¶ 52, but their alleged examples of sub-markets include the entire state of California and the cities of Chicago and Seattle, *id.* ¶ 43, even though *none* of the named plaintiffs lives in those cities, *see id.* ¶ 29. The relevant product market for their claims, Plaintiffs allege, is "supermarkets," which they define as "any self-service full-line retail grocery store offering customers substantially all of their weekly food and grocery shopping requirements in a single shopping visit." *Id.* ¶ 46.

Plaintiffs allege two counts. In **Count I**, Plaintiffs seek to enjoin Kroger's proposed acquisition of Albertsons under the Clayton Act. *Id.* ¶¶ 76-79. In **Count II**, Plaintiffs challenge Albertsons' Dividend under the Sherman Act, alleging a conspiracy among Albertsons, Kroger, and Defendant Cerberus Capital Management, L.P. to "hamper, cripple, and shut down" Albertsons, leaving it with insufficient capital to operate. *Id.* ¶ 84; *see id.* ¶¶ 82-89. Plaintiffs ask this Court to enjoin the already-issued Dividend or to order "disgorge[ment]" of the Dividend. *Id.* ¶ 15.

### <u>LEGAL STANDARDS</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts establishing a plausible claim for relief that exceeds a speculative level. *Ashcroft v.*

- 4 -

1    *Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions" and "'naked assertion[s]' devoid of

2    'further factual enhancement'" do not constitute well-pleaded facts that are entitled to the presumption

3    of truth. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). This same

4    standard applies when defendants facially challenge the court's subject matter jurisdiction under Rule

5    12(b)(1), including when defendants argue that plaintiffs lack standing or their claim is not ripe for

6    resolution. *See Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

7                                             <u>**ARGUMENT**</u>

8    **I.    THIS COURT SHOULD DISMISS PLAINTIFFS' CLAYTON ACT CLAIM**

9          Plaintiffs' Clayton Act claim fails on the merits. They fail to allege either a plausible

10   geographic market or actual or likely anticompetitive effects in any such market. This Court also lacks

11   subject matter jurisdiction for two reasons. First, Plaintiffs lack standing. While the Clayton Act

12   provides private plaintiffs a theoretical statutory cause of action, it does not provide Article III

13   standing, and it does not turn every grocery store consumer in the country into a roving antitrust

14   enforcer. Second, Plaintiffs' claim is not ripe. Because the merger review and divestiture process is

15   ongoing, the ultimate contours of the deal are unknown and unknowable at this time.

16   **A.    Plaintiffs Have Failed to Allege a Relevant Market or Anticompetitive Effects**

17         Section 7 of the Clayton Act prohibits mergers whose effect "may be substantially to lessen

18   competition, or to tend to create a monopoly." 15 U.S.C. § 18. "Section 7 of the Clayton Act requires

19   [c]onsumers to 'first establish a prima facie case that a merger is anticompetitive.'" *DeHoog v.*

20   *Anheuser-Busch InBev SA/NA*, 899 F.3d 758, 763 (9th Cir. 2018) (quoting *Saint Alphonsus Med. Ctr.-*

21   *Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015)).

22         The "threshold step in any antitrust case is to accurately define the relevant market, which

23   refers to 'the area of effective competition.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir.

24   2020) (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)). As the *Microsoft* Order

25   recently reaffirmed, "[d]etermination of the relevant product and geographic markets is a *necessary*

26   *predicate* to deciding whether a merger contravenes the Clayton Act," *Microsoft* Order at 5 (quoting

27   *Saint Alphonsus Med. Ctr.-Nampa Inc.*, 778 F.3d at 788 (emphasis added)), because it is impossible

28   to assess anticompetitive effects without understanding *where* the alleged reduction in competition

will occur, *see United States v. Marine Bancorp., Inc.*, 418 U.S. 602, 618 (1974); *Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1301 (9th Cir. 1978) (plaintiffs failed to meet their burden because "of their failure adequately to define and to prove the relevant market, which is 'a necessary predicate' for evaluating claims under" Section 7 of the Clayton Act (citation omitted)). The failure to allege a plausible geographic market requires dismissal. *See, e.g.*, *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *California v. Sutter Health Sys.*, 130 F. Supp. 2d 1109, 1118 (N.D. Cal. 2001).

