1 | John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE WHALEN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO., ALBERTSONS COMPANIES, INC., AND CERBERUS CAPITAL MANAGEMENT, L.P.,<br><br>Defendants. | CASE NO. 3:23-CV-459-VC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT ALBERTSONS COMPANIES, INC. TO DISMSS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 18, 2023, at 10:00 AM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 17th Floor, Courtroom 4, Defendant Albertsons Companies, Inc. ("Albertsons") will and hereby does respectfully move for an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing, their claims are moot and/or not ripe, and they fail to state a claim upon which relief may be granted.

This motion is based on this notice of motion and motion; the memorandum of points and authorities contained herein; Albertsons' Notice of Joinder in The Kroger Co.'s Motion to Dismiss; the Declaration of Edward D. Hassi and Exhibits attached thereto; Albertsons' Request for Judicial Notice; any reply papers that Albertsons may file; upon all pleadings, records, and papers on file in this action; and upon such further arguments as may be presented to the Court at or prior to the hearing on the motion.

DEFENDANT ALBERTSONS COMPANIES, INC.'S MOTION TO DISMISS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................2

      A.    Albertsons' Successful Business Operations Have Generated Billions of Dollars of Excess Capital that It Distributed to Its Shareholders. ...............................2

      B.    Albertsons and Kroger Did Not Agree to Issue the Special Dividend. .....................2

      C.    Multiple Courts Rejected Similar Efforts by State AGs to Enjoin the Special Dividend Payment. ..................................................................................................3

      D.    Albertsons Issues the Special Dividend and the State AGs Voluntarily Dismiss Their Claims. ..............................................................................................5

ARGUMENT ..................................................................................................................................5

      A.    Plaintiffs' Sherman Act Claim is Moot as to Albertsons. .........................................6

      B.    Plaintiffs Cannot State a Claim for Relief Under Section 1 of the Sherman Act. ..............................................................................................................7

CONCLUSION .............................................................................................................................13

<a>
<p>
<s>
</s>
</p>
</a>

Federal Cases

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ................................................................................................7

*Alamilla v. Hain Celestial Grp., Inc.*,
  30 F. Supp. 3d 943 (N.D. Cal. 2014) .....................................................................................5

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
  126 F.3d 1118 (9th Cir. 1997) ................................................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................5, 7

*Bhan v. NME Hosps., Inc.*,
  929 F.2d 1404 (9th Cir. 1991) ..............................................................................................10

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
  532 F.3d 1111 (10th Cir. 2008) ............................................................................................11

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ................................................................................................2

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ................................................................................................3

*District of Columbia v. Kroger Co.*,
  No. 22-7168, 2023 WL 2356015 (D.C. Cir. Feb. 23, 2023) ...............................................5, 6

*District of Columbia v. The Kroger Co.*,
  No. 1:22-cv-03357 (CJN), 2022 WL 18911128 (D.D.C. Dec. 12, 2023) .................4, 6, 9, 12

*District of Columbia v. The Kroger Co.*,
  No. 1:22-cv-03357 (CJN), 2022 WL 18910855 (D.D.C. Dec. 14, 2023) ..........................4, 12

*Dreiling v. Am. Express Co.*,
  458 F.3d 942 (9th Cir. 2006) ..................................................................................................2

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ..................................................................................................7

*Feldman v. Bomar*,
  518 F.3d 637 (9th Cir. 2008) ..................................................................................................6

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................................12

Case 3:23-cv-00459-VC   Document 42   Filed 04/12/23   Page 5 of 20

*California ex rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) ..........................................................................................10

*Hateley v. SEC*,
    8 F.3d 653 (9th Cir. 1993) ................................................................................................6

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ........................................................................................11

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) .........................................6

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
    906 F.2d 432 (9th Cir. 1990) ............................................................................................7

*In re Google, Inc. S'holder Derivative Litig.*,
    No. 11-4248 PJH, 2012 WL 1611064 (N.D. Cal. May 8, 2012) .....................................9

*In re Sagent Tech., Inc., Derivative Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................................................................9

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .......................................................................................7, 8

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 50 (9th Cir. 2008) ..............................................................................................5

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................................5

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) .......................................................................................................7, 8

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) .......................................................................................7, 8

*NCAA v. Alston*,
    141 S.Ct. 2141 (2021) .....................................................................................................10

