Russell P. Cohen (SBN 213105)
Joseph D. Trujillo (SBN 305170)
DECHERT LLP
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

Andrew J. Levander (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

Thomas J. Miller (admitted *pro hac vice*)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222

*Attorneys for Defendant Cerberus Capital Management, L.P.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen*, et al.*,<br><br>        Plaintiffs*,*<br><br>*v.*<br><br>Kroger Co., Albertsons Companies, Inc., and<br>Cerberus Capital Management, L.P.,<br>        Defendants. | Case No.: 23-cv-00459-VC<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CERBERUS CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS PLAINTIFFS' SECTION 1 CLAIM AGAINST CERBERUS (COUNT TWO)**<br><br>Date: May 18, 2023<br>Time: 10:00 AM<br>Courtroom: 5, 17th Floor |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on May 18, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable Vince Chhabria, Courtroom 5, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendant Cerberus Capital Management, L.P. will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Count Two of Plaintiffs' Complaint (the only Count asserted against Cerberus) with prejudice.  The motion to dismiss is based upon this Notice and Motion, the Memorandum of Points and Authorities, arguments of counsel, and all other matters properly considered by the Court.  This motion to dismiss is brought on the grounds that the Complaint fails to state a claim against Cerberus upon which relief can be granted, including because: (1) Plaintiffs have failed to plausibly allege the existence of an agreement as required by Section 1 of the Sherman Act; (2) Plaintiffs have failed to demonstrate that they are entitled to injunctive relief against Cerberus; and (3) Plaintiffs lack antitrust standing.  At the hearing, Cerberus will request that the Court dismiss Count Two – and, thus, Plaintiffs' entire action against Cerberus – with prejudice for failure to state a claim.

DATED: April 13, 2023

By: */s/ Russell P. Cohen*
Russell P. Cohen
DECHERT LLP
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

*Attorneys for Defendant Cerberus Capital
Management, L.P.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 2

    I.      PLAINTIFFS' LIMITED ALLEGATIONS AGAINST CERBERUS .................. 2

    II.     PLAINTIFFS' SPECULATIVE CLAIM FOR RELIEF AGAINST
             CERBERUS ................................................................................................... 3

    III.    PRIOR LITIGATION OVER THE SPECIAL DIVIDEND ............................... 4

ARGUMENT ........................................................................................................................... 6

    I.      PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY SHOWING
             THAT CERBERUS ENTERED INTO AN ANTICOMPETITIVE
             AGREEMENT ................................................................................................ 6

    II.     PLAINTIFFS ARE NOT ENTITLED TO DISGORGEMENT ........................... 9

    III.    PLAINTIFFS LACK ANTITRUST STANDING TO PURSUE THEIR
             SECTION 1 CLAIM AGAINST CERBERUS .................................................. 12

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Ad Mgmt., Inc. v. Gen. Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ...............................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................6, 9

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007)............................................................................................6, 7

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
479 U.S. 104 (1986) ..............................................................................................13

*Cascade Health Sols. v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ................................................................................12

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ..............................................................................15

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021), *cert denied*, 143 S. Ct. 84 (2022)....................12, 13

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*,
771 F. Supp. 2d 1195 (N.D. Cal. 2011) ................................................................10

*District of Columbia v. Kroger Co.*,
No. 1:22-CV-3357, 2022 WL 18911128 (D.D.C. Dec. 13, 2022)..........................5

*District of Columbia v. Kroger Co.*,
No. 22-7168, 2023 WL 2356015 (D.C. Cir. Feb. 23, 2023)...................................5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..................................................................................8

*Feitelson v. Google Inc.*,
80 F. Supp. 3d 1019 (N.D. Cal. 2015) .............................................................11, 13

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
No. 20-3131, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944 JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ........................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ..................................................................14

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust
Litig.*,
    28 F.4th 42 (9th Cir. 2022) ...........................................................................................9

*In re Dynamic Random Access Memory Indirect Purchaser Litig.*,
    No. 4:18-2518, 2020 WL 8459279 (N.D. Cal. Nov. 24, 2020), *aff'd*, 28 F.4th
    42 (9th Cir. 2022)...........................................................................................................8

