DANIEL B. ASIMOW (SBN 165661)
Daniel.Asimow@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*admitted pro hac vice*)
MICHAEL BERNSTEIN (*admitted pro hac vice*)
KOLYA D. GLICK (*admitted pro hac vice*)
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone:    (202) 942-5000
Facsimile:    (202) 942-5999

*Attorneys for Defendant, THE KROGER CO.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Kroger Co., Albertsons Companies, Inc. and Cerberus Capital Management, L.P., <br><br> Defendants. | Case No. 3:23-cv-00459-vc <br><br> **DEFENDANT THE KROGER COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Date:       May 18, 2023 <br> Time:       10:00 a.m. <br> Judge:      Hon. Vince Chhabria <br> Courtroom: Courtroom 5 – 17th Floor |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ISSUES TO BE DECIDED ..................................................................................3

BACKGROUND ...................................................................................................3

I.     PROCEDURAL BACKGROUND..............................................................3

II.    FACTUAL BACKGROUND .....................................................................3

     A.    Kroger and Albertsons' Merger Agreement and Regulatory Review ....4

     B.    The Special Dividend and Prior Litigation .............................................5

     C.    Plaintiffs' Evidence in Support of Their Motion ....................................7

LEGAL STANDARD............................................................................................9

ARGUMENT ........................................................................................................9

I.     PLAINTIFFS' MOTION SHOULD BE SUMMARILY DENIED ..................9

II.    PLAINTIFFS WILL NOT SUCCEED ON THE MERITS............................10

     A.    Plaintiffs' Clayton Act Claim Is Likely to Fail (Count I)....................11

          1.    Plaintiffs fail to establish relevant geographic or product markets.....................................................................................11

          2.    Plaintiffs fail to establish actual or likely anticompetitive harm .......................................................................................15

     B.    Plaintiffs' Sherman Act Claim Is Likely to Fail (Count II) ................17

          1.    Plaintiffs' requested remedies are not legally authorized.........17

          2.    Plaintiffs have not established an unlawful agreement............18

III.   PLAINTIFFS HAVE NOT ESTABLISHED HARM, MUCH LESS IRREPARABLE HARM ........................................................................20

IV.    THE BALANCE OF EQUITIES TIPS IN DEFENDANTS' FAVOR, AND PRELIMINARY RELIEF IS NOT IN THE PUBLIC INTEREST.................23

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ................................................................20

*In re AMR Corp.*,
  No. 22-901, 2023 WL 2563897 (2d Cir. Mar. 20, 2023).......................16

*AT&T Mobility LLC v. Bernardi*,
  Nos. 11-cv-03992 CRB, 11-cv-04412, 2011 WL 5079549 (N.D. Cal. 2011)..................23, 24

*AWR v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .............................................................9, 11

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ...............................................................18

*Boardman v. Pacific Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) .............................................................21

*Bradt v. T-Mobile US, Inc.*,
  No. 19-cv-07752, 2020 WL 1233939 (N.D. Cal. Mar. 13, 2020) ....................16, 22

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962).............................................................................14

*California v. Am. Stores Co.*,
  492 U.S. 1301 (1989)......................................................................16, 22

*California v. Am. Stores Co.*,
  495 U.S. 271 (1990)...............................................................................9

*California v. Am. Stores Co.*,
  697 F. Supp. 1125 (C.D. Cal. 1988) ...................................................22

*California v. Sutter Health Sys.*,
  130 F. Supp. 2d 1109 (N.D. Cal. 2001) ..................................... 12-13, 13

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
  No. 07-cv-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ................18

*City of Oakland v. Raiders*,
  20 F.4th 441 (9th Cir. 2021) ................................................................19

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) ..........................................................................................................19

*DeHoog v. Anheuser-Busch InBev SA/NV*,
    899 F.3d 758 (9th Cir. 2018) ...................................................................................10, 15

*Delco LLC v. Giant of Md., LLC*,
    No. 07-cv-3522, 2007 WL 3307018 (D.N.J. Nov. 8, 2007) ...........................................14

*DeMartini v. Microsoft Corp.*,
    No. 3:22-cv-08991-JSC (N.D. Cal. Mar. 20, 2023)..........................1, 2, 10, 12, 15, 16

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) .........................................................................18

*In re First Databank Antitrust Litig.*,
    205 F.R.D. 408 (D.D.C. 2002)........................................................................................24

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*,
    356 F. Supp. 2d 1048 (N.D. Cal. 2005) .........................................................................22

*First Nat'l Bank v. Cities Serv. Co.*,
    391 U.S. 253 (1968).........................................................................................................19

*Friends of the Wild Swan v. Weber*,
    955 F. Supp. 2d 1191 (D. Mont. 2013).............................................................................9

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ..........................................................................................11

*FTC v. RAG-Stiftung*,
    436 F. Supp. 3d 278 (D.D.C. 2020) ..........................................................................12, 13

*FTC v. Whole Foods Mkt., Inc.*,
    502 F. Supp. 2d 1 (D.D.C. 2007) ...................................................................................14

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ..........................................................................................22

*GEC US 1 LLC v. Frontier Renewables, LLC*,
    No. 16-cv-1276, 2016 WL 3345456 (N.D. Cal. 2016)................................................20-21

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    No. C-09-3854, 2009 WL 3415680 (N.D. Cal. Oct. 22, 2009) ......................................22

*Hateley v. SEC*,
    8 F.3d 653 (9th Cir. 1993) ..............................................................................................18

Kroger's Opposition to Plaintiffs' Motion for a Preliminary Injunction
Case No. 3:23-cv-00459-vc

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ............................................................13

*Int'l Shoe Co. v. FTC*,
    280 U.S. 291 (1929)..........................................................................24

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*,
    887 F. Supp. 1320 (N.D. Cal. 1995) ...................................................21

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) .....................................................22, 23

*Lydo Enters., Inc. v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) ...........................................................22

*Malaney v. UAL Corp.*,
    434 F. App'x 620 (9th Cir. 2011) .......................................................12

*Malaney v. UAL Corp.*,
    No. 3:10-cv-02858, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010)...............16, 20

*Martinez v. City of Santa Rosa*,
    482 F. Supp. 3d 941 (N.D. Cal. 2020) ..................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..........................................................................19

*McKee & Co. v. First Nat'l Bank of San Diego*,
    397 F.2d 248 (9th Cir. 1968) .............................................................18

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)............................................................. 18-19, 19

*Norbert v. City & Cnty. of San Francisco*,
    10 F.4th 918 (9th Cir. 2021) .........................................................9, 21

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274 (2018)...........................................................11, 12, 19

*Olin Corp. v. FTC*,
    986 F.2d 1295 (9th Cir. 1993) ...........................................................17

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...............................................14

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
    778 F.3d 775 (9th Cir. 2015) ................................................ 1-2, 10, 15

*Sidibe v. Sutter Health*,
   No. 12-cv-04854, 2019 WL 2078788 (N.D. Cal. May 9, 2019)............................13

*Taleff v. Sw. Airlines Co.*,
   828 F. Supp. 2d 1118 (N.D. Cal. 2011) .................................................................9

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) .............................................................................13

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ...............................................................................19

*United States v. Aluminum Co. of Am.*,
   377 U.S. 271 (1964)..............................................................................................14

*United States v. Baker Hughes Inc.*,
   908 F.2d 981 (D.C. Cir. 1990) .............................................................................16

*United States v. Borden Co.*,
   347 U.S. 514 .........................................................................................................20

*United States v. E. I. Du Pont De Nemours & Co.*,
   353 U.S. 586 (1957)..............................................................................................11

*United States v. Marine Bancorp., Inc.*,
   418 U.S. 602 (1974)..............................................................................................11

*United States v. Pabst Brewing Co.*,
   384 U.S. 546 (1966)..............................................................................................14

*United States v. Von's Grocery Co.*,
   384 U.S. 270 (1966)..............................................................................................15

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021)............................................................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)...............................................................................................9, 23

**Statutes**

15 U.S.C. § 18.............................................................................................................11

