John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE WHALEN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO., ALBERTSONS COMPANIES, INC., AND CERBERUS CAPITAL MANAGEMENT, L.P.,<br><br>Defendants. | CASE NO. 3:23-CV-459-VC<br><br>**DEFENDANT ALBERTSONS COMPANIES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:     May 18, 2023<br>Time:     10:00 a.m.<br>Place:    Courtroom 5 - 17th Floor<br>Judge:   Hon. Vince Chhabria |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.....................................................................3

      A.     Albertsons' Successful Business Operations Have Generated Billions of
            Dollars of Excess Capital that It Distributed to Its Shareholders. ............................3

      B.     Albertsons and Kroger Did Not Agree to Issue the Special Dividend. ....................3

      C.     Multiple Courts Rejected Similar Efforts by State AGs to Enjoin the
            Special Dividend Payment.......................................................................................4

      D.     Albertsons Issues the Special Dividend and the State AGs Voluntarily
            Dismiss Their Claims...............................................................................................6

      E.     Plaintiffs File Their Complaint and Move for a Preliminary Injunction. .................6

ARGUMENT .................................................................................................................................7

      A.     Plaintiffs' Motion to Enjoin Payment of the Special Dividend Is Moot...................8

      B.     Plaintiffs Are Not Entitled to a Preliminary Injunction. .........................................9

            1.     Plaintiffs Are Not Likely to Succeed on the Merits of Their
                  Sherman Act Claim......................................................................................9

            2.     Plaintiffs Do Not Face a Threat of Irreparable Harm. ...............................15

            3.     The Balance of Equities and Public Interest Do Not Support a
                   Preliminary Injunction. ..............................................................................16

      C.     Albertsons Will Be Harmed If the Proposed Merger is Enjoined. .........................17

CONCLUSION...........................................................................................................................17

ALBERTSONS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF AUTHORITIES</u>

Page

### <u>FEDERAL CASES</u>

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) ........................................................................................9

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ...................................................................................7, 15

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
   126 F.3d 1118 (9th Cir. 1997), *as amended* (Sept. 16, 1997)......................................8

*Arcamuzi v. Continental Air Lines, Inc.*,
   819 F.2d 935 (9th Cir. 1987) ......................................................................................15

*Arcsoft, Inc. v. Cyberlink Corp.*,
   153 F. Supp. 3d 1057 (N.D. Cal. 2015) .......................................................................7

*Bhan v. NME Hosps., Inc*.,
   929 F.2d 1404 (9th Cir. 1991) .................................................................................12, 13

*Boardman v. Pacific Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) .....................................................................................16

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
   479 U.S. 104 (1986)....................................................................................................10

*City of Oakland v. Oakland Raiders*,
   20 F.4th 441 (9th Cir. 2021), *cert. denied sub nom. City of Oakland, California v.*
   *Oakland Raiders*, 143 S. Ct. 84 (2022)....................................................................10

*Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles*,
   340 F.3d 810 (9th Cir. 2003) ........................................................................................7

*District of Columbia v. The Kroger Co.*,
   No. 1:22-cv-03357 (CJN), 2022 WL 18910855 (D.D.C. Dec. 14, 2023).............5, 14

*District of Columbia v. The Kroger Co.*,
   No. 1:22-cv-03357 (CJN), 2022 WL 18911128 (D.D.C. Dec. 12, 2023).... 5, 8, 12, 14

*District of Columbia v. Kroger Co.*,
   No. 22-7168, 2023 WL 2356015 (D.C. Cir. Feb. 23, 2023)....................................6, 8

*Doe v. Snyder*,
   28 F.4th 103 (9th Cir. 2022) ....................................................................................7, 15

*Epic Games, Inc. v. Apple Inc.*,
  493 F. Supp. 3d 817 (N.D. Cal. 2020) ........................................................9, 10, 13

*Facebook, Inc. v. BrandTotal Ltd.*,
  499 F. Supp. 3d 720 (N.D. Cal. 2020) ...................................................................7

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) .................................................................................9

*California ex rel. Harris v. Safeway, Inc.*,
  651 F.3d 1118 (9th Cir. 2011) .............................................................................12

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) .............................................................................13

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  906 F.2d 432 (9th Cir. 1990) ...............................................................................10

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)................................................................................................7

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)........................................................................................10, 11

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  795 F.3d 1124 (9th Cir. 2015) .............................................................................11

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021)..........................................................................................12

*NCAA v. Bd. of Regents of Univ. of Oklahoma*,
  468 U.S. 85 (1984)................................................................................................12

*Nevada v. United States*,
  783 F. App'x 700 (9th Cir. 2019) ..........................................................................8

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018)......................................................................................9, 13

*Planned Parenthood of Wisc., Inc. v. Azar*,
  942 F.3d 512 (D.C. Cir. 2019) ...............................................................................8

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*,
  890 F.2d 139 (9th Cir. 1989) ...............................................................................12

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
  815 F.3d 623 (9th Cir. 2016) .................................................................................8

*Turchet v. Mayfield*,
    No. 20-CV-01104-VC, 2020 WL 1126779 (N.D. Cal. 2020) .................................................. 7, 9

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................................... 7, 15

ALBERTSONS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Defendant Albertsons Companies, Inc. ("Albertsons" or "the Company") joins in full Defendant The Kroger Co.'s ("Kroger") Opposition to Plaintiffs' Motion for a Preliminary Injunction as to Count I, Plaintiffs' Clayton Act Section 7 claim regarding the proposed merger between Kroger and Albertsons.  Albertsons writes separately to briefly address its interests with respect to the relief requested as to Count I, and to oppose Plaintiffs' Motion for a Preliminary Injunction as to Count II (as limited, the "PI Motion"), which seeks to enjoin Albertsons' payment of or, in the alternative, "disgorge" the dividend that the Albertsons Board of Directors (the "Board") duly authorized on October 13, 2022 (the "Special Dividend") under Section 16 of the Clayton Act, 15 U.S.C. § 26.

