Russell P. Cohen (SBN 213105)
Joseph D. Trujillo (SBN 305170)
DECHERT LLP
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

Andrew J. Levander (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

Thomas J. Miller (admitted *pro hac vice*)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222

*Attorneys for Defendant Cerberus Capital Management, L.P.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen, *et al.*,<br><br>        Plaintiffs,<br><br>*v.*<br><br>Kroger Co., Albertsons Companies, Inc., and Cerberus Capital Management, L.P.,<br><br>        Defendants. | Case No.: 23-cv-00459-VC<br><br>**DEFENDANT CERBERUS CAPITAL MANAGEMENT, L.P.'s MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: May 18, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: Courtroom 5 – 17th Floor |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL BACKGROUND ................................................................... 3

ARGUMENT ....................................................................................... 4

I.    PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY ARE NOT ENTITLED TO ANY RELIEF ................................................................ 4

    A.    PLAINTIFFS' REQUEST TO ENJOIN PAYMENT OF THE SPECIAL DIVIDEND IS MOOT ................................................................ 4

    B.    DISGORGEMENT IS NOT AN AVAILABLE REMEDY FOR PLAINTIFFS UNDER SECTION 16 ................................................ 5

II.    PLAINTIFFS CANNOT MEET THEIR HEAVY BURDEN TO SHOW THEY ARE ENTITLED TO A MANDATORY INJUNCTION ................................. 7

    A.    PLAINTIFFS OFFER NO EVIDENCE SHOWING A LIKELIHOOD THEY WILL SUCCEED ON THEIR IMPLAUSIBLE SECTION 1 CLAIM ................................................................................. 8

        1.    NO EVIDENCE OF AGREEMENT ........................................ 8

        2.    NO EVIDENCE OF THREATENED LOSS OR DAMAGE ................. 11

        3.    NO ANTITRUST STANDING ............................................... 12

    B.    PLAINTIFFS CANNOT SHOW THEY WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ................................................ 14

    C.    THE BALANCE OF EQUITIES COUNSEL AGAINST GRANTING AN INJUNCTION. ............................................................... 15

    D.    PLAINTIFFS SHOULD POST A BOND IN THE EVENT AN INJUNCTION ISSUES ................................................................ 16

III.    CONCLUSION ........................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Rivers v. Nat'l Marine Fisheries Serv.,*
126 F.3d 1118 (9th Cir. 1997) ......................................................................5

*American Ad Mgmt., Inc. v. Gen. Tel. Co.,*
190 F.3d 1051 (9th Cir. 1999) ....................................................................14

*American Tobacco Co. v. United States.,*
328 U.S. 781 (1946)......................................................................................9

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
479 U.S. 104 (1986)................................................................................12, 13

*City of Oakland v. Oakland Raiders,*
20 F.4th 441, 458 (9th Cir. 2021), *cert. denied,* 143 S. Ct. 84 (2022)..............12, 13

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.,*
771 F. Supp. 2d 1195 (N.D. Cal. 2011) ......................................................6

*District of Columbia. v. Kroger Co.,*
No. 1:22-cv-3357, 2022 WL 18910855 (D.D.C. Dec. 14, 2022) ...........10

*District of Columbia v. Kroger Co.,*
No. 22-3357, 2022 WL 18911128 (D.D.C. Dec. 13, 2022)....................12

*District of Columbia v. Kroger Co.,*
No. 22-7168, 2023 WL 2356015 (D.C. Cir. Feb. 23, 2023)....................4

*Earth Island Inst. v. Carlton,*
626 F.3d 462 (9th Cir. 2010) ....................................................................16

*Epic Games, Inc. v. Apple Inc.,*
493 F. Supp. 3d 817 (N.D. Cal. 2020) ......................................................8

*Garcia v. Google, Inc.,*
786 F.3d 733 (9th Cir. 2015) (en banc) ....................................................7

*HCI Techs., Inc. v. Avaya, Inc.,*
241 F. App'x 115 (4th Cir. 2007) ............................................................13

*Honey Bum, LLC v. Fashion Nova, Inc.,*
63 F.4th 813 (9th Cir. 2023) ..................................................................9, 10

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    No. C-09-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ................................6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ...............................................13

*In re Google, Inc. S'holder Derivative Litig.*,
    No. 11-4248, 2012 WL 1611064 (N.D. Cal. May 8, 2012)................................6

*In re Multidistrict Vehicle Air Pollution*,
    538 F.2d 231 (9th Cir. 1976) ....................................................5, 6

*Illumina, Inc. v. Qiagen, N.V.*,
    207 F. Supp. 3d 1081 (N.D. Cal. 2016) .............................................17

