Joseph M. Alioto (SBN 42680)
Tatiana V. Wallace (SBN 233939)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone: (415) 434-8900
Email:  jmalioto@aliotolaw.com

[Additional Counsel Listed on Last Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen, et al., <br><br><br>Plaintiffs, <br><br>v. <br><br>Kroger Co., Albertsons Companies, Inc., and Cerberus Capital Management, L.P., <br><br>Defendants. | Case No.:  23-cv-00459-VC <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO KROGER'S MOTION TO DISMISS** <br><br> Hearing Date:  July 27, 2023 <br> Time:  10:00 AM <br> Place:  Courtroom 4, 17th Floor <br> Judge:  Honorable Vince Chhabria <br><br><br> Complaint Filed: February 2, 2023 |

# TABLE OF CONTENTS

PLAINTIFFS HAVE ALLEGED A VIOLATION OF
SECTION 7 OF THE CLAYTON ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    Plaintiffs Have Adequately Alleged a Violation of the Clayton Act . . . . . . . . . 11

    2.    Plaintiffs Have Demonstrated That There May Be a Lessening of
        Competition in a Single Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        a.    Kroger and Albertsons are actual and potential competitors
            in the grocery market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 12

        b.    The Acquisition will give Kroger more than 36% national market
            share. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    3.    Plaintiffs Have Alleged that They are Likely to Suffer Irreparable Harm
        Without Preliminary Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

PLAINTIFFS HAVE ALLEGED A VIOLATION OF SECTION 1
OF THE SHERMAN ACT AND ARE ENTITLED TO DISGORGEMENT . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007)……………………………………………11

*Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, (9th Cir. 2016) ........................................ 9, 13

*Brown Shoe Co. v. United States*, 370 U.S. 294, (1962) …………….........................*passim*

*California v. American Stores*, 495 U.S. 271 (1990)…………………………… 4,6,9,13

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)…………………..14

*F.T.C. v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989)……………………… . 13

*Hosp. Corp. of Am. v. F.T.C.*, 807 F.2d 1381, (7th Cir. 1986) ........................................... 10,11

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009)…………14

*St. Alphonsus Med. Center-Napa Inc. v. St. Luke's Health Sys., Ltd.*,
778 F.3d 775 (9th Cir. 2015) ................................................................................... 8,11

*Schine Chain Theatres, Inc. v. United States*, 334 U.S. 110, 128–29 (1948)…………………12

*South Austin Coalition Commission v. SBC Communications*, 191 F.3d 842 (1999) …………5

*United States v. Aluminum Co. of Am.*, 377 U.S. 271, (1964)…………............................ ..13

*United States v. Borden Co.*, 347 U.S. 514, at 519 (1954)……………………………………4,6

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973)…………………………………6

*United States v. Pabst Brewing Co.*, 384 U.S. 546   (1966) ................................................   13

*United States v. Philadelphia National Bank, 374 U.S. 321 (1963)* ..…………………….. 13

*United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 250 (1968)………………….. 13

*United States v. Von's* Grocery Co., 384 U.S. 270 (1966)…………………………………1, 13

*United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586 (1957) ……………….. .. 5

## STATUTES

15 U.S.C. § 1 …………………………………………………………………...…11

15 U.S.C. § 18………………………………………………………………11, 12

15 U.S.C. § 26…………………………………………………………………   5

## MEMORANDUM OF POINTS AND AUTHORITIES

### PLAINTIFFS HAVE ADEQUATELY ALLEGED A VIOLATION OF SECTION 7 OF THE CLAYTON ACT

Conspicuous by its absence in Defendants' motion to dismiss is any attempt to analyze, much less distinguish, the controlling series of decisions by the Supreme Court of the United States. Each of those decisions have enjoined mergers much smaller than the one present here that involves the largest supermarket grocery store buying the second largest grocery store. Both Defendants have already purchased substantial numbers of other competing grocery stores in the past, thereby demonstrating a troubling trend toward concentration in the industry.

