Joseph M. Alioto (SBN 42680)
Tatiana V. Wallace (SBN 233939)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Email: jmalioto@aliotolaw.com

[Additional Counsel Listed on Last Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Kroger Co., Albertsons Companies, Inc., and Cerberus Capital Management, L.P.,<br><br>Defendants. | Case No.: 23-cv-00459-VC<br><br>**OPPOSITION TO ALBERTSONS' MOTION TO DISMISS**<br><br>Hearing Date: July 27, 2023<br>Time: 10:00 AM<br>Place: Courtroom 4, 17th Floor<br>Judge: Honorable Vince Chhabria<br><br>Complaint Filed: February 2, 2023 |

## PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANT ALBERTSONS COMPANIES, INC. TO DISMISS

Plaintiffs oppose ALBERTSONS COMPANIES, INC.'S Motion to Dismiss on the same grounds as are set forth in Plaintiffs' Memorandum in Opposition to the Motion of

Defendant Kroger Co. to Dismiss which is filed concurrently herewith and which Plaintiffs incorporate in full herein by reference.

In addition, Plaintiffs submit the following points and authorities in support of their Section 1 claim for violation of the Sherman Act.

## PLAINTIFFS HAVE ALLEGED A VIOLATION OF SECTION 1 OF THE SHERMAN ACT AND ARE ENTITLED TO DISGORGEMENT

In addition to the violation of Section 7 of the Clayton Act in which grocery store customers, actual and potential, are threatened with the probability that prices may be increased and services decreased, the Plaintiffs have also alleged that Defendant Albertsons and Defendant Kroger, along with the principal investor in Albertsons, Defendant Cerberus, violated Section 1 of the Sherman Act by agreeing that Albertsons had to pay a $4 Billion dividend to its shareholders with the purpose and effect of weakening Albertsons' ability to compete so that it will be forced to merge with Kroger.

This agreement, which constitutes a Sherman Act violation, is in writing. Plaintiffs allege that the merger agreement itself, which contains the agreement between Albertson and Kroger to pay the $4 Billion dividend, is the contract, combination and conspiracy in restraint of trade and that the purpose of the agreement to pay the dividend was to weaken Albertsons so that it would be forced to consummate the merger with Kroger. (Compl., at ¶¶ 84-86.) To the extent that this dividend has been paid, the remedy now is for this dividend payment to be disgorged.

The special $4 billion dividend that has been paid to Albertsons shareholders - primarily to Defendant Cerberus – is an integral part of the merger agreement between Albertsons and Kroger and it is this written merger agreement that forms the basis of the agreement in restraint of trade in violation of Section 1 of the Sherman Act.

The Defendants' agreement to pay the illegal dividend is found at page 30, Article 2.1 of the Defendants' merger agreement :

> "<u>The Distribution may be effected by virtue of the Merger or by way of dividend or other distribution</u> (including as contemplated pursuant to the Trust Agreement and Grant of Trust), in each case as the Company may elect <u>following good faith consultation with Parent</u>, taking into consideration any adverse impact such distribution may have on Parent (including the Surviving Corporation) following the Effective Time, and to the extent such distribution is reasonably likely to have an adverse impact, <u>the foregoing shall be subject to Parent's consent</u> (such consent not to be unreasonably withheld, conditioned or delayed). For the avoidance of doubt, the Distribution shall be made with respect to the shares of Company Common Stock and the shares of the Company Preferred Stock and not the Company Equity Awards. Notwithstanding anything in this Agreement to the contrary, Parent and the Company shall not be obligated to consummate the Distribution . . ."

In *Pennsylvania Sugar Refinery v. American Sugar Refining Company*, 166 F. 254 (SDNY 1908)*,* the defendants' trust bought shares in a major competitor's company. The defendants voted themselves on the board of directors of the competitor and then voted to shut it down*,* shuttering the competitor's plant. The Court concluded that this act constituted an agreement in violation of the antitrust laws and in violation of the defendants' fiduciary duties. The court awarded the competitor company over $30 Million in damages.

