DANIEL B. ASIMOW (SBN 165661)
Daniel.Asimow@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:    (415) 471-3100
Facsimile:    (415) 471-3400

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*admitted pro hac vice*)
MICHAEL BERNSTEIN (*admitted pro hac vice*)
KOLYA D. GLICK (*admitted pro hac vice*)
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone:    (202) 942-5000
Facsimile:    (202) 942-5999

*Attorneys for Defendant, THE KROGER CO.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>Kroger Co., Albertsons Companies, Inc. and Cerberus Capital Management, L.P.,<br><br>        Defendants. | Case No. 3:23-cv-00459-vc<br><br>**REPLY IN SUPPORT OF DEFENDANT THE KROGER COMPANY'S MOTION TO DISMISS**<br><br>Date:      July 27, 2023<br>Time:     10:00 a.m.<br>Judge:    Hon. Vince Chhabria<br>Courtroom: Courtroom 4 – 17th Floor |

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................2

    I.    THIS COURT SHOULD DISMISS PLAINTIFFS' CLAYTON ACT CLAIM ..................................................................................................2

        A.    Plaintiffs Have Failed to Allege a Relevant Market or Anticompetitive Effects ..............................................................2

        B.    Plaintiffs Lack Standing ...............................................................5

        C.    Plaintiffs' Clayton Act Claim Is Not Ripe ..................................8

    II.    PLAINTIFFS FAIL TO STATE A SHERMAN ACT CLAIM .............9

CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 2, 4

*AT & T Mobility LLC v. Bernardi*,
    Nos. 11-cv-03992, 11-cv-04412, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ....................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 2

*Boardman v. Pac. Seafood Grp.*,
    822 F.3d 1011 (9th Cir. 2016) ............................................................................................. 8

*Brown Shoe v. United States*,
    370 U.S. 294 (1962) ......................................................................................................... 3, 8

*California v. Am. Stores Co.*,
    492 U.S. 1301 (1989) .......................................................................................................... 8

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986) ............................................................................................................ 6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................................ 7

*DeHoog v. Anheuser-Busch InBev SA/NV*,
    899 F.3d 758 (9th Cir. 2018) ............................................................................................ 1, 4

*Demartini v. Microsoft Corp.*,
    No. 22-cv-08991, 2023 WL 2588173 (N.D. Cal. Mar. 20, 2023) ............................................ 1

*Hosp. Corp. of Am. v. FTC*,
    807 F.2d 1381 (7th Cir. 1986) .......................................................................................... 5, 8

*Malaney v. UAL Corp.*,
    No. 3:10-cv-02858, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010) ........................................ 5

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    562 F. Supp. 3d 1073 (E.D. Cal. 2021) ................................................................................ 3

*S. Austin Coalition Cmty. Council v. SBC Commc'ns, Inc.*,
    191 F.3d 842 (7th Cir. 1999) ............................................................................................ 8, 9

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) ............................................................................................................. 6, 7

*SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*,
 No. 17-cv-127, 2017 WL 3658948 (S.D. Tex. Aug. 24, 2017) ................................................. 7

*Tanaka v. Univ. of S. Cal.*,
 252 F.3d 1059 (9th Cir. 2001) ............................................................................................. 2, 3

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021) ............................................................................................................. 6

*United States v. Aluminum Co. of Am.*,
 377 U.S. 271 (1964) ................................................................................................................. 8

*United States v. Borden Co.*,
 347 U.S. 514 (1954) ............................................................................................................ 8, 9

*United States v. E. I. du Pont de Nemours & Co.*,
 353 U.S. 586 (1957) ................................................................................................................. 3

*United States v. Falstaff Brewing Corp.*,
 410 U.S. 526 (1973) ................................................................................................................. 4

*United States v. Falstaff Brewing Corp.*,
 383 F. Supp. 1020 (D.R.I. 1974) ............................................................................................. 4

*United States v. Pabst Brewing Co.*,
 384 U.S. 546 (1966) ................................................................................................................. 8

*United States v. Von's Grocery Co.*,
 384 U.S. 270 (1966) ............................................................................................................ 3, 8

*Uzuegbunam v. Preczewski*,
 141 S. Ct. 792 (2021) ............................................................................................................. 10

**Statutes**

15 U.S.C. § 26 ................................................................................................................................. 6

