John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE WHALEN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO., ALBERTSONS COMPANIES, INC., AND CERBERUS CAPITAL MANAGEMENT, L.P.,<br><br>Defendants. | CASE NO. 3:23-CV-459-VC<br><br>**DEFENDANT ALBERTSONS COMPANIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Date:     July 27, 2023<br>Time:     10:00 a.m.<br>Place:    Courtroom 4 - 17th Floor<br>Judge:    Hon. Vince Chhabria |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT ...................................................................................................................2

    A.    Plaintiffs Do Not Plausibly Allege the Basic Elements of Their Sherman Act Claim. ............................................................................................2

        1.    The Merger Agreement Does Not Reflect an Agreement to Pay the Special Dividend. ......................................................................2

        2.    Plaintiffs Have Not Plausibly Alleged That Payment of the Special Dividend Will Harm Competition. ...........................................4

    B.    Plaintiffs Do Not Assert a Valid Claim for Relief. ............................................6

        1.    Plaintiffs' Request for Injunctive Relief is Moot. ...............................6

        2.    Plaintiffs Cannot Seek Disgorgement of the Special Dividend. ..................7

    C.    Count II Should Be Dismissed with Prejudice. .......................................9

CONCLUSION .................................................................................................9

ALBERTSONS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

## FEDERAL CASES

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
126 F.3d 1118 (9th Cir. 1997) ..............................................................................7

*California v. Am. Stores Co.*,
495 U.S. 271 (1990)..............................................................................................8

*Coalition for ICANN Transp., Inc. v. VeriSign, Inc.*,
771 F. Supp. 2d 1195 (N.D. Cal. 2011) ...............................................................7

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962)..............................................................................................7

*District of Columbia v. The Kroger Co.*,
No. 1:22-CV-03357 (CJN), 2022 WL 18910855 (D.D.C. Dec. 14, 2022)............4

*District of Columbia v. The Kroger Co.*,
No. 1:22-CV-03357 (CJN), 2022 WL 18911128 (D.D.C. Dec. 13, 2022)............4

*District of Columbia v. The Kroger Co.*,
No. 22-7168, 2023 WL 2356015 (D.C. Cir. Feb. 23, 2023)...................................7

*Dreiling v. Am. Express Co.*,
458 F.3d 942 (9th Cir. 2006) ...............................................................................6

*Golden v. Intel Corp.*,
No. 22-CV-03828-NC, 2022 WL 17735388 (N.D. Cal. Nov. 22, 2022) .................9

*In re Cathode Ray Tube (Ctr) Antitrust Litig.*,
No. C-07-5944-JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016)...........................7

*In re Generic Pharms. Pricing Antitrust Litig.*,
605 F. Supp. 3d 672 (E.D. Pa. 2022) ....................................................................7

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .............................................................................6

*In re Multidistrict Vehicle Air Pollution*,
538 F.2d 231 (9th Cir. 1976) ...............................................................................7

*Liu v. Sec. & Exch. Comm'n*,
140 S. Ct. 1936 (2020)..........................................................................................8

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ...............................................................................9

*Pennsylvania Sugar Refinery v. American Sugar Refining Co.*,
166 F. 254 (2d Cr. 1908)........................................................................................7

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) ...................................................................6

*Schine Chain Theatres, Inc. v. United States*,
  334 U.S. 110 (1948) ..............................................................................................8

*Tan v. Grubhub, Inc.*,
  171 F. Supp. 3d 998 (N.D. Cal. 2016) ...................................................................6

*TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. C 10-4346 SI, 2011 WL 2790179 (N.D. Cal. July 12, 2011) ...........................8

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ..............................................................................................8

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) .................................................................................8

*United States v. Paramount Pictures*,
  334 U.S. 131 (1948) ..............................................................................................8

*United States v. United Shoe Machinery Corp.*,
  391 U.S. 244 (1968) ..............................................................................................8

*Zenith Radio Corp. v. Matsushita Elec. Indus.*,
  513 F. Supp. 1100 (E.D. Pa. 1981) ........................................................................8

