Russell P. Cohen (SBN 213105)
Joseph D. Trujillo (SBN 305170)
DECHERT LLP
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

Andrew J. Levander (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

Thomas J. Miller (admitted *pro hac vice*)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222

*Attorneys for Defendant Cerberus Capital Management, L.P.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Christine Whalen, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>Kroger Co., Albertsons Companies, Inc., and Cerberus Capital Management, L.P.,<br><br>    Defendants. | Case No.: 23-cv-00459-VC<br><br>**DEFENDANT CERBERUS CAPITAL MANAGEMENT, L.P.'s REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: July 27, 2023<br>Time: 10:00 AM<br>Place: Courtroom 5 - 17th Floor<br>Judge: Hon. Vince Chhabria |

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 3

I. THE ONLY REMEDY PLAINTIFFS SEEK AGAINST CERBERUS IS UNAVAILABLE AS A MATTER OF LAW ................................................................... 3

II. PLAINTIFFS HAVE NOT SUFFICIENTLY PLED THAT CERBERUS PARTICIPATED IN THE ALLEGED CONSPIRACY ...................................................... 6

III. PLAINTIFFS HAVE NOT SHOWN THAT CERBERUS ENGAGED IN ANTICOMPETITIVE CONDUCT .................................................................................. 7

IV. PLAINTIFFS EFFECTIVELY CONCEDE THAT THEY LACK ANTITRUST STANDING BY FAILING TO ADDRESS THE ISSUE ................................................... 9

V. THE COURT SHOULD DISMISS THE CLAIM AGAINST CERBERUS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND ....................................................... 9

CONCLUSION ............................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Tobacco Co. v. United States*,
 328 U.S. 781 (1946) ........................................................................................................... 8

*Bonin v. Calderon*,
 59 F.3d 815 (9th Cir. 1995) ................................................................................................ 9

*California v. American Stores*,
 495 U.S. 271 (1990) ....................................................................................................... 4, 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. 07-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ................................................ 4

*Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*,
 771 F. Supp. 2d 1195 (N.D. Cal. 2011) .............................................................................. 3

*Doe v. Garland*,
 14 F. 4th 941 (9th Cir. 2021) .............................................................................................. 9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ............................................................................ 10

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 605 F. Supp. 3d 672,
 677-79 (E.D. Pa. 2022) ....................................................................................................... 4

*Fed. Trade Comm'n v. AbbVie Inc.*,
 976 F.3d 327 (3d Cir. 2020) ............................................................................................... 5

*Foman v. Davis*,
 371 U.S. 178 (1962) ........................................................................................................... 9

*Hooper v. Shinn*,
 985 F.3d 594 (9th Cir. 2021) .............................................................................................. 9

*Juliana v. United States*,
 947 F.3d 1159 (9th Cir. 2020) ............................................................................................ 9

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) ............................................................................................ 7

*Liu v. Securities and Exchange Commission*,
 140 S. Ct. 1936 (2020) ....................................................................................................... 4

*In re Multidistrict Vehicle Air Pollution*,
   538 F.2d 231 (9th Cir. 1976) ...................................................................................................3

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) .................................................................................................7

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) .................................................................................................7

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*,
   622 F.3d 1307 (11th Cir. 2010) ...............................................................................................5

*Pennsylvania Sugar Refining Co. v. American Sugar Refining Co.*,
   166 F. 254 (2d Cir. 1908)........................................................................................................8

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946) ................................................................................................................4

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   893 F.3d 1047 (8th Cir. 2018) .................................................................................................4

*United States v. Carson*,
   52 F.3d 1173 (2d Cir. 1995).....................................................................................................4

*United States v. Philip Morris USA, Inc.*,
   396 F.3d 1190 (D.C. Cir. 2005) ...............................................................................................5

*Zenith Radio Corp. v. Hazeltine Research, Inc*,
   395 U.S. 100 (1969) ................................................................................................................5