Plaintiffs' allegation that "[t]he relevant geographic market is the United States," Compl. ¶ 51, is facially implausible.[1]  In the antitrust context, the relevant geographic market is the "area of effective competition" to which consumers can "turn for alternate sources of supply" (here, alleged to be "supermarkets," *id.* ¶ 45) in response to small price changes. *Tanaka*, 252 F.3d at 1063 (citation omitted). Plaintiffs' allegations of a *nationwide* market for supermarkets requires this Court to infer that consumers might fly from San Francisco to New York City for their weekly grocery shopping. Compl. ¶ 47.

Plaintiffs appear to acknowledge that their own allegations are implausible, alleging that "[c]ompetition for supermarkets is local in nature as consumers typically do their grocery shopping at stores located close to where they live or work." *Id.* ¶ 52. Courts evaluating prior grocery store mergers have defined the relevant geographic markets around the grocery options available in discrete neighborhoods rather than cities or states. *See, e.g.*, *FTC v. Whole Foods Mkt., Inc.*, 502 F. Supp. 2d 1, 37 (D.D.C. 2007) (defining relevant geographic markets as ones with healthy grocery stores within a "six mile radius" of one another), *rev'd on other grounds*, 548 F.3d 1028 (D.C. Cir. 2008); *Delco LLC v. Giant of Md., LLC*, No. 07-cv-3522, 2007 WL 3307018, at *18-19 (D.N.J. Nov. 8, 2007) (rejecting market definition that excluded two supermarkets within six miles).

Plaintiffs' allegations of a nationwide market for supermarket competition border on

---

[1] Plaintiffs' alleged product market for "supermarkets" is also implausibly narrow, *see* Compl. ¶ 46, as it ignores modern realities of stores like Walmart and Target—which also provide a "full-line" of retail grocery products and offer customers "substantially all of their weekly food and grocery shopping requirements in a single shopping visit"—as well as the plethora of other stores that have "grocery shopping" offerings and the growth of online grocery options. *See FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 292 (D.D.C. 2020) (rejecting plaintiff's proposed product market as "overbroad and inconsistent with the commercial realities of the industry").

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS            Case No. 3:23-cv-00459-VC

frivolous, and courts routinely dismiss antitrust complaints based on the failure to allege a coherent geographic market. *See Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1084-85 (E.D. Cal. 2021) (collecting cases properly alleging "'local' geographic markets," but dismissing complaint that failed to identify analogous "limiting principles"); *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 53-54 (2d Cir. 2016) (affirming dismissal based on failure to allege geographic market); *see also Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 910 (N.D. Cal. 2016) (rejecting antitrust claims where plaintiffs alleged "[un]natural" and "artificial" product markets that were "contorted to meet their litigation needs"), *aff'd in relevant part*, 897 F.3d 1109 (9th Cir. 2018).

Plaintiffs' suggestion that some unidentified "smaller local relevant geographic markets" may exist does not save their claim. Compl. ¶ 16; *see Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*, No. 14-cv-05239-VC, 2015 WL 3766754, at *1-3 (N.D. Cal. June 16, 2015) (granting motion to dismiss where plaintiff's alleged geographic market was "vague and conclusory"). For instance, Plaintiffs allege that Albertsons and Kroger both own stores "in California," Compl. ¶ 43, but a statewide market is no more plausible than a nationwide market, as it suggests a San Diegan might regularly drive more than seven hours up I-5 to buy ice cream in Sacramento. Even defining geographic markets based on the smallest units Plaintiffs identify (Chicago and Seattle) would require an inference that consumers might traverse a major metropolitan area to buy their groceries. *See id.* And Plaintiffs have offered the Court no metric or basis on which such markets could be evaluated throughout the United States. *See Netafim Irrigation*, 562 F. Supp. 3d at 1084. In short, Plaintiffs' proposed geographic market is unsupported by factual allegations and untethered to the realities of consumer behavior. *See Twombly*, 550 U.S. at 555. It warrants no credence.