*NCAA v. Bd. of Regents of Univ. of Oklahoma*,
    468 U.S. 85 (1984) ..........................................................................................................10

*Newcal Indus., Inc. v. Ikon Office Sols.*,
    513 F.3d 1038 (9th Cir. 2008) .......................................................................................10

*Nw. Envt'l Def. Ctr. v. Gordon*,
    849 F.2d 1241 (9th Cir. 1988) ..........................................................................................6

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018) ................................................................................................7, 11

*Planned Parenthood of Wisc., Inc. v. Azar*,
  942 F.3d 512 (D.C. Cir. 2019) ........................................................................................................6

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
  890 F.2d 139 (9th Cir. 1989) .......................................................................................................10

*Rojo v. Bright*,
  No. 12-cv-02518-VC, 2014 WL 1794376 (N.D. Cal. May 6, 2014) ...........................................5

*Tan v. GrubHub, Inc.*,
  171 F. Supp. 3d 998 (N.D. Cal. 2016) ..........................................................................................2

*Tanaka v. Univ. of S. California*,
  252 F.3d 1059 (9th Cir. 2001) .....................................................................................................11

*Texaco Inc. v. Dagher*,
  547 U.S. 1 (2006) .........................................................................................................................10

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .........................................................................................................3

**OTHER AUTHORITIES**

D.G.C.L. § 170 ......................................................................................................................................9

Fed. R. Civ. P. 23.1 ...............................................................................................................................9

Restatement (Second) of Conflict of Laws § 302 cmt. a ......................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Albertsons Companies, Inc. ("Albertsons" or "the Company") joins in full The Kroger Co's ("Kroger") Motion to Dismiss Plaintiffs' Complaint as to Count I, Plaintiffs' Clayton Act Section 7 claim regarding the proposed merger between Kroger and Albertsons. Albertsons writes separately to address Count II, Plaintiffs' claim challenging Albertsons' payment of a special dividend under Section 1 of the Sherman Act, 15 U.S.C. § 1.

## PRELIMINARY STATEMENT

Plaintiffs' claim challenging Albertsons' independent decision to pay a special dividend to its shareholders and seeking to enjoin its payment should be dismissed with prejudice.

*First*, Plaintiffs' claim for injunctive relief is moot because Albertsons already paid the special dividend on January 20, 2023, nearly two weeks before Plaintiffs filed this lawsuit. As the U.S. Court of Appeals for the District of Columbia has recognized, Albertsons' payment of the special dividend moots claims for injunctive relief blocking payment of that dividend. Given the only relief sought by Plaintiffs as to Albertsons on Count II is injunctive, dismissal on mootness grounds is required.

*Second*, Plaintiffs do not (and cannot) plausibly allege that payment of the special dividend was the product of an unlawful agreement or that it had, has, or will have any anticompetitive effect. Indeed, Albertsons' payment of the special dividend followed extensive review by four separate courts in two separate lawsuits brought by four state attorneys general raising federal and state antitrust claims substantially similar to those alleged by Plaintiffs. Those courts carefully considered a fulsome evidentiary record and *repeatedly* rejected claims seeking to enjoin Albertsons' payment of the special dividend, concluding the allegations and evidence before them did not show any unlawful agreement between Albertsons and Kroger or that payment of the special dividend would harm Albertsons or competition more broadly. Plaintiffs make no plausible allegations here that support a different outcome, nor could they. Indeed, contrary to Plaintiffs' allegations that paying the special dividend would competitively harm Albertsons, since paying the special dividend, Albertsons continues to generate record earnings and effectively compete in the highly competitive markets it serves.

In short, Count II as to Albertsons is moot and does not state a plausible claim for relief under Section 1 of the Sherman Act. Plaintiffs cannot address the fundamental flaws that are fatal to Count II through amendment, and Count II should be dismissed with prejudice. *See, e.g., Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (dismissal with prejudice appropriate where "amendment would be futile").

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Albertsons' Successful Business Operations Have Generated Billions of Dollars of Excess Capital that It Distributed to Its Shareholders.**

Albertsons is a thriving company. Compl. ¶ 73. In fiscal year 2021, Albertsons generated $71.9 billion in revenue and nearly $4.4 billion of Adjusted EBITDA.[1] Compl. ¶ 40; Ex. A at 44-45, 47 (ACI Apr. 26, 2022 10-K).[2] Albertsons' strong financial performance has continued into fiscal year 2022, which ended on February 25, 2023, with record Adjusted EBITDA of over $4.67 billion.[3] Ex. B at 1, 10 (ACI Apr. 11, 2023 8-K).