*In re Generic Pharms. Pricing Antitrust Litig.*,
    605 F. Supp. 3d 672 (E.D. Pa. 2022) .......................................................................10

*In re iPhone Application Litig.*,
    No. 11- 2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................7

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .....................................................................................9

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .....................................................................................7

*McCarthy v. Intercontinental Exch., Inc.*,
    No. 20-cv-05832, 2022 WL 4227247 (N.D. Cal. Sept. 13, 2022)...........................13

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) .....................................................................................7

*PNY Techs., Inc. v. SanDisk Corp.*,
    No. 11-4689, 2012 WL 1380271 (N.D. Cal. Apr. 20, 2012)....................................7

*Rysewyk v. Sears Holdings Corp.*,
    No. 15-4519, 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015)......................................7

*Salazar v. Cnty. of Orange*,
    No. 11-1125, 2012 WL 12896364 (C.D. Cal. July 10, 2012), *aff'd,* 564 F.
    App'x 322 (9th Cir. 2014) ...........................................................................................7

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp., PLC*,
    733 F.3d 1251 (9th Cir. 2013) .....................................................................................6

*Simmons v. Unocal Corp.*,
    187 F.3d 648 (9th Cir. 1999) .....................................................................................11

*Taleff v. Sw. Airlines Co.*,
    554 F. App'x 598 (9th Cir. 2014) .............................................................................11

**Statutes/Rules**

15 U.S.C. § 1 ...................................................................................................................6

15 U.S.C. § 15 ...............................................................................................................10

15 U.S.C. § 26 ...............................................................................................................12

Defendant Cerberus Capital Management, L.P. ("Cerberus") submits this memorandum in support of its Motion to Dismiss Count 2 of the Complaint, Plaintiffs' Section 1 Claim Against Cerberus.

## PRELIMINARY STATEMENT

Plaintiffs implausibly claim that Cerberus, a purported shareholder of Albertsons, conspired to harm its own investment to receive a dividend paid to all shareholders in January 2023, and should disgorge those amounts.[1]  Plaintiffs' Complaint is devoid of any facts that would support any relief against Cerberus, let alone the extraordinary and unprecedented remedy of disgorgement of a legally declared and paid dividend.  Instead, Plaintiffs offer only a handful of conclusory allegations that Cerberus entered into an implausible, economically-irrational conspiracy by agreeing with Defendants and other shareholders to make Albertsons pay a dividend it could not afford so it would fail.  Plaintiffs' baseless claim, brought as an add-on to a challenge to the merger of Kroger and Albertsons, is asserted against a shareholder of one of the merging parties who does not participate in any market relevant to the merger, and seeks a form of relief that is not available under Section 16 of the Clayton Act, the only ground upon which Plaintiffs bring this case.  Plaintiffs' single claim against Cerberus should be dismissed.

At the motion to dismiss stage, the Court should not credit conclusory or implausible allegations.  The only factual—rather than conclusory—allegation about Cerberus' conduct in the entire Complaint is that ***as an Albertsons shareholder it received a dividend paid by Albertsons***.  And it is not surprising the Complaint says nothing more.  Four courts in two

---

[1] Cerberus advises that – as a factual matter – it is not a shareholder in Albertsons. Cerberus is a registered investment advisor and Cerberus and/or one or more of its affiliates manages certain entities that are indirect shareholders of Albertsons. To the extent the Complaint alleges otherwise, it is incorrect.  But nothing in this motion depends on these facts.

separate lawsuits have refused to enjoin payment of the dividend on the basis that the dividend was the product of an unlawful conspiracy. Settled law requires Plaintiffs to allege far more to state an antitrust conspiracy claim, especially when the conduct at issue is more consistent with independent conduct than an implausible conspiracy that has already been soundly rejected by multiple courts.

Plaintiffs' repackaging of the thoroughly rejected "dividend as conspiracy" claim against Cerberus also suffers from other fatal defects. Section 16 of the Clayton Act, which is the only basis for Plaintiffs' claim against Cerberus, does not allow Plaintiffs to seek disgorgement as a matter of law. That should end the case. But even if there were a form of relief available under Section 16, Plaintiffs must do more than generally allege a speculative risk of hypothetical harm. And that's all they do. Their claim that Albertsons might now be undercapitalized or better-positioned to assert a defense in a hypothetical merger challenge cannot meet that standard. Finally, Plaintiffs lack antitrust standing to pursue relief based on speculative or remote harm flowing from conduct in an entirely different market.