15 U.S.C. § 18a(b)(2)..............................................................................................4-5

15 U.S.C. § 18a(e)(2)..............................................................................................4-5

Kroger's Opposition to Plaintiffs' Motion for a Preliminary Injunction
Case No. 3:23-cv-00459-vc

**Rules**

Fed. R. Civ. P. 65(c) ....................................................................................................24

**Other Authorities**

2 Phillip Areeda & Donald F. Turner, Antitrust Law § 328b (1978) ...................................... 16-17

Analysis of Agreement Containing Consent Order to Aid Public Comment, *In re Koninklijke Ahold N.V. and Delhaize Grp. NV/SA*, File No. 151-0175 (July 22, 2016), https://bit.ly/3MLhnUc ............................................................................................17

Analysis of Agreement Containing Consent Orders to Aid Public Comment, *In re Seven & i Holdings Co.*, File No. 201-0108 (June 15, 2021), https://bit.ly/41sPHYq............................17

FTC, *Premerger Notification and the Merger Review Process*, https://bit.ly/3GR5UPf ...............4

Statement of Chair Lina M. Khan, *In re JAB Consumer Fund/SAGE Veterinary Partners*, File No. 2110140 (June 13, 2022), https://bit.ly/3UFVOX1 ..........................................................17

Kroger's Opposition to Plaintiffs' Motion for a Preliminary Injunction
Case No. 3:23-cv-00459-vc

## INTRODUCTION

Plaintiffs' Motion for a Preliminary Injunction (ECF No. 28) ("Motion" or "Mot.") asks this Court to enjoin preliminarily (1) a merger that will not close for many months because it is undergoing regulatory review (and thus its final form remains uncertain), and (2) a Dividend that was declared in October 2022 and paid in January 2023. Neither of these requests has merit.

Plaintiffs' request for a preliminary injunction blocking the merger fails on the facts and the law.  As to the facts, Plaintiffs' evidence consists of seven "charts" drawn from the internet or of unknown provenance. Relying on those "charts," Plaintiffs assert a *per se* theory of anticompetitive harm that would require courts to enjoin any merger wherein a non-trivial horizontal competitor is acquired because such mergers "result in the elimination of consumer choices." Mot. at 11. Plaintiffs provide no economic analysis, no expert declarations, and no pricing data to support their claim. Plaintiffs thus ask this Court to ignore the merger review process and define a new class of *per se* unlawful conduct, and to do so on the flimsiest of evidence.

As to the law, binding precedent forecloses *per se* treatment of mergers. Just last month, another Judge of this Court correctly rejected a similar theory brought by the same Plaintiffs' counsel, who "urged the Court not to follow Ninth Circuit precedent regarding what is required to plead a prima facie Section 7 claim" under the Clayton Act. Order Granting Mot. to Dismiss at 10, *DeMartini v. Microsoft Corp.*, No. 3:22-cv-08991-JSC (N.D. Cal. Mar. 20, 2023), ECF No. 74 ("*Microsoft* Order"). As Kroger explained in its Motion to Dismiss (ECF No. 40), Plaintiffs here have provided no basis to depart from the sound reasoning of the *Microsoft* Order, which dismissed plaintiffs' complaint for failure to allege a prima facie Section 7 claim. Indeed, if this Court grants Kroger's Motion to Dismiss, it need not address Plaintiffs' Motion at all.

Plaintiffs fail to offer evidence sufficient to meet any prong of the preliminary injunction test.  First, they fail to establish the key elements of a prima facie Section 7 claim—a well-defined antitrust market and likely anticompetitive effects in that market—much less show that their claim will likely win on the merits. "Determination of the relevant product and geographic markets is a necessary predicate to deciding whether a merger contravenes the Clayton Act." *Saint Alphonsus*

*Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015) (citation omitted). Yet here, Plaintiffs cite just two complaint paragraphs and no caselaw in support of their purported product market, which is unreasonably narrow and fails to account for the modern realities of the grocery industry. *See* Mot. at 19. Indeed, the impossibility of Plaintiffs' proposed "nationwide" geographic market is illustrated by their own recognition of (unspecified) "local" markets, *see* Mot. at 18, as well as their failure to supply any real-world evidence to support the implausible suggestion that supermarkets in San Jose and Atlanta are somehow competing for the same customers in Denver. And even if Plaintiffs had established relevant product and geographic markets, there is no record evidence that any customer—much less *these* Plaintiffs—are likely to suffer conceivable harm. Nor do Plaintiffs attempt to demonstrate how their alleged competitive harm would come about, or why government review of the merger will not eliminate it.

The Federal Trade Commission's ("FTC") and state attorneys general's ongoing regulatory review of the merger further undermines Plaintiffs' vague efforts to define an antitrust market or show anticompetitive effects in any such market. Because the Merger Agreement contemplates divestiture of "as many as 650" stores prior to closing, Compl. ¶ 20, Plaintiffs' speculation about market-share statistics and monopoly power is untethered to real-world facts. Accordingly, Plaintiffs' claims are even weaker than the claims in *Microsoft*, where the FTC had both completed its review of the defendants' proposed merger and initiated administrative proceedings before the court dismissed the plaintiffs' complaint. *Microsoft* Order at 2. Here, regulatory review of the merger is not complete, and any analysis of competitive harm in relevant geographic markets cannot even *begin* until the parties' divestitures are finalized. Even if the law permitted Plaintiffs to demonstrate likely anticompetitive harm through market share statistics alone (it does not), Plaintiffs cannot establish even that much, particularly when their evidence consists exclusively of colorful charts derived from sources like "supermarketnews.com."

Moving to the equities, Plaintiffs cannot establish the requisite irreparable harm, that a balance of hardships weighs in their favor, or that an injunction is in the public interest. Indeed, Plaintiffs' timing in filing this Motion alone defeats the "extraordinary relief" they request.

Plaintiffs filed this Motion (1) more than five months after Kroger and Albertsons announced the merger; (2) more than four months after four state attorneys general began their unsuccessful efforts to enjoin the Dividend; (3) approximately two months after Albertsons *paid* the Dividend (rendering their Sherman Act claim moot); and (4) more than a month after Plaintiffs filed their Complaint. While regulatory review is ongoing, moreover, an injunction would serve no legitimate purpose; yet it would harm Kroger by injecting uncertainty and complication into an already complex regulatory review process. This Court should deny the Motion.

## ISSUES TO BE DECIDED

Whether this Court should grant a preliminary injunction to (1) enjoin a merger that is not anticipated to close until 2024, following regulatory review; (2) enjoin the payment of a Dividend that has already been paid, or order disgorgement of the same Dividend.

## BACKGROUND

### I. Procedural Background

Plaintiffs filed their two-count complaint on February 2, 2023 (ECF No. 1). They filed this Motion seven weeks later, on March 23, 2023 (ECF No. 28).

On April 13, 2023, Defendant The Kroger Co. ("Kroger") filed a motion to dismiss (ECF No. 40). The same day, Albertsons Companies, Inc. ("Albertsons") filed a joinder to that motion with respect to Count I (ECF No. 41) and a separate motion to dismiss with respect to Count II (ECF No. 42). A third defendant, Cerberus Capital Management L.P. ("Cerberus"), filed its motion to dismiss on April 14, 2023 (ECF No. 48). Those motions are pending and overlap with the issues presented by Plaintiffs' Motion. Indeed, if the Court grants Kroger's Motion to Dismiss (ECF No. 40), it need not consider Plaintiffs' Motion at all.