## PRELIMINARY STATEMENT

Plaintiffs' claim challenging Albertsons' independent decision to pay the Special Dividend to its shareholders should be dismissed with prejudice for the reasons stated in Albertsons' pending motion to dismiss filed on April 12, ECF No. 42.  As a result, it is not necessary for the Court to address the PI Motion.  To the extent it does, Plaintiffs' frivolous request that the Court grant the extraordinary—indeed, impossible—relief of enjoining Albertsons' payment of the Special Dividend *it has already paid* to its shareholders should be denied for the following straightforward reasons.

*First*, Plaintiffs' PI Motion is moot because Albertsons already paid the Special Dividend on January 20, 2023, over two months before Plaintiffs filed this motion.  As the U.S. Court of Appeals for the District of Columbia has recognized, Albertsons' payment of the Special Dividend moots claims for injunctive relief blocking payment of that dividend.  Simply put, Plaintiffs seek relief against Albertsons as to Count II that they know full well the Court cannot possibly grant.  The PI Motion must be denied on this basis alone.

*Second*, even if the PI Motion were not moot (assuming, counterfactually, that the Special Dividend were not already paid), Plaintiffs do not, and cannot, meet their heavy burden to show they would be entitled to the extraordinary remedy of a preliminary injunction blocking payment of the Special Dividend.  Indeed, Albertsons' payment of the Special Dividend followed

1

extensive review by four separate courts in two separate lawsuits brought by four state attorneys general raising federal and state antitrust claims substantially similar to those advanced by Plaintiffs.  Those courts carefully considered a fulsome evidentiary record and *repeatedly* rejected claims seeking to enjoin Albertsons' payment of the Special Dividend, concluding that the allegations and evidence before them did not establish that the plaintiffs in those cases would be likely to succeed on the merits; that they would suffer irreparable harm in the absence of an injunction; or that the balance of equities and public interests favored an injunction (particularly in light of the harm Albertsons and its shareholders would suffer).  Plaintiffs offer no arguments or evidence that would support a different outcome, nor could they.  Indeed, contrary to Plaintiffs' arguments that payment of the Special Dividend will somehow weaken or competitively harm Albertsons, Albertsons continues to generate record earnings and effectively compete in the highly competitive markets it serves.  Moreover, Plaintiffs cannot cite any irreparable harm that they will suffer in the absence of an injunction or any public interest given the Special Dividend has already been paid without any negative effect on competition.

Finally, with respect to Count I, Plaintiffs' request for a preliminary injunction blocking Albertsons' proposed merger with Kroger should be denied for the reasons stated in Kroger's opposition, in which Albertsons has joined.  The requested relief would harm Albertsons, its shareholders and the public in numerous ways, including by depriving Albertsons of consideration for the merger and depriving consumers of a stronger, more efficient merged entity with better geographic reach and better ability to provide additional products and services in competition with larger chains and online retailers.

In short, Plaintiffs' PI Motion is moot, and Plaintiffs have not and cannot meet their heavy burden to establish that the extraordinary remedy of a preliminary injunction would be warranted in these circumstances.  Plaintiffs' requested injunctive relief—both as to Counts I and II—should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Albertsons' Successful Business Operations Have Generated Billions of Dollars of Excess Capital that It Distributed to Its Shareholders.**

Albertsons is a thriving company.   Compl. ¶ 73.   In fiscal year 2021, Albertsons generated $71.9 billion in revenue and nearly $4.4 billion of Adjusted EBITDA.[1]  Compl. ¶ 40; Ex. A, at 44-45, 47 (ACI Apr. 26, 2022 10-K), ECF Nos. 42-2, 42-3; *see* Ex. P, ¶ 7 (McCollam Nov. Decl.).[2]  Albertsons' strong financial performance has continued through fiscal year 2022, which ended on February 25, 2023, with record Adjusted EBITDA of over $4.67 billion.  Ex. B, at 1, 10 (ACI Apr. 11, 2023 8-K), ECF No. 42-4.

Beginning in November 2021, and as publicly announced in February 2022, Albertsons' Board of Directors engaged in a broad-ranging strategic review process.  Ex. A, at 16; Ex. C, at 20 (ACI Jan. 24, 2023 Sched. 14C Info. Statement), ECF No. 42-5; Ex. P, ¶ 11.   During that process, Albertsons considered ways to return to its shareholders excess capital accumulated due to its strong financial performance, including through the payment of a special dividend.  Ex. C, at 23-24; Ex. P, ¶ 13.