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) ......................................................6

*Kelsey K. v. NFL Enters., LLC*,
    254 F. Supp. 3d 1140 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir.
    2018) ...............................................................................9

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ..................................................11, 12

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) ......................................................6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ......................................................14

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)................................................................8

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*,
    600 F.3d 1104 (9th Cir. 2010) ......................................................7

*Pennsylvania Sugar Refinery v. American Sugar Refining Co.*,
    166 F. 254 (2d Cir. 1908)..........................................................14

*Seven Words LLC v. Network Sols.*,
    260 F.3d 1089 (9th Cir. 2001) ......................................................5

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .....................................................15

*Taleff v. Sw. Airlines Co.*,
    554 F. App'x 598 (9th Cir. 2014) ..................................................16

*The Jeanery, Inc. v. James Jeans, Inc.*,
  849 F.2d 1148 (9th Cir. 1988) ...................................................................8

*Time Warner Ent. Co. v. F.C.C.*,
  810 F. Supp. 1302 (D.D.C. 1992) ............................................................15

*Washington v. Albertsons Cos.*,
  No. 22-2-18046-3, 2022 WL 18587146 (Wash. Super. Ct. Dec. 9, 2022) ........................9, 10

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..........................................................................7, 14, 15

*Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*,
  No. 8:19-cv-1895, 2021 WL 4948151 (M.D. Fla. Oct. 18, 2021) ..........................13

**Statutes/Rules**

15 U.S.C. § 26 .............................................................................5, 11

Fed. R. Civ. P. 23.1 .........................................................................6

Fed. R. Civ. P. 65(c) ........................................................................16

Defendant Cerberus Capital Management, L.P. ("Cerberus") submits this memorandum in opposition to Plaintiffs' Motion for a Preliminary Injunction (ECF No. 28) ["PI Motion"].

## PRELIMINARY STATEMENT

Cerberus is an investment advisor that manages funds on behalf of institutional investors, including pension funds, endowments, and others. Plaintiffs' claim for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1"), against Cerberus is a frivolous add-on to their challenge of Kroger's acquisition of Albertsons. It should be dismissed for the reasons set out in Cerberus' Rule 12 motion (*see* ECF No. 48, Memorandum of Points and Authorities in Supp. of Mot. to Dismiss filed by Cerberus [hereinafter ECF No. 48]). Yet in this motion Plaintiffs double-down on the failings in the Complaint by seeking an injunction to prevent payment of a dividend that they know was already paid, or to somehow claw it back. There is no legal basis for a preliminary injunction and no evidence to support such extraordinary relief.[1]

Plaintiffs' motion repackages the same weak sauce of the Complaint. But rather than bolster the motion with evidentiary (or legal) support, Plaintiffs do nothing to meet their much higher burden to obtain preliminary injunctive relief. Plaintiffs' complete lack of supporting evidence contrasts with the overwhelming countervailing evidence refuting their allegations.

To the limited extent Plaintiffs' motion addresses their Section 1 claim at all, most of the discussion is framed as a request to **stop payment** of the Albertsons special dividend. But it is old news that the **dividend was paid two months before this motion was filed**. Indeed, after courts in both Washington, D.C. and Washington state rejected timely efforts to enjoin the special dividend after considering evidence, the D.C. Circuit Court of Appeals vacated an appeal

---

[1] This memorandum is limited to addressing Plaintiffs' claim for preliminary injunctive relief against Cerberus for allegedly violating Section 1 of the Sherman Act (Count II of the Complaint) because Cerberus is not a party to the Kroger-Albertsons merger.

as moot a month before this motion was even filed because the special dividend had been paid. It is inexplicable that Plaintiffs are continuing to burden the Court and Defendants by seeking to enjoin conduct that has already occurred.

Plaintiffs' alternative relief—despite the label—is not in fact a request to "preserve the status quo," PI Motion at 11, but an extraordinary and baseless demand to disrupt the status quo by having Cerberus "disgorge" on behalf of its investors the portion of the dividend received as shareholders of Albertsons. The Court should deny that request as well. Plaintiffs' claim against Cerberus is brought under Section 16 of the Clayton Act, 15 U.S.C. § 26 ("Section 16"), which does not permit disgorgement as a remedy. Without an available remedy under law, Plaintiffs motion must be denied.