Ironically, one of those Supreme Court's decisions is *United States v. Von's Grocery Co,* 384 U.S. 270 (1966), a grocery industry case, in which the Court enjoined Von's from purchasing Shopping Bag, which purchase would have given it a small combined market share of less than 8.9% in the Los Angeles area. By comparison, and in the same area, Albertsons, which previously had bought Von's and Safeway, among others, as of June of 2017, controlled over 20.6% of the Southern California market and is the largest supermarket in the Southern California area. Kroger, as of June, 2017, was the second largest grocery store in the area with a market share of 18.7%.[1] It is clear beyond doubt from these market numbers that the Defendants have achieved their dominance, both nationally and in local markets, by buying up their competitors and now, by this mega merger, seek to create a dominion that bestrides the entire country. As the Supreme Court said in *Brown Shoe*:

> We cannot avoid the mandate of Congress that tendencies toward concentration in industry are to be curbed in their incipiency, particularly when those tendencies are being accelerated through giant steps **striding across a hundred cities at a time.** In the light of the trends in this industry we agree with the Government and the court below that this is an appropriate place at which to call a halt. *Brown Shoe Co. v. United States*, 370 U.S. 294, at 346.

---

[1] https://www.statista.com/statistics/818584/market-share-of-southern-california-s-leading-grocery-retailers/

Defendants' own map and statistics which they have provided in support of their merger show the strides they have taken across the country.   See Defendants' map of store locations below:[2]



Defendants estimate that their combination will serve approximately 85,000,000 *households* across the United States, with 4,996 stores, 3,973 pharmacies, 2,015 fuel centers, more than 710,000 "associates" (employees), approximately 34,000 private label products, with approximately $43 Billion in private brand sales, $1.5 Billion in "annual alternative profits", and approximately $59 Billion in fresh sales.

---

[2] Source of Map and Statistics:  KrogerAlbertsons.com investor relations website: www.krogeralbertsons.com/?gclid=EAIaIQobChMIr5TQ3rLm_gIV8QCtBh3clwDOEAAYASAAEgJ_l_D_BwE

This acquisition needs to be halted in accordance with the policy of the United States that favors internal expansion and competition over combination.  As the Supreme Court said in *Brown Shoe Co. v. United States*, 370 U.S. 294, at 345, footnote 72.

> "A company's history of expansion through mergers presents a different economic picture than a history of expansion through unilateral growth. Internal expansion is more likely to be the result of increased demand for the company's products and is more likely to provide increased investment in plants, more jobs and greater output.  Conversely, expansion through merger is more likely to reduce available consumer choice while providing no increase in industry capacity, jobs or output. It was for these reasons, among others, Congress expressed its disapproval of successive acquisitions. *Section 7 was enacted to prevent even small mergers that added to concentration in an industry*. See S. Rep. No. 1775, 81st Cong., 2d Sess. 5."  (Emphasis Added.)

Defendants have argued that this case is "not ripe" because, they say, they intend to work out a settlement with the government that will involve the divestiture of stores.  This scenario is completely without merit for a number of reasons:  1) Defendants have publicly announced, contrary to their statements now to this court about divestiture, that Defendants do not intend to close any stores, with no excuses ("Kroger will not close any stores, distribution centers or manufacturing facilities or lay off any frontline associates as a result of the merger. No excuses, no exceptions."[3]); 2) the divestiture formula that they are suggesting was used in the past by the FTC in connection with Albertsons' purchase of Safeway, the result of which was a complete disaster, which the industry has acknowledged, as many of the divested stores eventually ended in bankruptcy and the so-called new competitor that was created was declared bankrupt.  There is no legitimate reason for these plaintiffs to be forced to wait

---

[3] Quote taken from KrogerAlbertsons.com investor relations website:
www.krogeralbertsons.com/?gclid=EAIaIQobChMIr5TQ3rLm_gIV8QCtBh3clwDOEAAYASAAEgJ_l_D_BwE

until some peculiarity or accommodation is struck between the FTC and these Defendants.  The law itself dictates that these plaintiffs are separate and apart and need not wait until the government acts.[4]

Kroger's argument that the case is unripe because the final parameters of the transaction are not known or that it has not been decided whether and where stores may be divested is unavailing because the Supreme Court has already ruled that private plaintiffs' actions and governmental actions challenging the identical merger and seeking the identical relief "may proceed simultaneously or in disregard of each other." *United States v. Borden Co.*, 347 U.S. 514, at 519 (1954).