The Defendants in this case claim that disgorgement is not permitted under the law. But it has been recognized as far back as *Zenith* and reconfirmed by *American Stores* that the power granted by the Courts to individual plaintiffs under the Clayton Act allows them access to the full extent of the courts' equitable relief, including divestiture, disgorgement and even dissolution. Indeed, the Supreme Court has continually encouraged private parties to question the anticompetitive effects of the mega-mergers.

Disgorgement is the remedy that is accorded to private plaintiffs to restore the status quo. The Defendants should not profit from their illegal conduct and disgorgement will ensure that

will not happen. *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020). The $4 Billion dollars must be disgorged by those who received it, and it must be returned to Albertsons and / or paid to the Treasury of the United States.

This Court is empowered to grant the equitable relief of disgorgement sought by Plaintiffs. This right falls squarely within this Court's inherent powers and is authorized by Section 7.

District Courts may, in their discretion, exercise all inherent equitable powers that "are available for the proper and complete exercise of that jurisdiction," except where prohibited by statute. *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936, 1946-47 (2020) (*quoting Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). Among those powers, "equity practice [has] long authorized courts to strip wrongdoers of their ill-gotten gains." *Liu*, 140 S. Ct. at 1942.

Disgorgement restores "the status quo, thus situating the remedy squarely within the heartland of equity." *Liu*, 140 S. Ct. at 1943 (quotation marks and citation omitted).

This remedy is available to the Court, "unless otherwise provided by statute." *Id.* at 1946–47 (*citing Porter*, 328 U.S. at 398) ("[T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command"). There is no such statutory prohibition here.

In *California v. American Stores*, 495 U.S 271, at 281 (1990) the Supreme Court held "§16 'states no restrictions or exceptions to the forms of injunctive relief a private plaintiff may seek, or that a court may order. . . . Rather, the statutory language indicates Congress' intention that traditional principles of equity govern the grant of injunctive relief.'" (Citation Omitted.)

Moreover, in *United States v. Paramount Pictures*, 334 U.S. 131, 171-72 (1948) (the Supreme Court held that injunctions to deprive the defendant of the fruits of its anticompetitive conduct should include injunctions ordering the defendant to divest property "if the property was acquired as a result of practices which constitute unreasonable restraints of trade. . . . . [T]he requirement that the defendants restore what they unlawfully obtained is no more punishment than the familiar remedy of restitution.") See also *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 250 (1968) (the Court stated: "It is of course established that, in a § 2 case, upon appropriate findings of violation, it is the duty of the court to prescribe relief which will . . . deny to the defendant the fruits of its statutory violation. . . ."); *United States v. Grinnell*, 384 U.S. 563, 577 (1966) (the Court held that "adequate relief in a monopolization case should . . . deprive the defendants of any of the benefits of the illegal conduct . . . ."); *Schine Chain Theatres, Inc. v. United States*, 334 U.S. 110, 128–29 (1948) (equitable relief functions include: "It deprives the antitrust defendants of the benefits of their conspiracy."); *United States v. Microsoft*, 253 F.3d 34, 103 (D.C. Cir. 2001) (*en banc*) ("[A] remedies decree in an antitrust case must seek to . . . 'deny to the defendant the fruits of its statutory violation . . . .'").

Furthermore, there is no doubt that equitable antitrust remedies include requiring violators to disgorge any illegally obtained profits or payments. In fact, this Court in a case presided over by the Hon. Susan Illston, has already recognized disgorgement as an available antitrust remedy. *See TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562, 2011 WL 2790179, at *4 (N.D.Cal. July 12, 2011) (recognizing state government enforcement actions seeking disgorgement when authorized by state law).

In fact, scholarship agrees that disgorgement is authorized under the law. Philip Areeda and Herbert Hovenkamp, two of the most distinguished antitrust scholars, unequivocally state

5

that "Equity relief may include . . the disgorgement of improperly attained gains." 2A Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, Paragraph 325a (3d ed. 2006).

The disgorgement relief in this case is sought for the benefit the general public as a whole. "The primary purpose of disgorgement is not to compensate [victims] ... [but rather to] forc[e] a defendant to give up the amount by which he was unjustly enriched." *U.S. v. KeySpan Corp.* 763 F. Supp 2d 633 (SDNY 2011).