**Other Authorities**

Herbert Hovenkamp & Phillip Areeda, *Antitrust Law* (4th ed. 2019) ......................................... 7-8

*Who Are the Top 10 Grocers in the United States?*, FoodIndustry.Com (June 2022) .................... 2

- iv -
Reply in Support of Kroger's Motion to Dismiss
Case No. 3:23-cv-00459-vc

Plaintiffs' Opposition to Kroger's Motion to Dismiss ("Opp.") is remarkable for its steadfast refusal to even *acknowledge* the applicable legal standards, much less attempt to meet them. Plaintiffs cling to the demonstrably flawed theory that the mere "elimination of a rival is enough" to satisfy their burden under Section 7 of the Clayton Act. Opp. 11. In doing so, they refuse to address the unambiguous authority—including a decision this year from this Court, adverse to Plaintiffs' counsel themselves—explaining that such a theory "ignores binding Ninth Circuit precedent." Kroger's MTD ("Mot.") at 1 (quoting *Demartini v. Microsoft Corp.*, No. 22-CV-08991, 2023 WL 2588173, at *6 (N.D. Cal. Mar. 20, 2023)); *see DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018). Plaintiffs likewise fail to confront their threshold burden of plausibly alleging a relevant geographic market or their obligation to demonstrate a likely reduction of competition in that market. And Plaintiffs do not cite a *single case* to support their limitless theory of standing, which would transform every supermarket customer in the country into an antitrust enforcer.

To the extent Plaintiffs' Clayton Act theory is intelligible at all, it appears to rest on an overreading of half-century-old Supreme Court precedent that does not help their cause. *See* Opp. 1, 3-5. First, those cases recognize the requirement of identifying a well-defined relevant local market, and Plaintiffs all but concede that they have not identified any such market. Second, the plaintiff in those cases was *the government*, which need not satisfy the same Article III standing requirements as Plaintiffs here. And third, Plaintiffs' myopic focus on those cases ignores subsequent decisions by the Ninth Circuit and other courts that have added meaningful judicial clarity to the broad principles articulated in the 1960s.

As for the Sherman Act claim, Plaintiffs effectively concede dismissal as to Kroger: they (1) seek no relief from Kroger; and (2) seek no relief on their own behalf. *See* ECF No. 72 at 3-4.

This Court should dismiss the Complaint with prejudice. Plaintiffs have not sought leave to amend; they have instead doubled-down on their debunked antitrust theory at every turn, including by filing a motion for injunctive relief that will only waste judicial resources. Plaintiffs' failure to engage with binding and on-point precedent is fatal to their suit.

# ARGUMENT

## I.   THIS COURT SHOULD DISMISS PLAINTIFFS' CLAYTON ACT CLAIM

The first 10 pages of Plaintiffs' Opposition offer no coherent discussion of the relevant legal standards. When the Opposition finally reaches its first sub-heading (at page 11), Plaintiffs' arguments are exposed as nothing more than a "formulaic recitation" of the elements of their claim, which cannot suffice to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### A.   Plaintiffs Have Failed to Allege a Relevant Market or Anticompetitive Effects

Plaintiffs do not contest that their Complaint must be dismissed if they fail to allege a "relevant geographic market" or relevant product market. Mot. 5-6. Their arguments to support a relevant geographic market, however, are riddled with inconsistencies, and their proposed product market ignores their own cited sources.[1] Under any understanding of their Opposition, Plaintiffs' arguments fail.

*First*, Plaintiffs' insistence on a "national" market, Opp. 7, ignores the basic definition of a relevant geographic market in antitrust law: the "area of effective competition" to which consumers can "turn for alternative sources of supply" in response to small price changes, *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (citation omitted). Plaintiffs do not—and cannot—defend the implausible suggestion that "consumers might fly from San Francisco to New York City for their weekly grocery shopping," Mot. 6, and their failure to square their alleged national market with the reality that different competitors compete in different parts of the country is dispositive, *see Tanaka*, 252 F.3d at 1063. Indeed, as Plaintiffs' own authority confirms, the

---

[1] Plaintiffs likewise fail to support their proposed product market with well-pleaded facts. They assert a "product market composed of the retail sale of food and other grocery products in supermarkets," Opp. 8, but they do not address the plethora of other online and in-person grocery options available to the modern consumer, *see* Mot. 6 n.1. Indeed, in seeking to artificially limit the relevant product market to supermarkets that fit Kroger and Albertsons' precise descriptions, *see* Opp. 8, Plaintiffs ignore their own cited sources, which identify the top three "grocery chains in the U.S." as Walmart, Amazon, and Costco, ECF No. 28-5 (citing *Who Are the Top 10 Grocers in the United States?*, FoodIndustry.Com (June 2022), https://bit.ly/433cHhL).