## STATUTES AND RULES

15 U.S.C. § 1 ...................................................................................................................1

15 U.S.C. § 18 .................................................................................................................5

15 U.S.C. § 26 .................................................................................................................1

Fed. R. Civ. P. 12 ...........................................................................................................6

## OTHER AUTHORITIES

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
  Principles and Their Application* (4th Ed. 2022, 2023 Supplement) ......................8

ALBERTSONS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Albertsons Companies, Inc. ("Albertsons" or "the Company") joins in full Defendant The Kroger Co.'s ("Kroger") Reply in Support of its Motion to Dismiss.  ECF No. 74. Albertsons writes separately to address the arguments made in its Motion to Dismiss, ECF No. 42 (the "Motion" or "Mot."), which focuses on Count II of the Complaint, and Plaintiffs' Opposition to that Motion, ECF No. 72 (the "Opposition" or "Opp.").  Albertsons respectfully requests that this Court dismiss with prejudice Count II, which challenges Albertsons' payment of the dividend duly authorized by the Albertsons Board of Directors (the "Board") on October 13, 2022 (the "Special Dividend") as a purported violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and seeks injunctive and equitable relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

## PRELIMINARY STATEMENT

In their Opposition to Albertsons' Motion to Dismiss, Plaintiffs fail to address the fundamental flaws of their specious claim that Albertsons' independent decision to declare and pay the Special Dividend constitutes an unlawful agreement with Kroger and Cerberus to harm competition that should be enjoined or disgorged.  Plaintiffs confirm their Sherman Act claim is premised solely on the Merger Agreement between Kroger and Albertsons, but cannot identify any provision of that agreement that could plausibly be understood as an agreement to pay the Special Dividend in furtherance of an anticompetitive scheme (nor could they given multiple courts have already concluded otherwise).  Nor do Plaintiffs offer any support for their baseless speculation that payment of the Special Dividend has or will somehow harm Albertsons or competition more generally, particularly in light of judicially noticeable facts that confirm the opposite.  Finally, Plaintiffs offer no serious response to the fact that they cannot enjoin payment of the Special Dividend and/or disgorge it as to Albertsons; the Special Dividend was paid months ago, disgorgement is not a remedy available to Plaintiffs, and any disgorgement sought would not be from Albertsons in any event (indeed, Plaintiffs suggest that amounts disgorged should be *returned* to Albertsons).  In short, Count II is moot, seeks remedies that cannot be

ALBERTSONS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

granted, and is utterly implausible and fundamentally flawed.  It should be dismissed with prejudice.

## ARGUMENT

**A.    Plaintiffs Do Not Plausibly Allege the Basic Elements of Their Sherman Act Claim.**

Count II of the Complaint should be dismissed because Plaintiffs fail to plausibly allege the basic elements of a Sherman Act Section 1 claim: (1) an unlawful agreement; and (2) harm to competition.  *See* Mot. at 7–12.  Plaintiffs' Opposition fails to address the pleading deficiencies identified in Albertsons' Motion that require dismissal of Count II.

**1.    The Merger Agreement Does Not Reflect an Agreement to Pay the Special Dividend.**

Plaintiffs' claim that Albertsons' independent decision to pay the Special Dividend violates the Sherman Act should be dismissed because Plaintiffs fail to plausibly allege an unlawful agreement.  In their Opposition, Plaintiffs make clear that Count II is premised entirely on the Merger Agreement between Albertsons and Kroger, which they assert is "the contract, combination and conspiracy in restraint of trade."  Opp. at 2.  But Plaintiffs fail to identify any aspect of the Merger Agreement that evidences an unlawful agreement between Kroger and Albertsons (or Cerberus, which is not even a party to the Merger Agreement) to pay the Special Dividend, much less a scheme to harm competition.