# INTRODUCTION

Cerberus Capital Management, L.P. ("Cerberus") is not a party to the proposed Kroger-Albertsons merger that is the focus of Plaintiffs' Complaint.[1] Plaintiffs have nevertheless sued Cerberus, alleging that it participated in an implausible conspiracy to destroy its affiliates' investment in Albertsons by causing Albertsons to deplete its resources through payment of an excessive dividend, and seeking the unprecedented relief of forcing Cerberus to "disgorge" its share of the dividend back to Albertsons. Cerberus' motion to dismiss raised three reasons why Plaintiffs' claim must be dismissed. First, Plaintiffs are pursuing their claim under Section 16 of the Clayton Act, but Section 16 does not authorize disgorgement. Plaintiffs are accordingly not entitled to the sole relief they seek as a matter of law. *See* ECF No. 48 at 15-18. Second, Plaintiffs fail to plead facts sufficient to show that Cerberus entered into the alleged conspiracy. *See id.* at 12-15. Third, Plaintiffs cannot show that they have antitrust standing to bring their claim against Cerberus. *See id.* at 18-20.

Plaintiffs did not file a substantive brief opposing Cerberus' motion. Instead, they incorporate by reference their responses to other Defendants' motions to dismiss. *See* ECF No. 73 (incorporating by reference ECF No. 72). In doing so, Plaintiffs effectively concede they have no response to several dispositive points raised in Cerberus' motion, including their lack of antitrust standing. And to the extent Plaintiffs even indirectly address in other briefs Cerberus' arguments, nothing salvages their defective claim against Cerberus for the following reasons.

---

[1] Cerberus Capital Management, L.P. is a registered investment advisor, not a shareholder, and it does not directly receive dividend proceeds from Albertsons. *See* ECF No. 55-1 at ¶ 4. Certain affiliates of Cerberus indirectly own a minority of the shares of Albertsons common stock. *See id.* at ¶ 5.

*First*, Ninth Circuit precedent is clear that disgorgement is not an available remedy under Section 16. Plaintiffs ignore that controlling authority and cite a number of inapposite cases. Many of these cases do not involve claims under the antitrust laws at all. And none of the handful of remaining cases involves the Court granting disgorgement under Section 16. The law is clear that Section 16 does not authorize disgorgement. Accordingly, Plaintiffs are not entitled to the only relief they seek against Cerberus.

*Second*, Plaintiffs argue that they have sufficiently shown the existence of an "agreement" under Section 1 by pointing to the Kroger-Albertsons merger agreement. *See* ECF No. 72 at 2. But that document does nothing to establish that *Cerberus* was part of any purported agreement because Cerberus is not a party to the merger agreement. While the inquiry ends there with respect to Cerberus, it is worth noting that the merger agreement does not provide for the payment of the special dividend; rather, the merger agreement merely permits the Albertsons board to declare one or more special dividends subject to certain limits. Hence, Plaintiffs' effort to piggyback their "dividend conspiracy" onto the merger agreement fails regardless.

*Third*, Plaintiffs argue generally that Cerberus' receipt of a dividend should be deemed illegal as "part and parcel of the larger antitrust violation of Section 7 of the Clayton Act." *Id.* at 6-7. The Court should reject this bizarre and unprecedented request to expand the scope of Section 7 by turning the receipt of a dividend by a shareholder into an antitrust violation, especially when Plaintiffs have failed to allege facts showing that the act is anticompetitive or harmed them.

*Fourth*, Plaintiffs have no response to Cerberus' argument that they lack antitrust standing. The fact remains that the harm Plaintiffs allege is too remote and indirect to support

antitrust standing.  Moreover, Plaintiffs cannot establish antitrust injury because Cerberus operates in a totally different market from Plaintiffs and the other Defendants, and in a totally different market from where the supposed damage is occurring.