Even if a state- or city-wide geographic market were plausible (and had been adequately pleaded), Plaintiffs fail to allege any facts indicating that the Kroger-Albertsons merger would substantially lessen competition in such markets. *See* 15 U.S.C. § 18; *DeHoog*, 899 F.3d at 763. Rather, Plaintiffs' only *factual* allegations suggesting lessened competition rest on nationwide statistics of market concentration. *See, e.g.*, Compl. ¶ 44; *see also id.* ¶¶ 8, 18, 21, 30-31. To be sure, increased post-merger market share is one factor that can suggest anticompetitive effects in some circumstances. *See United States v. Baker Hughes Inc.*, 908 F.2d 981, 990 (D.C. Cir. 1990) (Thomas,

J.) (noting Supreme Court has cut back "sharply" on its prior exclusive focus on market share). Yet Plaintiffs have not even alleged market concentration in any local market, and no court in history has accepted Plaintiffs' *per se* theory of anticompetitive effects. *See Microsoft* Order at 10 (quoting *Malaney v. UAL Corp.*, No. 3:10-cv-02858, 2010 WL 3790296, at *7 n.11 (N.D. Cal. Sept. 27, 2010) ("Simply put, there is no support for the notion that, merely by removing one competitor, any horizontal merger in the airline industry will be anticompetitive and thereby violate Section 7."), *aff'd*, 434 F. App'x 620 (9th Cir. 2011); *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752, 2020 WL 1233939, at *4 (N.D. Cal. Mar. 13, 2020) (finding no support for a "*per se* rule whenever a merger is proposed"); *In re AMR Corp.*, No. 22-901, 2023 WL 2563897, at *1 (2d Cir. Mar. 20, 2023) ("reject[ing] Plaintiffs' view" that courts are "obliged by Supreme Court precedent from the 1960s to treat post-merger market share as virtually conclusive of a Section 7 violation").

In sum, even "[i]f market share alone can satisfy a prima facie burden, it at least has to be market share in a relevant market." *See Microsoft* Order at 11 (citing *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 423-24 (9th Cir. 2020)). Plaintiffs' allegations of Defendants' post-merger market concentration and market power rely *exclusively* on their alleged "national market." They do not even attempt to allege market concentration *or* anticompetitive effects in any market smaller than the entire country. That pleading failure is fatal to the merits of their Clayton Act claim.[2]

## B.    Plaintiffs Lack Standing

While the Clayton Act provides a statutory private cause of action, it does not supplant Plaintiffs' burden of establishing Article III standing, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021), which is particularly difficult for private parties to satisfy when bringing a prospective pre-merger lawsuit, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013) (denying "prospective relief" for "hypothetical future harm that is not certainly impending"). That difficulty is precisely why private merger enforcement suits like this one have never been successful, and why government regulators historically have played the *only* relevant role in modern *ex ante*

---

[2] Plaintiffs' allegations of harm to the "competition for labor," Compl. ¶ 62, is wholly conclusory and warrants no consideration. Indeed, Plaintiffs do not even allege that they work in the supermarket business. As in the *Microsoft* Order, therefore, "Plaintiffs do not contend the alleged anticompetitive effects in the labor market will damage them; thus, they do not have standing to pursue such claim." *Microsoft* Order at 4-5. Plaintiffs also have not identified a plausible geographic market for labor.

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS          Case No. 3:23-cv-00459-VC

1  antitrust merger enforcement. *See* Herbert Hovenkamp & Phillip Areeda, *Antitrust Law* ¶ 303e3 (4th

2  ed. 2019) ("[A]ctual or threatened harm to a person with standing is an essential element of the private

3  plaintiff's equity case, but not of the government's.").