Beginning in November 2021, and as publicly announced in February 2022, Albertsons' Board of Directors engaged in a broad-ranging strategic review process. Ex. A at 16; Ex. C at 20 (ACI Jan. 24, 2023 Sched. 14C Info. Statement). During that process, Albertsons considered ways to return to its shareholders excess capital accumulated due to its strong financial performance, including through the payment of a special dividend. Ex. C at 23-24.

**B.     Albertsons and Kroger Did Not Agree to Issue the Special Dividend.**

In April 2022, during Albertsons' ongoing strategic review, Kroger approached Albertsons about a potential merger. *See* Ex. C at 24. Following several months of negotiations, Albertsons

---

[1] "EBITDA" refers to earnings before interest, taxes, depreciation, and amortization.

[2] In considering a motion to dismiss, the Court may consider may take judicial notice of and consider undisputed facts that are part of the public record, including Albertsons' public SEC filings and documents that have been publicly filed in both state and federal court. *See, e.g., Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1003 n.2, 1016 (N.D. Cal. 2016) (taking judicial notice of public filings in a separate state litigation); *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that a court may take judicial notice of SEC filings). Albertsons has concurrently filed a request for judicial notice. Citations to "Ex." refer to the documents appended to the Declaration of Edward D. Hassi in Support of Albertsons' Motion to Dismiss filed herewith.

[3] In other words, Albertsons' payment of the special dividend occurred during its best ever annual financial performance.

and Kroger agreed to merge pursuant to a Merger Agreement dated October 13, 2022 (the "Merger"). Compl. ¶ 82; Ex. D (ACI Oct. 14, 2022 8-K) at Exhibit 2.1.[4] The Merger Agreement contemplates that Albertsons could choose to pay a pre-closing dividend at its sole discretion, and provides for a dollar-for-dollar reduction of the per-share merger consideration Kroger will pay in an amount equal to the value of any capital Albertsons elected to return to its shareholders through payment of such a dividend. Ex. D at Exhibit 2.1, § 6.1(c). Critically, the Merger Agreement neither required nor conditioned the Merger on the payment of such a dividend. Ex. D at Exhibit 2.1, §§ 7.1-7.3.

On October 13, 2022, Albertsons' Board of Directors separately approved and declared a special dividend (the "Special Dividend") in the amount of $6.85 per share, totaling approximately $4 billion to be paid on November 7, 2022, to shareholders of record as of October 24, 2022. Compl. ¶¶ 4, 38; Ex. C at 18, 36.

### C. Multiple Courts Rejected Similar Efforts by State AGs to Enjoin the Special Dividend Payment.

In early November 2022, the Attorneys General for California, Illinois, and the District of Columbia (collectively, the "D.C. Plaintiffs") and for Washington (with the D.C. Plaintiffs, the "State AGs") sued Albertsons and Kroger under federal and/or state antitrust laws seeking to enjoin payment of the Special Dividend. *See* Ex. E (D.C. Complaint filed Nov. 2, 2022); Ex. F (Wa. Complaint filed Nov. 1, 2022). In connection with those lawsuits, multiple courts—both state and federal, and trial and appellate—*repeatedly* rejected the State AGs' attempts to enjoin payment of the Special Dividend:

- On November 8, 2022, the U.S. District Court for the District of Columbia denied the D.C. Plaintiffs' request for a temporary restraining order ("TRO"), concluding

---

[4] The Court may consider the Merger Agreement, which was attached as Exhibit 2.1 to Albertsons' October 14, 2022 8-K, Ex. D, because it is referenced in and integral to the Complaint. *See* Compl. ¶¶ 37, 82; *see Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a document is "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim"). Further, the Court may take judicial notice of the Merger Agreement. *See supra* note 2.

    they had not demonstrated a likelihood of success given there was "no evidence of an agreement between Albertsons and Kroger to pay the [Special Dividend]," and that, instead, the evidence showed the Special Dividend was consistent with "an independent decision by Albertsons to return value to its shareholders."  Ex. G at 65-74 (Tr. of Nov. 8, 2022 Hearing).  It also determined that there was "insufficient evidence that Albertsons will not be able to effectively compete, or that [payment of the Special Dividend] will otherwise restrain trade," citing Albertsons' strong revenues and excess cash flow and significant sources of liquidity.  *Id.* at 70-71.