Plaintiffs have not come close to stating a claim against Cerberus. Accordingly, the Court should dismiss Plaintiffs' Section 1 claim (Count Two) as to Cerberus with prejudice.

## FACTUAL BACKGROUND

## I.   PLAINTIFFS' LIMITED ALLEGATIONS AGAINST CERBERUS

Plaintiffs are individuals who claim they have shopped at a Kroger or Albertsons grocery store in the last four years and seek to enjoin the proposed merger between Kroger and Albertsons as a violation of Section 7 of the Clayton Act. *See* Complaint, ECF No. 1 [hereafter, "Compl."] ¶ 29. Cerberus is an investment firm that manages funds on behalf of its investors, such as government and private sector pension and retirement funds. *Id.* ¶ 33. According to Plaintiffs, Cerberus, among its many investments, is a shareholder of Albertsons and, on that

basis, receives its proportional share of any Albertsons dividend.  *Id.* ¶¶ 34, 38.   Plaintiffs also allege that Cerberus is part of a "consortium of private equity entities, which collectively own 75% of Albertsons stock" that "effectively controls" Albertsons.  *See id.* ¶ 81.

Plaintiffs allege that Cerberus entered into a "combination and conspiracy" with "the consortium of major stockholders of Albertsons and Kroger to shut down Albertsons."  *Id.* ¶¶ 1, 85.  Kroger and Albertsons are alleged "co-conspirators."  *Id.* ¶¶ 32, 36.  The alleged conspiracy aims to "financially cripple Albertsons and to weaken its competitive position relative to Kroger" by issuing an approximately $4 billion special dividend that would drain Albertsons' "cash-on-hand" and increase its debt.  *Id.* ¶¶ 4, 88.  Plaintiffs also allege that the conspiracy aims to "hamper, cripple, and shut-down Albertsons . . . in order to fraudulently claim that Albertsons is a failing company" and "enrich the majority shareholders of Albertsons."  *Id.* ¶¶ 84, 86.

The Complaint alleges the existence of a conspiracy in entirely conclusory terms and labels Kroger and Albertsons as "co-conspirators."  Cerberus is not a party to any agreement relating to the payment of a dividend to all Albertsons' shareholders and the Complaint includes no facts about Cerberus reaching an agreement with any other entity, whether relating to the special dividend or otherwise.  Plaintiffs allege only that that the special dividend was issued "as part of the acquisition transaction," *id.* ¶ 83, but Cerberus is not a party to the merger agreement between Albertsons and Kroger.  The only allegation related to Cerberus' conduct in the Complaint is that Cerberus stood to be the "primary beneficiary" of the special dividend by being entitled to "nearly one-third" of the proceeds.  *See id.* ¶¶ 38, 86.

## II.      PLAINTIFFS' SPECULATIVE CLAIM FOR RELIEF AGAINST CERBERUS

Plaintiffs allege that they personally stand to be harmed by the alleged "dividend agreement" conspiracy, *id.* ¶ 85, in two remote and speculative ways.  First, they allege that

issuance of the special dividend will "leave Albertsons undercapitalized," which will "harm Albertsons' credit rating, making borrowing more expensive," leave Albertsons "strapped for cash," and somehow eventually "leav[e] shoppers to face higher prices, worse services, less innovation, and even closure of Albertsons supermarkets" as well as render Albertsons "less able to offer promotions on groceries, less able to offer quality services, and less able to maintain staffing and competitive wages and benefits for workers." *Id.* ¶ 39. Plaintiffs also assert that they might someday pay higher prices. *Id.*, ¶ 66.

Second, Plaintiffs assert that the special dividend might lead to Kroger or Albertsons, through a hypothetical string of future events, to "fraudulently claim that Albertsons is a failing company - a defense in support of its planned acquisition that is not available to Kroger as a matter of law." *Id.* ¶ 84. As relief for these alleged harms, Plaintiffs seek disgorgement of the special dividend from "any of the $4 billion in payments made to the consortium of private equity entities." *Id.* at 30, Prayer C.