### II. Factual Background

Kroger is a publicly owned Ohio Corporation, founded in 1883 and incorporated in 1902. Decl. of Kroger Senior Vice President and CFO Gary Millerchip ¶ 3 ("Millerchip Decl."). Kroger is a leading food retailer, but its business also includes retail pharmacies and fuel centers. *Id.* Kroger operates in a fiercely competitive environment under a variety of banner names and formats

including supermarkets, seamless digital shopping options, price-impact warehouse stores, and multi-department stores, which are similar to supercenters and offer an expanded variety of national brand apparel and general merchandise. *Id.* ¶ 4. Kroger also operates various manufacturing facilities that produce high-quality private-label products that provide extraordinary value for its customers. *Id.*

### A.     Kroger and Albertsons' Merger Agreement and Regulatory Review

On October 13, 2022, Kroger signed a contract to purchase Albertsons ("Merger Agreement"). Millerchip Decl., Ex. 1 (Merger Agreement); *see* Compl. ¶ 82. Kroger strongly believes that the proposed merger would combine two complementary organizations, bringing benefits to consumers, associates, and communities alike. Millerchip Decl. ¶ 7.

Kroger knew that the transaction would be subject to an extensive regulatory clearance process, and it expects to make divestitures as part of that process. *Id.* ¶ 8. To that end, the Merger Agreement recognizes that there will be a detailed regulatory review of the deal prior to closing, *see* Merger Agreement at 82, 84 (§§ 7.1(b)-(c), 8.1(e)), and it contemplates that Kroger may divest "as many as 650" stores to obtain the necessary approvals for the deal, Compl. ¶ 20; *see also* Merger Agreement at 13, 65 (definition of "Material Divestment Event" and § 6.3(d)). Kroger is confident that the FTC and state attorneys general, including the California Attorney General, will engage in a robust review of the proposed transaction, and it is committed to working cooperatively in that process to secure the necessary approvals for the transaction. Millerchip Decl. ¶ 8.

That regulatory review is already underway. In December 2022, the FTC issued Kroger a Request for Additional Information ("Second Request"), *id.* ¶ 9, which asks Kroger for "more information to assess the proposed deal," FTC, *Premerger Notification and the Merger Review Process*, https://bit.ly/3GR5UPf. The Second Request extends the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, during which time Kroger and Albertsons cannot consummate their merger until the earlier of (1) 30 days after Kroger substantially complies with the Second Request or (2) the waiting period being terminated by the FTC. *See* 15 U.S.C.

§§ 18a(b)(2), 18a(e)(2). Kroger is currently working to substantially comply with the Second Request, but it has not yet done so. Millerchip Decl. ¶ 9.

The FTC and state regulator merger review process is at a relatively early stage.  Because the review process will inform which stores Kroger will divest, the precise scope of the deal (*i.e.*, the stores and other assets that Kroger will ultimately acquire from Albertsons and the stores and assets that Kroger will be required to divest) is not yet known. *Id.* ¶ 10. While the regulatory review process is ongoing, that scope is uncertain. *See id.* A private injunction in this case would inject further uncertainty into that already complex regulatory clearance process. *Id.*

### B.     The Special Dividend and Prior Litigation

The Merger Agreement contains a provision that adjusts the per-share price that Kroger will pay to acquire Albertsons in the event that Albertsons unilaterally decides to issue a "Special Dividend" ("Dividend") of up to $4 billion. *See* Compl. ¶ 4; Merger Agreement at 3 (definition of "Common Merger Consideration"). The authority to declare and pay the Pre-Closing Dividend rests solely with Albertsons. Millerchip Decl. ¶ 14. The Merger Agreement neither requires nor authorizes Albertsons to pay the Pre-Closing Dividend, and, notably, Kroger has no right under the Merger Agreement to force or require Albertsons to pay the Pre-Closing Dividend. *Id.* Rather, the Merger Agreement contemplates the fact that Albertsons could unilaterally and independently declare a Pre-Closing Dividend and addresses the impact of such a dividend by providing for a dollar-for-dollar reduction in the price paid to Albertsons' shareholders by Kroger if Albertsons paid the dividend. *Id.*; *see also* Merger Agreement at 3, 13, 24-25.

On November 1 and 2, 2022, the Attorneys General for California, Illinois, and the District of Columbia (collectively, the "D.C. Plaintiffs") and for Washington (with the D.C. Plaintiffs, the "State AGs") sued Albertsons and Kroger under federal and state antitrust laws seeking to enjoin payment of the Dividend. Every court to consider that request for injunctive relief rejected it.

***First***, the U.S. District Court for the District of Columbia denied the D.C. Plaintiffs' request for injunctive relief three separate times: it rejected the motion for a temporary restraining order ("TRO"), *see* Order Denying Motion for Temporary Restraining Order, *District of Columbia v.*

*Kroger Co.*, No. 1:22-cv-03357-CJN (D.D.C. Nov. 8, 2022), ECF. No. 50, concluding, *inter alia*, that there was "no evidence of an agreement between Albertsons and Kroger to pay the [Dividend]," and that, instead, the evidence "point[ed] to an independent decision by Albertsons to return value to its shareholders," Hr'g Tr. at 66:21-22, *District of Columbia v. Kroger Co.*, No. 1:22-cv-03357-CJN (D.D.C. Nov. 8, 2022), ECF. No. 60-5; *see also id.* at 65:6-74:2. The same court then denied a preliminary injunction and denied a request for an injunction pending appeal on substantially the same basis. *See* Order Denying Preliminary Injunction, *District of Columbia v. Kroger Co.*, No. 1:22-cv-03357-CJN (D.D.C. Dec. 12, 2022), ECF No. 69; Order Denying Motion for Temporary Injunction Pending Appeal, *District of Columbia v. Kroger Co.*, No. 1:22-cv-03357-CJN (D.D.C. Dec. 14, 2022), ECF No. 72.

**Second**, on December 20, 2022, the U.S. Court of Appeals for the District of Columbia denied the D.C. Plaintiffs' motion for an injunction pending appeal and an administrative stay because the D.C. Plaintiffs had "not satisfied the requirements for an injunction pending appeal." Order, *District of Columbia v. Kroger Co.*, No. 22-7168 (D.C. Cir. Dec. 20, 2022), Doc. No. 1978445. The court later dismissed the appeal as moot after Albertsons paid the Dividend. Order, *District of Columbia v. Kroger* Co., No. 22-7168 (D.C. Cir. Feb. 23, 2023), Doc. No. 1987160.

**Third**, the State of Washington initially obtained an administrative order temporarily enjoining payment of the Dividend. On December 9, 2022, however, the Washington Superior Court denied Washington's motion for a preliminary injunction after a full-day evidentiary hearing that included more than five hours of testimony from three witnesses: Gary Millerchip, Kroger's Senior Vice President and CFO; Sharon McCollam, Albertsons' President and CFO; and Professor David Smith, a corporate finance expert. The court concluded that the State of Washington failed to show that there was an agreement between Kroger and Albertsons to issue the Special Dividend or that payment of the Special Dividend would harm Albertsons' ability to compete. Order Denying State of Washington's Motion for Preliminary Injunction at 4-6, *Washington v. Albertsons Cos., Inc.*, No. 22-2-18046-3 SEA (Wash. Super. Ct. Dec. 9, 2022).

**Fourth**, on December 16, 2022, a Washington Supreme Court Commissioner granted an administrative stay of the Dividend until further order of the court to allow the Court to consider Washington's appeal, but it noted that Washington did "not make a compelling case" that it would prevail on its claims. Ruling at 3, *Washington v. Albertsons Cos., Inc.*, No. 101530-5 (Wash. Dec. 16, 2022). On January 17, 2023, the Washington Supreme Court denied review of the trial court's decision and terminated the TRO. Order, *Washington v. Albertsons Cos., Inc.*, No. 101530-5 (Wash. Jan. 17, 2023).

With the Washington TRO lifted, on January 20, 2023, Albertsons paid the Dividend to its shareholders of record as of the close of business on October 24, 2022. *See* Albertsons' Schedule 14C Information Statement at 3 (ECF No. 42-5). The court granted Washington's request to voluntarily dismiss its claims on February 1, 2023. *See* Order Granting Plaintiff State of Washington's Mot. for Voluntarily Dismissal, *Washington v. Albertsons Cos., Inc.*, No. 22-2-18046-3 SEA (Wash. Super. Ct. Feb. 1, 2023). And, after the U.S. Court of Appeals for the D.C. Circuit dismissed the D.C. Plaintiffs' appeal of the denial of their motion for preliminary injunction as moot, Order, *District of Columbia v. Kroger Co.*, No. 22-7168 (D.C. Cir. Feb. 23, 2023), Doc. No. 1987160, the D.C. Plaintiffs voluntarily dismissed their complaint as well, Plaintiffs' Notice of Voluntary Dismissal of Complaint, *District of Columbia v. Kroger* Co., No. 1:22-cv-03357-CJN (D.D.C. Feb. 24, 2023), ECF No. 77.