**B.    Albertsons and Kroger Did Not Agree to Issue the Special Dividend.**

In   April   2022,   during   Albertsons'   ongoing   strategic   review,   Kroger   approached Albertsons about a potential merger.  *See* Ex. C, at 24.  From the earliest of those discussions, Albertsons told Kroger that Albertsons intended to return capital to its shareholders, whether Kroger acquired Albertsons or not.  Ex. P, ¶ 21.  Following several months of negotiations, Albertsons and Kroger agreed to merge pursuant to a Merger Agreement dated October 13, 2022 (the "Merger").  Compl. ¶ 82; Ex. D, at Exhibit 2.1 (ACI Oct. 14, 2022 8-K), ECF Nos. 42-6, 42-

---

[1] "EBITDA" refers to earnings before interest, taxes, depreciation, and amortization.
[2] Citations to "Ex. A" through "Ex. O" refer to the documents appended to the Declaration of Edward D. Hassi in Support of Albertsons' Motion to Dismiss filed on April 12, 2023, ECF No. 42-1.  Citations to "Ex. P" through "Ex. R" refer to the documents appended to the Declaration of Edward D. Hassi in Support of Defendant Albertsons Companies, Inc.'s Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Hassi Decl."), filed concurrently with this Opposition.

7.   Because Albertsons was considering issuing a special dividend, the Merger Agreement contemplates that Albertsons could choose to pay a pre-closing dividend at its sole discretion, and provides for a dollar-for-dollar reduction of the per-share merger consideration Kroger will pay in an amount equal to the value of any capital Albertsons elected to return to its shareholders through payment of such a dividend.  Ex. D, at Exhibit 2.1, § 1.1 (definition of "Common Merger Consideration"); *id*. § 6.1(e); Ex. P, ¶¶ 22-24.  Critically, the Merger Agreement neither required nor conditioned the Merger on the payment of such a dividend.  Ex. D, at Exhibit 2.1, §§ 7.1-7.3; *see also* Ex. P, ¶ 25.

On October 13, 2022, Albertsons' Board of Directors separately approved and declared the Special Dividend, which was in the amount of $6.85 per share, totaling approximately $4 billion to be paid on November 7, 2022, to shareholders of record as of October 24, 2022. Compl. ¶¶ 4, 38; Ex. C, at 18, 36; Ex. P, ¶ 1.

### C.   Multiple Courts Rejected Similar Efforts by State AGs to Enjoin the Special Dividend Payment.

In early November 2022, the Attorneys General for California, Illinois, and the District of Columbia (collectively, the "D.C. Plaintiffs") and for Washington (with the D.C. Plaintiffs, the "State AGs") sued Albertsons and Kroger under federal and/or state antitrust laws seeking to enjoin payment of the Special Dividend.  *See* Ex. E (D.C. Complaint filed Nov. 2, 2022), ECF No. 42-8; Ex. F (Wa. Complaint filed Nov. 1, 2022), ECF No. 42-9.  In connection with those lawsuits, multiple courts—both state and federal, and trial and appellate—*repeatedly* rejected the State AGs' attempts to enjoin payment of the Special Dividend:

- On November 8, 2022, the U.S. District Court for the District of Columbia denied the D.C. Plaintiffs' request for a temporary restraining order ("TRO"), concluding they had not demonstrated a likelihood of success given there was "no evidence of an agreement between Albertsons and Kroger to pay the [Special Dividend]," and that, instead, the evidence showed the Special Dividend was consistent with "an independent decision by Albertsons to return value to its shareholders."  Ex. G, at 65-74 (Tr. of Nov. 8, 2022 Hearing), ECF No. 42-10.  It also determined that there was "insufficient evidence that Albertsons will not be able to effectively compete, or that [payment of the Special Dividend] will otherwise restrain trade," citing Albertsons' strong revenues and excess cash flow and significant sources of

liquidity.  *Id.* at 69-71.  Given that D.C. Plaintiffs had "not established that payment of the preclosing dividend is likely to result in a lessening of competition," the court also concluded that D.C. Plaintiffs had "failed to satisfy their burden of proof" as to irreparable harm.  *Id.* at 72-73.  Further, the Court concluded that the TRO "would harm Albertsons" and "at least certain shareholders," such that the balance of equities did not favor granting a TRO.  *Id.* at 73.  Finally, the Court held that D.C. Plaintiffs "failed to show that it is in the public interest to enter a temporary restraining order."  *Id.*

- On December 12, 2022, the same court denied the D.C. Plaintiffs' request for a preliminary injunction, again finding that they failed to show a likelihood of success on the merits or irreparable harm.  *District of Columbia v. The Kroger Co.*, No. 1:22-cv-03357 (CJN), 2022 WL 18911128 (D.D.C. Dec. 12, 2023).  Two days later, the court denied the D.C. Plaintiffs' request for an injunction pending appeal, stating the "claims have substantial weaknesses" and that the "other three factors do not 'tip sharply in Plaintiffs' favor.'"  *District of Columbia v. The Kroger Co.*, No. 1:22-cv-03357 (CJN), 2022 WL 18910855 (D.D.C. Dec. 14, 2023).

- On December 20, 2022, the U.S. Court of Appeals for the District of Columbia denied the D.C. Plaintiffs' motion for an injunction pending appeal and an administrative stay because the D.C. Plaintiffs had "not satisfied the requirements for an injunction pending appeal."  Ex. H (D.C. Cir. 12/20/22 Order Denying Injunction Pending Appeal), ECF No. 42-11.