As for the injunction factors, Plaintiffs do not come close to meeting their burden let alone satisfying the heightened standard for a mandatory injunction that applies here. First, Plaintiffs offer no evidence to show they are likely to succeed with their speculative Section 1 claim, or that they have antitrust standing to bring the claim at all. Second, Plaintiffs offer no evidence to show that they will be irreparably harmed in any concrete and cognizable way from the dividend Albertsons paid three months ago, let alone that they will suffer "extreme or very serious damage" under the heightened standard for a mandatory injunction. To the contrary, the evidence shows that Albertsons was and remains well-capitalized following the dividend. Third, the balance of equities clearly favors Cerberus because, as an investment firm, it has already distributed the vast majority of the dividend proceeds to third parties, including its investors, lenders, and others in accordance with contractual and other requirements. In short, Plaintiffs have no basis to obtain a mandatory injunction against Cerberus and the Court should deny their motion.

## FACTUAL BACKGROUND

In November 2021, Albertsons commenced a broad-ranging strategic review of its options to return capital to its shareholders. *See* ECF No. 54-2 (November 4, 2022 Declaration of Albertsons CFO Sharon McCollam) [hereinafter McCollam 11/4 Decl.] at ¶¶ 11–13. During that review, Albertsons' Board considered a share repurchase and/or tender offer, including in aggregate amounts in excess of $4 billion, and, later, a sale of the Company accompanied by a special dividend. *See, e.g.*, ECF No. 42-5 at 23–24 (Information Statement filed by Albertsons Companies, Inc. recounting history of special dividend). Ultimately, the Board settled on the issuance of a special dividend, which it intended to issue whether or not Kroger ever acquired Albertsons. *See* McCollam 11/4 Decl. at ¶ 21. Albertsons decided on October 13, 2022 to pay a $6.85 per share special dividend to its shareholders with an original payment date on November 7, 2022. *Id.* at ¶ 1.

Cerberus[2] is an investment firm. Through its investment funds, it is a long-term shareholder of Albertsons, having first invested in the company more than 15 years ago. *See* attached Declaration of Alex D. Benjamin [hereafter "Cerberus Decl."] ¶ 4. Albertsons became a publicly traded company in 2020. *See id.* ¶ 5. While Cerberus' ownership stake in Albertsons has varied over time, Cerberus held about 28.3% of the shares of Albertsons common stock on the record date of the special dividend. *See id.* As a result, when the special dividend was paid on January 20, 2023, Cerberus received for or on behalf of its funds approximately $1.04 billion. *See id.* ¶ 6. As discussed further below, after Cerberus entities received their pro rata share of

---

[2]  As explained in the attached Declaration of Alex D. Benjamin, Defendant Cerberus is a registered investment advisor while entities managed by Cerberus and/or one or more of its affiliates own Albertsons common stock. For simplicity, this section discusses Cerberus and affiliated entities collectively.

the special dividend, the funds were subsequently distributed according to contractual and other requirements.  *See id.* ¶ 7.

## ARGUMENT

### I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY ARE NOT ENTITLED TO ANY RELIEF

Plaintiffs' motion seeks to stop payment of a dividend that they know has already been paid.  That claim is moot.  They also seek to "disgorge" amounts from Cerberus, but no such relief is available under Section 16, the only authority under which Plaintiffs bring this claim.  Because Plaintiffs are not entitled to any relief on their motion, it is not redressable by this Court.  On that basis alone, their motion should be denied.

#### A. Plaintiffs' Request to Enjoin Payment of the Special Dividend Is Moot

Plaintiffs' motion asks the Court to enjoin payment of Albertsons' special dividend.  *See, e.g.*, PI Motion at 3 ("Payment of this special dividend must be stopped . . . .").  But Albertsons paid the special dividend on January 20, 2023.  *See* Cerberus Decl. ¶ 6.[3]  Indeed, other (timelier) efforts to enjoin the special dividend have already been rejected and deemed moot for this reason.  *See, e.g.*, *District of Columbia v. Kroger Co*., No. 22-7168, 2023 WL 2356015, at *1 (D.C. Cir. Feb. 23, 2023) (dismissing appeal of injunction denial as moot because special dividend was already paid).[4]  To the extent Plaintiffs' motion inexplicably seeks to prevent

---

[3]  Albertsons is a publicly-traded company and the timing of the dividend payment was well-publicized.  *See* https://www.albertsonscompanies.com/newsroom/press-releases/news-details/2023/Albertsons-Companies-Announces-Special-Dividend-Payment-Date/default.aspx (Jan. 19, 2023 press release announcing payment date for special dividend).

[4]  As described in Defendants' motions to dismiss and supporting papers, multiple courts have already rejected efforts by several state attorneys general to enjoin payment of the special dividend.  *See* ECF No. 40 at 3 (Memorandum of Def. Kroger Co. in Supp. of Mot. to Dismiss); ECF No. 42 at 3–5 (Memorandum of Def. Albertsons Co. in Supp. of Mot. to Dismiss); ECF No.