This is so because Congress has enshrined co-equal enforcement of the antitrust laws between private plaintiffs and the government. Congress could have made the federal regulatory interest preeminent, occupying the field, or so dominant would that it leave no room for private enforcement. But it did not do so, and in fact, did the contrary. *See California v. Am. Stores Co.*, 495 U.S. 271, 275 (1990) ("Private enforcement of the [Clayton] Act was in no sense  an afterthought; it was an integral part of the congressional plan for protecting competition.").  That the FTC may proceed simultaneously with Plaintiffs here is no basis to hold that the Plaintiffs' claims are not ripe.

In *United States v. Borden Co.*, 347 U.S. 514 (1954) the Supreme Court long ago made it clear that "[t]hese private and public actions were designed to be cumulative, not mutually exclusive."  *Id*. at 519.  This Supreme Court decision, which has never been overruled, and the law which requires that the Plaintiffs be allowed to proceed independently and without regard to whatever the government may or may not do with these Defendants,  immediately eliminates a substantial portion of the Defendants' arguments with regard to ripeness and subject matter jurisdiction and timeliness.

---

[4] Defendants argue that they expect to divest a number of stores and therefore this action is premature. However, Defendants fail to disclose, as is set forth in their merger agreement, that they may close "on a date that is three business days following the satisfaction of all conditions in the agreement."  Agreement and Plan of Merger, Oct 13, 2022, Section 2.3 As a result the possibility exists that the merger could happen any day. If the merger does not close or is terminated, there is a termination fee of $600 million if Kroger terminates and $318 million if Albertsons terminates. Article 8, A-68 , Section 8.4 (d).

Kroger's tenuous argument concerning ripeness is illogical and turns the statutory scheme on its head. There can no dispute that Section 7 affords private Plaintiffs the right to challenge this merger *before it goes into effect*.  Section 7 is specifically aimed at stopping mergers in their "incipiency" – that is, *before they occur*. *See, e.g.*, *du Pont de Nemours & Co.*, 353 U.S., at 597 (Section 7 seeks "to arrest the creation of trusts, conspiracies, and monopolies in their incipiency and before consummation). Under Section 7, there is no legal requirement to wait for the consummation of the merger to have to prove that the merger has lessened competition.

Similarly, and with regard to Defendant's arguments on plaintiffs' standing and subject matter jurisdiction, Section 16 provides a right of action to any Plaintiff who is *threatened* with loss or damage, not actual damage after the fact. 15 U.S.C. § 26.  Section 7 is meant to curb trends toward concentration in their incipiency. *Brown Shoe*, 370 U.S. at 346. As the Supreme Court has held: "'Incipiency' in this context denotes not the time the stock was acquired, but any time when the acquisition threatens to ripen into a prohibited effect. . . . To accomplish the congressional aim, the Government may proceed at any time that an acquisition may be said with reasonable probability to contain a threat that it may lead to a restraint of commerce or tend to create a monopoly of a line of commerce." *du Pont*, 353 U.S. at 597. There is considerable merit to addressing mergers before they are consummated, rather than trying to "unscramble the egg," after irreparable harm is done.