Further, disgorgement supports the goal of restraining *future* violations. See *U.S. v Carson*, 52 F.3d 1173, 1182 (2d Cir. 1995) where disgorgement was found to be appropriate where "the funds are being used to fund or promote the illegal conduct or constitute capital available for that purpose".

Defendants argue that the question of the $4 Billion dividend is moot because the dividend has been paid and because the issue of whether an injunction should issue to prohibit the payment of the dividend has already been considered and denied by two separate courts. However, those courts did not consider the issue of the dividend in the context of the Sherman Act violation alleged here as part and parcel and in furtherance of the Clayton Act violation, and, in any case, the fact that other courts have refused to act to enjoin the dividend does not reach the issue of whether the payment should now be disgorged by these Defendants.

The defendants claim that the dividend payment is a wholly innocent act, and, as such, may not support a cause of action for violation of Section 1 of the Sherman Act and that other cases have not been successful in their quest to enjoin the payment of the dividend. But even wholly innocent acts, when shown to be a part and parcel of the overall combination, are held to

PLAINTIFFS' OPPOSITION TO ALBERTSONS' MOTION TO DISMISS

be illegal. This was made plain by the Supreme Court in *American Tobacco*:

> "It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns. <u>It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition.</u> No formal agreement is necessary to constitute an unlawful conspiracy. Often crimes are a matter of inference deduced from the acts of the person accused and done in pursuance of a criminal purpose. Where the conspiracy is proved, as here, from the evidence of the action taken in concert by the parties to it, it is all the more convincing proof of an intent to exercise the power of exclusion acquired through that conspiracy. The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealing or other circumstances as well as in an exchange of words. *United States v. Schrader's Son,* 252 U.S. 85." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-810 (1946)

This principal was reconfirmed in *Continental Ore* where acts in furtherance of a violation become part and parcel of the violation because it is the duty of the law to view the conduct of defendants as a whole, and not simply in its separate parts.

> "It is apparent from the foregoing that the Court of Appeals approached Continental's claims as if they were five completely separate and unrelated lawsuits. We think this was improper. In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. ". . . <u>[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole</u>. *United States v. Patten, 226 U. S. 525, 544* . . . ; and in a case like the one before us, the duty of the jury was to look at the whole picture and not merely at the individual figures in it." *American Tobacco Co. v. United States,* 147 F. 2d 93, 106 (C. A. 6th Cir.)." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-699 (1962).

None of the prior courts who have addressed the dividend have considered whether a wholly innocent act can be part of a scheme that becomes illegal. Nor did any of the prior cases consider the dividend as part and parcel of the larger antitrust violation of Section 7 of the Clayton Act, nor did they seek disgorgement of the dividend as a remedy.

## CONCLUSION

Because Plaintiffs have alleged and are likely to establish that the merger is unlawful and that plaintiffs and the public at large are threatened with irreparable harm if the merger proceeds, and because Plaintiffs have alleged a viable Sherman Act violation by reason of the combination within the merger agreement itself, the Court should deny Defendant's motion to dismiss.

Dated: May 11, 2023                Respectfully submitted:


By:    /s/ Joseph M. Alioto
       Joseph M. Alioto (Cal.Bar No. 42680)
       ALIOTO LAW FIRM
       One Sansome Street, Suite 3500
       San Francisco, CA 94104
       Telephone: (415) 434-8900
       Email: jmalioto@aliotolaw.com

       *Attorneys for Plaintiffs*

ADDITIONAL PLAINTIFFS COUNSEL:

Lawrence G. Papale (SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704
Email: lgpapale@papalelaw.com

Josephine Alioto (SNB 282989)
THE VEEN FIRM
20 Haight Street
San Francisco CA 94102
Telephone: (415) 673-4800
Email: jalioto@veenfirm.com

Christopher A Nedeau (SBN 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Theresa Moore (SBN 99978)
LAW OFFICE OF THERESA D. MOORE PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 613-1414
Email: tmoore@aliotolaw.com