"[d]etermination of the relevant market is a necessary predicate to a finding of a violation of the Clayton Act." *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957).

Plaintiffs fundamentally undermine their proposed "national market" by acknowledging that "competition for supermarkets is local in nature," Compl. ¶ 52, and by refusing to confront recent supermarket merger cases confining the relevant geographic market for such cases to a local area within a specific city, *see* Mot. 6 (citing cases). As those cases illustrate, a nationwide market may be appropriate when assessing competition between nationwide distributors, but it is wholly inapt for the kind of admittedly "local" competition that Plaintiffs allege in this case. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 336-37 (1962); *cf. United States v. Von's Grocery Co.*, 384 U.S. 270, 271 (1966) (assessing competition for supermarkets "in the Los Angeles area" in the 1960s). Plaintiffs' failure to define a geographic market that "correspond[s] to the commercial realities of the industry" is fatal to their claims. *Brown Shoe Co.*, 370 U.S. at 336-37 (quotation marks omitted).

***Second***, Plaintiffs' conclusory assertion that they have established "smaller, local relevant geographic markets," Opp. 7, is belied by their refusal to even *name* such a market. The closest Plaintiffs come to doing so is their unsupported assertion that "[i]n the Southern California/Los Angeles area alone Defendants were the number one and two supermarkets in 2017." Opp. 6. To start, that allegation appears nowhere in the Complaint. But even if it did, Plaintiffs' proffered factual support is a 5-year-old statistic that imprecisely equates the "Los Angeles area" with the entirety of Southern California. Defining a geographic market based on this statistic would require the implausible inference that a San Diegan would travel as far north as San Luis Obispo for their groceries. *See Tanaka*, 252 F.3d at 1063. In short, even when Plaintiffs reference some smaller geographic markets, they fail to identify the "limiting principles," required to plead that any such "local" market exists. *See Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1084-85 (E.D. Cal. 2021) (collecting cases).

***Third***, even if Plaintiffs had alleged a cognizable city- or state-wide market, the Opposition confirms that Plaintiffs "fail to allege any facts indicating that the Kroger-Albertsons merger would

substantially lessen competition in such markets." Mot. 7. Instead, Plaintiffs identify "national market share" statistics as their *only* allegations supporting a substantial lessening of competition. Opp. 12. Their conclusory assertions of local harm cannot satisfy basic pleading standards. *See DeHoog*, 899 F.3d at 763 (citing, *inter alia*, *Iqbal*, 556 U.S. at 678).

**Fourth**, Plaintiffs seek to avoid the relevant-geographic-market requirement altogether, arguing that, even "in markets in which the Defendants do not currently directly compete, they are *potential* competitors whose presence outside of the geographic market nevertheless impacts the prices charged inside the market." Opp. 6 (emphasis added). The Complaint offers no well-pleaded facts to support this theory, and Plaintiffs' lone citation to support this proposition—*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973)—ignores the actual holding and outcome in *Falstaff*. There, the Supreme Court simply remanded the case post-merger for the district court to "appraise[] the economic facts . . . to determine whether in any realistic sense Falstaff could be said to be a potential competitor on the fringe of the market with likely influence on existing competition." *Id.* at 534-35. On remand, the district court again rejected the Government's claims, holding that it "ha[d] failed to establish by a fair preponderance of the evidence that said acquisition of Narragansett by the defendant would probably lead to a substantial lessening of competition in the production and sale of beer in said New England market." *United States v. Falstaff Brewing Corp.*, 383 F. Supp. 1020, 1028 (D.R.I. 1974). In other words, all *Falstaff* affirms is that allegations that a merger will likely lead to a substantial lessening of competition must be supported by specific *facts*. Plaintiffs' speculation about future events unsupported by any corresponding factual allegations does not suffice.