Indeed, Plaintiffs' claim is rooted in a fundamental misreading of the Merger Agreement. Plaintiffs cite Section 2.1 of the Agreement as purported evidence of an unlawful scheme to pay the Special Dividend.  Opp. at 3.  Section 2.1 of the Merger Agreement has nothing to do with the Special Dividend; instead, Section 2.1 addresses the potential distribution of shares of SpinCo, a new corporate entity that could be formed and spun off from Albertsons at closing of the Merger in order to facilitate divestiture of certain stores.  *See* ECF No. 42-6 at Exhibit 2.1 (Merger Agreement), § 2.1 ("[T]he Parties agree that the Company will effect the Distribution . . . ."); *id.* § 1.1 (defining "Distribution" as "the Spin-Off Distribution," "Spin-Off Distribution"

as the distribution of "issued and outstanding shares of SpinCo Common Stock," and "SpinCo" as "a wholly owned subsidiary of the Company, to be formed as a Delaware corporation prior to the Separation to hold the SpinCo Business"). That distribution is entirely unrelated to the Special Dividend that Plaintiffs purport to challenge here. Nothing about the mechanics of the formation of SpinCo reflects an anticompetitive agreement between Albertsons and Kroger to pay the Special Dividend, and Plaintiffs' arguments to the contrary reflect a fundamental misunderstanding of the Merger Agreement.

As explained in Albertsons's Motion, the provisions of the Merger Agreement that do refer to a potential pre-closing dividend do not evidence an *agreement* to pay the Special Dividend. *See* Mot. at 8. Sections 1.1 and 6.1(e) simply reference the *possibility* that Albertsons might *independently* elect to pay a pre-closing dividend, but do not require Albertsons to pay such a dividend or suggest that the Merger is dependent on, or driven by, Albertsons doing so. *Id.* Multiple courts have already examined the Merger Agreement and soundly rejected Plaintiffs' contention that it reflects an agreement between Albertsons and Kroger to pay the Special Dividend. For example, in denying a motion for a temporary restraining order by the Attorneys General of California, Illinois, and the District of Columbia, the U.S. District Court for the District of Columbia expressly found that "the merger agreement *does not require* the payment of the preclosing dividend" and that "in fact, the evidence . . . *weighs against* defining [*sic*] of an agreement obligating Albertsons to pay the dividend. . . . [N]othing in the merger agreement obligates Albertsons to do so." ECF No. 42-10 at 66-67 (Tr. of Nov. 8, 2022 Hearing) (emphasis added). The Washington State King County Superior Court reached the same conclusion when denying a motion for preliminary injunction by the Washington Attorney General premised on the same argument. ECF No. 42-12 (Wa. Super. Ct. 12/9/22 Order), at 4 ("The parties did not agree that Albertsons would issue that Special Dividend, nor did Kroger require Albertsons to do so.").

Plaintiffs weakly attempt to distinguish these prior court rulings by asserting that the D.C. federal and Washington state courts did not evaluate the Special Dividend "as part and parcel

and in furtherance of the Clayton Act violation." Opp. at 6. But that is a red herring and ignores the nature of the allegations made in the prior cases. Although the prior actions did not explicitly challenge or seek to enjoin the Merger itself under the Clayton Act, the state attorneys general in both actions did allege that Albertsons' payment of the Special Dividend was part of an agreement with Kroger to competitively weaken Albertsons in order to facilitate regulatory approval of the Merger. ECF No. 42-8 (D.D.C. Compl.), p. 3, ¶¶ 38–40; ECF No. 42-9 (Wa. Compl.), ¶¶ 9, 39. And in both cases, the state attorneys general relied on the Merger Agreement as evidence of that purported unlawful agreement. ECF No. 42-8, ¶¶ 28, 32; ECF No. 42-9, ¶¶ 29–30, 33, 36. The D.C. and Washington courts properly rejected those claims because the state attorneys general failed to show any evidence of an agreement between Albertsons and Kroger to pay the Special Dividend, much less to harm Albertsons in order to ease regulatory approval of the Merger. *See, e.g.*, ECF No. 42-10 at 66–73; ECF No. 42-12, at 4–6; *District of Columbia v. The Kroger Co.*, No. 1:22-CV-03357 (CJN), 2022 WL 18910855 at \*2 (D.D.C. Dec. 14, 2022); *Id.*, 2022 WL 18911128 (D.D.C. Dec. 13, 2022). Plaintiffs provide no plausible reason to depart from those courts' well-reasoned findings here.