In short, Plaintiffs have failed to address the deficiencies in their claim identified in Cerberus' motion to dismiss.  Because those deficiencies cannot be cured, the Court should dismiss Plaintiffs' claim against Cerberus with prejudice and without leave to amend.

## ARGUMENT

### I. THE ONLY REMEDY PLAINTIFFS SEEK AGAINST CERBERUS IS UNAVAILABLE AS A MATTER OF LAW

Cerberus' opening brief explained that the only relief Plaintiffs seek from Cerberus—disgorgement of the share of the special dividend received by investment funds advised by it or its affiliates—is not authorized under Section 16 of the Clayton Act.  Unlike Section 4 of the Clayton Act (which permits private plaintiffs to pursue damages for antitrust violations that have already occurred), Section 16 authorizes courts to grant forward-looking injunctive relief to cure ongoing or imminently-threatened violations of the antitrust law; it is not a backdoor for Plaintiffs to pursue monetary relief for conduct that has already occurred.  *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) (citation omitted) ("[Section] 16 limits the equitable remedies available under its terms to those against 'threatened loss or damage.' Here, the 'reimbursement' would be awarded for the loss which has already occurred, at the time the car owner paid to have his vehicle retrofitted; it would not be relief 'against threatened loss or damage.'").  Plaintiffs' effort to have Cerberus disgorge a dividend paid to its affiliates four months ago is precisely the kind of backwards-looking, monetary relief that falls outside the scope of Section 16.  *See Coalition for ICANN Transparency Inc. v. VeriSign, Inc.,* 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (citations omitted) ("Disgorgement is a form of retrospective

equitable relief. . . . Such relief is unavailable under Section 16."); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-5944, 2016 WL 3648478, at *13-14 (N.D. Cal. July 7, 2016) (citation omitted) ("The Ninth Circuit disallows private use of Section 16 to pursue disgorgement.").[2]

Plaintiffs do not attempt to address this controlling authority. Instead, they cite numerous inapposite cases. A number of Plaintiffs' cases do not arise under the antitrust laws at all.[3] Most of the remaining cases Plaintiffs cite did not involve claims for disgorgement and do not analyze the scope of remedies available under Section 16. Only two of Plaintiffs' cases discuss the scope of remedies available under Section 16, and neither supports Plaintiffs' argument that Section 16 permits Plaintiffs to obtain disgorgement here.

First, Plaintiffs cite *California v. American Stores*, 495 U.S. 271 (1990) for the proposition that "[Section] 16 'states no restrictions or exceptions to the forms of injunctive relief a private plaintiff may seek, or that a court may order. . . . .'" ECF No. 72 at 4 (citing *American Stores*, 495 U.S. at 281). But in *American Stores*, the Supreme Court addressed the narrow question of whether injunctive relief under Section 16 permitted a Court to issue a hold

---

[2] Courts around the country have also concluded that Section 16 does not authorize such backwards-looking relief. For example, the court in *In re Generic Pharmaceuticals Pricing Antitrust Litigation* recently reiterated why Section 16 does not permit the relief Plaintiffs seek, namely—(1) Section 16's text "does not support the conclusion that disgorgement is an authorized form of injunctive relief"; and (2) a construction recognizing such a backward-looking relief under Section 16 "would undercut, rather than further, the federal antitrust enforcement scheme" because Section 4 of the Clayton Act already provides for monetary relief for past wrongs. 605 F. Supp. 3d 672, 677-79 (E.D. Pa. 2022) (citations omitted); *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1059 (8th Cir. 2018) (barring plaintiffs from seeking disgorgement under Section 16).