4      Plaintiffs' bare allegations of "increased prices" following the merger fail to satisfy their

5  burden of alleging Article III standing. *See Saxton v. Cnty. of Sonoma*, No. 21-cv-09499, 2022 WL

6  3549779, at *2 (N.D. Cal. Aug. 17, 2022) ("[T]he plaintiff has the burden of alleging and proving

7  that he has standing to sue."). "[T]he 'irreducible constitutional minimum' of standing" requires that

8  Plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

9  the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

10 *Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

11 The alleged injury in fact must be both "concrete and particularized" and "actual or imminent, not

12 conjectural or hypothetical." *Id.* at 339 (citation omitted). To state a claim, private plaintiffs must

13 therefore show a threat of injury that is "certainly impending." *Clapper*, 568 U.S. at 409; *see also*

14 *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986).[3]

15     Plaintiffs here cannot do so. Plaintiffs' alleged injury of increased prices is neither

16 particularized nor traceable to any "alleged antitrust violation" in this case. *Carter Hawley Hale*

17 *Stores, Inc. v. Ltd., Inc.*, 587 F. Supp. 246, 250 n.3 (C.D. Cal. 1984) (quoting *City of Rohnert Park v.*

18 *Harris*, 601 F.2d 1040, 1044 (9th Cir. 1979)). To support their asserted injury, Plaintiffs allege that

19 they "made purchases at the Defendants' stores within the last four years," Compl. ¶ 29, and speculate

20 that prices in those unspecified stores may increase post-merger, *id.* ¶ 44. They allege nothing else.

21     Plaintiffs' vague allegations do not seek to satisfy the constitutional-standing requirement so

22 much as attempt to eliminate it altogether. Under Plaintiffs' theory of antitrust enforcement, every

23 Albertsons or Kroger consumer in the United States could independently sue to enjoin any "non-

24 trivial transaction," *id.* ¶ 7, irrespective of whether Kroger and Albertsons currently compete *at all* in

25 their geographic market. That is the opposite of a "particularized" injury. *See Hein v. Freedom From*

26 *Religion Found., Inc.*, 551 U.S. 587, 598-600 (2007) (emphasizing importance of constitutional

27 

28 ────────────────────
[3] In the context of a private consumer's *ex ante* merger challenge, the requirement of demonstrating "antitrust standing" largely overlaps with the requirements of Article III standing.

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS          Case No. 3:23-cv-00459-VC

1   standing requirement where plaintiffs' alleged injuries cannot be differentiated from others' alleged

2   injuries). It is unsurprising that no court in history has endorsed such a theory.

3           Moreover, Plaintiffs' alleged injury has not occurred, and their allegations of future injury are

4   both speculative and conclusory. *See Spokeo*, 578 U.S. at 338 ("[A]t the pleading stage, the plaintiff

5   must 'clearly . . . allege facts demonstrating' each element." (citation omitted)). Plaintiffs cannot

6   establish likely or actual anticompetitive harm without knowing which Albertsons stores Kroger will

7   ultimately acquire in the merger. Yet, as Plaintiffs themselves acknowledge, the merger "allows for

8   a divestiture of as many as 650 Albertsons stores" during the regulatory review process. Compl. ¶ 20.

9   Accordingly, the FTC and state regulators' review is almost certain to result in divestitures that will

10  change the structure of the merger and the likely competitive landscape post-merger.

11          Before that regulatory review is complete, Plaintiffs' speculative suggestions of future harm

12  remain untethered to any real-world facts. *See* Order, *Cassan Enters., Inc. v. Avis Budget Grp., Inc.*,

13  No. 2:10-cv-01934 (W.D. Wash. Mar. 11, 2011), ECF No. 39, at 2-3, 5. In *Cassan*, for instance, the

14  court found that Plaintiffs could not clear the necessary hurdle of alleging an injury that was "certainly

15  impending" because the FTC was "still reviewing the proposed acquisition" and "aspects of the

16  acquisition may change as a result of the Commission's review." *Id.* at 5. The court dismissed the

17  plaintiff's conjectural claims. *Id.* at 5-6; *see SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, No.