- On December 12, 2022, the same court denied the D.C. Plaintiffs' request for a preliminary injunction, again finding that they failed to show a likelihood of success on the merits.  *District of Columbia v. The Kroger Co.*, No. 1:22-cv-03357 (CJN), 2022 WL 18911128 (D.D.C. Dec. 12, 2023).  Two days later, the court denied the D.C. Plaintiffs' request for an injunction pending appeal, stating the "claims have substantial weaknesses" and that the D.C. Plaintiffs had failed to show "harm to competition or consumers is likely." *District of Columbia v. The Kroger Co.*, No. 1:22-cv-03357 (CJN), 2022 WL 18910855 (D.D.C. Dec. 14, 2023).

- On December 20, 2022, the U.S. Court of Appeals for the District of Columbia denied the D.C. Plaintiffs' motion for an injunction pending appeal and an administrative stay because the D.C. Plaintiffs had "not satisfied the requirements for an injunction pending appeal."  Ex. H (D.C. Cir. 12/20/22 Order Denying Injunction Pending Appeal).

- Washington initially obtained a TRO enjoining payment of the Special Dividend. However, on December 9, 2022, the Washington Superior Court denied Washington's motion for a preliminary injunction after a full-day evidentiary hearing which included over five hours of testimony from three witnesses: Gary Millerchip, Kroger's CFO; Sharon McCollam, Albertsons' President and CFO; and Professor David Smith, a corporate finance expert.  The court concluded that Washington failed to show either an agreement between Kroger and Albertsons to issue the Special Dividend or that payment of the Special Dividend would harm Albertsons' ability to compete.  Ex. I (Wa. Super. Ct. 12/9/22 Order). Nevertheless, the court extended the TRO to allow the State of Washington the opportunity to seek appellate review.  *Id.*

- On December 16, 2022, a Washington Supreme Court Commissioner extended the TRO until further order of the court, but noted Washington did "not make a compelling case" that it would prevail on its claims.  Ex. J (Wa. Supreme Ct. 12/16/22 Order).  On January 17, 2023, the Washington Supreme Court denied review of the trial court's decision and terminated the TRO.  Ex. K (Wa. Supreme Ct. 1/17/23 Order).

4

Case No. 3:23-CV-459-VC

DEFENDANT ALBERTSONS COMPANIES, INC.'S MOTION TO DISMISS

### D. Albertsons Issues the Special Dividend and the State AGs Voluntarily Dismiss Their Claims.

With the Washington TRO lifted, on January 20, 2023, Albertsons paid its shareholders of record as of the close of business on October 24, 2022 the Special Dividend. Ex. B at 3. Washington filed a motion to voluntarily dismiss its claims, which was granted on February 1, 2023. Ex. L (Wa. 2/1/23 Order of Dismissal). And, after the Court of Appeals for the District of Columbia dismissed the D.C. Plaintiffs' appeal of the denial of their motion for preliminary injunction as moot, *District of Columbia v. Kroger Co.*, No. 22-7168, 2023 WL 2356015, at *1 (D.C. Cir. Feb. 23, 2023), the D.C. Plaintiffs voluntarily dismissed their claims on February 24, 2023. Ex. M (D.C. Plaintiffs' 2/24/23 Notice of Dismissal).

## ARGUMENT

To survive a motion to dismiss, Plaintiffs must allege facts that state a claim for relief that is "plausible" on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In evaluating the complaint, the court must "accept as true all factual allegations . . . and construe them in the light most favorable to the plaintiff." *Rojo v. Bright*, No. 12-cv-02518-VC, 2014 WL 1794376, at *1 (N.D. Cal. May 6, 2014) (Chhabria, J.) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). However, the court is not required to accept as true "mere 'labels and conclusions[,] . . . a formulaic recitation of the elements of a cause of action[,] . . . or naked assertion[s] devoid of further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 555. This is particularly true in the context of an antitrust claim, where a mere allegation of "parallel conduct," "much like a naked assertion of conspiracy," will be insufficient to overcome a motion to dismiss. *Twombly*, 550 U.S. at 557-58. The court also need not accept factual allegations that are contradicted by documents that are incorporated by reference or of which the court can take judicial notice. *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (Chhabria, J.) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 50, 588 (9th Cir. 2008)).