## III.    PRIOR LITIGATION OVER THE SPECIAL DIVIDEND

Plaintiffs' Complaint seeks to "prohibit[] and/or disgorg[e] the Special Dividend payment," *id.* ¶ 15, only from Cerberus, one of countless Albertsons' shareholders who received it. But Plaintiffs omit that, before the dividend was paid, two high-profile lawsuits sought and failed to enjoin the special dividend, raising substantially similar allegations to those here. In one case, the Attorneys General of California, Illinois, and Washington, D.C. sought to enjoin payment of the special dividend in federal district court in Washington, D.C. At a hearing on a motion for a temporary restraining order, the district court found a lack of any "evidence of an agreement between Albertsons and Kroger to pay the [special dividend]" and that the dividend was consistent with "an independent decision by Albertsons to return value to its shareholders."

ECF 42-10 at 66-74 (Tr. of Nov. 8 Prelim. Inj. (TRO) Hearing, *D.C. v. Kroger Co.*, No. 1:22-3357 (D.D.C. Nov. 8, 2022), filed by Albertsons in Support of Motion to Dismiss); *see also id.* at 23, 71-72 (Albertsons and Krogers had no incentive to weaken Albertsons' economic position).

Likewise, when denying a subsequent motion for a preliminary injunction, the district court rejected the contention that the special dividend was the product of an unlawful agreement rather than independent conduct and likewise rejected the notion that the special dividend left Albertsons financially illiquid. *District of Columbia v. Kroger Co.*, No. 1:22-CV-3357, 2022 WL 18911128, at *1–2 (D.D.C. Dec. 13, 2022). Kroger and Albertsons had specifically informed the district court that they would not assert a "failing firm" defense in support of the proposed merger. *See* ECF 42-10 at 35 (Tr. of Nov. 8 Prelim. Inj. Hearing, *D.C. v. Kroger Co.*, No. 1:22-3357 (D.D.C. Nov. 8, 2022)); ECF 42 at 15, 18 (Memorandum of Defendant Albertsons Cos. In Support of Motion to Dismiss). The United States Court of Appeals for the District of Columbia ultimately vacated the appeal as moot after the special dividend issued in January 2023. *See District of Columbia v. Kroger Co.*, No. 22-7168, 2023 WL 2356015, at *1 (D.C. Cir. Feb. 23, 2023).

In the other case, the Washington State Attorney General sought to enjoin the special dividend in Washington state court. Ultimately, the superior court denied preliminary injunctive relief, finding that Kroger and Albertsons "did not agree that Albertsons would issue that special dividend nor did Kroger require Albertsons to do so." ECF 42-12 at 4 (*Washington v. Albertsons Cos.*, Case No. 22-2-18046-3, 2022 WL 18587146, at ¶ 10 (Wash. Super. Ct. Dec. 9, 2022), filed by Albertsons in Support of Motion to Dismiss). The superior court likewise rejected the contention that the special dividend would cripple Albertsons. *Id.* at ¶ 14. The Washington Supreme Court later denied review of the superior court's decision. ECF 42-14 at 1 (Ex. K

attaching Was. Sup. Ct. Order, *Washington* v. *Albertsons Cos.*, Case No. 22-2-18046-3, at 13

(Wash. Sup. Ct. Jan. 17, 2023) filed by Albertsons in Support of Motion to Dismiss).

## ARGUMENT

I. **PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY SHOWING THAT CERBERUS ENTERED INTO AN ANTICOMPETITIVE AGREEMENT**

Section 1 of the Sherman Act prohibits "contract[s], combination[s] . . . or conspirac[ies],

in restraint of trade." 15 U.S.C. § 1. "Because § 1 of the Sherman Act 'does not prohibit all

unreasonable restrains of trade … but only restraints effected by a contract, combination, or

conspiracy' . . . 'the crucial question' is whether the challenged anticompetitive conduct 'stems

from independent decision or from an agreement, tacit or express.'" *Bell Atlantic Corp v.