### C.   Plaintiffs' Evidence in Support of Their Motion

The named plaintiffs in this case are 25 individuals in 11 states whose participation in this lawsuit depends on a single alleged personal fact: that they shopped at an unidentified Kroger or Albertsons store at some point in the past four years. Compl. ¶ 29. Plaintiffs do not attempt to establish how the merger would affect any Plaintiff. They do not state whether any Plaintiff shops in a store that competes with the other party, or whether there are only a few (or many) other competitors in each Plaintiff's local area. Instead, Plaintiffs' evidence consists of colorful charts that they either pulled from the internet or do not attribute to any source. *See* Decl. of Joseph M. Alioto in Supp. Mot. for Prelim. Inj. at 2 (ECF No. 28-1) (listing exhibits). Specifically:

**Exhibit A** (ECF No. 28-2) is a chart of five purportedly "key" cases (all from the 1960s) that claims to show the pre- and post-merger market shares and rankings of the companies in five proposed transactions that were enjoined from merging under Section 7. The chart does not indicate the geographic or product markets in which it purports to measure market share. Nor do Plaintiffs specify any source for the chart.

**Exhibit B** (ECF No. 28-3) is a diagram that lists pre- and post-merger market shares of two supermarkets that were previously enjoined from merging—Shopping Bag and Vons—in the Los Angeles area in 1966. It compares those market shares to the pre- and post-merger market shares of Kroger and Albertsons on a *nationwide* level. Although the source of the chart is indicated to be cnbc.com, the chart does not appear at the link provided.

**Exhibit C** (ECF No. 28-4) is a pie chart showing the nationwide market share of "U.S. Grocery Supermarket Operators" in 2020. The source of the chart is indicated as supermarketnews.com.

**Exhibit D** (ECF No. 28-5) is a bar graph showing the pre-acquisition rankings of "Top U.S. Grocery Supermarket Operators" by annual sales in 2021. The source of the chart is indicated as foodindustry.com.

**Exhibit E** (ECF No. 28-6) is a nationwide map of the locations of Kroger and Albertsons stores nationwide. The source of this map is listed as "Kroger Investor Relations."

**Exhibit F** (ECF No. 28-7) is a diagram showing Kroger acquisitions between 1983 and 2014. The precise source of the diagram is not clear, but Plaintiffs cite Foodandwaterwatch.org, a non-profit group that defines itself as designed to "protect people from the corporations and other destructive economic interests that put profit ahead of everything else," as its support.

**Exhibit G** (ECF No. 28-8) is a bar graph showing the post-acquisition rankings of "Top U.S. Grocery Supermarket Operators" by annual sales during an unidentified time period. The source of the chart is indicated as foodindustry.com.

That is the only evidence Plaintiffs submit in support of their Motion.

## LEGAL STANDARD

"[T]he statutory language [of Section 16] indicates Congress' intention that traditional principles of equity govern the grant of injunctive relief." *California v. Am. Stores Co.*, 495 U.S. 271, 281 (1990) (citation omitted); *see Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1122 (N.D. Cal. 2011) (noting plaintiffs must demonstrate entitlement to injunctive relief to state a claim under the Clayton Act), *aff'd*, 554 F. App'x 598 (9th Cir. 2014). Under those principles, an injunction is "an extraordinary remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (citation omitted). To obtain a preliminary injunction, Plaintiffs must show that (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm absent a preliminary injunction; (3) the hardship they would suffer absent an injunction outweighs the hardship Defendants would suffer from entry of an injunction; and (4) an injunction would be in the public interest. *Martinez v. City of Santa Rosa*, 482 F. Supp. 3d 941, 942 (N.D. Cal. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

## ARGUMENT

### I.      Plaintiffs' Motion Should Be Summarily Denied

Plaintiffs assert two Counts, asking this Court to (1) enjoin the Companies' merger; and (2) enjoin ("and/or disgorg[e]") the Dividend, Mot. at 1, that Albertsons has already issued. Neither claim has merit, and, on this record, both tread dangerously close to frivolity. Plaintiffs have the burden of demonstrating entitlement to the "extraordinary remedy" of a preliminary injunction. *Norbert*, 10 F.4th at 927. As a factual and a legal matter, they have not come close to meeting that burden. Their Motion should be summarily denied for two reasons.

*First*, as an evidentiary matter, Plaintiffs' seven exhibits—which were either drawn from internet sources or appear to be created by counsel—are facially insufficient to satisfy their burden. To obtain a preliminary injunction, "Plaintiffs must prove that irreparable harm is likely, not only possible, in the absence of their requested relief." *Friends of the Wild Swan v. Weber*, 955 F. Supp. 2d 1191, 1194 (D. Mont. 2013) (citing *AWR v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011),

*aff'd*, 767 F.3d 936 (9th Cir. 2014). The Motion does not mention the individual Plaintiffs by name, explain where they do their grocery shopping, state whether Albertsons and Kroger compete in their neighborhood, or describe Plaintiffs' other competitive options. On the face of their Motion and exhibits, Plaintiffs have not even attempted to support the purported irreparable harm with *evidence*.

**Second**, as explained in Kroger's Motion to Dismiss (ECF No. 40), and as elaborated here, Plaintiffs do not attempt to apply the Ninth Circuit's binding legal standard for evaluating pre-closing mergers. Plaintiffs argue that the merger is *per se* unlawful because Albertsons and Kroger are horizontal rivals and because the merger is a "non-trivial" transaction. Mot. at 7-9, 17. As another Judge of this Court recently held in response to a materially similar theory from the same Plaintiffs' counsel, "this argument ignores binding Ninth Circuit precedent." *Microsoft* Order at 10. Rather, to meet their prima facie burden under the Clayton Act, Plaintiffs must demonstrate "'an appreciable danger' or 'a reasonable probability' of anticompetitive effects in the relevant market." *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (quoting *Saint Alphonsus*, 778 F.3d at 788).

Plaintiffs do not cite *DeHoog* or attempt to meet the Ninth Circuit's standard. Instead, they urge this Court to enjoin a $25 billion merger without even mentioning their burden of showing an "appreciable danger" of harm to Plaintiffs (or any consumer) in the local markets where they live and work. *See id.* As in *Microsoft*, Plaintiffs thus "ignore[] binding Ninth Circuit precedent," *Microsoft* Order at 10, and they make no showing that an injunction is warranted under the correct standard. Their arguments are directed to the *incorrect* legal standard should be rejected.

## II.    Plaintiffs Will Not Succeed on the Merits

While this Court need not look further than Plaintiffs' own exhibits to deny this Motion, a more fulsome analysis under the four *Winter* factors provides a longer path to the same destination.[1]

---

[1] Plaintiffs are wrong that they are relieved of demonstrating a "likelihood of success" on the merits. Mot. at 13. While the Ninth Circuit may have endorsed the "serious questions" standard, it has done so only when the other factors—including irreparable harm and the public interest—have

A.     **Plaintiffs' Clayton Act Claim Is Likely to Fail (Count I)**

Section 7 of the Clayton Antitrust Act prohibits mergers whose effect "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. To succeed on a Section 7 claim, Plaintiffs must establish a relevant product and geographic market in which anticompetitive effects are likely. Because Plaintiffs do not define a plausible relevant product or geographic market and fail to show any anticompetitive harm, Plaintiffs cannot succeed on the merits of Count I.