- Washington initially obtained a TRO enjoining payment of the Special Dividend.  However, on December 9, 2022, the Washington Superior Court denied Washington's motion for a preliminary injunction after a full-day evidentiary hearing which included over five hours of testimony from three witnesses: Gary Millerchip, Kroger's CFO; Sharon McCollam, Albertsons' President and CFO; and Professor David Smith, a corporate finance expert.  The court concluded that Washington "failed to establish the factors necessary for the issuance of a preliminary injunction."  Ex. I (Wa. Super. Ct. 12/9/22 Order), ECF No. 42-12.  On the merits, the court found that Washington failed to show either an agreement between Kroger and Albertsons to issue the Special Dividend or that payment of the Special Dividend would harm Albertsons' ability to compete.  *Id.*  As to the remaining factors, the court concluded that "[c]onsidering equity, including the balance of the relative interests of the parties and the interests of the public, does not warrant entry of a preliminary injunction."  *Id.*  Nevertheless, the court extended the TRO to allow the State of Washington the opportunity to seek appellate review.  *Id.*

- On December 16, 2022, a Washington Supreme Court Commissioner extended the TRO until further order of the court, but noted Washington did "not make a compelling case" that it would prevail on its claims.  Ex. J (Wa. Supreme Ct. 12/16/22 Order), ECF No. 42-13.  On January 17, 2023, the Washington Supreme

Court denied review of the trial court's decision and terminated the TRO.  Ex. K (Wa. Supreme Ct. 1/17/23 Order), ECF No. 42-14.

**D.      Albertsons Issues the Special Dividend and the State AGs Voluntarily Dismiss Their Claims.**

With the Washington TRO lifted, on January 20, 2023, Albertsons paid the Special Dividend to its shareholders of record as of the close of business on October 24, 2022.  Ex. B, at 3.  Washington filed a motion to voluntarily dismiss its claims, which was granted on February 1, 2023.  Ex. L (Wa. 2/1/23 Order of Dismissal), ECF No. 42-15.  And, after the Court of Appeals for the District of Columbia dismissed the D.C. Plaintiffs' appeal of the denial of their motion for preliminary injunction as moot, *District of Columbia v. Kroger Co.*, No. 22-7168, 2023 WL 2356015 (D.C. Cir. Feb. 23, 2023), the D.C. Plaintiffs voluntarily dismissed their claims on February 24, 2023.  Ex. M (D.C. Plaintiffs' 2/24/23 Notice of Dismissal), ECF No. 42-16.

**E.      Plaintiffs File Their Complaint and Move for a Preliminary Injunction.**

Approximately two weeks after Albertsons issued the Special Dividend, on February 2, 2023, Plaintiffs filed a Complaint against Albertsons, Kroger and Cerberus Capital Management, L.P., ("Cerberus") seeking to "[p]ermanently enjoin[] Albertsons from making a Special Dividend to the consortium of private equity entities led by Cerberus."  Compl. at 30.  On March 4, 2023, Counsel for Plaintiffs notified counsel for Albertsons and Kroger that they intended to move for a preliminary injunction in this case.  Hassi Decl. ¶ 4.  Counsel for Albertsons responded on March 6, 2023, noting that courts in both Washington, D.C. and Washington State had already declined to enjoin payment of the Special Dividend, and that the D.C. Circuit had already determined that a pending appeal of the denial of the D.C. Plaintiffs' motion to enjoin the Special Dividend was moot because the Special Dividend had already been paid.  *Id.*  Plaintiffs did not respond, *id.*, and nearly three weeks later on March 24, 2023 filed a motion for a preliminary injunction*, see generally* Plaintiffs' Motion for a Preliminary Injunction (hereinafter, "Mot."), ECF No. 28.  Albertsons filed a notice of joinder in Kroger's Motion to Dismiss as to

Count I of the Complaint, ECF No. 44, and separately filed a Motion to Dismiss Count II of the Complaint on April 12, ECF No. 42.

## ARGUMENT

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1064 (N.D. Cal. 2015) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). It is "never awarded as of right," and Plaintiffs carry a heavy burden to show they are entitled to such extraordinary relief. *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020). Plaintiffs' burden is particularly high where—as here— they seek a mandatory injunction, which is "not granted unless extreme or very serious damage will result" or where "compensation in damages" would suffice. *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022). To win a preliminary injunction, Plaintiffs "must establish (1) that [they are] likely to succeed on the merits, (2) that [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in [their] favor, and (4) that . . . [a] [preliminary] injunction is in the public interest." *Turchet v. Mayfield*, No. 20-CV-01104-VC, 2020 WL 1126779, at *1 (N.D. Cal. 2020) (Chhabria, J.) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (same). Failure to prove any of these elements is fatal to their motion.[3] Here, Plaintiffs cannot carry their burden to establish *any* of the elements required for the preliminary injunctive relief they seek.

---

[3] In applying the *Winters* factors, the Ninth Circuit has at times alternatively applied a "sliding scale" approach, noting that a "stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies*, 632 F.3d at 1131. Under this approach, a plaintiff may prevail on a motion for a preliminary injunction if she shows "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134-35 (quoting *Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). In any event, Plaintiffs' PI Motion fails under either standard.