Albertsons from paying the special dividend, the request should be denied as moot. *American Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."); *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1095 (9th Cir. 2001) ("'where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot' . . . and it must be dismissed.") (quoting *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978)).

**B.** **Disgorgement Is Not an Available Remedy for Plaintiffs Under Section 16**

Section 16 provides that a private party may "sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. Relief under Section 16 is limited to addressing ongoing or future conduct, not past or completed conduct. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) (emphasis added) ("[Section 16] limits the equitable remedies available under its terms to those against 'threatened loss or damage.' Here, the 'reimbursement' would be awarded for the loss which has already occurred, at the time the car owner paid to have his vehicle retrofitted; it would ***not*** be relief 'against threatened loss or damage.'") (emphasis added). By the same token, Section 16's remedy provision does not permit a private litigant to seek an equitable remedy to redress conduct that has already occurred. *See id*. ("Thus, whether payments which appellants seek for some of their citizens is 'equitable' or not is of no consequence ***because [Section] 16 does not allow the claimed relief for past loss***.") (emphasis added).

---

43 (Albertsons Req. for Judicial Notice in Supp. of Mot. to Dismiss); ECF No. 48 at 4–6 (Memorandum of Def. Cerberus in Supp. of Mot. to Dismiss).

Plaintiffs' request for an injunction requiring Cerberus to "disgorge" the portion of the special dividend received by or on behalf of its funds is not authorized under Section 16 because it seeks "reimbursement" for a payment that has already occurred.  *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d at 234 (affirming district court's finding that prayer for restitution of past loss is not a cognizable remedy under Section 16); *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-09-5944, 2016 WL 3648478, at *13 (N.D. Cal. July 7, 2016) ("Objectors cite no case authorizing a federal court to order disgorgement or restitution in a private plaintiff antitrust case . . . There is good reason for this failure: the Ninth Circuit disallows private use of Section 16 to pursue disgorgement.") (citation omitted).  It does not matter whether the disgorgement is in favor of the plaintiff or any other party—it is unavailable.[5]  *See Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) ("Disgorgement is a form of retrospective equitable relief. . . . Such relief is unavailable under Section 16.") (citations omitted).

Because Plaintiffs' alternative request for disgorgement is unavailable as a matter of law and their primary request to enjoin the dividend is moot (*see* Section I.A. above), Plaintiffs' alleged harms are not redressable by any relief within the "district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("[E]ven where a plaintiff requests relief that would redress her claimed

---

[5]  As grocery store customers—not shareholders—Plaintiffs cannot seek relief on behalf of Albertsons for any imagined harm it has suffered.  Only shareholders can bring derivative suits. *See* Fed. R. Civ. P. 23.1 (requiring that a derivative suit "allege that the plaintiff was a shareholder or member at the time of the transaction complained of."); *see In re Google, Inc. S'holder Derivative Litig.,* No. 11-4248, 2012 WL 1611064, at *7, *10-11 (N.D. Cal. May 8, 2012) (dismissing complaint for failure to comply with Rule 23.1 because plaintiffs did not plead that they owned shares at the time of the complained-of transaction).

injury, there is no redressability if a federal court lacks the power to issue such relief.").

Accordingly, the Court should deny Plaintiffs' motion.

## II. PLAINTIFFS CANNOT MEET THEIR HEAVY BURDEN TO SHOW THEY ARE ENTITLED TO A MANDATORY INJUNCTION

Plaintiffs' inability to obtain relief is dispositive. But there are other reasons why Plaintiffs' motion must fail. A plaintiff seeking a preliminary injunction must establish: (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).[6] While Plaintiffs repeatedly frame their motion as an effort to "preserve the status quo," (*e.g.*, PI Motion at 6, 11, 24, 25), Plaintiffs are in fact seeking to upend the status quo by requesting that Cerberus "disgorge" funds that it received by or on behalf of its funds before this case was filed.[7] As a result, Plaintiffs are seeking a mandatory injunction, for which their burden is "doubly demanding." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Here, Plaintiffs have no evidence supporting any of these injunction factors.

---

[6] Plaintiffs acknowledge that their requested relief is controlled by the likelihood of success on the merits standard. PI Motion at 11. Despite that, Plaintiffs seemingly nod to the existence of "serious questions" presented by their motion. *See, e.g., id.* at 13. Whatever the viability of the Ninth Circuit's alternative "sliding scale" analysis, Plaintiffs have not shown "serious questions" going to the merits of their claims for the same reasons that their claims are not likely to succeed on the merits.