Kroger's primary authority for its position that these claims are not ripe is both distinguishable and mistaken.  In the Seventh Circuit opinion in *South Austin Coalition Commission v. SBC Communications*, 191 F.3d 842 (1999) *South Austin*'s decision to wait until after all regulatory review and proceedings have been concluded fails to reconcile or even to acknowledge the Supreme  Court's decisions that private actions are an integral and co-equal part of the  Congressional scheme to enforce the antitrust laws, *California v. Am. Stores,* 495 U.S. at 275, or that private and government actions "may proceed simultaneously or in disregard of each other."  *Borden*, 347 U.S. at 519.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO KROGER'S MOTION TO DISMISS

*South Austin* further fails to consider the practical reality that by holding a claim to be unripe, a plaintiff would be unable to stop a merger before its consummation—the very premise of Section 7. *South Austin* is also readily distinguishable because (a) the plaintiffs in that case essentially acquiesced to dismissal so long as they would not be subsequently barred by laches; and (b) the merger concerned utility companies under the jurisdiction of the FCC already under a consent decree. *South Austin*, 191 F.3d 842.

In this case it is quite obvious by reason of the Defendants' own maps and figures (set out above), and the maps and figures garnered from the Defendants' own websites as alleged in the complaint (Compl. at ¶¶ 30-44), that Kroger is the largest supermarket chain in the United States and Albertsons is the second largest.  As Defendants admit in their own map (shown above) and in their publicity in support of the merger, their "complementary footprints establish national reach" across the United States and throughout all the major metropolitan markets within the U.S.[5] In the Southern California/Los Angeles area alone Defendants were the number one and two supermarkets in 2017.  In the other local markets in which Defendants' operations overlap, as alleged in the Compl. at ¶¶ 42-43 the Defendants are actual and direct competitors - which competition this acquisition would eliminate.

And in markets in which the Defendants do not currently directly compete, they are potential competitors whose presence outside of the geographic market nevertheless impacts the prices charged inside the market.

For example, in *United States v. Falstaff Brewing Corporation*, 410 U.S. 526, 527-529 (1973) the Supreme Court found that *potential* competition in the New England beer market *may have been substantially lessened* by Falstaff's acquisition of the local brewer Narragansett and therefore it prohibited Falstaff, which was not a seller in the New England market, from acquiring Narragansett, the

---

[5] KrogerAlbertsons.com investor relations website:
www.krogeralbertsons.com/?gclid=EAIaIQobChMIr5TQ3rLm_gIV8QCtBh3clwDOEAAYASAAEgJ_l_D_BwE

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO KROGER'S MOTION TO DISMISS

largest seller of beer in New England at the time of its acquisition, with approximately 20% of the market there. The injunction was justified on the grounds that Falstaff, which at the time of the acquisition was only the fourth largest producer of beer in the United States with 5.9% of the Nation's production, nevertheless had the <u>potential</u> to enter the New England market at any time.

Plaintiffs have alleged a national market in the Complaint (Compl. at ¶¶ 44, 51), but plaintiffs have also included maps and allegations that clearly demonstrate the existence of smaller, local relevant geographic markets within individual states and have alleged that there are multiple major metropolitan areas in which Kroger and Albertsons are substantial head to head competitors and that this combination of the largest and second largest supermarket operators in those local markets would result in the elimination of substantial competition in those areas.   (Compl. at ¶¶ 44, 51- 57).

The Defendants compete, as plaintiffs have alleged, on a national (and also local) basis on the supply side of the market. This means that supermarkets are able to expand to other parts of a city, to other cities, or to other states if they believe that they can make a profit. For example, if in one area, a supermarket has a monopoly and charges exorbitant prices, supermarkets in other areas would be able to enter those markets and make a profit by charging reasonable rather than exorbitant amounts.

Supermarkets also compete on the demand side, namely, by offering products and prices in competition with other local supermarkets, allowing consumers to choose between them.

The Defendants have attempted to confuse the demand and supply markets by arguing that a San Diego resident would not travel to Sacramento to buy ice cream at a lower price. On the other hand, if the Sacramento market were a monopoly, any San Diego supermarket could easily expand to Sacramento if it believed it could make a profit by charging more reasonable prices below the monopoly's price. The history of these two defendants shows that they have themselves engaged in supply side expansion by extending their reach, Kroger from Cincinnati, and Albertsons from Boise.