Plaintiffs also appear to justify their failure to allege a relevant geographic market with the novel assertion that "Defendants compete . . . on the supply side of the market." Opp. 7. That allegation appears nowhere on the face of the Complaint. *See generally* Compl. (failing to use the word "supply"). And in any event, it is nonsensical as to the individual plaintiff-consumers in this

case, whose claims arise from *their demand* for consumer goods, and from Defendants' potential competition for *their* supermarket purchases.[2]

***Finally***, Plaintiffs' map of Albertsons' and Kroger's stores in the United States, Opp. 2, says nothing about the likely competitive effects of this proposed merger. The map does not identify other competitors in each region, does not explain consumer preferences in a given market, and, as discussed *infra* at 7-9, cannot take into account which stores the merging parties will ultimately divest to other competitors prior to the completion of the merger. Even if a market-share calculation were a perfect proxy for market power (as Kroger has explained, Mot. 7-8, it is not), the map does not demonstrate market concentration in any geographic area that could possibly be construed as a relevant market.

Plaintiffs ultimately ignore the voluminous precedent rejecting materially identical arguments that the elimination of a rival is a "per se" violation of the Clayton Act. *See* Mot. 7-8 (collecting cases). Even the Seventh Circuit decision that Plaintiffs block-quote, Opp. 10, "cast[s] doubt on the continued vitality" of cases like *Von's*, and explains that "the Supreme Court, echoed by the lower courts, has said repeatedly that the economic concept of competition, rather than any desire to preserve rivals as such, is the lodestar that shall guide the contemporary application of the antitrust laws, not excluding the Clayton Act," *Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1386 (7th Cir. 1986). "Simply put, there is no support for the notion that, merely by removing one competitor, any horizontal merger in [an] industry will be anticompetitive and thereby violate Section 7." *Malaney v. UAL Corp.*, No. 3:10-cv-02858, 2010 WL 3790296, at *7 n.11 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011).

### B. Plaintiffs Lack Standing

Plaintiffs completely fail to address their lack of Article III standing. They do not contest that the Clayton Act does not supplant their burden of establishing Article III standing. They do not explain how their vague allegations of future "increased prices" can satisfy the constitutional

---

[2] Plaintiffs do not defend their conclusory allegations of harm to the "competition for labor," Compl. ¶ 62, and therefore concede they have no such claim here, *see* Mot. 8 n.2.

requirement that a plaintiff allege an injury that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). And they do not dispute that their limitless theory of standing would empower every Kroger or Albertsons consumer in the country to sue to enjoin the merger based on the merger's mere existence, without any demonstration of likely harm and without any competitive overlap in their local market.

Plaintiffs claim that Defendants "have attempted to mislead the court" by arguing that Article III standing requirements apply to Plaintiffs' claims, Opp. 8, and have focused their analysis solely on whether the Clayton Act provides a cause of action.[3] But they cannot contest that they must satisfy their burden of alleging Article III standing. The Clayton Act's cause of action for plaintiffs who are "threatened" with "loss or damage by a violation of the antitrust laws" does not supplant Plaintiffs' failure to plead a constitutional injury. 15 U.S.C. § 26.

Given their pleading failure, Plaintiffs have no answer to *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), wherein the Supreme Court made clear that "[i]njury in fact is a constitutional requirement, and [that] it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339 (cleaned up). Nor do they contest that "an injury in law is not an injury in fact," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021), meaning that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," *Spokeo*, 578 U.S. at 341. Put simply, while the Clayton Act allows suits to prevent future harm, that harm must be actual or imminent to satisfy constitutional requirements. Plaintiffs have not satisfied those requirements here. *See* Mot. 8-10.

---

[3] To the extent that Plaintiffs suggest that there is a distinction between the harms cognizable under Sections 4 and 16 of the Clayton Act, they are incorrect. *See* Opp. 8-9. As the Supreme Court has recognized, "Sections 4 and 16 are . . . best understood as providing complementary remedies for a single set of injuries." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986).

The Opposition confirms that Plaintiffs have not alleged a "concrete," "particularized," and "actual or imminent" injury in fact. *Spokeo*, 578 U.S. at 339; *see also* Mot. 9-10. Plaintiffs repeat their vague allegations that they "*may* be harmed" by an "elimination of competition of foodstuffs" because they "*may* choose to shop" at a Kroger store or an Albertsons store that may raise prices. Opp. 9 (emphases added). But Plaintiffs allege no facts to support these speculative allegations—they do not allege which Albertsons stores Kroger will ultimately acquire in the merger or where those stores will be located. Moreover, Plaintiffs do not even attempt to differentiate their speculative harms from any other individuals who "may" shop at a Kroger or Albertsons store in the future. *See* Mot. 9-10. Plaintiffs' vague gestures at an injury are neither "particularized" nor "certainly impending" and thus cannot establish a constitutional injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 409 (2013) (citations and emphasis omitted).