In short, Plaintiffs' claim that the Merger Agreement reflects an unlawful agreement to pay the Special Dividend is belied by the plain language of the contract and has been rejected by every Court that has heard it. The decision to declare the Special Dividend was Albertsons' alone; it was not in any way conditioned on the Merger or required by the Merger Agreement. This alone is sufficient reason to dismiss Count II with prejudice.

2.    <u>Plaintiffs Have Not Plausibly Alleged That Payment of the Special Dividend Will Harm Competition.</u>

Count II also fails because Plaintiffs do not plausibly allege that the Special Dividend has or will harm competition. *See* Mot. at 10–12.[1] As Albertsons explained in its Motion, the

---

[1] Plaintiffs concede that the Special Dividend may be "wholly innocent" but suggest the Court consider it as "part of a scheme" to violate the Clayton Act. Opp. at 7. The suggestion that one company's independent action may be part of a "scheme" to violate Section 7 of the Clayton Act is legally unsupported. But even if there were legal and factual support for Plaintiffs' argument,

Complaint provides nothing but barebone and conclusory allegations that Albertsons—and competition more generally—will be harmed by payment of the Special Dividend. *Id.* at 11–12. Plaintiffs do not plausibly allege a relevant antitrust market, and their speculative assertions of harm are not supported by any factual allegations. *Id*. at 10–11. To the contrary, they are contradicted by the Company's excellent performance as reflected in SEC filings and other documents of which the Court may take judicial notice, all of which confirm that Albertsons is in a strong financial position, generates significant earnings and excess cash, and continues to compete vigorously in the fiercely competitive markets in which it operates. *Id*. at 12.

Plaintiffs' Opposition fails to address these fundamental flaws in their Sherman Act claim. As explained in Kroger's reply brief, which Albertsons has joined, Plaintiffs do not plausibly explain how a nation-wide grocery market is a relevant antitrust market given the localized nature of grocery shopping. ECF No. 74 at 2–4. Moreover, Plaintiffs fail to identify any factual allegation in support of their speculative assertion that payment of the Special Dividend has harmed or will harm Albertsons or its ability to effectively compete as an independent company, nor do they attempt to defend that allegation in their Opposition. And even though the Special Dividend was paid months ago, Plaintiffs do not plead any facts showing how its payment has hobbled Albertsons' ability to operate effectively or compete in the marketplace. This failure is fatal to Plaintiffs' claim. It is also not surprising given the wealth of publicly-available information demonstrating Albertsons' financial strength and continuing place as a vigorous competitor in the fiercely competitive markets in which it does business. Mot. at 12. Indeed, Albertsons continues to generate significant excess cash from its operations and its most recent SEC filings confirm that Albertsons continues to thrive after payment of the Special Dividend. As of February 25, 2023, Albertsons had already repaid some $400 million of the $1.4 billion it borrowed from its asset-based lending facility ("ABL") to fund payment of the

---

they would still be required to show the Special Dividend has, or will, "substantially [] lessen competition, or [] tend to create a monopoly," 15 U.S.C. § 18, which Plaintiffs have not plausibly alleged here.

ALBERTSONS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Special Dividend.  Supplemental Declaration of Edward D. Hassi, Ex. S (2022 10-K) at 49–50.[2] Albertsons also has publicly re-iterated that it has "significant sources of cash to meet [its] liquidity needs for the next 12 months and for the foreseeable future" and "adequate cash flow to maintain [its] current debt rating and to respond effectively to competitive conditions."  *Id.* at 50. Plaintiffs' unsupported and speculative allegations of competitive harm are implausible and plainly insufficient to plead a Sherman Act violation on their face, but particularly so where they are directly contradicted by the real-world facts.  *See, e.g., Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 877–78 (N.D. Cal. 2015) ("[T]he Court need not accept as true allegations that contradict matters properly the subject of judicial notice or by exhibit." (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

Plaintiffs' complete failure to plausibly allege Albertsons' payment of the Special Dividend has harmed or will harm Albertsons or competition more broadly in any relevant antitrust market is also reason enough to dismiss Count II with prejudice.