[3] *Cf. Liu v. Securities and Exchange Commission,* 140 S. Ct. 1936 (2020) (Securities and Exchange Act); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (Emergency Price Control Act); *United States v. Carson*, 52 F.3d 1173, 1182 (2d Cir. 1995) (RICO, ERISA, and Taft-Hartley Act).

separate order and require the acquirer to divest assets of the target that it had already obtained. *See id*. at 296.[4]  *American Stores* construed "injunctive relief" under Section 16 to encompass divestiture decrees used to remedy a violation of Section 7 of the Clayton Act.  Here, Plaintiffs instead are seeking to use Section 16 to obtain monetary relief to redress past "conduct" from Cerberus (receiving a dividend four months ago) that it alleges violated Section 1 of the Sherman Act.  Nothing in *American Stores* supports expanding Section 16 to authorize the disgorgement of amounts already received in alleged violation of Section 1.

Plaintiffs' citation to *Zenith Radio Corp. v. Hazeltine Research, Inc*, 395 U.S. 100 (1969), ECF No. 72 at 3, is likewise misplaced because that case also did not involve disgorgement. *Zenith* involved claims that a defendant was abusing patent pools to prevent competitors from entering the market.  Plaintiffs pursued damages claims under Section 4 of the Clayton Act along with injunctive relief on the grounds that the patent misuse at issue was ongoing.  *See id.* at 130–32.  The Supreme Court agreed that injunctive relief was available to remedy the ongoing competitive harm from patent misuse.  *See id.* at 132.  As with *American Stores*, nothing about *Zenith* resembles Plaintiffs' effort to seek monetary disgorgement for a dividend paid four

---

[4] To the extent Plaintiffs suggest that their request for disgorgement is synonymous with an order directing divestiture, ECF No. 72 at 3, 5, that suggestion is misplaced.  An order directing divestiture serves as an "injunction[] against persons' future involvement" in some conduct while "[d]isgorgement, on the other hand, is a quintessentially backward-looking remedy focused on remedying the effects of past conduct to restore the status quo."  *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005).  *See also Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1324 (11th Cir. 2010) (citation omitted) ("Injunctive relief constitutes a distinct type of equitable relief; it is not an umbrella term that encompasses restitution or disgorgement. . . . Restitution and disgorgement are not similar in nature to injunctive relief."); *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 376 (3d Cir. 2020) (citation and quotation omitted) (injunctive relief is "not an umbrella term that encompasses . . . disgorgement.").

months ago. Having failed to rebut the bevy of authority holding that Plaintiffs are not entitled to disgorgement under Section 16, the Court should dismiss their claim against Cerberus.

## II. PLAINTIFFS HAVE NOT SUFFICIENTLY PLED THAT CERBERUS PARTICIPATED IN THE ALLEGED CONSPIRACY

Cerberus' motion to dismiss established that Plaintiffs have not come close to pleading that Cerberus entered into any unlawful agreement, a core element of a Section 1 claim. *See* ECF No. 48 at 12-15. Plaintiffs did not even attempt to respond to this point. Nor could they, given that there are no facts pleaded in the Complaint supporting their allegation that Cerberus entered any such agreement. Instead, in separately arguing that they had sufficiently pleaded a Section 1 claim *against Albertsons*, Plaintiffs hang their entire "agreement" claim on the Kroger-Albertsons merger agreement.

But the existence of the Kroger-Albertsons merger agreement does nothing to establish that *Cerberus* participated in Plaintiffs' alleged conspiracy. Cerberus is not a party to the merger agreement, *see* ECF No. 53-2 at 98, and that document does not show that Cerberus agreed with anyone to do anything, much less that it entered into an unlawful conspiracy.[5] Further, despite Plaintiffs' efforts to collapse the distinction between the merger agreement and the Albertsons special dividend, the merger agreement did not require the payment of the dividend at all.[6] Plaintiffs do not allege any other non-conclusory facts to support their allegation that Cerberus participated in an unlawful conspiracy. *See* ECF No. 48 at 12–15.