18  17-cv-127, 2017 WL 3658948, at *4 (S.D. Tex. Aug. 24, 2017) (plaintiff's "perceived threats of

19  monopolistic behavior are speculative and do not confer standing"), *aff'd in part & modified in part*,

20  754 F. App'x 235 (5th Cir. 2018). In sum, it is Plaintiffs' burden to establish standing, *Saxton*, 2022

21  WL 3549779, at *2, and their conclusory allegations do not come close to meeting that burden.

22          **C.      Plaintiffs' Clayton Act Claim Is Not Ripe**

23          For similar reasons, Plaintiffs' claim is not ripe. To proceed, a "case must be 'ripe'—not

24  dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at

25  all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296,

26  300 (1998)). Otherwise, the Court lacks jurisdiction and the case must be dismissed. *See Addington*

27  *v. US Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010). But as noted above, Plaintiffs *cannot*

28  establish—and this Court cannot properly analyze—the merger's likely anticompetitive harm without

- 10 -

1   knowing which Albertsons stores Kroger will acquire and which will be divested, and that will not

2   happen until the end of the regulatory review process that is underway.

3       Courts have dismissed similar antitrust claims seeking to enjoin prospective mergers on

4   ripeness grounds. For example, in *South Austin Coalition Community Council v. SBC*

5   *Communications, Inc.*, 191 F.3d 842 (7th Cir. 1999), the court affirmed the dismissal of an antitrust

6   suit that sought to enjoin a merger that had not yet closed and was still subject to review by the Federal

7   Communications Commission. *Id.* at 842-43, 845. The Seventh Circuit noted that "[c]ourts often wait

8   for agencies, even when the agencies' views are not legally conclusive—not only because the

9   agencies may have something helpful to say, but also because what the agencies do may shape the

10  litigation." *Id.* at 844. "Regulatory agencies can raise or lower" the barriers to competition, *id.* at 845,

11  or (as in this case), require divestitures.

12      In these circumstances, it "is impossible to analyze a potential-competition claim" prior to

13  knowing the final terms of the transaction. *Id.* Litigation at a premature stage would be an "expensive

14  challenge to a moving target" and "a waste of everyone's time." *Id.*; *see also AT & T Mobility LLC*

15  *v. Bernardi*, Nos. 11-cv-03992, 11-cv-04412, 2011 WL 5079549, at *12 (N.D. Cal. Oct. 26, 2011)

16  (noting merger challenges are unripe "until all required state and federal approvals have been

17  obtained—for the agencies might insist on changes that would substantially alter the merger's

18  competitive effects"). That same reasoning applies with increased force here, where the regulatory

19  review process will affect which geographic markets—if any—the Court would even need to analyze

20  under the Clayton Act.

21  **II.   PLAINTIFFS FAIL TO STATE A SHERMAN ACT CLAIM**

22      Plaintiffs' Sherman Act claim does not seek cognizable relief as to Kroger: Their request for

23  an injunction is moot and their claim for disgorgement is nonsensical and unavailable as a matter of

24  law. In addition, Plaintiffs' Sherman Act claim fails because Plaintiffs do not—and cannot—allege

25  sufficient facts to establish that Kroger *agreed* with the other Defendants to issue the Dividend. The

26  reality is that Kroger never asked Albertsons to pay the Dividend, never agreed to pay the Dividend,

27  did not control the Dividend, did not pay the Dividend, and did not receive the Dividend. Albertsons'

28  payment of the Dividend was unilateral and cannot form the basis of a Sherman Act claim.

1

### A.      Plaintiffs' Requested Remedies Are Not Legally Authorized

2

Putting aside the merits, Count II fails because Plaintiffs' two requested remedies—(1) an

3

injunction and (2) disgorgement—are either moot or not authorized under the Sherman Act.