### A.   Plaintiffs' Sherman Act Claim is Moot as to Albertsons.

Count II of the Complaint should be dismissed as to Albertsons because it is moot. The Complaint was filed on February 2, 2023—approximately two weeks after Albertsons' payment of the Special Dividend to its shareholders on January 20, 2023. But the only relief in Count II that Plaintiffs have sought as to Albertsons is an injunction preventing Albertsons from paying the Special Dividend to certain shareholders. Compl. p. 30.[5] Given Albertsons has *already* paid the Special Dividend, this Court cannot grant the relief Plaintiffs seek against Albertsons. Consequently, Count II is moot as to Albertsons and must be dismissed. *See, e.g.*, *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."); *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.") (quoting *Nw. Envt'l Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)).

The D.C. Circuit reached the same conclusion with respect to a nearly identical claim for relief. *See District of Columbia*, 2023 WL 2356015, at *1. Like Plaintiffs, the D.C. Plaintiffs sought to enjoin payment of the Special Dividend on the basis that it violated the Sherman Act. Ex. N (Mem. of Law in Support of Mot. for PI). The district court denied the motion on the merits, *see District of Columbia*, 2022 WL 18911128, and the D.C. Circuit dismissed the appeal as moot because payment of the Special Dividend made it "impossible for [this court] to grant effectual relief to the prevailing party." *District of Columbia*, 2023 WL 2356015, at *1 (quoting *Planned Parenthood of Wisc., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (modifications in original)). Plaintiffs have offered no reason why their claim, brought over three months after the

---

[5] The Complaint also seeks "disgorgement" of the Special Dividend, but disgorgement is not a remedy available to private antitrust plaintiffs; nor could it possibly be sought against Albertsons given it was the payor of the Special Dividend, not a recipient of it. *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016) (noting that the Ninth Circuit "disallows" private plaintiffs from seeking disgorgement); *see Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir. 1993) ("The purpose of disgorgement is to deprive a person of ill-gotten gains and prevent unjust enrichment." (citations and internal quotation marks omitted)).

Special Dividend was first announced and nearly two weeks after it was paid, warrants a different result.

### B. Plaintiffs Cannot State a Claim for Relief Under Section 1 of the Sherman Act.

Even if this Court could grant effective relief against Albertsons, Count II of the Complaint should be dismissed because Plaintiffs have not plausibly alleged that Albertsons' independent decision to pay the Special Dividend violates the Sherman Act. The Supreme Court has long construed Section 1 of the Sherman Act to prohibit only *unreasonable* restraints of trade. *See, e.g., Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). To state a claim under Section 1, a plaintiff must plausibly allege both (1) "the existence of an agreement," and (2) that "the agreement was an unreasonable restraint of trade." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020) (quoting *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016)) (citations and internal quotation marks omitted). Count II should be dismissed because Plaintiffs do not (and cannot) plausibly allege either element.

#### 1. Plaintiffs Do Not Plausibly Allege an Unlawful Agreement.

To establish an agreement actionable under Section 1, Plaintiffs must prove that Albertsons "had a conscious commitment to a common scheme designed to achieve an *unlawful* objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (emphasis added). "Independent action is not proscribed," *id.* at 761; instead, "[t]here must be evidence that tends to exclude the possibility that [defendants] were acting independently," *id.* at 764; *see also In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 906 F.2d 432, 438 (9th Cir. 1990) ("[P]laintiff[s] must come forward with sufficiently unambiguous evidence that tends to exclude the possibility that the defendants were acting lawfully." (cleaned up)). As such, to survive a motion to dismiss, Plaintiffs must allege facts "plausibly suggesting (not merely consistent with) a conspiracy." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) (citing *Twombly*, 550 U.S. at 556 (2007)). Moreover, Plaintiffs must "plead not just ultimate facts (such as a conspiracy), but evidentiary facts." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). They must "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Id.* at 1048.