Twombly*, 550 U.S. 544, 553 (2007) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467

U.S. 752, 775 (1984)). To survive a motion to dismiss, a plaintiff must plausibly allege the

existence of an anticompetitive agreement. Importantly, "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[T]he tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009). Nor must the Court accept

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp., PLC*, 733 F.3d 1251, 1254

(9th Cir. 2013) (internal quotations and citations omitted). Here, Plaintiffs do not come close to

stating a Section 1 claim.

*First,* Plaintiffs plead no facts to plausibly establish that Cerberus agreed to anything with

anyone. The allegations against Cerberus are entirely conclusory. Plaintiffs plead no facts to

show an agreement between Cerberus and any other alleged co-conspirator. Cerberus is not a

party to the merger agreement or alleged to be a party to any other agreement relating to the

payment of a dividend to all Albertsons' shareholders.  Indeed, there are no factual allegations that Cerberus agreed with Kroger or Albertsons to do anything.

Separately, Plaintiffs must also "allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (citation omitted).  Plaintiffs do not come close to doing so.  While Plaintiffs vaguely gesture to an agreement between Cerberus and "[v]arious persons, partnerships, firms, and corporations who are members of the consortium of private equity entities that own shares of Cerberus stock," Compl. ¶ 36, that suggestion lacks any actual facts.[2]  Plaintiffs' failure to plead facts to establish Cerberus' involvement in the alleged conspiracy is fatal to their claim against it.

In the absence of evidence of an express agreement (there is none), Plaintiffs would need to present allegations supporting a plausible inference that Cerberus' conduct was undertaken as part of an unlawful agreement rather than independent business conduct.  They have not done that and cannot do that either.  Courts "cannot . . . infer an anticompetitive agreement when factual allegations 'just as easily suggest rational, legal business behavior.'"  *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015) (quoting *Kendall*, 518 F.3d at 1047); *PNY Techs., Inc. v. SanDisk Corp.*, No. 11-4689, 2012 WL

---

[2] Even if Plaintiffs had offered factual allegations about the conduct of these unnamed co-conspirators—which they have not—that would not be enough to state a claim against Cerberus. *See In re iPhone Application Litig.*, No. 11-2250, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) (explaining that "plaintiffs' failure to allege what role each defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations"); *Salazar v. Cnty. of Orange*, No. 11-1125, 2012 WL 12896364, at *2 (C.D. Cal. July 10, 2012) (dismissing complaint that "fatally . . . use[d] a shotgun pleading style, which impermissibly lump[ed] together claims and defendants"), *aff'd*, 564 F. App'x 322 (9th Cir. 2014); *Rysewyk v. Sears Holdings Corp.*, No. 15-4519, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015) (dismissing claims and explaining that "group pleading cannot save a complaint when more specific allegations do" not "shed light on the roles of the different entities").

1380271, at *14 (N.D. Cal. Apr. 20, 2012) (dismissing Section 1 claim and explaining that "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality' for purposes of Section 1"). Instead, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (citing *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).

The sole factual allegation about Cerberus' conduct in the Complaint—that it received a portion of the special dividend—is, on its face, more consistent with lawful, independent conduct than with conspiracy.  Receiving a dividend is ordinary course conduct for a shareholder, and nothing in the Complaint plausibly suggests otherwise.  As discussed above, four courts have rejected arguments that the special dividend was a product of any anticompetitive agreement.[3] But regardless, bare allegations with such obvious alternative explanations rooted in independent conduct do not state a Section 1 claim.  *See In re Dynamic Random Access Memory Indirect Purchaser Litig.*, No. 4:18-2518, 2020 WL 8459279, at *7 (N.D. Cal. Nov. 24, 2020) (rejecting Plaintiffs' allegation that alleged conduct supported inference of conspiracy because there was an "obvious alternative explanation"), *aff'd*, 28 F.4th 42 (9th Cir. 2022).

Faced with a single factual allegation that a shareholder of a company received a dividend, the Court can and should rely on "its judicial experience and common sense" and

---

[3] *See* Factual Background, *supra*, at III.

decline to draw the unreasonable inference that Cerberus' conduct flowed from an unlawful conspiracy. *See Ashcroft*, 556 U.S. at 679. Because Plaintiffs have failed to allege facts plausibly showing that Cerberus entered into any agreement, their Section 1 claim against Cerberus must be dismissed. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1198 (9th Cir. 2015) ("Plaintiffs have failed to allege enough nonconclusory facts to support the plausible inference that any agreement among the manufacturers was made. For that reason, their § 1 claim must be dismissed.").