1.     *Plaintiffs fail to establish relevant geographic or product markets*

When analyzing the potential anticompetitive effects of a merger, the "threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)). A "[d]etermination of the relevant product and geographic markets is 'a necessary predicate' to deciding whether a merger contravenes the Clayton Act." *United States v. Marine Bancorp., Inc.*, 418 U.S. 602, 618 (1974) (quoting *United States v. E. I. Du Pont De Nemours & Co.*, 353 U.S. 586, 593 (1957)).

a.     Plaintiffs fail to establish a relevant product market

In support of their proposed product market, Plaintiffs offer two meager paragraphs with no factual or legal citations of any kind. *See* Mot. at 18-19. Instead, relying only on the Complaint's conclusory allegations, Plaintiffs contend that "the relevant product market is the retail sale of food and other grocery products in supermarkets, which are any retail grocery stores offering customers substantially all their weekly food and grocery shopping requirements in a single shopping visit." Mot. at 19 (citing Compl. ¶ 45). They offer nothing else to support their claim. In fact, the source that is cited in Plaintiffs' Exhibit D states that, in 2021, the top three "grocery chains in the U.S.

---

been met and when the balance of hardships tips "sharply" in plaintiffs' favor. *See AWR v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). As explained below, Plaintiffs have not satisfied (or even submitted evidence in support of) the other preliminary injunction factors; the traditional "likelihood of success" standard thus applies. In any event, Plaintiffs' claims fail on the merits under any standard.

by revenue" were Walmart, Amazon, and Costco, none of which would fit in Plaintiffs' proposed product market definition. *See* Ex. D (ECF No. 28-5) (citing https://www.foodindustry.com/articles/top-10-grocers-in-the-united-states-2019). Plaintiffs' assertion that this merger is between "the first and the second largest national competitors," Mot. at 10, thus depends on an artificial product market definition contradicted by their own authorities.

In the real world, Plaintiffs' proposed product market is far too narrow because it ignores the modern realities of consumers' grocery shopping habits and the grocery industry. *See FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 292 (D.D.C. 2020) (rejecting FTC's proposed product market as "overbroad and inconsistent with the commercial realities of the industry"). For example, Plaintiffs ignore stores like Walmart and Target, which also provide a "full-line" of retail grocery products and offer customers "substantially all their weekly food and grocery shopping requirements in a single shopping visit," *contra* Mot. at 19; they ignore the plethora of other stores that have "grocery shopping" offerings, including dollar and convenience stores; and they fail to even mention the growth of online grocery options, such as home delivery offered by grocery stores or third parties. Because Plaintiffs bear the burden of proving their entitlement to injunctive relief, their failure to establish a relevant product market is, on its own, a dispositive failure.[2]

### b.     Plaintiffs fail to establish a relevant geographic market

In any antitrust case, the geographic market is critical because, without a well-defined relevant geographic market, "there is no way to measure [the defendant's] ability to lessen or destroy competition." *Am. Express Co.*, 138 S. Ct. at 2285 (citation omitted). Accordingly, courts routinely deny preliminary injunctions based on a failure to establish a relevant geographic market. *See, e.g.*, *Malaney v. UAL Corp.*, 434 F. App'x 620, 621-22 (9th Cir. 2011) (affirming denial of preliminary injunction based on failure to allege relevant market for airlines); *California v. Sutter*

---

[2] Plaintiffs' one-paragraph argument that "[t]he acquisition will also affect employees," Mot. at 21, is wholly conclusory, unsupported by any evidence or legal citation, and warrants no consideration. Plaintiffs do not even allege that they work in the supermarket business. As in the *Microsoft* Order, "Plaintiffs do not contend the alleged anticompetitive effects in the labor market will damage them; thus, they do not have standing to pursue such claim." *Microsoft* Order at 4-5. Plaintiffs also have not identified a plausible geographic market for labor.

*Health Sys.*, 130 F. Supp. 2d 1109, 1132 (N.D. Cal. 2001) (finding that the plaintiff failed to prove a well-defined geographic market for hospitals based on market data); *RAG-Stiftung*, 436 F. Supp. 3d at 309 (denying preliminary injunction where, *inter alia*, FTC failed to establish a relevant geographic market for hydrogen peroxide); *see also Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (holding, on appeal from an order granting a motion to dismiss, that "the district court properly concluded that the Caddies had failed to plead any plausible product markets"). This case should be no different.

Plaintiffs' entire Motion depends on the argument that "[t]he relevant geographic market for analyzing the proposed merger in this case is the entire United States because Kroger and Albertsons are two national-level grocery giants that compete against each other on a national scale." Mot. at 18. That argument misses the mark.

For purposes of antitrust law, a "relevant geographic market" is the "area of effective competition" to which consumers can "turn for alternative sources of supply" (here, alleged to be "supermarkets," Compl. ¶ 45) in response to small price changes. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (citation omitted). In other words, when defining the relevant geographic market for antitrust purposes, the question is not whether the merging companies are "competitors" in some abstract sense. *Contra* Mot. at 10. The question is whether they compete *for the same customers*. *See Sutter Health Sys.*, 130 F. Supp. 2d at 1128 ("If all firms within the proposed geographic market could, together, profitably impose an anticompetitive price increase in the market, this would mean that customers within the market would be forced to accept the price increase because they would not have sufficient practical alternative[s] . . . outside of the market to which to turn."); *Sidibe v. Sutter Health*, No. 12-cv-04854, 2019 WL 2078788, at *4 (N.D. Cal. May 9, 2019) ("If that hypothetical monopolist could profitably raise prices above competitive levels, the region is a relevant geographical market." (citation omitted)).

Applying that standard, Plaintiffs' argument that Albertsons and Kroger compete for the same *nationwide* consumers ignores reality by suggesting that a New Yorker and a San Franciscan have *identical* competitive options for supermarkets. Put differently, Plaintiffs' theory would

require this Court to accept the inference that, in response to an increase in grocery prices, consumers might fly from Miami to Seattle for their weekly grocery shopping. That is neither a plausible nor a legally permissible conception of a geographic market. *Cf. Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022) (rejecting plaintiff's worldwide geographic market for electronic app transactions). By insisting on a nationwide geographic market, Plaintiffs do not even begin to provide a coherent framework for analyzing their claims. This is not a "serious question"; it is an easy one.

Indeed, Plaintiffs appear to acknowledge that their asserted geographic market is implausible, admitting that "[c]ompetition for supermarkets is . . . local in nature as consumers typically do their grocery shopping at stores located close to where they live or work." Mot. at 18. Courts evaluating prior grocery store mergers have thus defined the relevant geographic markets around the grocery options available in discrete neighborhoods rather than cities or states. *See, e.g.*, *FTC v. Whole Foods Mkt., Inc.*, 502 F. Supp. 2d 1, 37 (D.D.C. 2007) (defining relevant geographic markets as ones with healthy grocery stores within a "six mile radius" of one another), *rev'd on other grounds*, 548 F.3d 1028 (D.C. Cir. 2008); *Delco LLC v. Giant of Md., LLC*, No. 07-cv-3522, 2007 WL 3307018, at *19 (D.N.J. Nov. 8, 2007) (rejecting plaintiffs' market definition because it improperly excluded two supermarkets within six miles).[3]

While Plaintiffs vaguely assert that "regional, and local relevant geographic markets may also exist," Mot. at 18, they offer no specificity or evidence to support that definition. All of their exhibits concern purported *nationwide* concentration of market power, *see, e.g.*, Exs. C, D, G. Plaintiffs' Exhibit B underscores the problem. There, Plaintiffs attempt to contrast the estimated *nationwide* market shares of this merger with the estimated market shares of the *Von's* merger "in

---

[3] Plaintiffs' citation to other cases involving nationwide markets only proves the point. *See* Mot. at 14-17. When merging companies compete for the *same customers* on a nationwide basis, nationwide statistics may be relevant. A nationwide geographic market is logical, for example, where the subject entities are "manufacturers [that] distribute their [products] on a nationwide basis," *Brown Shoe Co. v. United States*, 370 U.S. 294, 328 (1962) (shoes); *see also United States v. Pabst Brewing Co.*, 384 U.S. 546, 551-52 (1966) (beer), or producers of subcomponents utilized by manufacturers on an industry-wide basis, *see United States v. Aluminum Co. of Am.*, 377 U.S. 271, 273-74 (1964) (aluminum conductors). It is not logical for the grocery industry.

the *Los Angeles area*." *See United States v. Von's Grocery Co.*, 384 U.S. 270, 271 (1966) (emphasis added). The two cases are not remotely comparable. Moreover, Plaintiffs offer no evidence to support even the "possibility" of an anticompetitive effect in any specific local market. Their suggestion that the merger "will substantially lessen competition" in some unidentified "regional, and local relevant geographic markets," Mot. at 18, should be rejected.