### A.       Plaintiffs' Motion to Enjoin Payment of the Special Dividend Is Moot.

As an initial matter, Plaintiffs' PI Motion should be denied as moot.  It was filed on March 23, 2023, more than two months after Albertsons paid the Special Dividend on January 20, 2023.  *See generally* Mot.; Ex. B, at 3.  And the only relief Plaintiffs seek against Albertsons is an order enjoining that payment while Plaintiffs conduct discovery and proceed to trial.  Mot. at 25.  Given Albertsons has *already* paid the Special Dividend, this Court cannot grant the relief Plaintiffs seek against Albertsons, and Plaintiffs' PI Motion must be denied.  *See, e.g.*, *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997), *as amended* (Sept. 16, 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."); *Nevada v. United States*, 783 F. App'x 700, 703 (9th Cir. 2019) (holding that a request to enjoin a particular shipment was moot because "that shipment took place before this lawsuit was even filed"); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016) (holding that the appeal of a preliminary injunction was moot where the injunction had previously expired).

The D.C. Circuit reached the same conclusion with respect to an identical claim for relief. *See District of Columbia*, 2023 WL 2356015, at *1.  Like Plaintiffs here, the D.C. Plaintiffs sought a preliminary injunction to enjoin payment of the Special Dividend on the basis that it violated the Sherman Act.  Ex. N (Mem. of Law in Support of Mot. for PI), ECF No. 42-17.  The district court denied the motion on the merits, *see District of Columbia*, 2022 WL 18911128, and the D.C. Circuit dismissed the appeal as moot because payment of the Special Dividend made it "impossible for [this court] to grant effectual relief to the prevailing party."  *District of Columbia*, 2023 WL 2356015, at *1 (quoting *Planned Parenthood of Wisc., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (modifications in original)).

Plaintiffs have offered no reason why their PI Motion, filed over two months after the Special Dividend was paid and more than a month after the D.C. Circuit's decision, warrants a different result.  Plaintiffs knew that multiple courts had already decided nearly-identical PI motions, that Albertsons had already issued the Special Dividend and that seeking to enjoin the

Special Dividend would thus be moot.  Hassi Decl. ¶ 4.  Yet they have persisted in asking this Court to decide whether a unilaterally-declared dividend that has already been paid *should* have been enjoined *if* this motion had been brought earlier.  The Court need not undertake this unnecessary and counterfactual inquiry, and the PI Motion should be denied on this basis alone.

**B.**     **Plaintiffs Are Not Entitled to a Preliminary Injunction.**

In any event, Plaintiffs are not entitled to the requested injunctive relief because they cannot show they are likely to succeed on the merits of their Sherman Act claim, that they are at risk of irreparable harm in the absence of an injunction, or that the balance of private and public interests weigh in their favor.  *Turchet*, 2020 WL 1126779, at *1.  As noted above, multiple courts have already considered, and rejected, nearly identical requests for injunctive relief on the basis of a robust evidentiary record, and Plaintiffs offer no basis to depart from those well-reasoned decisions.

**1.**     Plaintiffs Are Not Likely to Succeed on the Merits of Their Sherman Act Claim.

Plaintiffs have not shown that they are likely to succeed on the merits of their Sherman Act claim.  The Supreme Court has long construed Section 1 of the Sherman Act to prohibit only *unreasonable* restraints of trade.  *See, e.g., Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018).  To show that the Special Dividend violated Section 1 of the Sherman Act, Plaintiffs must prove (1) "the existence of an agreement" to pay the Special Dividend, and (2) that "the agreement was an *unreasonable* restraint of trade." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020) (quoting *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016)) (citations and internal quotation marks omitted).  Plaintiffs' motion fails to raise even a "serious question[] on the merits" and certainly does not show that they are likely to succeed in proving either element.[4]  *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 832

---

[4] Indeed, Plaintiffs have not even plausibly alleged either element of a Sherman Act violation. *See* Albertsons Motion to Dismiss, at 7-12, ECF No. 42.  Plaintiffs' claims are further unlikely to succeed given their lack of antitrust standing; Plaintiffs have not and cannot demonstrate a direct

(N.D. Cal. 2020).

(a)     *Plaintiffs Cannot Show an Unlawful Agreement.*

Plaintiffs cannot prove the existence of an unlawful agreement.   To establish an agreement actionable under Section 1, Plaintiffs must prove that Albertsons "had a conscious commitment to a common scheme designed to achieve an *unlawful* objective." *Monsanto Co. v. Spray-Rite Serv. Corp*., 465 U.S. 752, 764 (1984) (emphasis added). "Independent action is not proscribed," *id.* at 761; instead, "[t]here must be evidence that tends to exclude the possibility that [defendants] were acting independently," *id.* at 764; *see also In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig*., 906 F.2d 432, 438 (9th Cir. 1990) ("[P]laintiff[s] must come forward with sufficiently unambiguous evidence that tends to exclude the possibility that the defendants were acting lawfully." (cleaned up)).