[7] To determine whether an injunction seeks to maintain the status quo or upset it, courts look to the "last, uncontested status" between the parties, *Garcia*, 786 F.3d at 740 n.4, measured from "the time the suit was filed," *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010). Here, there is no dispute that the special dividend was paid on January 20, 2023. The Complaint in this case was filed almost two weeks later, on February 2, 2023. *See* ECF No. 1, Compl.

### A. Plaintiffs Offer No Evidence Showing a Likelihood They Will Succeed on Their Implausible Section 1 Claim

Cerberus' Motion to Dismiss outlined why Plaintiffs' vague, conclusory, and implausible allegations against Cerberus fail to state a claim. *See* ECF No. 48.[8]  Now, facing the much higher burden to show that they are entitled to mandatory injunctive relief, Plaintiffs offer ***no evidence*** to suggest that they can, or will ever, succeed on the merits of their Section 1 claim against Cerberus.  In fact, the evidence in the record directly refutes Plaintiffs' allegations and underscores that they cannot substantiate their flimsy allegations.  Plaintiffs fail to demonstrate a likelihood that they will succeed on the merits of their Section 1 claim against Cerberus for at least three reasons.[9]

#### 1. *No Evidence of Agreement*

Plaintiffs have no evidence that Cerberus entered into an anticompetitive agreement related to the issuance of the special dividend.  To prevail on their Section 1 claim, Plaintiffs need to show that Cerberus "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) ("Unilateral conduct by a single firm … is not unlawful under Section 1 of the Sherman Act."). In both their Complaint and motion, Plaintiffs offer no evidence supporting the existence of their

---

[8]  Nothing in the Complaint nor in Plaintiffs' motion explains why Cerberus would take any actions that would put at risk significant and valuable investments in Albertsons.  Plaintiff's claim is not just unsupported, it is economically irrational.

[9]  Plaintiffs' totally unsupported Section 1 claim also suffers from other fatal flaws, such as Plaintiffs' failure to demonstrate the existence of a relevant market. *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 836–37 (N.D. Cal. 2020) (denying a preliminary injunction where the "record does not yet establish how the 'relevant market' should be defined").

alleged conspiracy.[10]  Because they have failed to identify any agreement, let alone facts

supporting the "specific time, place, or person involved in the alleged conspiracies," Plaintiffs'

Section 1 claim does not even get out of the gate.  *See* ECF No. 48 at 7 (quoting *Kendall v. Visa*

*U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)); *see also Kelsey K. v. NFL Enters., LLC*, 254

F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) ("For a conspiracy of the scale alleged by this

complaint, one would expect at least some evidentiary facts to have been located and pled."),

*aff'd*, 757 F. App'x 524 (9th Cir. 2018).

At most, Plaintiffs' motion offers a single additional allegation: that Cerberus "voted" on

the issuance of the special dividend.  *See, e.g.*, PI Motion at 22 ("Kroger has conspired with

Defendant Cerberus, Albertsons' majority shareholder, to vote the issuance of a dividend that

will in effect cripple Albertsons' ability to compete against Kroger . . .").  That is incorrect.

Rather, the unremarkable fact that Albertsons' Board authorized a dividend cannot salvage

Plaintiffs' deficient allegations, and it falls far short of the showing required to substantiate a

likelihood of success on the merits.[11]

Plaintiffs certainly have no "direct" evidence that Cerberus entered into an agreement

with anyone related to the special dividend.  *See Honey Bum, LLC v. Fashion Nova, Inc.*, 63

---

[10]  Plaintiffs assert in their motion that the special dividend "is an integral part of the merger
agreement between Albertsons and Kroger," PI Motion at 21-22.  That is false, as at least one
court has already concluded.  *See Washington v. Albertsons Cos.*, No. 22-2-18046-3, 2022 WL
18587146, at ¶ 10 (Wash. Super. Ct. Dec. 9, 2022) ("The parties did not agree that Albertsons
would issue that special dividend nor did Kroger require Albertsons to do so.").  Nor is Cerberus
a party to the merger agreement.  *See* ECF 48 at 3, 6 (noting that Cerberus is not a party to the
merger agreement and that plaintiffs do not even allege this in their complaint).

[11]  Plaintiffs misstate the Supreme Court's holding in *American Tobacco Co. v. United States*
that co-conspirators can effectuate an unlawful conspiracy through "wholly innocent" acts to
suggest that wholly innocent acts—like issuing a dividend—can, by themselves, somehow
evince the existence of a conspiracy.  That is not the law.  328 U.S. 781, 798-808 (1946)
(describing the substantial evidence of conspiracy supporting the jury's conspiracy verdicts).