The Plaintiffs have alleged a relevant product market composed of the retail sale of food and other grocery products in supermarkets. (Compl. at ¶¶ 45.)  "Supermarkets compete with other supermarkets that provide one-stop shopping opportunities for food and grocery products and base their prices on the prices of food and grocery products sold at nearby competing supermarkets."  (Compl. at ¶¶ 48-50).

Defendants argue that Plaintiffs' product market is too narrow and that it ignores the impact of Walmart, Target, and others.  But Defendants' own chief executives have stated that they are the number one and number two supermarkets in the United States, not Walmart and not Target.  (*See* McMullen Interview re Albertsons Merger wherein it is reported that they are "the nation's largest and second-largest supermarket retailers. . ."[6])

By reason of this admission, and without expert discovery at the moment, the plain inference to be drawn from these statements is that the Defendants believe that customers and consumers will select supermarkets for grocery shopping over grocery shopping at large big box stores in the mall.

In any case, Plaintiffs' relevant geographic and product markets have been adequately pleaded in detail and, as a result, must be taken as true and Defendants' offers of extraneous facts that go beyond the scope of the complaint may not support a motion to dismiss on this issue, but are more properly directed to later motions under Rule 56.

The Defendants have attempted to mislead the court in their argument at page 9, line 11of their brief (ECF 40) by saying "The alleged injury in fact must be both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" By asserting that the Plaintiffs' standing requirement is controlled by Section 4 of the Clayton Act, which requires actual

---

[6] Article, *Making Things Easier for Customers is Kroger's Goal*, Grocery Business Newsletter, Jan. 17, 2023, at file:///Users/LGP/Desktop/Making%20things%20easier%20for%20customers%20is%20Kroger's%20goal,%20CEO%20Rodney%20McMullen%20says.webarchive

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO KROGER'S MOTION TO DISMISS

injury, they ignore that Section 16 of the Clayton Act requires only allegations of the *threat* that injury may occur.   The difference is obvious:  one is actual damage, the other is threatened damage that has not happened but may happen.  This legerdemain must not go unnoticed.  It is quite obvious that, if this acquisition goes through, the Plaintiffs may be harmed by the massive elimination of competition on foodstuffs spanning a panoply of food-related necessities from produce to meat to groceries.

The Defendants state that "the named plaintiffs in this case are an assortment of 25 individuals in 11 states whose participation in this lawsuit depends on a single personal fact: that they shopped at an unidentified Kroger or Albertsons store at some point in the past four years."  Defendant's Brief, ECF 40, p. 4, lines 2-4.  But this is not the law at all.

Under Section 16 of the Clayton Act, it is sufficient that Plaintiffs as potential customers of the Defendants have been "threatened" with "loss or damage by a violation of the antitrust laws." 15 U.S.C. 26.  Thus, the plaintiffs are *threatened* by this acquisition since they may choose to shop at a Kroger store, an Albertsons store, or one of the other multiple stores that Albertsons and Kroger have swallowed over the years.  This threat is sufficient to state a claim under Section 16.  Moreover, these Plaintiffs live in markets that will be affected by the merger. (See maps in Complaint.)

Both the Supreme Court and the Ninth Circuit hold that the threat of loss or damage under Section 16 may result in the potential lessening of competition in a relevant market under Section 7. *See California v. Am. Stores Co.*, 492 U.S. 1301, 1304 (1989) (the largest grocery store in Southern California attempting to purchase the fourth largest in which the Court said "[L]essening of competition 'is precisely the kind of irreparable injury that injunctive relief under section 16 of the Clayton Act was intended to prevent.'"); *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) ("A lessening of competition constitutes an irreparable injury under our case law."). These two cases control this issue and are directly on point. Under these cases, the elimination of competition in this case demonstrates that Plaintiffs here would suffer irreparable injury.