Not only are Plaintiffs' alleged injuries unknown and unidentified, they are also unknowable. Plaintiffs cannot establish a certainly impending injury in fact without knowing which stores Kroger will own post-merger. *See* Mot. 10. Yet the ongoing regulatory review process is almost certain to result in divestitures that will alter both the merger and the competitive landscape post-merger. *See id.* Rather than acknowledge the inherently speculative nature of their alleged harms, Plaintiffs mistakenly equate "divestiture" with store closure, Opp. 3, and fail to engage entirely with cases dismissing similarly conjectural antitrust claims for failure to allege an injury in fact, *see* Mot. 10 (citing Order, *Cassan Enters., Inc. v. Avis Budget Grp., Inc.*, No. 2:10-cv-01934 (W.D. Wash. Mar. 11, 2011), ECF No. 39, and *SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, No. 17-cv-127, 2017 WL 3658948, at *4 (S.D. Tex. Aug. 24, 2017), *aff'd in part, modified in part*, 754 F. App'x 235 (5th Cir. 2018)).

Finally, Plaintiffs' declaration that they have "co-equal enforcement" authority to the Federal Trade Commission and Department of Justice, Opp. 4, ignores the fact that Article III standing requirements do not apply equally to private plaintiffs and government antitrust enforcers. As Kroger explained, "actual or threatened harm to a person with standing is an essential element of the private plaintiff's equity case, but not of the government's." Mot. 9 (quoting Herbert

Hovenkamp & Phillip Areeda, *Antitrust Law* ¶ 303e3 (4th ed. 2019)). The government enforces antitrust law "on behalf of the general public" and must establish only that an antitrust violation has occurred, while a private plaintiff may enforce antitrust laws "only when his personal interest will be served." *United States v. Borden Co.*, 347 U.S. 514, 518 (1954). These Plaintiffs represent only themselves, and they have alleged no personal interest or injury here. *See supra* at 5-7.

Nearly every case Plaintiffs cites in support of their alleged injury involved suits brought by the government, not private parties. *See* Opp. 9-10 (citing *California v. Am. Stores Co.*, 492 U.S. 1301 (1989); *Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381 (7th Cir. 1986); *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962); *United States v. Aluminum Co. of Am.*, 377 U.S. 271 (1964); *United States v. Von's Grocery Co.*, 384 U.S. 270 (1966); *United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966)). And, in the lone private-party suit that Plaintiffs offer, the court found that the fisherman plaintiffs established a likelihood of success on their motion for a preliminary injunction when they "support[ed] their argument with market concentration statistics and expert declarations" explaining, *inter alia*, the specific "barriers to entry in the West Coast seafood market." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022-23 (9th Cir. 2016). Plaintiffs have pleaded no such facts establishing a plausible claim or an imminent injury here. That pleading deficiency is fatal to Plaintiffs' Clayton Act claim.

### C. Plaintiffs' Clayton Act Claim Is Not Ripe

Plaintiffs' ripeness arguments are similarly flawed. The Opposition responds to the wrong question when asserting that "plaintiffs' actions and governmental actions challenging the identical merger and seeking the identical relief 'may proceed simultaneously or in disregard of each other.'" Opp. 4 (quoting *Borden Co.*, 347 U.S. at 519). The question is not whether private and governmental actions to challenge mergers may *ever* proceed simultaneously. The question is whether *this* private action is premature because future divestitures resulting from the merger review process will change the scope of the deal. As the Seventh Circuit held in *South Austin Coalition Community Council v. SBC Communications, Inc.*, 191 F.3d 842 (7th Cir. 1999), private actions are premature in these circumstances. *See* Mot. 11.