**B.      Plaintiffs Do Not Assert a Valid Claim for Relief.**

Putting aside Plaintiffs' failure to plead the basic elements of their claim, Count II of the Complaint should also be dismissed because Plaintiffs cannot obtain—and the Court cannot grant—any of the injunctive or equitable relief Plaintiffs purport to seek against Albertsons.

1.      Plaintiffs' Request for Injunctive Relief is Moot.

As Albertsons explained in its Motion, the Special Dividend was paid on January 20, 2023—over a week before the Complaint was filed, and weeks before Plaintiffs filed their motion for a preliminary injunction.  Given the Special Dividend has already been paid, the

---

[2]      The Supplemental Hassi Declaration and the exhibit thereto is filed herewith.  As explained in Albertsons' Motion to Dismiss and accompanying Request for Judicial Notice, the Court may consider documents subject to judicial notice in assessing a motion to dismiss under Rule 12, including SEC filings.  Mot. at 2 n.2 (citing *Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998, 1003 n.2, 1016 (N.D. Cal. 2016); *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)).  However, Plaintiffs' vague allegations are implausible and insufficient on their face and it is not necessary that the Court take judicial notice of Albertsons' SEC filings or other documents in order to dismiss Count II.

Court cannot grant Plaintiffs' requested relief, and Plaintiffs' claim is moot. *See* Mot. at 6–7. Plaintiffs do not dispute that their request for an injunction halting payment of the Special Dividend is moot. Opp. at 6. Since an injunction blocking payment of the Special Dividend is the only remedy Plaintiffs seek against Albertsons, Count II should be dismissed as moot. *See* Mot. at 6 (citing, *inter alia*, *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)); *District of Columbia v. The Kroger Co.*, No. 22-7168, 2023 WL 2356015, at *1 (D.C. Cir. Feb. 23, 2023).

## 2.   Plaintiffs Cannot Seek Disgorgement of the Special Dividend.

Plaintiffs' labored efforts to invoke the equitable remedy of disgorgement likewise fail to establish a valid claim for relief on Count II for multiple reasons.

*First*, disgorgement is not a remedy available to Plaintiffs. Courts around the country, including in this district, have held that private antitrust plaintiffs cannot seek disgorgement or similar equitable relief under the Section 16 of the Clayton Act. *See, e.g.*, *In re Cathode Ray Tube (Ctr) Antitrust Litig.*, No. C-07-5944-JST, 2016 WL 3648478 at *13 (N.D. Cal. July 7, 2016) (noting that the Ninth Circuit "disallows" private plaintiffs from seeking disgorgement); *Coalition for ICANN Transp., Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) ("Disgorgement is a form of retrospective equitable relief. Such relief is unavailable under Section 16." (internal citation omitted)); *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) (affirming dismissal of a claim under Section 16 of the Clayton Act and holding that private plaintiffs could not seek restitution); *In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp. 3d 672, 679 (E.D. Pa. 2022) (dismissing complaint "to the extent that [plaintiffs] claim monetary disgorgement or restitution under § 16 of the Clayton Act"). Plaintiffs ignore this precedent, and instead rely almost exclusively on cases brought by state or federal regulators to support their position that disgorgement is a remedy available to them here.[3]

---

[3]   The cases cited in the Opposition that were brought by private litigants do not support Plaintiffs' position either. Plaintiffs rely on *Pennsylvania Sugar Refinery v. American Sugar Refining Co.*, 166 F. 254 (2d Cr. 1908), and *Continental Ore Co. v. Union Carbide & Carbon*

Opp. at 4–5 (citing, *inter alia*, *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936 (2020) (holding that the *SEC* can seek disgorgement of profits in an enforcement action) and *California v. Am. Stores Co.*, 495 U.S. 271 (1990) (suit by the state of California seeking divestiture)).  While state and federal regulators may seek disgorgement in antitrust actions brought to advance the public interest, private plaintiffs cannot. [4]  Plaintiffs cite no authority in support of their claim that they—as private plaintiffs—may seek disgorgement of a duly authorized dividend payment as a purported antitrust violation.