---

[5] Plaintiffs have incorporated the merger agreement by reference in both their complaint and opposition. Thus, the Court may properly consider that document on the instant motion.
[6] As multiple courts have already found, the dividend was not required by the merger agreement or any other agreement between Albertsons and Kroger. The United States District for the District of Columbia found a lack of any "evidence of an agreement between Albertsons and Kroger to pay the [special dividend]" and that the dividend was consistent with "an independent decision by Albertsons to return value to its shareholders." *See, e.g.*, ECF No. 48 at 11 (citing ECF No. 42-10 at 66-74; *id.* at 23, 71-72).

In short, Plaintiffs' reference to the Kroger-Albertsons merger agreement does nothing to help Plaintiffs meet their burden of pleading that Cerberus participated in an alleged conspiracy or overcome the implausibility of an alleged conspiracy by Cerberus to harm its affiliates' investment. The fact remains that Plaintiffs have no factual allegations that Cerberus agreed with anyone to do anything, let alone the "who, did what, to whom (or with whom), where, and when" they would need to show to plead their alleged conspiracy. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008). Plaintiffs' outright failure to proffer any facts necessary to show that Cerberus engaged in an actionable agreement is fatal to its claims. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1198 (9th Cir. 2015) ("Plaintiffs have failed to allege enough nonconclusory facts to support the plausible inference that any agreement among the manufacturers was made. For that reason, their § 1 claim must be dismissed.").

## III. PLAINTIFFS HAVE NOT SHOWN THAT CERBERUS ENGAGED IN ANTICOMPETITIVE CONDUCT

While Plaintiffs fail to allege facts showing that Cerberus conspired with anyone to do anything, they also make the bizarre assertion that Cerberus should be held liable merely because its affiliates' receipt of the special dividend was "part and parcel" of a violation of Section 7 of the Clayton Act. ECF No. 72 at 6-7. But Section 7 is directed to mergers and acquisitions, and Cerberus is not a party to the Kroger-Albertsons merger that is the subject of Plaintiffs' Section 7 claim.

To state a Section 1 claim, Plaintiffs must allege not only an agreement, but one to engage in some ***anticompetitive*** conduct. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) (citations and quotations omitted) (Section 1 requires a "contract, combination or conspiracy among two or more persons or

distinct business entities" that "is intended to restrain or harm trade . . ."). Here, Plaintiffs fail to allege any wrongful conduct by Cerberus that, if taken as true, could be the anticompetitive object of any alleged agreement. The mere receipt by Cerberus of a dividend does not qualify as anticompetitive or otherwise wrongful, and the Court may dismiss Plaintiffs' claim against Cerberus on grounds of their failure to show that Cerberus engaged in any wrongful conduct.

Nothing in the limited authority Plaintiffs cite holds otherwise. Just as in their deficient preliminary injunction motion, Plaintiffs attempt to rely on *Pennsylvania Sugar Refining Co. v. American Sugar Refining Co.*, 166 F. 254 (2d Cir. 1908) and *American Tobacco Co. v. United States*, 328 U.S. 781 (1946), which they appear to argue establish some sort of freestanding right to sue shareholders of companies for antitrust violations. *See* ECF No. 72 at 3, 7. Plaintiffs' repeated reliance on this dated precedent is misplaced. At base, *Pennsylvania Sugar* involved a controlling shareholder acting to shutter a competitor *that was competing with one of its shareholding*s—not a shareholder purportedly acting against its economic self-interest in order to destroy its own shareholding. *See* 166 F. at 256. Cerberus does not have any motive to harm Albertsons or economic interest in impairing its investment in that company. Likewise, *American Tobacco Co.*, 328 U.S. 781 (1946) does not support finding liability for an innocent act that is "part and parcel" of a broader violation. That case stands for the unremarkable proposition that otherwise lawful acts might be considered in evaluating whether there is sufficient circumstantial evidence of conspiracy. *See id.* at 809. But here, as noted above, Plaintiffs have effectively conceded that they lack facts sufficient to show that Cerberus was part of any unlawful agreement. *See* Section II above.