4

***First***, Plaintiffs' request for injunctive relief is moot because Albertsons issued the Dividend

5

on January 20, 2023, and "all of the events sought to be enjoined have now occurred." *McKee & Co.*

6

*v. First Nat. Bank of San Diego*, 397 F.2d 248, 249 (9th Cir. 1968) (per curiam). As discussed *infra*

7

at p. 14, when Albertsons first announced its Dividend, four state attorneys general filed two lawsuits

8

seeking to enjoin the Dividend. When those efforts failed, Albertsons issued the Dividend, the parties

9

in the D.C. litigation agreed that the request for injunctive relief was moot, and the D.C. Circuit

10

dismissed the appeal on that basis. Order, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir.

11

Dec. 20, 2022). "A request for injunctive relief remains live only so long as there is some present

12

harm to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (citation

13

omitted). As the D.C. Circuit recognized, there is no such harm here.

14

***Second***, Plaintiffs' request for disgorgement is nonsensical as to Kroger. *See In re Ditropan*

15

*XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1102 (N.D. Cal. 2007) (defining disgorgement as

16

"compel[ling] a defendant to surrender all money [or profits] obtained through an unfair business

17

practice" (citation omitted)). Kroger has taken no action with regard to the Dividend, it has no

18

Dividend payment to disgorge, and it cannot grant any relief to Plaintiffs. *See Hateley v. SEC*, 8 F.3d

19

653, 655 (9th Cir. 1993) ("The purpose of disgorgement is to deprive a person of 'ill-gotten gains'

20

and prevent unjust enrichment." (citation omitted)).

21

Nor would disgorgement redress Plaintiffs' alleged harm. Plaintiffs do not allege that they

22

have overpaid for groceries or that Defendants have unjustly profited from the Dividend. Instead,

23

Plaintiffs' Dividend-based antitrust theory rests on the allegation that *Albertsons* will be crippled

24

unless it retains the liquidity it expended on the Dividend. *See* Compl. ¶ 84. Any coherent theory of

25

relief would thus need to put money back in Albertsons' pocket, not provide Plaintiffs a windfall.

26

Plaintiffs have articulated no personal interest in the disgorgement they seek and have identified no

27

personal injuries that disgorgement would remedy. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792,

28

1  801 (2021) ("[A] plaintiff must maintain a personal interest in . . . each form of relief sought." (citation

2  omitted)).

3         Even if disgorgement made some logical sense here, "the Ninth Circuit disallows private use

4  of Section 16 to pursue disgorgement." *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-cv-

5  5944, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016); *see id.* (collecting cases). Section 16

6  provides a private cause of action "against *threatened* loss or damage by a violation of the antitrust

7  laws." 15 U.S.C. § 26 (emphasis added). Disgorgement, in contrast, "is a form of retrospective

8  equitable relief." *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202

9  (N.D. Cal. 2011). "Such relief is unavailable under Section 16." *Id.*; *see In re Multidistrict Vehicle*

10 *Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) ("Recovery for past losses is properly covered under

11 [Section] 4; it comes under the head of 'damages.'"). Without any cognizable legal remedy to award

12 against Kroger, Plaintiffs' Count II must be dismissed. *See Uzuegbunam*, 141 S. Ct. at 801.

13         **B.      Plaintiffs Fail to Allege an Unlawful Agreement Regarding the Dividend**

14         Even assuming there were a remedy for the Court to award against Kroger, Plaintiffs have

15 failed to state a Sherman Act claim. To establish an "agreement" under Section 1 of the Sherman Act,

16 Plaintiffs must present direct or circumstantial evidence that Kroger and Albertsons "had a conscious

17 commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v.*

18 *Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted). Under this standard, "conduct

19 [that is] as consistent with permissible competition as with illegal conspiracy does not, standing alone,

20 support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

21 U.S. 574, 588 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 279-84 (1968). Thus,

22 "[t]here must be evidence that tends to *exclude* the possibility that [Defendants] were acting

23 independently." *Monsanto Co.*, 465 U.S. at 764 (emphasis added); *see also Copperweld Corp. v.*

24 *Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (Section 1 of the Sherman Act "does not reach conduct

25 that is 'wholly unilateral'" (citation omitted)).[4]

26

27

28

---

[4] Plaintiffs' failure to allege a relevant market also dooms their Sherman Act claim. *See supra* at pp. 5-8.