Plaintiffs' conclusory allegations regarding the purported conspiracy are devoid of any supporting factual allegations. Plaintiffs boldly assert that "Kroger and Albertsons have agreed" that Albertsons "will provide" the Special Dividend, but the only facts alleged in the Complaint in support of the purported "scheme" are that Albertsons and Kroger agreed to merge.[6] Compl. ¶¶ 38, 82, 84. Plaintiffs' barebones allegations and abject speculation that Kroger and Albertsons "agreed" that Albertsons would issue the Special Dividend are not sufficient to plausibly allege that Albertsons' independent decision to return capital to its shareholders is the product of an agreement or conspiracy with Kroger. *See Name.Space, Inc.*, 795 F.3d 1129.

To be clear, while the Merger Agreement evidences an agreement *to merge*, it does not reflect an agreement to issue the Special Dividend. The Merger Agreement references the possibility of a pre-closing dividend only for the limited purpose of (a) clarifying that Albertsons may issue a pre-closing dividend if it independently chose to do so, and (b) accounting for the impact any such dividend would have on the merger consideration to be paid. *See* Ex. D at Exhibit 2.1, § 1.1 (definition of "Common Merger Consideration"); *id*. § 6.1(e). The Merger is neither dependent on, nor driven by, payment of a pre-closing dividend. To the contrary, the Merger Agreement provides that whether or not Albertsons paid a pre-closing dividend, Kroger and Albertsons would be obligated to consummate the Merger.[7] The Merger Agreement simply does not "exclude the possibility" that Albertsons unilaterally decided to return $4 billion in capital to its shareholders. *Monsanto Co.*, 465 U.S. at 764.

Plaintiffs also fail to sufficiently allege that any agreement was "designed to achieve an unlawful objective." *See id*. Merely signing a merger agreement is not an "unlawful objective"

---

[6] While Plaintiffs allege that "[t]he Defendants Kroger and Albertsons have admitted that, as part of the transaction, Albertsons will pay a cash dividend of up to $4 billion," Compl. ¶ 83, they do not allege where, when, or to whom Defendants made this alleged admission, which is insufficient to survive a motion to dismiss. *See Kendall*, 518 F.3d at 1048. Nor do they explain how the alleged admission that Albertsons will pay a cash dividend somehow constitutes an anticompetitive agreement with Kroger.

[7] Consummation of the Merger depends solely on the satisfaction of the conditions to closing contained in Article VII of the Merger Agreement. Ex. D at Exhibit 2.1, §§ 7.1-7.3. These conditions to closing are neither dependent on nor related to the Special Dividend, and Plaintiffs allege no facts to the contrary.

and cannot, without more, support a Section 1 claim; otherwise every agreement to merge would result in antitrust liability.  Similarly, it is not unlawful for a company to return excess capital to its shareholders in accordance with applicable state law.[8]  Nor are any of the other alleged "unlawful" aims of the conspiracy suggested by Plaintiffs even remotely plausible.  Plaintiffs' conclusory allegation that Kroger and Albertsons conspired to place Albertsons at a financial disadvantage, *see* Compl. ¶ 88, is not only contradicted by Albertsons' financial strength both before and after payment of the Special Dividend, *infra* at 11-12, but also defies common sense.  Kroger would not pay in excess of $20 billion for a competitively weakened Albertsons, and Albertsons would not purposefully sabotage itself given the possibility that the Merger may not close due to regulatory review.  And as to Plaintiffs' allegation that Albertsons and Kroger conspired to lodge a "failing firm" defense, Albertsons and Kroger have publicly committed that they will not.  *See* Ex. G at 35.

Every court that has considered similar allegations—including with the benefit of factual declarations, expert reports, and in-person testimony—has found there is no basis to conclude that Albertsons and Kroger entered into an agreement to pay the Special Dividend, much less participated in an unlawful conspiracy to restrain trade through payment of such a dividend.  *See, e.g.*, Ex. G at 65-74; Ex. I, ¶ 4; *District of Columbia*, 2022 WL 18911128.  Plaintiffs' conclusory allegations offer no basis that plausibly suggests otherwise and this Court should dismiss Count II.