*Second,* the Complaint is implausible and should also be dismissed on that basis. As summarized above, the Complaint vaguely asserts the existence of a conspiracy between Cerberus, Kroger, Albertsons, and other unnamed Albertsons shareholders. *See* Factual Background, *supra*. While such allegations lack facts, they are also entirely implausible. The essence of the alleged conspiracy is that Cerberus agreed with other unnamed shareholders of Albertsons and the merging parties to injure its own multi-billion-dollar investment in Albertsons by having Albertsons issue a dividend that Plaintiffs assert Albertsons could not afford. Nothing in the Complaint suggests why Cerberus as a shareholder would seek such a result that runs entirely against its own interests, and there is no plausible explanation for it. Accordingly, the Court should dismiss Plaintiffs' sole claim against Cerberus (Count Two) as implausible. *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (dismissal proper when allegations fail to "nudge [plaintiffs'] claims across the line from conceivable to plausible.").

## II.      PLAINTIFFS ARE NOT ENTITLED TO DISGORGEMENT

Plaintiffs do not seek damages against Cerberus, only injunctive relief to "prohibit[] and/or disgorg[e] the Special Dividend payment." Compl. ¶ 15. But at this point, because the

special dividend has already been paid,[4] Plaintiffs can seek only "disgorgement."  Plaintiffs,

however, are not entitled to recover anything from a shareholder such as Cerberus, and

disgorgement is a prohibited remedy under Section 16 of the Clayton Act.  Plaintiffs' sole claim

against Cerberus (Count Two) therefore fails for the following reasons.

*First*, retrospective equitable relief, including disgorgement, is not available as a remedy

under Section 16 of the Clayton Act.  While Section 4 of the Clayton Act provides for private

damages actions where a plaintiff is "injured in his business or property by reason of anything

forbidden in the antitrust laws," *see* 15 U.S.C. § 15, Section 16 does not permit recovery of

damages.  Section 16 only affords Plaintiffs the right to seek prospective injunctive relief against

either ongoing or future violations of the antitrust laws, not to seek damages or other retroactive

relief such as disgorgement based on past conduct.  *Coalition for ICANN Transparency Inc. v.

VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (citations omitted) ("Disgorgement

is a form of retrospective equitable relief. . . . Such relief is unavailable under Section 16."); *In re

Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2016 WL 3648478, at *13-14 (N.D. Cal.

July 7, 2016) (citation omitted) ("The Ninth Circuit disallows private use of Section 16 to pursue

disgorgement."  (citing *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir.

1976)); *see also In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp. 3d 672, 677 (E.D.

Pa. 2022) ("[T]he text of § 16 does not support the conclusion that disgorgement is an authorized

form of 'injunctive relief.'").  Because disgorgement is the only remedy Plaintiffs are seeking

against Cerberus, their claim against Cerberus is barred as a matter of law.

But even if Plaintiffs were entitled to a remedy under Section 16, Plaintiffs do not come

close to alleging facts entitling them to relief here.  To obtain injunctive relief under Section 16

---

[4] *See* Factual Background, *supra*, at III.

of the Clayton Act, a plaintiff must show more than speculative or merely potential harm.[5]  *See*

*In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-3131, 2021 WL 1176645, at *6

(N.D. Cal. Mar. 29, 2021) (to state a claim under Section 16, Plaintiffs must demonstrate "a

significant threat of injury from an impending violation . . . or from a contemporary violation

likely to continue or recur") (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,

522 F.3d 6, 12–13 (1st Cir. 2008)) (ellipsis in original); *cf. Simmons v. Unocal Corp.*, 187 F.3d

648, at *2 (9th Cir. 1999) (ruling against antitrust claims after concluding that "the assertion that

[plaintiffs] may be harmed [was] rank speculation which [did] not disclose a significant threat.").

Plaintiffs' theories of how Cerberus' conduct could harm them is beyond speculative.