    2.    *Plaintiffs fail to establish actual or likely anticompetitive harm*

To succeed on their Clayton Act claim, Plaintiffs must not only allege a proper product and geographic market but also demonstrate a reasonable probability the merger will be anticompetitive in that *specific* market. *See, e.g.*, *DeHoog*, 899 F.3d at 763; *Saint Alphonsus*, 778 F.3d at 785 (to meet the prima facie burden, a plaintiff must establish "that the merger will probably lead to anticompetitive effects in that market"). And whether their burden is relatively "low" or "high," Mot. at 14, Plaintiffs must satisfy their burden with competent evidence.

Plaintiffs' Motion does not meaningfully attempt to satisfy the Ninth Circuit's standard. Instead of relying on Ninth Circuit caselaw, Plaintiffs cite 60-year-old Supreme Court cases and centuries-old sources such as *The Wealth of Nations* for the basic proposition that competition is good and mergers are bad. *See* Mot. at 7. Guided by that blunt articulation of the Clayton Act, Plaintiffs argue that *any* merger that eliminates a "nontrivial" rival is *per se* unlawful. Mot. at 17; *see also* Mot. at 7-8. Applying Plaintiffs' standard, even "incremental concentrations" of market power are sufficient to enjoin a merger. Mot. at 13. That is not the law.

This Court need not look further than the *Microsoft* Order to deny Plaintiffs' Motion. In that order, issued last month, the court held that Plaintiffs' same theory of the Clayton Act "ignores binding Ninth Circuit precedent." *Microsoft* Order at 10. Indeed, at oral argument on the motion to dismiss in that case, "Plaintiffs urged this Court *not to follow Ninth Circuit precedent* regarding what is required to plead a prima facie Section 7 claim because, in their view, the Ninth Circuit law conflicts with the United States Supreme Court merger cases from the 1960's." *Id.* (emphasis added). The court correctly rejected that proposition, and rightly so: "Disregarding Ninth Circuit precedent is not this Court's prerogative." *Id.*

In other words, Plaintiffs' suggestion that this Court should eschew any "complicated economic analysis," Mot. at 19, is contrary to law. To be sure, increased post-merger market share in a properly defined product and geographic market is one factor that can suggest anticompetitive effects. *See United States v. Baker Hughes Inc.*, 908 F.2d 981, 990 (D.C. Cir. 1990). As courts around the country have made clear, however, an economic analysis nonetheless *is required* when assessing the anticompetitive effects of a potential merger. *See Microsoft* Order at 10 ("Simply put, there is no support for the notion that, merely by removing one competitor, any horizontal merger in the airline industry will be anticompetitive and thereby violate Section 7." (quoting *Malaney v. UAL Corp.*, No. 3:10-cv-02858, 2010 WL 3790296, at *7 n.11 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011)); *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752, 2020 WL 1233939, at *4 (N.D. Cal. Mar. 13, 2020) (finding no support for a "per se rule whenever a merger is proposed"); *In re AMR Corp.*, No. 22-901, 2023 WL 2563897, at *1 (2d Cir. Mar. 20, 2023) ("reject[ing] Plaintiffs' view" that courts are "obliged by Supreme Court precedent from the 1960s to treat post-merger market share as virtually conclusive of a Section 7 violation"). Plaintiffs have provided no sound legal basis to adopt their theory.

Plaintiffs' own exhibits illustrate the flaws in their arguments. The closest they come to providing evidence of anything smaller than a nationwide market is a map of all of the Albertsons and Kroger stores in the United States. Ex. E. But Plaintiffs have offered no evidence of a reduction in competition anywhere in the United States, instead setting forth the bare conclusion that "the merger will lessen competition in numerous markets in which Kroger and Albertsons compete." Mot. at 18. And Plaintiffs' allegation that "Kroger and Albertsons currently have extensive overlapping markets," Mot. at 21, is not itself supported by the map, which shows that the two chains are largely concentrated in distinct and disparate geographic regions. *Contra* Mot. at 20.

Plaintiffs' assertions of anticompetitive harm also ignore the importance of divestitures in the merger approval process. As Plaintiffs' own authorities recognize, "divestiture is the normal and usual remedy against an unlawful merger, whether sued by the government or by a private plaintiff." *California v. Am. Stores Co.*, 492 U.S. 1301, 1305 (1989) (O'Connor, J.) (quoting 2

Phillip Areeda & Donald F. Turner, Antitrust Law § 328b, at 137 (1978)); *Olin Corp. v. FTC*, 986 F.2d 1295, 1307 (9th Cir. 1993).

Federal antitrust agencies routinely require divestitures in local markets to address competitive concerns with proposed grocery store and other retail mergers. *See, e.g.*, Statement of Chair Lina M. Khan, *In re JAB Consumer Fund/SAGE Veterinary Partners*, File No. 2110140, at 1 (June 13, 2022), https://bit.ly/3UFVOX1. For these types of mergers, "the agency identifies specific local markets where the merging parties have overlapping assets and where the deal would therefore most directly reduce competition, and it requires the merging companies to divest those overlapping assets to a separate buyer." *Id.* at 2. These divestitures "restore fully the competition that otherwise would be eliminated in these markets" as a result of the merger. Analysis of Agreement Containing Consent Order to Aid Public Comment, *In re Koninklijke Ahold N.V. and Delhaize Grp. NV/SA*, File No. 151-0175, at 4 (July 22, 2016), https://bit.ly/3MLhnUc; *see also, e.g.,* Analysis of Agreement Containing Consent Orders to Aid Public Comment, *In re Seven & i Holdings Co.*, File No. 201-0108, at 4 (June 25, 2021), https://bit.ly/41sPHYq. Plaintiffs' all-or-nothing request for injunctive relief only underscores the reality that the divestitures resulting from the FTC's merger review process will fully resolve any hypothetical harm here.[4]

### B.   Plaintiffs' Sherman Act Claim Is Likely to Fail (Count II)

As Kroger explained in its Motion to Dismiss, Plaintiffs' Sherman Act claim seeks to enjoin a dividend that has already been paid based on an antitrust theory that has already been debunked. In short, their arguments are nonsensical. Their two requested remedies in Count II—(1) an injunction and (2) disgorgement under Section 16 of the Clayton Act—are either moot or not authorized. And in any event, Plaintiffs provide no facts to suggest an unlawful agreement.

#### 1.   *Plaintiffs' requested remedies are not legally authorized*

Without cognizable relief, there is no cognizable claim. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[A] plaintiff must maintain a personal interest in . . . each form of

---

[4] For similar reasons, and as explained in Kroger's Motion to Dismiss, Plaintiffs' claim is not ripe. *See also* Kroger's Motion to Dismiss at 10-11 (ECF No. 40).

relief sought." (citation omitted)). Count II thus fails because Plaintiffs' two requested remedies—
(1) an injunction and (2) disgorgement under Section 16 of the Clayton Act—are either moot or
not authorized.

*First*, Plaintiffs' request for injunctive relief is moot because Albertsons issued the
Dividend on January 20, 2023. "[A]ll of the events sought to be enjoined have now occurred."
*McKee & Co. v. First Nat'l Bank of San Diego*, 397 F.2d 248, 249 (9th Cir. 1968) (per curiam).
Relying on that fact (and the parties' agreement), the D.C. Circuit dismissed the appeal as moot.
Order, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir. Dec. 20, 2022). "A request for
injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer v.
Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (citation omitted). There is no such
harm here.