As such, Plaintiffs must provide sufficient evidence of an illegal agreement to support their PI Motion.  *See Epic Games, Inc.*, 493 F. Supp. 3d at 833.  They have not, and cannot, meet this burden.   As in their Complaint, Plaintiffs rest their PI Motion on their conclusory, and wholly speculative, assertion that Albertsons and Kroger agreed and "conspired with Defendant Cerberus" to issue a Special Dividend.  Mot. at 22; *see also* Compl. at ¶ 32.  But Plaintiffs offer no evidence of a conspiracy among Albertsons, Kroger and Cerberus to pay the Special Dividend, nor do they offer any evidence of such an agreement between Albertsons and Kroger. Plaintiffs rely only on the Merger Agreement between Albertsons and Kroger, to which Cerberus was not a party, and on a vote by Albertsons' shareholders to authorize the Special Dividend consistent with Delaware law.  Mot. at 22-23.  Neither is evidence of an unlawful conspiracy and Plaintiffs' abject speculation is not enough to show that Albertsons' independent decision to

---

link connecting Albertsons' issuance of the dividend with any harm they allege to have suffered. *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 458 (9th Cir. 2021) (holding that the alleged injury must directly flow from the allegedly anticompetitive conduct for antitrust standing (citation omitted)), *cert. denied sub nom. City of Oakland, California v. Oakland Raiders*, 143 S. Ct. 84 (2022).  Moreover, the alleged injury itself—any incidental impacts to consumers following the dividend issuance—is not a "loss or damage of the type the antitrust laws were designed to prevent."  *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (citation omitted).

return capital to its shareholders is the product of an agreement or conspiracy with *anyone*. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015).

To be clear, while the Merger Agreement evidences an agreement *to merge*, it does not reflect an agreement to issue the Special Dividend. The Merger Agreement references the possibility of a pre-closing dividend only for the limited purpose of (a) clarifying that Albertsons may issue a pre-closing dividend if it independently chose to do so, and (b) accounting for the impact any such dividend would have on the merger consideration to be paid. *See* Ex. D, at Exhibit 2.1, § 1.1 (definition of "Common Merger Consideration"); *id.* § 6.1(e); *see also* Ex. P, ¶¶ 22-24. The Merger is neither dependent on, nor driven by, payment of a pre-closing dividend. Ex. P, ¶¶ 25-28. To the contrary, the Merger Agreement provides that whether or not Albertsons paid a pre-closing dividend, Kroger and Albertsons would be obligated to consummate the Merger.[5] The Merger Agreement simply does not "exclude the possibility" that Albertsons unilaterally decided to return $4 billion in capital to its shareholders. *Monsanto Co.*, 465 U.S. at 764.

Plaintiffs also fail to provide any evidentiary basis to support their contention that any agreement was "designed to achieve an unlawful objective." *See id*. Merely signing a merger agreement is not an unlawful objective and cannot, without more, support a Section 1 claim; otherwise every merger agreement would result in antitrust liability. Similarly, it is not unlawful for a company to return excess capital to its shareholders in accordance with applicable state law. Plaintiffs' conclusory assertion that Albertsons conspired with Kroger and/or Cerberus to place Albertsons at a financial disadvantage, Mot. at 22-23, is not only contradicted by Albertsons' financial strength both before and after payment of the Special Dividend, *infra* at 12-14, but also defies common sense. Kroger would not pay in excess of $20 billion for a competitively

---

[5] Consummation of the Merger depends solely on the satisfaction of the conditions to closing contained in Article VII of the Merger Agreement. Ex. D, at Exhibit 2.1, §§ 7.1-7.3. These conditions to closing are neither dependent on nor related to the Special Dividend. Ex. P, ¶ 25.

weakened Albertsons.  *See* Ex. P, ¶¶ 26-28, 57.  Nor would Albertsons choose to harm itself given the likelihood of a lengthy regulatory review.  *Id.* ¶¶ 57-58.  And Cerberus would not purposefully sabotage a company in which it retains a significant equity interest.

Every court that has considered similar arguments—including with the benefit of in-person testimony, extensive factual declarations, and expert reports—has found there is no basis to conclude that Albertsons and Kroger entered into an agreement to pay the Special Dividend, much less participated in an unlawful conspiracy to restrain trade through payment of such a dividend.  *See, e.g.*, Ex. G, at 65-74; Ex. I, ¶ 4; *District of Columbia*, 2022 WL 18911128.  Plaintiffs offer no facts or evidence here that suggest otherwise.

(b)    <em>Plaintiffs Cannot Show an Unreasonable Restraint of Trade.</em>

Plaintiffs also are not likely to prove that the Special Dividend is an *unreasonable* restraint of trade or commerce, *i.e.* that it will have an adverse impact on competition.  *See NCAA v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 104 (1984) ("[E]ssential inquiry" is what "impact on competition" the alleged restraint has).  "To determine whether a practice unreasonably restrains trade" courts typically apply either a "rule of reason" analysis, or in circumstances not present here, a *per se* rule of illegality, or a "quick look" analysis.  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410 (9th Cir. 1991); *see also California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1132-39 (9th Cir. 2011).  The "rule of reason" is the presumptive analysis and applies to this case.[6]  Under this analysis, courts "must analyze the degree of harm