F.4th 813, 822 (9th Cir. 2023) (explaining that direct evidence is "smoking-gun" evidence not requiring inferences to show a conspiracy). Nor do Plaintiffs offer anything resembling circumstantial evidence of their alleged conspiracy, which would require them to present evidence tending to exclude the possibility that purported conspirators acted independently. *See id.* (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986)). In short, Plaintiffs present **no evidence** whatsoever in support of their extraordinary motion.

If anything can be inferred from the facts alleged, it is that Cerberus' receipt by or on behalf of its funds of the special dividend is more consistent with independent conduct than with an implausible and unsubstantiated conspiracy to destroy the value of its own shareholding. That common sense is also supported by evidence in the record that the special dividend issued as a result of Albertsons acting independently. Such evidence has already been credited by other courts that dismissed similar conspiracy claims about the special dividend. The Washington state court, after a substantial evidentiary hearing, found that Albertsons held internal discussions on how to return capital to shareholders, including through the potential issuance of a dividend, ***months before Kroger ever indicated interest in acquiring Albertsons***. *See Washington v. Albertsons Cos.*, 2022 WL 18587146, Findings of Fact at ¶¶ 6–8 (Wash. Super. Ct. Dec. 9, 2022) (emphasis added). The same court rejected the notion that the special dividend emerged from a nefarious agreement between Albertsons and Kroger, finding that the "parties did not agree that Albertsons would issue that special dividend nor did Kroger require Albertsons to do so." *Id.* at ¶ 10. The district court in Washington, D.C. also concluded that the state attorneys general "failed to demonstrate that Kroger and Albertsons entered into an agreement to pay the Pre-Closing dividend." *District of Columbia. v. Kroger Co.*, No. 1:22-cv-3357, 2022 WL 18910855, at *2 (D.D.C. Dec. 14, 2022). Moreover, Kroger's CFO has submitted a sworn declaration

explaining that Albertsons had "unilaterally decided to pay" the special dividend.   *See* ECF No. 53-1 at ¶ 12 (April 20, 2023 Decl. of Kroger CFO Gary Millerchip).

Plaintiffs have offered nothing to substantiate their threadbare allegations, let alone rebut the evidence upon which four prior courts have relied.  Plaintiffs cannot show that there is a likelihood they will succeed on the merits of their Section 1 claim against Cerberus.

### 2.   *No Evidence of Threatened Loss or Damage*

To succeed on their claim for injunctive relief under Section 16 of the Clayton Act, Plaintiffs must prove that they face "threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.  To do so, "[t]he party seeking such relief must demonstrate 'a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur.'"  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969)).

Cerberus has moved to dismiss Plaintiffs' Section 1 claim against it because the "threatened loss or damage" in the Complaint is entirely speculative and cannot support a claim for relief.  *See* ECF No. 48 at 10–12.  Plaintiffs' motion relies on the same convoluted theory of harm—i.e., that payment of the special dividend will set off a chain of events in which Albertsons is forced to "[r]eplace[] cash with debt [that] will inevitably harm Albertsons' credit rating, making borrowing more expensive," which in turn will make a cash-strapped Albertsons "less able to offer promotions on groceries [and] less able to offer quality services," which will in turn affect plaintiff grocery-shoppers.  *See* PI Motion at 9.[12]

---

[12]  The PI Motion makes no mention of the other alleged theory of harm in the Complaint—i.e., that the issuance of the special dividend might allow Kroger and Albertsons to invoke the "failing firm" defense in hypothetical merger litigation.  *See* ECF No. 48 at 11–12.  In addition to

Plaintiffs' motion is not only devoid of evidence substantiating their alleged harm, but it also contains no evidence substantiating any link in the long imaginary chain of events that would somehow lead to higher prices or lower service quality in the grocery aisles of New Orleans, Colorado Springs, or the other cities where Plaintiffs reside. At the same time, the evidence in the record directly contradicts Plaintiffs' speculative allegations that Plaintiffs will be harmed by the issuance of the dividend. Other courts examining the issue concluded that the special dividend would not meaningfully harm Albertsons' finances.[13] Albertsons' latest financial results likewise confirm its strong financial position following the issuance of the special dividend. *See* ECF No. 42-3 (Albertsons' Form 8-K, filed with the SEC on April 11, 2023). Plaintiffs offer no evidence to suggest that anything has changed since other courts rejected the same unfounded arguments about how issuing the special dividend would harm Albertsons' financial position. Unable to show "a significant threat of injury"—much less a "real and concrete injury," *Los Angeles Mem'l Coliseum*, 634 F.2d at 1201—Plaintiffs cannot establish that they are likely to succeed on the merits of their Section 1 claim.