9

The probable anticompetitive effects as alleged at Compl. at ¶¶ 25, 63, 78, are that Kroger and Albertsons will no longer compete on price or quality; innovation will be curtailed; product diversity will be limited if not eliminated and *consumer choices once gone, cannot be reconstituted.*

The combination may have the anticompetitive effect of eradicating consumer choice while providing no concomitant increase in industry capacity, jobs, or output, and may potentially cause loss to the Plaintiffs, and the public at large, in the form of higher prices on food and other consumer goods, and the elimination of consumer choice, all of which <u>may</u> deprive the Plaintiffs, and the public at large, of the salutary benefits of competition. See *Brown Shoe*, 370 U.S. 345, at fn. 72.

The Defendants say that they are troubled that Plaintiffs have presented only "Supreme Court precedent from the 1960's" in support of their position and that Plaintiffs' arguments with regard to those cases should be ignored.  However, the Defendants' disrespect for the binding authority of the Supreme Court should not be adopted by this Court.  As Judge Posner, who was no friend of antitrust law, stated in his opinion in *Hospital Corp. of America v. FTC, 807 F.2d 1381*(1986):

> "The Commission's [FTC's] detailed analysis of those effects . . . may have made its task harder (and opinion longer) than strictly necessary, however, by studiously avoiding reliance on any of the Supreme Court's section 7 decisions from the 1960s except *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 10 L. Ed. 2d 915, 83 S. Ct. 1715 (1963), which took an explicitly economic approach to the interpretation of the statute. The other decisions in that decade -- in particular *Brown Shoe Co. v. United States*, 370 U.S. 294, 8 L. Ed. 2d 510, 82 S. Ct. 1502 (1962); *United States v. Aluminum Co. of America*, 377 U.S.271, 12 L. Ed. 2d 314, 84 S. Ct. 1283 (1964); *United States v. Von's Grocery Co.*, 384 U.S. 270, 16 L. Ed. 2d 555, 86 S. Ct. 1478 (1966), and *United States v. Pabst Brewing Co.*, 384 U.S. 546, 16 L. Ed. 2d 765, 86 S. Ct. 1665 (1966) -- seemed, taken as a group, to establish the illegality of any nontrivial acquisition of a competitor, whether or not the acquisition was likely either to bring about or shore up collusive or oligopoly pricing. The elimination of a significant rival was thought by itself to infringe the complex of social and economic values conceived by a majority of the Court to inform the statutory words "may . . . substantially . . . lessen competition."
> "None of these decisions has been overruled."  *Hospital Corp* at p.1385.

The Defendants may not feel obligated to follow the decisions of the Supreme Court because they date from the 60's and 70's, even though not overruled.  If that were the case, none of the historic

cases on personal rights and civil liberties from that era would be followed today and would be erased from the books.

### 1.    Plaintiffs Have Adequately Alleged a Violation of the Clayton Act

Plaintiffs' Complaint alleges particularized facts, which, when taken as true, state a plausible claim that the merger "may substantially lessen competition, or tend to create a monopoly." 15 U.S.C. 18. That is all that is required. *St. Alphonsus Med. Center-Napa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, at 788 (9th Cir. 2015).  So long as Plaintiffs have made out a plausible claim under Section 7, Plaintiffs' cause of action must survive the motion to dismiss.

Plaintiffs' complaint alleges a Section 7 claim in numerous ways. Plaintiffs' complaint alleges that Kroger and Albertsons are direct horizontal competitors with respect to grocery sales.  (Compl. at ¶¶ 2, 15, 21, 37.)  Kroger's acquisition of Albertsons may substantially lessen competition because it will eliminate the direct competition between Kroger and Albertsons. (Compl. at ¶¶ 15, 37.) Under Section 7, the elimination of a rival is enough. *See Hosp. Corp. of Am. v. F.T.C.*, *supra* at 1385 (the Supreme Court cases interpreting Section 7 "establish the illegality of any nontrivial acquisition of a competitor, whether or not the acquisition was likely either to bring about or shore up collusive or oligopoly pricing. . . . None of these decisions has been overruled.").  As Plaintiffs allege, Albertsons is a significant rival of Kroger. (Compl. at ¶¶ 15, 21, 37.)