Rather than address the uncertainties posed by future divestitures—or the impossibility of any coherent antitrust analysis before those divestitures are known—Plaintiffs argue that *South Austin Coalition* is incompatible with the possibility that private and governmental actions to enforce the Clayton Act may proceed "simultaneously." Opp. 5. Plaintiffs' reliance on *Borden* for this proposition is misplaced. *See* Opp. 4. In *Borden*, the Supreme Court held that the existence of a private Clayton Act suit and accompanying decree against the subject defendants did not negate "the Government's right and duty to seek an injunction to protect the public interest." 347 U.S. at 519. In reaching this holding, the Court stressed "the difference in the respective interests sought to be vindicated by the Government and the private litigant," *id.* at 520, and emphasized the Government's role in ensuring the "continuing protection of the public . . . against a recurrence of antitrust violations," *id.* at 519. Thus, the *Borden* Court was concerned with ensuring that *private* enforcement actions did not frustrate public enforcement actions, which is precisely the risk posed by this case. Nothing in *Borden* suggests that a private action may proceed where, as here, it "is impossible to analyze a potential-competition claim" prior to knowing the final terms of the transaction pending regulatory review. *S. Austin Coal. Cmty. Council*, 191 F.3d at 845; *cf. AT & T Mobility LLC v. Bernardi*, Nos. 11-cv-03992, 11-cv-04412, 2011 WL 5079549, at *12 (N.D. Cal. Oct. 26, 2011).

## II.     PLAINTIFFS FAIL TO STATE A SHERMAN ACT CLAIM

Plaintiffs' Sherman Act claim is moot and should be dismissed. Plaintiffs continue to imply that the Dividend may not have been paid, *see* Pls.' Opp. to Albertsons' MTD at 2 (ECF No. 72), which is demonstrably false, *see* Albertsons' MTD, Ex. C at 3 (ECF No. 42-5) (Albertsons' Schedule 14C Information Statement to the Securities and Exchange Commission). Provided with the same judicially noticeable evidence proving that the Dividend had been paid, *see* Kroger's Supp. Br. in Resp. to Jan. 18, 2023, Briefing Order at 1, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir. Dec. 20, 2022), the D.C. Circuit dismissed the pending appeal of a materially identical claim as moot, *see* Order, *District of Columbia v. Kroger*, No. 22-7168 (D.C. Cir. Feb. 23, 2023). Contrary to Plaintiffs' suggestion, Opp. 14, Kroger does not rely on "declarations and

factual material from outside the complaint" to support its Motion. Kroger submitted no exhibits with its Motion—which relies on judicial opinions and orders—to support dismissal of Plaintiffs' Sherman Act claim. *See* Mot. 14 & n.5.

As to Kroger, Plaintiffs' request for disgorgement is frivolous. *See* Mot. 2, 12-13. Plaintiffs ask for nothing from Kroger, and Kroger has no Dividend payments to disgorge. Plaintiffs concede, moreover, that they request no relief on their own behalf, instead asking this Court to order disgorgement either to Albertsons or to the United States Treasury. ECF No. 72 at 3-4. Because "plaintiff[s] must maintain a personal interest in . . . each form of relief sought," their request for relief exclusively on behalf of non-parties is fatal to their claim. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (citation omitted).

As Kroger explained, *see* Mot. 13-14, and as Albertsons underscored further in its Motion to Dismiss (ECF No. 42), Plaintiffs' Sherman Act claim also fails because it alleges no unlawful agreement. For instance, while Plaintiffs claim that the Merger Agreement itself "constitutes a Sherman Act violation," they fail to identify any merger provision demonstrating an *agreement* to pay the Dividend, citing only irrelevant provisions of the contract. Pls.' Opp. to Albertsons' MTD at 2 (ECF No. 72). As four courts have held, there is no such provision in the Agreement. Mot. 12-14.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice.

Dated:  May 25, 2023.  **ARNOLD & PORTER KAYE SCHOLER LLP**

By:  /s/ *Daniel B. Asimow*
DANIEL B. ASIMOW
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:   (415) 471-3100
Facsimile:    (415) 471-3400
Daniel.Asimow@arnoldporter.com

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*pro hac vice*)
MICHAEL BERNSTEIN (*pro hac vice*)
KOLYA D. GLICK (*pro hac vice*)
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone:   (202) 942-5000
Facsimile:    (202) 942-5999
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com

*Attorneys for Defendant*
THE KROGER CO.

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 25, 2023, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

Dated:  May 25, 2023

/s/ *Daniel B. Asimow*
Daniel B. Asimow