  *Second*, even if disgorgement were an available remedy here (it is not), there is nothing for Albertsons to disgorge given Albertsons was the payor, not the recipient, of the Special Dividend.  Indeed, Plaintiffs concede this fact and ask the Court to *return* the $4 billion Special Dividend from Albertsons' shareholders "to Albertsons" (or, alternatively, the U.S. Treasury).  Opp. at 4.  Plaintiffs are therefore not entitled to, and do not purport to seek, disgorgement against Albertsons, and Count II must be dismissed as to Albertsons for this reason as well.

---

*Corp.*, 370 U.S. 690 (1962), but both those cases involved claims for damages, not equitable relief.  Opp. at 3, 7.  Plaintiffs also appear to reference *Zenith Radio Corp. v. Matsushita Elec. Indus.*, 513 F. Supp. 1100 (E.D. Pa. 1981), in passing and without citation.  Opp. at 3.  While the court in *Zenith Radio* acknowledges that private plaintiffs can seek injunctive relief, it did not discuss disgorgement as a remedy and declined to grant any relief because it found no evidence of a conspiracy.  *Zenith Radio Corp.*, 513 F. Supp. at 1329.

[4]  Additionally, Plaintiffs rely on *United States v. Paramount Pictures*, 334 U.S. 131 (1948), *United States v. United Shoe Mach. Corp.*, 391 U.S. 244 (1968), *United States v. Grinnell Corp.*, 384 U.S. 563 (1966), *Schine Chain Theatres, Inc. v. United States*, 334 U.S. 110 (1948), *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), and *TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-4346 SI, 2011 WL 2790179 (N.D. Cal. July 12, 2011) (action brought by the state of Oregon).  *See* Opp. at 5.  These cases were all brought by federal and state regulators and thus provide no support for Plaintiffs' contentions.  Plaintiffs also cite scholars Phillip Areeda and Herbert Hovenkamp for the same proposition, Opp. at 5–6, but again ignore the distinction that Areeda and Hovenkamp draw between the remedies available to government regulators and those available to private plaintiffs.  Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 326 (4th Ed. 2022, 2023 Supplement) (recognizing that private plaintiffs are allowed less extensive equitable relief than government litigants).

###### C.      Count II Should Be Dismissed with Prejudice.

Because the deficiencies in Count II cannot "be cured by the allegation of other facts," the Court should dismiss Count II with prejudice and deny Plaintiffs leave to amend.  *Golden v. Intel Corp.*, No. 22-CV-03828-NC, 2022 WL 17735388, at *1, 4 (N.D. Cal. Nov. 22, 2022); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  As discussed above, Plaintiffs allege the unlawful agreement is the Merger Agreement itself, but the plain text of that document does not reflect any agreement to issue the Special Dividend, as multiple courts have already found.   Nor can Plaintiffs offer anything but counterfactual speculation that payment of the Special Dividend has or will hinder Albertsons' ability to compete or otherwise harm competition.   To the contrary, facts which the Court may take judicial notice of confirm Albertsons' strong financial performance and continued vigorous competition in the markets it serves even after payment of the Special Dividend.  Plaintiffs cannot overcome these fatal flaws by more artful or further speculative pleading.  Nor can they overcome the fact that any request for injunctive relief is moot and that their claim for disgorgement against Albertsons has no legal basis.  Any attempt to amend Count II would thus be futile, waste this Court's finite resources, and impose needless expense on the parties.  Accordingly, Count II should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in Albertsons' Motion to Dismiss, Count II of the Complaint should be dismissed with prejudice.

Dated: May 25, 2023                                 Respectfully submitted,

By:  */s/ Edward D. Hassi*
Edward D. Hassi (*pro hac vice*)

John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 25, 2023, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1.  The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.


Dated:  May 25, 2023


*/s/ Edward D. Hassi*
Edward D. Hassi (*pro hac vice*)