## IV. PLAINTIFFS EFFECTIVELY CONCEDE THAT THEY LACK ANTITRUST STANDING BY FAILING TO ADDRESS THE ISSUE

Cerberus' motion to dismiss showed that Plaintiffs lack antitrust standing to pursue the claim against Cerberus. *See* ECF No. 48 at 18-21. Nothing in Plaintiffs' opposition briefs addresses Cerberus' showings that the harms they allege are remote and speculative or that Cerberus and Albertsons operate in entirely different markets. Dismissal for lack of antitrust standing is warranted.

## V. THE COURT SHOULD DISMISS THE CLAIM AGAINST CERBERUS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND

This Court should dismiss Plaintiffs' claim against Cerberus (Count II) without leave to amend because any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify denial of motion for leave to amend."); *Hooper v. Shinn*, 985 F.3d 594, 622, 624 (9th Cir. 2021) (affirming dismissal without leave to amend where plaintiff's claims were "not viable"). There is no reason to believe that Plaintiffs could ever sufficiently plead their Section 1 claim against Cerberus. Two crucial defects in Plaintiffs' claim against Cerberus cannot be cured through amendment, so the claim should be dismissed now with prejudice.

*First*, the sole relief Plaintiffs seek against Cerberus—disgorgement of a dividend paid four months ago—is not available under Section 16 of the Clayton Act. *See* Section I above; *see also Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) (dismissing complaint with prejudice where plaintiffs failed to show that the relief sought "is within the power of an Article III court."). Because the only relief Plaintiffs seek is unavailable as a matter of law, their claim is not redressable and they can do nothing to save it by amending their complaint. *See Doe v. Garland*, 14 F. 4th 941, 944-45, 950 (9th Cir. 2021) (amendment futile where certain claims were legally barred).

***Second***, Plaintiffs cannot amend their complaint to remedy their lack of antitrust standing. As discussed in Cerberus' initial motion, Cerberus is not a participant in any alleged market where Plaintiffs participate and Kroger and Albertsons operate, nor are they a participant in any market where the alleged competitive harm occurred. This fundamental disconnect alone defeats the viability of any Section 16 claim against Cerberus on grounds of the special dividend. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1137 (N.D. Cal. 2008). No pleading amendment can alter the relationships between Cerberus, Albertsons, and Plaintiffs, meaning Plaintiffs have no way to fix their deficient claim.

Finally, it is telling that Plaintiffs, who already had the opportunity to present evidence in support of motion for a preliminary injunction and address these same arguments by Cerberus, came up with nothing that would support allowing an amendment here. *See* ECF No. 28.[7]

Plaintiffs have failed to plead their Section 1 conspiracy claim against Cerberus. This Court should save itself and the parties from the useless (and expensive) exercise of another round of motion to dismiss briefing.

## CONCLUSION

Cerberus requests that the Court grant Cerberus' motion to dismiss, ECF No. 48, and dismiss Plaintiffs' claim against Cerberus with prejudice.

---

[7] Another consideration counseling against granting leave to amend is that multiple courts have weighed the evidence on these questions and concluded that Albertsons independently decided to issue its special dividend. *See* ECF No. 55 at 9 (Washington Superior Court deciding finding that "[t]he parties did not agree that Albertsons would issue that special dividend nor did Kroger require Albertsons to do so."); *id.* at 15 (USDC for the District of Columbia finding plaintiffs' "failed to demonstrate that Kroger and Albertsons entered into an agreement to pay the Pre-Closing Dividend.").

Dated: May 25, 2023          */s/ Russell P. Cohen*
Russell P. Cohen (SBN 213105)
Joseph D. Trujillo (SBN 305170)
DECHERT LLP
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555

Andrew J. Levander (admitted *pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

Thomas J. Miller (admitted *pro hac vice*)
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222

*Attorneys for Defendant Cerberus Capital Management, L.P.*