- 13 -

DEFENDANT THE KROGER CO.'S MOTION TO DISMISS          Case No. 3:23-cv-00459-VC

The Complaint makes the "formulaic recitation," *Twombly*, 550 U.S. at 555, that "Kroger and Albertsons have agreed that Albertsons will provide a 'special dividend,'" Compl. ¶ 38, but it alleges no facts that, if proven, would allow a factfinder to find the existence of such an agreement. As numerous courts have recognized (after discovery into this very issue), no such facts exist. Indeed, one federal court in the District of Columbia on *three* occasions held that a materially similar challenge—brought by the District of Columbia and the States of California and Illinois—was unlikely to succeed on the merits because, *inter alia*, the plaintiff attorneys general had failed to demonstrate that Kroger *agreed* that Albertsons would declare or pay the Dividend.[5] On plaintiffs' emergency appeal, the D.C. Circuit likewise denied plaintiffs' request for injunctive relief. Order, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir. Dec. 20, 2022). Similarly, in a suit brought by the State of Washington, a Washington state court denied an equivalent request for injunctive relief following an extensive evidentiary hearing, Order, *Washington v. Albertsons Companies, Inc.*, No. 22-2-18046-SEA (Wash. Super. Ct. Dec. 9, 2022), and the Supreme Court of Washington denied discretionary review, Order, *Washington v. Albertsons Companies Inc.*, No. 101530-5 (Wash. Jan. 17, 2023). After their appeals failed, plaintiff attorneys general voluntarily dismissed their claims.

In sum, no court to consider Plaintiffs' novel antitrust theory has given it any credence, and Plaintiffs' sparse allegations in this case provide no reason to reach a different conclusion here.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice.

---

[5] *See* Minute Order Denying Request for Temp. Restraining Order, *District of Columbia v. Kroger*, No. 1:22-cv-03357 (D.D.C. Nov. 8, 2022); Order Denying Motion for Prelim. Inj., *District of Columbia v. Kroger*, No. 1:22-cv-03357 (D.D.C. Dec. 12, 2022); Order Denying Motion for Temp. Inj. Pending Appeal, *District of Columbia v. Kroger*, No. 1:22-cv-03357 (D.D.C. Dec. 14, 2022).

1    Dated:  April 12, 2023.                    **ARNOLD & PORTER KAYE SCHOLER LLP**

2                                            By:   /s/ *Daniel B. Asimow*

3                                                  DANIEL B. ASIMOW
                                                   Three Embarcadero Center, 10th Floor
4                                                  San Francisco, CA 94111
                                                   Telephone:   (415) 471-3100
5                                                  Facsimile:    (415) 471-3400
                                                   Daniel.Asimow@arnoldporter.com
6
                                                   SONIA K. PFAFFENROTH (SBN 223984)
7                                                  MATTHEW WOLF (*pro hac vice*)
                                                   MICHAEL BERNSTEIN (*pro hac vice*)
8                                                  KOLYA D. GLICK (*pro hac vice*)
                                                   601 Massachusetts Ave., N.W.
9                                                  Washington, DC 20001
                                                   Telephone:   (202) 942-5000
10                                                 Facsimile:    (202) 942-5999
                                                   Sonia.Pfaffenroth@arnoldporter.com
11                                                 Matthew.Wolf@arnoldporter.com
                                                   Michael.Bernstein@arnoldporter.com
12                                                 Kolya.Glick@arnoldporter.com

13                                                 *Attorneys for Defendant*
                                                   THE KROGER CO.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 12, 2023, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

Dated:  April 12, 2023

/s/ *Daniel B. Asimow*
Daniel B. Asimow