---

[8] Albertsons is a Delaware corporation, Ex. A at 1, and its internal affairs—including the payment of dividends—are governed by Delaware law.  *See In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1086-87 (N.D. Cal. 2003) (applying Delaware law to claims against Delaware corporation pursuant to "internal affairs" doctrine); *see also* Restatement (Second) of Conflict of Laws § 302 cmt. a (noting that "internal affairs" doctrine applies to the "declaration and payment of dividends"); D.G.C.L. § 170 (governing payment of dividends).  Despite Plaintiffs' bald assertion that payment of the Special Dividend was "in derogation of Albertsons' minority shareholders and also in in derogation of the integrity of Albertsons as an ongoing entity," Compl. ¶ 85, Plaintiffs do not allege that the Special Dividend was paid in violation of Delaware law (nor could they).  Moreover, Plaintiffs do not allege that they are Albertsons shareholders and thus have no standing to challenge the business judgment of Albertsons' Board of Directors.  Fed. R. Civ. P. 23.1 (to bring a derivative suit, complaint "must[] allege that the plaintiff was a shareholder or member at the time of the transaction complained of"); *see In re Google, Inc. S'holder Derivative Litig.*, No. 11-4248 PJH, 2012 WL 1611064 at *7, 10-11 (N.D. Cal. May 8, 2012) (applying Delaware law to plaintiffs' substantive allegations and dismissing plaintiff's complaint for failure to plead ownership as required by Rule 23.1).

2.   Plaintiffs Do Not Plausibly Allege An Unreasonable Restraint of Trade.

Count II also fails and is subject to dismissal because Plaintiffs do not plausibly allege an *unreasonable* restraint of trade or commerce, evidenced by an adverse impact on competition. *See NCAA v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984) ("[E]ssential inquiry" is what "impact on competition" the alleged restraint has). "To determine whether a practice unreasonably restrains trade" courts typically apply either a "rule of reason" analysis, or in circumstances not present here, a *per se* rule of illegality, or a "quick look" analysis. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991); *see also California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1132-39 (9th Cir. 2011). The "rule of reason" is the presumptive analysis and applies to this case.[9] *See Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Under this analysis, courts "must analyze the degree of harm to competition along with any justifications or pro-competitive effects to determine whether the practice is unreasonable on balance." *Bhan*, 929 F.2d at 1410 (internal citation omitted). "The focus is on the actual effects that the challenged restraint has had on competition in a relevant market." *Id*. Application of the "rule of reason" analysis plainly reveals that Plaintiffs have not plausibly alleged payment of the Special Dividend will have an adverse impact on "competition in a relevant market." *Id*. at 1404, 1414.[10]

*First*, Plaintiffs have not plausibly alleged a relevant antitrust market.[11] As explained in Kroger's Motion to Dismiss, which Albertsons has joined, Plaintiffs' alleged geographic markets

---

[9] Plaintiffs do not allege any conduct subject to *per se* or "quick look" analysis nor could they. The Supreme Court has directed that courts "take special care not to deploy these condemnatory tools [the *per se* rule or the quick look analysis] until we have amassed considerable experience with the type of restraint at issue and can predict with confidence that it would be invalidated in all or almost all instances." *NCAA v. Alston*, 141 S.Ct. 2141, 2156 (2021) (internal quotation marks omitted). Given payment of dividends is a routine business activity there is no basis to conclude Albertsons' payment of a special dividend is a *per se* violation or subject to quick look review. *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 151 (9th Cir. 1989) (explaining that the *per se* rule applies "where experience has established that anti-competitive consequences regularly flow from the condemned practice").

[10] Plaintiffs' allegations regarding the alleged anticompetitive effects of the *proposed merger* are irrelevant to an assessment of Count II and alleged adverse impact of the Special Dividend.

[11] "In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market.'" *Newcal Indus., Inc. v. Ikon*

are facially implausible (e.g., a nationwide or state- or city-wide geographic market for supermarkets, *see* Compl. ¶¶ 42-43, 51). Plaintiffs have not alleged a different relevant market for their Sherman Act claim, which therefore fails for the same reasons. *See, e.g., Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) ("[A] complaint may be dismissed if the complaint's 'relevant market' definition is 'facially unsustainable.'"); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008) ("Failure to allege a legally sufficient market is cause for dismissal of the claim.").