The baseless assertion that Plaintiffs—individual grocery store shoppers scattered around the

country—will soon face higher prices or fewer promotions at their local grocery store because

Albertsons is undercapitalized after issuing a dividend, requires layers of assumptions and

speculation that cannot support an antitrust claim.  *See Taleff*, 554 F. App'x at 598 (affirming

dismissal of plaintiffs' claim for injunctive relief under Section 16 because plaintiffs "offer[ed]

no evidence of threatened or actual specific injuries to themselves, and proffer[ed] no support for

their generalized claims of injury to consumers and competition."); *Feitelson v. Google Inc.*, 80

F. Supp. 3d 1019, 1028-29 (N.D. Cal. 2015) (dismissing plaintiffs' claim for injunctive relief

after finding that plaintiffs' "allegations of hypothetical loss of consumer choice and innovation

[we]re entirely too conclusory and speculative").  Plaintiffs' alternative theory that the dividend

will allow Kroger and Albertsons to "fraudulently claim that Albertsons is a failing company" in

---

[5] This is especially true where, as here, plaintiffs have sat on their hands for many months so that
they must ask the court to undo what has already been done "thereby significantly increasing the
disruption to [defendants'] operations and the hardship to [defendants'] stockholders . . . ."  *See
Taleff v. Sw. Airlines Co.*, 554 F. App'x 598, 599 (9th Cir. 2014) (dismissing case for post-
merger divestiture with prejudice, "given Appellants' delayed filing and the heightened
consequences that would result from divestiture").

hypothetical future merger litigation, Compl. ¶ 84, is even more untethered from reality—and from Cerberus.  That is especially true when Kroger and Albertsons have twice made clear in prior litigation that they will not rely on any such defense in defense of their proposed merger.[6]

Plaintiffs have pled no facts substantiating any link in their convoluted chains of assumptions about how they could be harmed by Cerberus' conduct, or by Albertsons' issuance of the special dividend more generally.  Without facts that show they are in "immediate" "danger of irreparable loss," 15 U.S.C. § 26, Plaintiffs' claim for injunctive relief must be dismissed.

**III.      PLAINTIFFS LACK ANTITRUST STANDING TO PURSUE THEIR SECTION 1 CLAIM AGAINST CERBERUS**

Plaintiffs also lack antitrust standing to pursue their Section 1 claim against Cerberus, providing another basis for dismissal.  Plaintiffs pursuing a claim under Section 1 for injunctive relief must establish that they have antitrust standing.  *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 902 (9th Cir. 2008). To determine whether these Plaintiffs have antitrust standing, the Court should consider: (1) the nature of the plaintiff's alleged injury; that is, whether it was the type of harm the antitrust laws were intended to forestall; (2) the directness of the injury; and (3) the speculative measure of the harm.  *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021),[7] *cert denied*, 143 S. Ct. 84 (2022). Here, Plaintiffs lack antitrust standing for at least two reasons:

*First,* Plaintiffs' alleged harm is indirect and speculative.  In evaluating antitrust standing, courts "look to whether [the plaintiff's alleged injury was the direct result of the defendant's] allegedly anticompetitive conduct."  *City of Oakland*, 20 F.4th 441 at 458 (quoting *American Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1058 (9th Cir. 1999)).  That inquiry

---

[6] *See* Factual Background, *supra*, at III.
[7] In cases brought under Clayton Act Section 4, courts additionally consider the risk of duplicative recovery and complexity in apportioning damages.  *City of Oakland,* 20 F.4th at 455.

focuses on the "chain of causation" between the alleged conduct and the alleged harm and whether the harm is "'derivative and indirect' or 'secondary, consequential, or remote.'" *Id.* (quoting *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th Cir. 2008)). Plaintiffs do not (and cannot) allege they were directly harmed by Albertsons' payment of the special dividend, but instead rely on an implausible, hypothetical chain of causation to craft a story about how they **could be harmed in the future**. Their primary theory is that an undercapitalized Albertsons might someday raise prices because, *e.g.*, Albertsons might find it "difficult . . . to obtain additional capital," and may have to increase prices as a "substitute for credit." *See* Factual Background, *supra*.[8] Or that the special dividend might permit the merging parties to invoke a difficult-to-prove, seldom-successful defense in hypothetical merger litigation, even though Kroger and Albertsons have already made it clear in previous litigation that they will not invoke any such defense. *See id.* These convoluted theories of harm are precisely the kind of "indirect" and "remote" harms that do not confer antitrust standing.[9]