*Second*, as explained in Kroger's Motion to Dismiss (ECF No. 40 at 12-13), Plaintiffs'
request for disgorgement is nonsensical as to Kroger. *See In re Ditropan XL Antitrust Litig.*, 529
F. Supp. 2d 1098, 1102 (N.D. Cal. 2007) (defining disgorgement as "compel[ling] a defendant to
surrender all money [or profits] obtained through an unfair business practice" (citation omitted)).
Kroger has taken no action with regard to the Dividend, it has no Dividend payment to disgorge,
and it cannot grant any relief to Plaintiffs. *See Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir. 1993)
("The purpose of disgorgement is to deprive a person of 'ill-gotten gains' and prevent unjust
enrichment." (citation omitted)). And even if disgorgement made some sense, "the Ninth Circuit
disallows private use of Section 16 to pursue disgorgement." *In re: Cathode Ray Tube (Crt)
Antitrust Litig.*, No. 07-cv-5944, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016); *see id.*
(collecting cases).

### 2.    *Plaintiffs have not established an unlawful agreement*

Even if this court were to reach the merits of Plaintiffs' Sherman Act claim, that claim is
destined for failure. To establish an "agreement" under Section 1 of the Sherman Act, Plaintiffs
must present direct or circumstantial evidence that Kroger and Albertsons "had a conscious
commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v.*

*Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Under this standard, "conduct [that is] as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see also First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 279-84 (1968). Thus, "[t]here must be evidence that tends to *exclude* the possibility that [Defendants] were acting independently." *Monsanto Co.*, 465 U.S. at 764 (emphasis added); *see also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (Section 1 "does not reach conduct that is 'wholly unilateral'" (citation omitted)).[5]

Plaintiffs' sole evidence of an "agreement" is "the merger document itself"; yet they never analyze the actual terms of the Agreement. The Merger Agreement does not include any provision whereby Kroger and Albertsons agree that Albertsons must issue the Dividend; Kroger has no claim of breach regardless of whether Albertsons issues, does not issue, or changes the amount of the Dividend. Millerchip Decl. ¶ 14. Rather, the Merger Agreement contemplates the fact that Albertsons could unilaterally and independently declare a Pre-Closing Dividend and addresses the impact of such a dividend by providing for a dollar-for-dollar reduction in the price paid to Albertsons' shareholders by Kroger if Albertsons paid the dividend. *Id.* The fact that Kroger has no right to demand payment of the Dividend under the Merger Agreement illustrates that the Dividend was not "part of" the Agreement. Albertsons' unilateral payment of the Dividend to its shareholders—and not to Kroger—only confirms that fact. *Supra* at 5.

Beyond their vague reference to the Merger Agreement, Plaintiffs offer no facts to support their claim. As numerous courts have recognized on far more robust records, no such facts exist. Indeed, one federal court in the District of Columbia on *three* occasions held that a materially

---

[5] Plaintiffs' Sherman Act claim fails for a number of other reasons as well. The failure to allege a relevant geographic market, *supra* at 12-15, is a fatal flaw in Plaintiffs' Sherman Act claim. *See Am. Express Co.*, 138 S. Ct. at 2285. The claim should also be dismissed for lack of antitrust standing. In assessing antitrust standing, the court examines whether the "alleged injury was the direct result" of the allegedly anticompetitive conduct—the "harm may not be 'derivative and indirect' or 'secondary, consequential, or remote.'" *City of Oakland v. Raiders*, 20 F.4th 441, 458 (9th Cir. 2021) (quoting *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th Cir. 2008)). Yet as explained *supra* at 15-17, Plaintiffs have offered no evidence that could link their hypothetical injury to Albertsons' payment of the Dividend.

similar challenge—brought by the D.C. Plaintiffs—was unlikely to succeed on the merits because, *inter alia*, the D.C. Plaintiffs failed to demonstrate that Kroger *agreed* that Albertsons would pay the Dividend. *Supra* at 5-7. The D.C. Circuit likewise denied the D.C. Plaintiffs' request for an injunction on emergency appeal. Order, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir. Dec. 20, 2022). Similarly, in a suit brought by the State of Washington, a Washington state court denied an equivalent request for injunctive relief, Order, *Washington v. Albertsons Cos., Inc.*, No. 22-2-18046-3 (Wash. Super. Ct. Dec. 9, 2022), and the Supreme Court of Washington denied discretionary review, Order, *Washington v. Albertsons Cos. Inc.*, No. 101530-5 (Wash. Jan. 17, 2023). After their appeals failed, the State AGs voluntarily dismissed their claims.

In sum, no court to consider Plaintiffs' novel antitrust theory has given it any credence, and Plaintiffs' sparse allegations in this case provide no reason to reach a different conclusion here.

## III. Plaintiffs Have Not Established Harm, Much Less Irreparable Harm

"An injunction may be awarded to a private plaintiff . . . only when he . . . shows that the antitrust injuries are personal." *Malaney*, 2010 WL 3790296, at *5 (citing *United States v. Borden Co.*, 347 U.S. 514, 518 (1954)). But Plaintiffs' Motion offers *no* evidence of actual or likely personal injuries to the named Plaintiffs. Instead, Plaintiffs' Motion rests on the debunked antitrust theory that the "eliminat[ion]" of "consumer choice" is *per se* irreparable harm. Mot. at 23-24. But enjoining mergers based on an amorphous harm to "consumer choice" amounts to a categorical prohibition on *any* merger that would remove a company. And it would allow any plaintiff to hold mergers hostage based on the mere assertion that they "are consumers and customers" of the Defendants. Mot. at 23. As explained *supra* at 15-16, every court to consider Plaintiffs' theory has rejected it, and this case should be no different.

***First***, Plaintiffs' irreparable-harm argument fails for lack of evidence. This Court cannot find irreparable harm without an evidentiary basis, and Plaintiffs have provided none. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing the district court's preliminary injunction order because the evidence presented, even if indicative of injury to competition, was insufficient to show irreparable harm); *GEC US 1 LLC v. Frontier*

*Renewables, LLC*, No. 16-cv-1276, 2016 WL 3345456, at *5 (N.D. Cal. 2016) (finding no irreparable harm were the alleged harms were "purely speculative" and plaintiffs "present[ed] no evidence" and accordingly "fail[ed] to establish that the losses they might incur [we]re not compensable at law"); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1325 (N.D. Cal. 1995) (finding no irreparable harm where nothing in the record, including an expert's declaration, indicated such harm in absence of injunctive relief). Under any circumstances, an injunction is "an extraordinary remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Norbert*, 10 F.4th at 927 (citation omitted). Here, Plaintiffs have not even attempted to satisfy their burden. Mot. at 23-24. They offer no expert testimony, no economic analysis, no price comparisons, and no surveys of consumer behavior. They offer only rhetoric.

**Second**, the Merger Agreement and the ongoing regulatory review process undermine any claim for irreparable harm. Given the ongoing regulatory review process and the possible divestiture of "as many as 650" stores, Compl. ¶ 20, it is unclear where—if anywhere—Plaintiffs might have even a *theoretical* injury, much less an irreparable one. As explained in Kroger's Motion to Dismiss, Plaintiffs do not establish the imminent and particularized injury sufficient to demonstrate the bare minimum for Article III standing. Kroger's Mot. to Dismiss at 8-10 (ECF No. 40). Indeed, to the extent Plaintiffs' theory of irreparable harm is intelligible at all, it appears to rest on a purely speculative calculation of nationwide market share that ignores any divestitures entirely. Mot. at 23-24; Ex. B.