---

[6] Plaintiffs do not attempt to argue that this court should engage in a *per se* or "quick look" analysis, nor could they.  The Supreme Court has directed that courts "take special care not to deploy these condemnatory tools [the *per se* rule or the quick look analysis] until we have amassed considerable experience with the type of restraint at issue and can predict with confidence that it would be invalidated in all or almost all instances."  *NCAA v. Alston*, 141 S. Ct. 2141, 2156 (2021) (internal quotation marks omitted).  Given that dividend payments are a routine business activity, there is no basis to conclude Albertsons' payment of the Special Dividend is a *per se* violation or subject to quick look review.  *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 151 (9th Cir. 1989) (explaining that the *per se* rule applies "where experience has established that anti-competitive consequences regularly flow from the condemned practice").

to competition along with any justifications or pro-competitive effects to determine whether the practice is unreasonable on balance." *Bhan*, 929 F.2d at 1410 (internal citation omitted). "The focus is on the actual effects that the challenged restraint has had on competition in a relevant market."[7]  *Id.*   Under a "rule of reason" analysis, Plaintiffs cannot show that the Special Dividend will have an adverse impact on "competition in a relevant market." *Id.* at 1404, 1414.

*First*, Plaintiffs make no effort to define the relevant antitrust market, as required under the Sherman Act. *Epic Games, Inc.*, 493 F. Supp. 3d at 834 (citing, *inter alia*, *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997)); *see also Am. Express Co.*, 138 S. Ct. at 2285 ("Without the definition of the market there is no way to measure the defendant's ability to lessen or destroy competition." (cleaned up)).  As explained in Kroger's Opposition to Plaintiffs' Motion for a Preliminary Injunction, which Albertsons has joined, Plaintiffs' alleged geographic markets are facially implausible (e.g., a nationwide or state- or city-wide geographic market for supermarkets). *See* Defendant The Kroger Co.'s Opposition to Plaintiffs' Motion for a Preliminary Injunction, at 12-15, ECF No. 53.  Plaintiffs have not asserted a different relevant market for their Sherman Act claim, which therefore fails for the same reasons. *Epic Games, Inc.*, 493 F. Supp. 3d at 836-37 (denying a preliminary injunction where the "record does not yet establish how the 'relevant market' should be defined").

*Second*, Plaintiffs offer no evidence to show that Albertsons' payment of the Special Dividend will result in an adverse impact on competition.  To prove harm to competition, Plaintiffs must offer "direct" evidence of actual competitive harm or "indirect" evidence: "proof of market power plus some evidence that the challenged restraint harms competition." *Am. Express Co.*, 138 S. Ct. at 2284.  In their PI Motion, Plaintiffs seem to rest their assertion of harm on the theory that the Special Dividend payment will strip Albertsons of cash and access to credit and therefore will:  (1) compel a merger with Kroger, Mot. at 22, and (2) force Albertsons

---

[7] Plaintiffs' arguments regarding the anticompetitive effects of the *proposed merger* are irrelevant to the evaluation of the Special Dividend, and Plaintiffs provide no reasoned basis to conflate the two. *See* Mot. at 22-23.

ALBERTSONS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

to raise prices while cutting advertising, staff, and reinvestment.  Mot. at 23.  This allegation is speculative, unsupported, and belied by publicly-available evidence, including the sworn testimony of Albertsons' CFO, expert reports, and Albertsons' financial statements as well as other SEC filings.

Indeed, contemporaneous with its declaration of the Special Dividend, on October 19, 2022, Albertsons reported in a public SEC filing that its cash flows were more than sufficient to meet its projected liquidity needs even after payment of the Special Dividend.  Ex. O, at 31-32 (ACI 10/19/22 10-Q), ECF No. 42-18.  Albertsons' CFO, Sharon McCollam, similarly testified that Albertsons clearly could easily afford to pay a dividend of $4 billion and it was "not a close call."  Ex. P, ¶ 30.  Ms. McCollam explained that Albertsons would fund the Special Dividend with $2.5 billion in excess cash and approximately $1.4 billion drawn from its asset-based lending facility.  *Id.* ¶ 44.  Ms. McCollam further testified that she was very confident that Albertsons' remaining $3 billion in available liquidity ($500 million in cash and $2.5 billion under its asset-based lending facility)—combined with Albertsons' revenues and excess cash flow—would be more than sufficient to meet the Company's future capital needs.  *Id.* ¶¶ 9-10, 30, 45.  Professor David Smith, a corporate finance expert, testified that "Albertsons could easily afford to pay the Special Dividend and that payment of such would not prevent it from remaining competitive or otherwise harm the Company."  Ex. Q, ¶¶ 10, 15 (Smith Decl.).

Multiple courts credited Ms. McCollam's and Professor Smith's testimony in assessing similar claims that paying the Special Dividend would somehow harm Albertsons and concluded that Albertsons had adequate cash flows and liquidity and would not be harmed by or unable to compete as a result of payment of the Special Dividend.  *See* Ex. G at 65-74; Ex. H; Ex. I; Ex. K; *District of Columbia*, 2022 WL 18911128; *District of Columbia*, 2022 WL 18910855.  And Albertsons' most recent SEC filing on April 11, 2023 confirms Albertsons' strong financial performance for fiscal year 2022—including record Adjusted EBITDA of over $4.67 billion— and continued financial strength notwithstanding Albertsons' payment of the nearly $4 billion

Special Dividend on January 20, 2023.[8]  Ex. B, at 1, 3.  Plaintiffs' conclusory assertion that the Special Dividend has or will impede Albertsons' ability to effectively compete in the highly competitive markets in which it operates is utterly implausible in light of Albertsons' financial performance.