3.  <u>*No Antitrust Standing*</u>

Plaintiffs are also unlikely to succeed on the merits of their Section 1 claim against Cerberus because their claimed harm is not "of the type the antitrust laws were designed to prevent," *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986), and too "indirect" or "remote" to establish antitrust standing. *See City of Oakland v. Oakland Raiders*, 20 F.4th

---

being facially speculative, both Kroger and Albertsons have already disclaimed that they would invoke such a defense. *See id.*

[13] *See, e.g.*, *District of Columbia v. Kroger Co.*, No. 22-3357, 2022 WL 18911128, at *1 (D.D.C. Dec. 13, 2022) (denying plaintiffs' motion for preliminary injunction and holding that "[a]s the Court previously decided, Albertsons's projected revenue is sufficient to satisfy its projected liquidity needs").

441, 458 (9th Cir. 2021); *see also* ECF No. 48 at 14-16. Plaintiffs' failure to demonstrate

antitrust standing likewise dooms their request for preliminary injunctive relief. *See HCI Techs.,*

*Inc. v. Avaya, Inc.*, 241 F. App'x 115, 123 (4th Cir. 2007) (concluding that "because [plaintiff] is

unlikely to establish antitrust standing, we agree that [plaintiff] has not raised a serious question,

let alone demonstrated a likelihood of success, on the merits of its antitrust claims"); *Wyndham*

*Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No. 8:19-cv-1895, 2021 WL 4948151,

at *12 (M.D. Fla. Oct. 18, 2021) ("Because [plaintiffs do] not clearly establish a substantial

likelihood that [they] can meet the [prongs] of the antitrust analysis, [their] motion for a

preliminary injunction fails on that ground . . . .").

First, Plaintiffs' alleged harm is too remote and indirect to support a finding of antitrust

standing. To evaluate antitrust standing, the Court examines whether the "alleged injury was the

direct result" of the allegedly anticompetitive conduct—the "harm may not be 'derivative and

indirect' or 'secondary, consequential, or remote.'" *City of Oakland*, 20 F.4th at 458 (quoting

*Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th Cir. 2008)). As

outlined above in Section II.A, Plaintiffs have offered no evidence to support any link in their

multi-step theory of harm or that Albertsons' issuance of the dividend has or will have any effect

on them.

Second, Plaintiffs cannot demonstrate antitrust injury. The incidental impact (if any) to a

customer following the payment of a dividend is not a "loss or damage of the type the antitrust

laws were designed to prevent." *Cargill, Inc.*, 479 U.S. at 113. Moreover, "the Ninth Circuit has

repeatedly stated that the requirement that a plaintiff's alleged injury be related to

anticompetitive conduct requires, 'as a corollary, that the injured party be a participant in the

***same*** market as the alleged malefactors.'" *In re Dynamic Random Access Memory (DRAM)*

*Antitrust Litig.*, 536 F. Supp. 2d 1129, 1137 (N.D. Cal. 2008) (quoting *American Ad Mgmt., Inc.*

*v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999)) (emphasis in original). Plaintiffs and

Cerberus are not in the same market. Cerberus is an investor, not a grocer, and it does not sell

anything to Plaintiffs. Parties whose supposed injuries "are experienced in another market," like

Plaintiffs here, "do not suffer antitrust injury." *American Ad Mgmt., Inc.*, 190 F.3d at 1057.[14]

### B. Plaintiffs Cannot Show They Will Suffer Irreparable Harm Absent an Injunction

A plaintiff seeking a preliminary injunction must also establish "that [it] is likely to suffer

irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. The bar is

particularly high in the context of mandatory injunctions, which are "not granted unless extreme

or very serious damage will result." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*

*Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation and citation omitted). But Plaintiffs

offer no evidence in support of their motion, creating at least two reasons why the Court should

deny injunctive relief on this factor alone.

First, and as outlined above in Section II.A above, Plaintiffs fail to offer any evidence

substantiating their speculative claim that they will be harmed by the payment of the special

dividend. Plaintiffs cannot show any likelihood of alleged harm let alone a likelihood that

"extreme or very serious damage will result." *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.

---

[14] Plaintiffs cite a single out-of-circuit case from more than a century ago to support their baseless Section 1 claim. *See* PI Motion at 22 (citing *Pennsylvania Sugar Refinery v. Am. Sugar Refining Co.,* 166 F. 254 (2d Cir. 1908)). The case predates not only the doctrines of antitrust standing and antitrust injury, but the Clayton Act itself. Also, its facts are not instructive. In *Pennsylvania Sugar*, a defendant allegedly "induced" the majority shareholder of the plaintiff to pledge his controlling interest as security for a loan, and then exercised its shareholder rights to completely prevent the plaintiff from operating a competing business. *See Pennsylvania Sugar*, 166 F. at 261–62. Here, there is no suggestion, let alone evidence, that the payment of the dividend weakened Albertsons, let alone shut it down entirely. The evidence is entirely to the contrary. *See* Section II.A.2 above.