The merger will eliminate the substantial and direct competition between Kroger and Albertsons. The Court should prohibit the substantial lessening of competition between the largest and second largest grocery stores in the United States.

### 2.    Plaintiffs Have Demonstrated That There May Be a Lessening of Competition in a Single Market.

Section 7 of the Clayton Act requires merely the showing that there may be a lessening of competition "in any line of commerce" or "in any activity affecting commerce" anywhere in the country. 15 U.S.C. § 18. The Supreme Court has recognized that an unlawful merger or acquisition might affect

multiple relevant markets. Courts must consider whether the merger might lessen competition **in any one of them;** if so, "the merger is proscribed." *Brown Shoe*, 370 U.S. at 325–28. Section 7 ultimately requires merely a "prediction" as to whether competition may be lessened, and "doubts are to be resolved against the transaction." *F.T.C. v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989).

The Clayton Act prohibits mergers which may substantially lessen competition in "in any line of commerce." 15 U.S.C. § 18. Thus, the effects of a merger are reviewed in each economically significant market or submarket to determine if there is a reasonable possibility the merger will lessen competition. *See Brown Shoe*, at 325. "[I]f such a probability is found to exist, the merger is proscribed." *Id*.

### a.    Kroger and Albertsons are actual and potential competitors in the grocery market.

Plaintiff has alleged that Kroger and Albertsons are significant competitors in the grocery market. The acquisition will immediately eliminate all competition between Kroger and Albertsons, substantially lessening competition in this market as demonstrated by the maps showing the number of stores and their locations throughout the country. *See* Compl. at ¶¶ 15, 21, 37**;** and Exhibits to Declaration of Lawrence Papale filed concurrently herewith.

### b.    The Acquisition will give Kroger more than 36% national market share.

Kroger is the largest grocery in the United States, with a market share of 23.6%. *See* Compl., at ¶ 30. Since at least 1983, Kroger has been involved in numerous significant mergers and acquisitions of grocery companies. *See* Compl. ¶ 18. Kroger owns through acquisition former competitors such as Ralphs and Fry's and Food4Less.

Albertsons is the second largest grocery company in the United States with a market share of 12.4%. *See* Compl., at ¶ 31. Albertsons has also been involved in several significant mergers and acquisitions of grocery companies in the past. Compl., at ¶ 31. Albertsons now owns a number of former competitors such as Safeway, Von's and Tom Thumb.

These market share statistics alone are more than sufficient to conclude that the merger is

unlawful under Section 7. Through the acquisition, Kroger will add 12.4% of the market to its current control of 23.6%, for a combined total of roughly 36% of the market. *See* Compl., at ¶ 8. This is far in excess of the market concentration that the Supreme Court has previously held unlawful. *See, e.g.*, *Von's Grocery*, 384 U.S. at 272–74 (holding unlawful the merger of two grocery store chains, with a combined total of 8.9% of the market); *Cont'l Can*, 378 U.S. at 461 (holding unlawful an acquisition that would increase the acquiring entity's market share from 21.9% to 25%.); *Aluminum Co. of Am.*, 377 U.S. at 280–81 (holding unlawful an acquisition of an entity with 1.3% of the market share by a company with 27.8% of the market); *Pabst Brewing Co.*, 384 U.S. at 550 (holding unlawful the acquisition of two brewers with a combined market share of only 4.49%).

These cases did not turn on complicated econometric or statistical analyses. Instead, these cases turned simply on the market share statistics of the merging entities in combination with a trend towards concentration in the markets, and the elimination of a significant competitor through a non-trivial transaction. *See, e.g.*, *Von's Grocery*, 384 U.S. at 278.

Indeed, in *Philadelphia National Bank*, 374 U.S. at 364, the Court held that any combination which would raise the post-merger entity to more than 30% was a clear prima facie showing of unlawfulness under Section 7. Here, Kroger's acquisition of Albertsons will raise Kroger's share the grocery market well beyond the 30% presumption declared illegal under *Philadelphia National Bank*.