*Second*, Plaintiffs have not plausibly alleged that payment of the Special Dividend will have an adverse impact on competition. To prove harm to competition, Plaintiffs must offer "direct" evidence of actual competitive harm or "indirect" evidence: "proof of market power plus some evidence that the challenged restraint harms competition." *Am. Express*, 138 S. Ct. at 2284. Plaintiffs appear to allege two speculative theories of competitive harm: (1) Albertsons' allegedly reduced cash flow and increased debt from paying the Special Dividend will impede its ability to compete, Compl. ¶¶ 15, 39, 66; and (2) payment of the Special Dividend will enable Albertsons and Kroger to make a "failing firm" defense, *id.* ¶¶ 84, 87. Neither theory provides a plausible basis for Plaintiffs' claims and both are contradicted by documents subject to judicial notice.

The mere fact that Albertsons will have less cash on hand and more debt than it otherwise would absent payment of the Special Dividend does not by itself suggest "harm" to competition. If that were so, any expenditure, and any dividend payment, would "harm" competition. Moreover, the alleged consequences Plaintiffs allege *might* result from Albertsons' payment of the Special Dividend and purported financial challenges (e.g., Albertsons "will be less able to offer promotions" and "may have to close stores," *id.* ¶¶ 39, 66) are not facts, but rather hyperbolic and baseless suppositions. Such speculative allegations are not sufficient to support a Section 1 claim, particularly where they are flatly contradicted by public documents that the Court may take

---

*Office Sols.*, 513 F.3d 1038, 1044 (9th Cir. 2008). A relevant market "encompasses notions of geography as well as product use, quality, and description . . . [it] extends to the area of effective competition where buyers can turn for alternative sources of supply. The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1063 (9th Cir. 2001) (cleaned up).

judicial notice of. *See, e.g., Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1085 (N.D. Cal. 2017) (noting court may "look beyond the plaintiffs' complaint to matters of public record" and consider "judicially noticeable facts" on motion to dismiss). Indeed, contemporaneous with its declaration of the Special Dividend, on October 19, 2022, Albertsons reported in a public SEC filing that its cash flows were more than sufficient to meet its projected liquidity needs even after payment of the Special Dividend. Ex. O at 31-32 (ACI 10/19/22 10-Q). As noted above, multiple courts assessed similar allegations that paying the Special Dividend would somehow harm Albertsons and concluded—with the benefit of significant evidence—that Albertsons had adequate cash flows and liquidity and would not be harmed by or unable to compete as a result of payment of the Special Dividend. *See* Ex. G at 65-74; Ex. H; Ex. I; Ex. K; *District of Columbia*, 2022 WL 18911128; *District of Columbia*, 2022 WL 18910855. And Albertsons' most recent SEC filing on April 11, 2023 confirms Albertsons' strong financial performance for fiscal year 2022—including record Adjusted EBITDA of over $4.67 billion—and continued financial strength notwithstanding Albertsons' payment of the nearly $4 billion Special Dividend on January 20, 2023. Ex. B at 3. Plaintiffs' conclusory assertion that payment of the Special Dividend has or will impede Albertsons' ability to effectively compete in the highly competitive markets in which it operates is utterly implausible in light of this backdrop.

Plaintiffs likewise cannot plausibly allege that competition would somehow be harmed by Defendants' invocation of a "failing firm" defense as result of the Special Dividend payment. For one, Albertsons is far from a "failing firm" for the reasons described above; indeed, Albertsons is a thriving firm (as Plaintiffs themselves recognize, Compl. ¶ 73). Moreover, Plaintiffs' allegation that Defendants will invoke a "failing firm" defense assertion is belied by Albertsons' repeated public commitments that it will not do so. *See* Ex. G at 35.

In sum, Plaintiffs offer no plausible allegation that Albertsons' payment of the Special Dividend will harm competition in any relevant market and rely on nothing but conclusory allegations that are easily contradicted by public information subject to judicial notice. Plaintiffs' complete failure to plausibly allege any harm to competition as a result of payment of the Special Dividend is fatal to their Sherman Act claim and requires dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, Count II of the Complaint should be dismissed with prejudice.

Dated: April 12, 2023

Respectfully submitted,

By: */s/ Edward D. Hassi*
Edward D. Hassi (*pro hac vice*)

John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 12, 2023, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1.  The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

Dated:  April 12, 2023

                                                        */s/ Edward D. Hassi*
                                                       Edward D. Hassi (*pro hac vice*)