**Second,** Plaintiffs' claimed injury is not "antitrust injury"—that is "threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (citation and quotation omitted). Cerberus is unaware of any antitrust case that supports

---

[8] But, as shown by Albertsons, Plaintiffs' allegation that Albertsons is undercapitalized is incorrect. ECF 42 at 8 (detailing that Albertsons has generated over $4 billion in Adjusted EBITDA in both fiscal years 2021 and 2022 and considered ways to return excess capital to its shareholders).

[9] *See McCarthy v. Intercontinental Exch., Inc.*, No. 20-cv-05832, 2022 WL 4227247, at *3–4 (N.D. Cal. Sept. 13, 2022) (dismissing complaint for lack of antitrust standing where "complaint says nothing about the specific intent of the alleged conspirators, and what the defendants may have gotten out of" the conspiracy (internal quotation marks and citations omitted)); *Feitelson*, 80 F. Supp. 3d at 1028–29 (dismissing for lack of antitrust injury, standing where plaintiffs alleged harm was "entirely too conclusory and speculative" and plaintiffs were "at least one step removed from the preclusive effect" of the challenged conduct).

Plaintiffs' "dividend undercapitalization" theory of harm—that is, a plaintiff contending it was harmed because a company chose to issue a dividend, which could possibly lead it to increase prices. The antitrust laws were not intended to allow consumers to enjoin a company's ordinary-course financial decisions—including, for example, a board's choice to issue a dividend and return value to the company's shareholders—on the theory that those decisions *might* erode the company's financial health and *might*, in turn, have some competitive impact in the marketplace. Unsurprisingly, as noted above, the four courts that already examined whether the special dividend should be paid rejected the idea that the special dividend constituted harm to competition.[10]

Moreover, there is a fundamental disconnect between Plaintiffs, who are grocery store customers, challenging Cerberus' receipt of a dividend in its capacity as an institutional investor in Albertsons, that is fatal to their claim. "[T]he Ninth Circuit has repeatedly stated that the requirement that a plaintiff's alleged injury be related to anticompetitive conduct requires, 'as a corollary, that the injured party be a participant in the *same* market as the alleged malefactors.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1137 (N.D. Cal. 2008) (quoting *American Ad Mgmt., Inc.*, 190 F.3d at 1057) (emphasis in original). Indeed, parties whose injuries, like Plaintiffs' purported injuries, "are experienced in another market do not suffer antitrust injury." *American Ad Mgmt.*, *Inc.*, 190 F.3d at 1057. Plaintiffs are not participants in the same market as Cerberus. Cerberus is an investor, *see* Compl. ¶ 33, not a grocer, and does not sell anything, directly or indirectly, to Plaintiffs. To the extent Plaintiff grocery store customers are asserting injury from conduct by Cerberus or other investors in Albertsons, their claim fails for lack of antitrust injury because the alleged injury is experienced

---

[10] *See* Factual Background, *supra*, at III.

in an entirely different market from the one in which Cerberus operates.  Plaintiffs' ill-conceived attempt to expand their claim beyond the merging parties to reach a shareholder of the merging parties ignores well-established antitrust standing requirements, and their claim against Cerberus should be dismissed on this basis as well.

## CONCLUSION

None of the Complaint's fatal flaws can be fixed by amendment.  The remedy and standing issues cannot be avoided by artful pleading, and Plaintiffs cannot under Rule 11 allege an agreement involving Cerberus because none exists.  For the above reasons, the Court should dismiss Count Two of the Complaint, Plaintiffs' Section 1 claim against Cerberus and do so with prejudice.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

Dated:  April 13, 2023

By: */s/ Russell P. Cohen*
Russell P. Cohen
Joseph D Trujillo
DECHERT LLP
One Bush Street, Ste. 1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

Andrew J. Levander (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

Thomas J. Miller (admitted *pro hac vice*)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222
*Attorneys for Cerberus Capital Management, L.P.*