Even without divestitures, Plaintiffs' own authorities demonstrate that mere market share statistics are insufficient to show that the proposed merger would harm competition. *See Boardman v. Pacific Seafood Grp.*, 822 F.3d 1011, 1021 (9th Cir. 2016). In *Boardman*, for instance, the plaintiffs submitted an expert declaration and highly contextualized data showing that narrowly defined "seafood input markets" would become "highly concentrated" in the event of a merger and that there were multiple barriers to entry. *Id.* at 1021-22. Plaintiffs here have provided nothing comparable.

Plaintiffs' citation to *California v. Am. Stores Co.*, 492 U.S. 1301 (1989), is likewise unavailing. While the Supreme Court quoted the part of the Clayton Act authorizing private plaintiffs to "sue for and have injunctive relief . . . against threatened loss," *id.* at 1305 (quoting 15 U.S.C. § 26), it never implied that plaintiffs could claim a potential for threatened loss with mere allegations and no evidence. Indeed, the Court approved the preliminary injunction in that case because there was "*overwhelming* statistical evidence . . . demonstrat[ing] a strong probability that the proposed merger will substantially lessen competition in violation of Section 7 of the Clayton Act." *Id.* at 1303 (emphasis added) (quoting *California v. Am. Stores Co.*, 697 F. Supp. 1125, 1135 (C.D. Cal. 1988)).[6]

***Third***, Plaintiffs' delay undermines any argument for the "extraordinary" remedy of injunctive relief. "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on [their] rights," a plaintiff therefore "demonstrates the lack of need for speedy action." *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (citation omitted); *see Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc); *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005) (finding that a three-month delay "undercuts . . . claims of urgency and irreparable harm"). Here, Plaintiffs filed this Motion (1) more than five months after Kroger and Albertsons announced the merger; (2) more than four months after the State AGs began their unsuccessful efforts to enjoin the Dividend; (3) approximately two months after Albertsons *paid* the Dividend; and (4) more than a month after Plaintiffs filed their Complaint. In light of Plaintiffs' own unexplained delay, any assertion of urgency falls flat.

---

[6] To the extent Plaintiffs seek to rely on claims of monetary damage in the form of increased prices for their groceries, *see* Compl. ¶¶ 20, 25-26, their claims fail because "any monetary loss could be fairly compensated with a monetary damages award," and Plaintiffs have not demonstrated that such relief would be inadequate, *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752, 2020 WL 1233939, at *3-4 (N.D. Cal. 2020); *see Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201-02 (9th Cir. 1980) ("monetary injury is not normally considered irreparable" in Section 16 cases); *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, No. 09-cv-3854, 2009 WL 3415680, at *1 (N.D. Cal. Oct. 22, 2009) (holding that "injuries resulting from higher prices would appear to be injuries fully compensable by an award of monetary damages").

***Finally***, Plaintiffs' own motion emphasizes that there is no need for a disruptive preliminary injunction. Plaintiffs note that "the merger agreement contemplates the closing occurring as late as January 13, 2024, with a possibility of it being extended up to an additional 270 days." Mot. at 24 (citing Merger Agreement § 8.1(e)). With an anticipated closing date so far in the future—and without certainty as to which stores will ultimately be owned by Kroger—there is no reason for this Court to enjoin the merger, particularly when the FTC and state regulators are still in the process of reviewing the transaction. *See supra* at 4-5.

## IV.     The Balance of Equities Tips in Defendants' Favor, and Preliminary Relief Is Not in the Public Interest

The final pages of Plaintiffs' Motion cite no evidence to support a conclusion that they satisfied the "balance of equities" or "public interest" factors. Plaintiffs accordingly have placed nothing on their side of the balance. Yet again, this alone is a basis to deny the Motion. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980) (explaining that there is a "requirement that some balance of hardships favoring [the moving] party be established by the record"); *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that . . . the balance of equities tips in his favor."). And customers have other recourse to address their antitrust allegations, including "bringing issues to the attention of federal [or] state . . . agencies." *AT&T Mobility LLC v. Bernardi*, Nos. 11-cv-03992 CRB, 11-cv-04412, 2011 WL 5079549, at *12 (N.D. Cal. 2011) (citation omitted). Indeed, such agencies are *already in the midst of reviewing* the transaction. Without a preliminary injunction, customers would suffer no harm during the pendency of the government review. *See id.*

On the other hand, Kroger will suffer economic harm from an injunction, even a temporary one. Kroger's CFO has explained that an injunction would disrupt and complicate FTC review and inject unnecessary uncertainty into an already complex regulatory process. Millerchip Decl. ¶ 10. The balance of hardships thus clearly favors Kroger.

Plaintiffs' appeals to the public interest ring hollow. Unlike the 25 named private Plaintiffs, the FTC and state attorneys general *actually* represent the public interest, and they are specifically

directed to "protect 'the public against the evils . . . from the undue lessening of competition.'" *In re First Databank Antitrust Litig.*, 205 F.R.D. 408, 415 (D.D.C. 2002) (quoting *Int'l Shoe Co. v. FTC*, 280 U.S. 291, 297-98 (1929)). The prior litigation in D.C. and Washington demonstrates that state regulators are watching this merger closely. They already attempted—and failed—to assert the same Sherman Act claim that Plaintiffs now assert. *See supra* at 5-7. There is no reason to think that regulators would not intervene in the future if they thought that the merger might pose an anticompetitive risk.

Plaintiffs provide no basis to conclude that they can represent the public interest better than the government agencies. There is a "strong public interest in ensuring that regulatory agencies and courts hearing government actions are able to consider the merger without the potential for being preempted by . . . extensive proceedings." *Bernardi*, 2011 WL 5079549, at *12. And Plaintiffs' action may serve only to disrupt the regulatory agencies' own review. The public has an interest in *effective* enforcement of antitrust laws, not superfluous litigation on meritless claims. Other than alleging a vague public harm of "lessened competition," Plaintiffs provide no basis for why a preliminary injunction would serve the public interest. Mot. at 23-24.

Finally, the public-policy consequences of accepting Plaintiffs' arguments would be exceedingly disruptive. Because there is nothing particularized about these Plaintiffs or their alleged harm, allowing an injunction in this case would allow *any* Kroger or Albertsons consumer to bring a suit *anywhere* in the country. And because Plaintiffs are not pursuing their claims as a class, future plaintiffs could do so seriatim. Moreover, Plaintiffs' broad antitrust theory is not limited to supermarkets. Such a precedent would grant plaintiffs around the country a license to hold all mergers hostage, extracting ransom payments from the merging companies before the merger may be consummated. That result is not in the public interest.[7]

---

[7] For the reasons discussed herein, this Court should deny Plaintiffs' Motion. But in the event this Court is inclined to grant injunctive relief, it should require that Plaintiffs post a significant bond "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' Motion for a Preliminary Injunction.


Dated: April 20, 2023

                            **ARNOLD & PORTER KAYE SCHOLER LLP**

                            By: _ /s/ Daniel B. Asimow _____

                            DANIEL B. ASIMOW (SBN 165661)
                            Daniel.Asimow@arnoldporter.com
                            **ARNOLD & PORTER KAYE SCHOLER LLP**
                            Three Embarcadero Center, 10th Floor
                            San Francisco, CA 94111
                            Telephone:    (415) 471-3100
                            Facsimile:    (415) 471-3400

                            SONIA K. PFAFFENROTH (SBN 223984)
                            MATTHEW WOLF (*admitted pro hac vice*)
                            MICHAEL BERNSTEIN (*admitted pro hac vice*)
                            KOLYA D. GLICK (*admitted pro hac vice*)
                            Sonia.Pfaffenroth@arnoldporter.com
                            Matthew.Wolf@arnoldporter.com
                            Michael.Bernstein@arnoldporter.com
                            Kolya.Glick@arnoldporter.com
                            **ARNOLD & PORTER KAYE SCHOLER LLP**
                            601 Massachusetts Ave., N.W.
                            Washington, DC 20001
                            Telephone:    (202) 942-5000
                            Facsimile:    (202) 942-5999

                            *Attorneys for Defendant, THE KROGER CO.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 20, 2023, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

Dated:  April 20, 2023

/s/ *Daniel B. Asimow*
Daniel B. Asimow