The mere fact that Albertsons will have less cash on hand and more debt than it otherwise would absent payment of the Special Dividend does not by itself suggest much less prove "harm" to competition.  If that were so, any expenditure, and any dividend payment, would "harm" competition.  Moreover, the alleged consequences Plaintiffs speculate *might* result (e.g., Albertsons will be unable to "advertise, promote, or increase its services, refurbish, or reorganize stores" and ultimately will be forced to merge with Kroger, Mot. at 22-23) are not facts, but rather hyperbolic and baseless supposition and insufficient to establish an entitlement to a preliminary injunction, particularly where they are flatly contradicted by the evidence.

In sum, Plaintiffs' wild speculation that Albertsons' payment of the Special Dividend will harm competition in any relevant market is unsupported and disproven by extensive evidence cited by multiple courts.  Plaintiffs' have no likelihood of success on Count II of their Complaint, which is fatal to their PI Motion.

### 2.    Plaintiffs Do Not Face a Threat of Irreparable Harm.

The PI Motion should also be denied because Plaintiffs cannot meet their burden to show that irreparable harm "is *likely*, not just possible."  *Alliance for the Wild Rockies*, 632 F.3d at 1131 (citing *Winter*, 555 U.S. at 21); *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) ("Under any formulation of the test, the moving party must demonstrate a *significant threat* of irreparable injury." (emphasis added)); *see also Snyder*, 28 F.4th at 111 (mandatory injunctions "are not granted unless extreme or very serious damage will result" (internal citation and quotation marks omitted)).

---

[8] While the Special Dividend was paid on January 20, 2023, the money had been unavailable to Albertsons since November 7, 2022, when the Special Dividend became a due and owing liability of Albertsons.  Ex. R, ¶¶ 12-13 (McCollam Dec. Decl.); *see also* Ex. P, ¶ 44.

Plaintiffs' claim for irreparable harm seems to rest on their contention that payment of the Special Dividend would harm Albertsons' ability to compete with other grocers, thus lessening competition.  Mot. at 23-24.  But Plaintiffs ignore the plain fact that the Special Dividend was paid more than two months *before* they filed their PI Motion and thus the alleged threat of irreparable harm that they claim requires this Court's extraordinary intervention has already come and gone.  Moreover, Plaintiffs do not argue that Albertsons has, in fact, since been unable to compete with other grocers or that Plaintiffs have suffered any harm as a result of the Special Dividend payment.  Nor could they in light of Albertsons' continued strong financial performance.  *See* Ex. B, at 1.  Finally, Plaintiffs' suggestion that enjoining payment of the Special Dividend is necessary to avoid purported irreparable harm that may arise *from the Merger* is a red herring; the potential effects of the Merger are wholly irrelevant to any assessment of whether Albertsons' payment of the Special Dividend poses irreparable harm to competition.  *See* Mot. at 24.

### 3.   The Balance of Equities and Public Interest Do Not Support a Preliminary Injunction.

Plaintiffs likewise cannot show that the equities or public interest favor the injunctive relief sought.  As Plaintiffs acknowledge, a preliminary injunction is typically intended to preserve the status quo pending a trial on the merits.  Mot. at 24-25; *see also, e.g.*, *Boardman v. Pacific Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016).  Here the Special Dividend has already been paid; there is no status quo to preserve as to Albertsons' payment of the Special Dividend.

Additionally, both the equities and relevant public interests weigh heavily against the extraordinary relief that Plaintiffs seek.  Indeed, if granted, the requested relief would injure Albertsons and its shareholders by requiring Albertsons to somehow unwind a dividend payment that was made more than two months ago to thousands of shareholders.  Plaintiffs also have no interest in blocking or reversing payment of a dividend already paid; they have not shown they are Albertsons shareholders and, as noted above, have not shown they have suffered any harm

personally or as members of the general public due to decreased competition. Finally, a preliminary injunction would serve no public interest because the dividend has already been paid with no ill effect on competition, and further proceedings (including an eventual trial on the merits) would waste the limited court resources.

### C.    Albertsons Will Be Harmed If the Proposed Merger is Enjoined.

Separately, Albertsons, its shareholders and the public will be harmed by an order enjoining the proposed Merger with Kroger pursuant to Count I of the Complaint. In particular, an order enjoining the Merger will deprive Albertsons and its shareholders of the approximately $20 billion in merger consideration that will be due under the Merger Agreement, deprive Albertsons of a vibrant merger partner that will make its business more competitive, and deprive the public of a merged entity that will be able to provide new and better services across a wider geographic area and better compete with offerings from other large and online retailers. These private and public interests weigh heavily against Plaintiffs' motion to enjoin the Merger, which should be denied for the reasons stated in Kroger's Opposition brief.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: April 20, 2023                          Respectfully submitted,

By:  */s/ Edward D. Hassi*
Edward D. Hassi (*pro hac vice*)

John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com

**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

ALBERTSONS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 20, 2023, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1.  The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.


Dated:  April 20, 2023


*/s/ Edward D. Hassi*
Edward D. Hassi (*pro hac vice*)