Second, Plaintiffs offer no evidence showing that the harm they allege would be redressed by the injunctive relief they seek. Plaintiffs' motion does not explain how requiring Cerberus to disgorge its share of the special dividend would prevent their alleged harm. The motion's discussion of irreparable harm appears directed only to Plaintiffs' moot claim that payment of the dividend should be enjoined altogether. *See* PI Motion at 23 ("The special dividend, if permitted, creates irreparable injury since it would alter Albertsons' capital structure in a way that may harm its ability to compete . . . ."). In any event, Cerberus received for or on behalf of its funds less than 30% of the special dividend, and there is no basis to conclude that requiring only Cerberus to disgorge any portion of the dividend would redress their alleged harm. *See Time Warner Ent. Co. v. F.C.C.*, 810 F. Supp. 1302, 1306 n. 8 (D.D.C. 1992) ("[D]oubtfulness of redressability further counsels against entry of a preliminary injunction.").

### C.      The Balance of Equities Counsel Against Granting an Injunction.

The final injunction factors assess whether a plaintiff has shown that "that the balance of equities tips in [its] favor," and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Plaintiffs make neither showing here.[15] With respect to the balance of equities, the Court has a "duty . . . to balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (internal quotations and citation omitted). Plaintiffs have offered no evidence that they have or will ever be harmed, let alone to such a degree to meet their high burden to get mandatory preliminary injunctive relief. In contrast,

---

[15] Plaintiffs have not demonstrated that the public interest favors an injunction. The only interest they cite in their motion is the public's general interest in "ensuring that there are no unreasonable restraints on competition." PI Motion at 25. Not only is that purported "interest" so generic as to be meaningless, it is also entirely unsupported. Further, for all the reasons cited above, and in Cerberus' Motion to Dismiss (ECF No. 48), Plaintiffs have not shown that Cerberus has participated in any such restraint.

granting the requested relief against Cerberus would impose significant hardship on Cerberus. The special dividend was paid three months ago, and the funds have already been distributed by Cerberus to independent lenders, investors, and others.  *See* Cerberus Decl. ¶ 7.  Any order of disgorgement would impose significant hardship on Cerberus because it would need to seek the return of funds from lenders who have been repaid, from other creditors, and from ultimate investors in funds managed by Cerberus and/or its affiliates, all of which would be costly, time-consuming, and uncertain, and would have a significant adverse business and reputational impact on Cerberus.  *See id.* ¶ 8.  In short, the significant hardship that a mandatory injunction would impose on Cerberus strongly counsels against granting any such relief.  *See Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("Economic harm may indeed be a factor in considering the balance of equitable interests.").[16]

**D.      Plaintiffs Should Post a Bond in the Event an Injunction Issues**

For all the reasons set out here, no injunction should be granted.  But under Federal Rule of Civil Procedure 65(c), a court is permitted to issue preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Here, the cost of disgorgement would impose significant hardship on Cerberus.  *See* Section II.C above.  Under even the most conservative assumptions about the cost of capital, the costs to Cerberus of disgorging over a billion dollars if Cerberus were ultimately deemed to have been wrongfully enjoined would quickly reach into tens of millions of dollars.  To properly

---

[16]   The fact that Plaintiffs waited until after the dividend was paid to bring their case also counsels against injunctive relief.  *See Taleff v. Sw. Airlines Co.*, 554 F. App'x 598, 598 (9th Cir. 2014) (affirming denial of injunctive relief in antitrust suit in part because plaintiffs had "delayed filing suit … thereby significantly increasing the disruption to [defendants'] operations and the hardship to [defendants'] stockholders and [customers] caused by divestiture.").

account for those costs, Plaintiffs should post a meaningful bond. *See, e.g.*, *Illumina, Inc. v. Qiagen, N.V.*, 207 F. Supp. 3d 1081, 1095 (N.D. Cal. 2016) ("[Plaintiff] must post a bond of twenty million dollars as security for the injunction.").

## III.    CONCLUSION

For these reasons, Cerberus respectfully requests that the Court deny Plaintiffs' motion.

Dated:  April 20, 2023

*/s/ Russell P. Cohen*
Russell P. Cohen (SBN 213105)
Joseph D. Trujillo (SBN 305170)
DECHERT LLP
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

Andrew J. Levander (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

Thomas J. Miller (admitted *pro hac vice*)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222

*Attorneys for Defendant Cerberus Capital Management, L.P.*