### 3.   Plaintiffs Have Alleged that They are Likely to Suffer Irreparable Harm Without Preliminary Relief

Under Section 16 of the Clayton Act, it is sufficient to allege that Plaintiffs, as potential customers of the Defendants, have been "threatened" with "loss or damage by a violation of the antitrust laws." 15 U.S.C. 26. Both the Supreme Court and the Ninth Circuit hold that the threat of loss or damage required to receive injunctive relief under Section 16 includes the possible lessening of competition in a relevant market under Section 7. *See California v. Am. Stores Co.*, 492 U.S. 1301, 1304 (1989).

The Ninth Circuit affirmed this basic premise in 2016, in its decision in *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1023 (9th Cir. 2016)  In *Boardman*, the district court granted a preliminary injunction. The defendants argued that a preliminary injunction was unwarranted because there was no *immediate* danger of irreparable harm. The Ninth Circuit affirmed the injunction and wrote that "a lessening of competition constitutes an irreparable injury under our case law." *Id.* at 1023. The Court further held the requirement of "*immediate*" irreparable harm was satisfied so long as the plaintiff "is likely to suffer irreparable harm before a decision on the merits can be rendered." *Id.* If the merger might consummate before the merits could be adjudicated, the Court concluded that the threat of immediate irreparable harm was satisfied. *Id*.

The identical scenario exists here. Plaintiffs have alleged that the merger may substantially lessen competition. Since the merger is likely to have a reasonable probability of lessening competition and since the merger is likely to consummate before Plaintiffs can have their claims heard on the merits, Plaintiffs have satisfied their pleading requirement.

<u>PLAINTIFFS HAVE ALLEGED A VIOLATION OF SECTION 1 OF THE
SHERMAN ACT AND ARE ENTITLED TO DISGORGEMENT</u>

Plaintiffs respectfully adopt and incorporate by reference herein the arguments set forth in their Memorandum in Opposition to the Albertsons' Motion to Dismiss with regard to their Section One claim and claim for disgorgement.

<u>CONCLUSION</u>

Plaintiffs' Complaint readily satisfies the Section 7 standard. The statements alleged in the complaint must only provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig*., 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009).  Defendants have submitted declarations and factual material from outside the complaint to support their motions.  But on a motion to dismiss, there is no weighing of facts since all the properly

pleaded facts must be taken as true and viewed in the light most favorable to the Plaintiffs.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

If materials from outside the complaint are to be considered by the Court, the motion changes from one based upon Rule 12(b)6 to Rule 56 and Plaintiffs are then entitled to discovery to rebut the evidence.

Because Plaintiffs have alleged and are likely to establish that the merger is unlawful and that Plaintiffs and the public at large are threatened with irreparable harm if the merger proceeds, and because Plaintiffs have alleged a viable Sherman Act violation within the merger agreement itself, the Court should deny Defendant's motion to dismiss.

Dated:  May 11, 2023                                Respectfully submitted:


By:      */s/ Joseph M. Alioto*
         Joseph M. Alioto (Cal.Bar No. 42680)
         ALIOTO LAW FIRM
         One Sansome Street, Suite 3500
         San Francisco, CA 94104
         Telephone: (415) 434-8900
         Email: jmalioto@aliotolaw.com

         *Attorneys for Plaintiffs*

ADDITIONAL PLAINTIFFS COUNSEL:

Lawrence G. Papale (SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704
Email: lgpapale@papalelaw.com

Josephine Alioto (SNB 282989)
THE VEEN FIRM
20 Haight Street
San Francisco CA 94102
Telephone: (415) 673-4800
Email: jalioto@veenfirm.com

Christopher A Nedeau (SBN 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Theresa Moore (SBN 99978)
LAW OFFICE OF THERESA D. MOORE PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 613-1414

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO KROGER'S MOTION TO DISMISS