1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3          Before The Honorable Vince Chhabria, District Judge

4

5    WHALEN, et al.,                )
                                    )
6              Plaintiffs,          )
                                    )
7    vs.                            )    No. C 23-00459-VC
                                    )
8    ALBERTSONS COMPANIES, INC.,    )
     et al.,                        )
9                                   )
               Defendants.          )
10   _____)

11                                  San Francisco, California
                                    Thursday, July 27, 2023
12

13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                 RECORDING 1:02 - 2:01 = 59 MINUTES
14

15   APPEARANCES:

16   For Plaintiffs:
                                    Alioto Law Firm
17                                  One Sansome Street, 35th Floor
                                    San Francisco, California
18                                    94104
                              BY: JOSEPH M. ALIOTO, ESQ.
19
     For Defendant Albertsons
20     Companies, Inc.:
                                    Arnold & Porter Kaye Scholer,
21                                    LLP
                                    Three Embarcadero Center
22                                  10th Floor
                                    San Francisco, California
23                                    94111
                              BY:  DANIEL B. ASIMOW, ESQ.
24

25            (APPEARANCES CONTINUED ON NEXT PAGE)

2

1  <u>APPEARANCES</u>:

2  For Defendant Albertsons
     Companies, Inc.:
3                                Debevoise & Plimpton, LLP
                                 801 Pennsylvania Avenue NW
4                                Suite 500
                                 Washington, D.C. 20004
5                          BY:   EDWARD HASSI, ESQ.

6                                Arnold & Porter Kaye Scholer,
                                   LLP
7                                601 Massachusetts Avenue NW
                                 Washington, D.C. 20001
8                          BY:   MATTHEW M. WOLF, ESQ.
                           BY:   SONIA NOELLE PFAFFENROTH, ESQ.
9
     For Defendant Cerberus
10     Capital Management:
                                 Dechert, LLP
11                               One Bush Street
                                 Suite 1600
12                               San Francisco, California
                                   94104
13                         BY:   RUSSELL P. COHEN, ESQ.
                           BY:   JOSEPH TRUJILLO, ESQ.
14

15  Transcribed by:              Echo Reporting, Inc.
                                 Contracted Court Reporter/
16                               Transcriber
                                 echoreporting@yahoo.com
17

18

19

20

21

22

23

24

25

3

<u>Thursday, July 27, 2023</u>                                    <u>1:02 p.m.</u>

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  Now calling civil case 23-459, Whalen, et al. versus Albertsons Companies, Inc., et al.

Will counsel please state your appearances for the record, starting with the Plaintiffs.

MR. ALIOTO:  (via Zoom):  Joseph M. Alioto, for the Plaintiffs, and with me on the brief, Lawrence Papale and Tatiana Wallace.

THE COURT:  Hello.

MR. WOLF (via Zoom):  Good afternoon, your Honor. Matt Wolf for Kroger.  With me are Dan Asimow and Sonya Pfaffenroth.

THE COURT:  All right.

MR. HASSI (via Zoom):  Good morning, your Honor. Ted Hassi with Debevoise & Plimpton, on behalf of Albertsons.

THE COURT:  Hello.

MR. COHEN:  Good afternoon, your Honor.  Russell Cohen from the Dechert Firm on behalf of the Defendant Cerberus Capital Management, and with me is Joseph Trujillo.

THE COURT:  Hi.

Okay.  So, I -- I converted this hearing to Zoom because I thought it would probably be a relatively short

4

1 discussion about ripeness, and I didn't want to make you all

2 fly out from your various locations for that discussion.

3 And, so, on that, maybe the Defendants could start by giving

4 me an answer to the first question I put out to you a couple

5 of days ago, just the -- and what I -- just to summarize

6 what I said in -- in the question that I put out, certainly

7 on some level your argument about this being unripe for

8 adjudication makes some sense.  I haven't given careful

9 thought to whether it would be like a jurisdictional/Article

10 3 thing or just a prudential, you know, dismissal on -- on

11 ripeness grounds.  I'm not 100 percent sure whether that

12 matters for these purposes.  But what I said in the question

13 that I put out to you is what -- what assurance can you

14 provide that there will be an opportunity for meaningful

15 judicial review after the, you know, contours of the

16 agreement are -- are finalized, you know, after you've

17 finished negotiating with the Government and -- and filling

18 in the blanks and all of that stuff.

19          So, what's the answer to that?

20          MS. PFAFFENROTH (via Zoom):  Your Honor, Sonia

21 Pfaffenroth on behalf of Kroger.  We will ensure that there

22 will be meaningful opportunity for judicial review.  There's

23 no exigency in this case.  The -- Kroger has consistently

24 stated the Plaintiffs note in their complaint that the

25 merger is not anticipated to close before 2024.  Kroger

5

1  reiterated this in its most recent earnings call last month.

2           THE COURT:  Let me -- just a quick question on

3  terminology.  When --

4           MS. PFAFFENROTH:  Yes.

5           THE COURT:  -- you say the merger is not

6  anticipated to close until 2024, what does it mean to close?

7  Does that mean the deal is finalized and that's sort of the

8  last thing that happens before you actually start

9  transferring the assets and the properties and all of that?

10           MS. PFAFFENROTH:  That's correct, your Honor.

11           THE COURT:  Okay.  So, when you say close, that

12  doesn't mean the transfer has taken place.  It just means

13  the agreement has been finalized?

14           MS. PFAFFENROTH:  Correct.

15           THE COURT:  Okay.  Thanks.  Go on.

16           MS. PFAFFENROTH:  Yes.  And -- and we are prepared

17  to stipulate today, your Honor, consistent with the public

18  statements that have been made consistently to the market

19  that the transaction will not close prior to January 1,

20  2024.  That's more than five months away.

21           THE COURT:  Okay.  I was going to ask -- I'm

22  guessing you were going to -- going to answer the question

23  that I was about to ask.  So, go ahead.

24           MS. PFAFFENROTH:  Yes.  Yes, your Honor.  Thank

25  you.

6

1      So, at the current time, we remain in negotiations with

2  potential divestiture buyers.  That is an ongoing process.

3  It has not yet come to a conclusion, and what we can do

4  today is commit to the Court, to your Honor that when we

5  reach a point at which we do have a divestiture buyer or

6  buyers and associated proposed divestitures to present to

7  the Government, that we can provide both notice to your

8  Honor and the details of that proposal at the same time so

9  that the Court has the benefit of the proposed divestiture

10  proposal in parallel with the Government review.

11           THE COURT:  Well, that's fine, but would you -- I

12  assume you would take the position that even once you have

13  developed that and presented it to the Government, it's

14  still not ripe because there's going to be a negotiation

15  between you and the Government about whether this is

16  acceptable to them.  Is that accurate or no?

17           MS. PFAFFENROTH:  So, your Honor, I think it's

18  certainly accurate the contours of the divestiture, the full

19  divestiture package will still be subject to change by

20  negotiations with the Government.  It is certainly possible

21  that the Government may identify additional stores, for

22  example, that it wishes to see included in the divestiture

23  package, and that will be an ongoing discussion, and I

24  cannot predict sitting here today how long that discussion

25  may be ongoing.  I think in our -- in our collective

7

1  experience, it is not a swift or overnight process, but what

2  we would have is your ability to consider and the

3  Plaintiffs' ability to consider whether in light of the

4  proposal that has been made to the Government, Plaintiffs

5  still feel that they have a colorable claim that they can

6  assert in front of your Honor.

7         THE COURT:  So, all that makes sense so far.  All

8  of that sounds, you know, workable so far.  I guess the

9  question -- you know, there will be -- I guess I have two

10  questions.  One question will be, you know, once you've made

11  that submission to the Government and to the Plaintiffs and,

12  I suppose, on the docket here, you know, will it be ripe at

13  that point or will there be an argument that we should wait

14  further still, but we could, I suppose, cross that bridge

15  when we -- when we came to it, and obviously the Plaintiffs

16  would have something to say about that.

17     The other question is let's say you start negotiating

18  with the Government -- let's just say hypothetically that

19  you make that submission and I conclude this is still unripe

20  because we don't -- we don't know what the Government's

21  demands are going to be.  We don't know if you're going to

22  refuse to meet those demands or whether you're going to --

23  or whether -- or maybe you'll agree to meet those demands

24  and, in fact, the demands will be, you know, substantial

25  such that it would change significantly.  But -- but let's

8

1  just say I conclude that it's still not ripe under the

2  specific facts of this case and I'm not suggesting that in

3  every merger case it wouldn't be ripe until the Government

4  did its review.  I just think that there are, you know,

5  specific facts about this case that make -- could make that

6  argument particular strong.  But it -- so, imagine I

7  conclude that it's still unripe and you go into your

8  negotiations with the Government, and let's say you sort of

9  reach an agreement with the Government, right, and the

10  Government agrees not to oppose the merger in exchange for

11  you making some changes.

12      So, let's say you reach that agreement.  How much time

13  do we have between the reaching of that agreement and the

14  time that, you know, assets start changing hands?

15          MS. PFAFFENROTH:  So, there -- so, there's not an

16  independent suspensory period associated with the -- the

17  finalization of a consent decree with the FTC.  And there is

18  -- there are contractual obligations between the parties

19  under the merger agreement with respect to closing the

20  transaction once all of the closing conditions are met.

21      So, the -- it -- if we were to be looking down the road

22  to the time when everything was finalized, signed and sealed

23  with the FTC, there isn't another waiting period associated

24  with that like there is with the second request, and we are

25  still within the statutory waiting period at this point.

1 That has not changed since the time we filed our briefs.

2 The parties have not certified substantial compliance with

3 the second request.

4      But --

5           THE COURT:  So, have -- there's been a second

6 request?

7           MS. PFAFFENROTH:  Yes.  So, a second request was

8 issued in December of last year, and the parties are

9 continuing to respond to that -- to that second request.  It

10 seeks a significant amount of both documentary information,

11 data, and that is something that is ongoing.

12           THE COURT:  And if -- if you -- if you don't reach

13 an agreement with the FTC, then, presumably, my concerns are

14 sort of irrelevant because the FTC will presumably file a

15 lawsuit seeking an injunction against the -- the merger,

16 right?

17           MS. PFAFFENROTH:  Yes.

18           THE COURT:  Like happened upstairs with Judge

19 Corley in the Microsoft case, right?

20           MS. PFAFFENROTH:  Yes, your Honor.

21           THE COURT:  And -- and, so, the -- the real

22 concern is just will -- assuming I conclude that it

23 continues to be unripe until you're done with the FTC, how

24 can we make sure that the Plaintiffs have enough time to

25 sort of analyze the final -- final merger product, shall we

10

1  say, that comes out as a result of your negotiations with

2  the FTC and challenge it before -- before it -- it gets

3  moving?  What can -- what assurance can you provide me about

4  that?

5          MS. PFAFFENROTH:  So, what I would say with

6  respect to that is that the plaintiffs will have the benefit

7  of the proposal that the parties are making -- that the

8  parties are making to the FTC.  So, they will have the

9  ability to assess their claims in the context of that

10 divestiture package, recognizing that it may grow.  There

11 may be additional stores that may become more robust.  The

12 merger agreement contemplates up to 650 stores being

13 divested.

14     But the plaintiffs will have the ability at that point,

15 at the point at which the proposed divestiture buyer and

16 package is presented to the Government, to evaluate their

17 claims under that package, recognizing that it may become

18 more robust.  It may alleviate perhaps more of their

19 concerns, but they should be able to evaluate from the basis

20 of that proposal whether their claims continue -- whether

21 they believe that the claims -- and, obviously, we take

22 significant issue as to whether they've stated a claim to

23 begin with and -- and whether there's standing for these

24 Plaintiffs, but setting that aside --

25          THE COURT:  Correct.

11

1          MS. PFAFFENROTH:  -- they will have the

2  opportunity at that point to evaluate whether they believe

3  that they still have a claim to put forth in front of your

4  Honor.

5          THE COURT:  But how much time will pass, you know,

6  between -- I mean, can we formally build in some time for

7  judicial review?  Like, again, this -- I'm assuming a

8  scenario where the FTC and you reach an agreement, right,

9  and the FTC signs off on what you're doing.  And then maybe

10 that will cause -- maybe that will result in the Plaintiffs

11 saying, okay, we -- we no longer wish to pursue our case.

12 But if they do wish to pursue their case and they wish to,

13 you know, seek a preliminary injunction in this court, you

14 know, how -- you know, what kind of time can we -- can we

15 build in a specific amount of time to make sure they have

16 the opportunity to do that?

17         MS. PFAFFENROTH:  So, your Honor, if we're talking

18 about, again, the final signed, sealed, delivered --

19         THE COURT:  Yeah.

20         MS. PFAFFENROTH:  -- consent agreement with the

21 FTC --

22         THE COURT:  Yes.

23         MS. PFAFFENROTH:  -- we cannot standing here

24 change what the merger agreement says in terms of the

25 obligations to close.  But --

12

1          THE COURT:  What does it say?

2          MS. PFAFFENROTH:  I believe that closing is

3   required within three days of all of the closing conditions

4   being satisfied, and obviously there -- there's not just one

5   closing condition.  But -- but that would be required under

6   the merger agreement.  But, that said, given the amount of

7   time that there is between now and even January 1st, 2024,

8   we do not need to leave the Court in limbo or Plaintiffs in

9   limbo.  We can provide an update on, say, September 1st as

10  to what the -- the status of the progress is at that point

11  with respect to the negotiations.

12          And, so, you know, I -- I do not believe that there

13  will be a time crunch, but I also -- it's -- I think it's

14  premature at this point even to represent sort of what the

15  timing is anticipated to be because there are uncertainties,

16  but, that said, if the Plaintiff has the benefit of knowing

17  what that package is to be presented, the Plaintiff can at

18  that point evaluate its claims --

19          THE COURT:  Right.

20          MS. PFAFFENROTH:  -- and make the case to your

21  Honor that the case is ripe at that point for consideration.

22          THE COURT:  Right.  I under -- I understand that.

23  I'm just trying to envision the scenario where I conclude,

24  no, it's not ripe yet.  I want to see what happens, you

25  know, what comes out of the negotiations with the FTC.  I

1  would also be -- I mean, I'll be honest with you.  The other

2  -- the other thing is, to the extent that I will be required

3  to adjudicate whether this merger should be allowed to go

4  forward, I would -- it would be very helpful for me, you

5  know, particularly given the weakness of the Plaintiffs'

6  presentation thus far in this case, it would be very helpful

7  for me to know where the FTC stands and to hear -- you know,

8  to hear from the FTC.

9       So, I -- you know, that's why I am -- that's part of

10 why I'm reluctant to adjudicate these -- you know, the --

11 these -- a motion for a preliminary injunction until I know

12 whether the F -- where the FTC stands and whether the FTC is

13 going to file its own lawsuit.

14       MS. PFAFFENROTH:  Understood, your Honor.  I, of

15 course, can't speak on behalf of the FTC, but what we can

16 commit to you is to provide updates as regularly as would be

17 helpful as to the status of the progress of the government

18 investigation.

19       THE COURT:  Well, yeah.  And then another

20 mechanical -- weird mechanical glitch here is that seems

21 clear that I have to dismiss this complaint, right.  So,

22 there's no complaint -- there won't be a complaint pending,

23 at least for a short period of time.  Perhaps they'll, you

24 know, roll up their sleeves and do the work necessary to

25 state a claim -- state a claim against you and roll up their

14

1  sleeves and do the work necessary to lay the groundwork for

2  a motion for a preliminary injunction, which they haven't

3  come close to doing yet, right.  But I think I have to

4  dismiss this complaint.  And, so, there'll be no complaint

5  in front of me.

6      I mean, I was -- for a while, I was pondering just

7  staying -- you know, staying it.  But the -- but the reality

8  is they haven't stated a claim, and you've filed a motion to

9  dismiss, and I think you're entitled to -- to -- you know,

10  to have that motion to dismiss granted.  But I just -- I

11  want to make sure we're doing it in a way that, you know,

12  we're not creating a -- too difficult of a fire drill down

13  the road.  I mean, it might have to be a fire drill, and

14  that's perfectly fine.  That's -- that's what we're here

15  for.  But I just want to sort of minimize the difficulty for

16  the Plaintiffs and for -- and for myself, frankly, in, you

17  know, adjudicating what could be a complicated motion for a

18  preliminary injunction.

19          MS. PFAFFENROTH:  Fully understood, your Honor.

20  And what I would say to that is to circle back to my opening

21  point, which is the parties -- Kroger has already made clear

22  that there's no anticipation that this transaction is going

23  to close in this calendar year, and --

24          THE COURT:  I understand.

25          MS. PFAFFENROTH:  -- so --

1          THE COURT:  I mean, it doesn't fully answer the

2 question that I have about what -- you know, how do we deal

3 with the situation where the FTC approves and we haven't --

4 you know, then we have a deal and the -- but the Plaintiffs

5 still wish to challenge it and, you know, but everything

6 starts happening really fast?  That's the -- that's the

7 issue, right.  And -- but I'm -- I mean, perhaps it would

8 suffice for purposes of -- of today to, you know, agree

9 that, you know, you have -- you've made the agreement to

10 provide to the Plaintiffs and the court the submission that

11 you make to the Government.  And, you know, we can kind of

12 have a check in, you know, in like October or something like

13 that, maybe.

14          MS. PFAFFENROTH:  Yes, your Honor.

15          THE COURT:  Okay.  So, I -- you know, I guess

16 briefly from the Plaintiffs, I mean, any objection?  Do you

17 really think that it's appropriate for me to adjudicate this

18 now?

19          MR. ALIOTO:  Well, will your Honor entertain an

20 argument before you make a decision?  Because it sounds like

21 you've made a decision.

22          THE COURT:  It's very difficult to imagine

23 changing my mind, but I'm -- I'm very happy to entertain an

24 argument from you.  I mean, the first question is why aren't

25 the Defendants correct that this is not ripe for decision?

1  Now, if it is ripe for decision, then -- you know, then you

2  have an even bigger problem on your hands because the

3  presentation that you've made in support of a preliminary

4  injunction is so weak, so weak, that, you know, you're --

5  and, by the way, it doesn't appear that you've stated a

6  claim for -- in your complaint.  So I have to dismiss the

7  complaint.  So, I don't know.  The best outcome perhaps that

8  you could hope for right now is a conclusion by me that it's

9  not ripe.  But, in any event, you know, I will say that, you

10  know, the -- this proposed merger is cause for concern.  I

11  understand why it would -- you know, why you would be

12  concerned about it, why your clients would be concerned

13  about it, but I only say that at the most superficial level,

14  right, that -- that -- that, you know, we've got the number

15  one and the number two proposing to merge, and that is a

16  very superficial statement, right.  And, yeah, it's cause

17  for concern.  It's something that you want to look at, but

18  that's all you say.  You just say over and over again number

19  one and number two are merging, and then you block quote

20  over and over again these Supreme Court cases from the

21  '60's.  I mean, you've provided no evidence.  You've

22  provided no analysis.  You've provided no declaration from

23  an expert about the effect that this will have on

24  competition.  You just kind of keep intoning over and over

25  again this is number one and number two merging, and that's

1  really bad and you should enjoin it.  I mean, it's -- I've

2  -- I -- I'm not sure I've ever seen such a weak presentation

3  in a motion for preliminary injunction before.

4       So, let me just start by saying do you really believe

5  that the case is ripe for adjudication?

6            MR. ALIOTO:  I do, and so does the Supreme Court,

7  which you seem to be disregarding, your Honor.  Will your

8  Honor listen to a hearing and give me a hearing as I'm

9  entitled to or --

10            THE COURT:  Go.  I just asked you the question.

11            MR. ALIOTO:  The answer is --

12            THE COURT:  Go.

13            MR. ALIOTO:  Yeah.  The Supreme Court has made it

14  very clear in these cases two things.  One, that we are

15  separate and apart from the Government.

16            THE COURT:  Okay.  Mr. Alioto, what I don't need

17  from you is a repetition of the stuff that you repeated over

18  and over and over and over again in your briefs.  I've read

19  you briefs.  And based on your briefs, I'm telling you that

20  you've made an exceedingly weak presentation.

21       So, do you have anything other than what you've

22  repeated over and over again your briefs?  Because what I'm

23  not going to do is waste everybody's time here today

24  listening to you repeat it the 20th time in the hearing what

25  you said in your briefs.

18

1          MR. ALIOTO:  Well, I thank you, your Honor, and do
2     respect that you are -- that you are -- that you're treating
3     me with a lot of disrespect, and I think that I am entitled
4     to a hearing, and I should get a hearing.  Even the decision
5     that you wrote that you cited was with regard to the rights
6     of a hearing, and you're not giving me a hearing.

7          THE COURT:  I'm asking you to say something other
8     than what you've said over and over again in your briefs.
9     Do you have the ability to do that?

10          MR. ALIOTO:  Yes.  The first thing I would say is
11    that ripeness is -- should be defeated on two grounds, both
12    by the Supreme Court well established law.  The first is
13    that these cases are taken -- according to the United States
14    Supreme Court, private cases are taken separately and apart
15    from any of the Government, and they are supposed to be
16    decided separately and apart, as a matter of fact, in
17    disregard of each other.  That is the United States v. Ward,
18    in Supreme Court.

19          THE COURT:  Okay.  You want to show me -- I've got
20    that case up right now.  Would you like to show me the quote
21    that you just -- you just seemed to paraphrase it, but --

22          MR. ALIOTO:  Yes.

23          THE COURT:  -- do you want to show it to me?

24          MR. ALIOTO:  Yes, your Honor.

25          THE COURT:  Show me the page.

19

1        MR. ALIOTO:  It's on -- it's on page 518 and 19.

2        THE COURT:  Okay.  Go ahead.

3        MR. ALIOTO:  It says:

4            "These private and public actions

5            were designed to be cumulative, not

6            mutually exclusive."

7     It goes on to say:

8            "Different policy considerations

9            govern each of these.  They may proceed

10           simultaneously or in disregard of each

11           other."

12    We do not have --

13        THE COURT:  That doesn't -- that doesn't at all

14 answer the question, Mr. Alioto, of whether this case is

15 ripe for adjudication.  I don't think anybody is disputing

16 that private Plaintiffs have the right to bring an action to

17 challenge a merger.  I don't think anybody is disputing

18 that.  The point is that the contours of this merger have

19 not taken shape yet.  And, so, there's -- it's impossible to

20 assess whether the merger will have the kind of anti-

21 competitive effect that justifies enjoining it.

22        MR. ALIOTO:  One of the purposes obviously --

23        THE COURT:  But which Supreme Court case?  You

24 keep saying I'm disregarding Supreme Court precedence.  So,

25 I invite you to identify a Supreme Court case that stands

20

1   for the proposition that a case like this is ripe for

2   adjudication, because the <u>Borden</u> case does not come anywhere

3   close to saying that.  Do you have -- do you have any other

4   Supreme Court case that you would like to accuse me of

5   disregarding?

6                MR. ALIOTO:  Yes, your Honor.  And I'm not

7   accusing you of anything.  You're making statements --

8                THE COURT:  Go ahead, Mr. Alioto.

9                MR. ALIOTO:  Thank you very much.  The very -- the

10  very sound -- the beginning of the cases with regard to the

11  merger starts with the <u>Brown Shoe</u> case which specifically at

12  -- on Supreme Court, at page -- and I need my glasses -- it

13  says that the Court -- I'll read it because I don't want you

14  to say that I'm paraphrasing when --

15               THE COURT:  And this -- you're -- you're saying

16  that the <u>Brown Shoe</u> case stands for the proposition that

17  this case is ripe for adjudication?

18               MR. ALIOTO:  Yes.

19               THE COURT:  Okay.

20               MR. ALIOTO:  It says:

21                   "The courts have the power to break

22                   this force at its outset and before" --

23               THE COURT:  Okay.  But you quoted that like 20

24  times in your brief.  I don't need you to quote that again.

25  What else do you have?

21

1          MR. ALIOTO:  It also then -- I don't know if you

2  saw this part, your Honor.  It says that the trend toward

3  this concentration --

4          THE COURT:  Yes.  You quoted that many times, and

5  I saw that too.  Do you have any other cases that you want

6  to make sure I look at?

7          MR. ALIOTO:  It also says incipiency, your Honor.

8          THE COURT:  I saw that.

9          MR. ALIOTO:  It says incipiency, and that has --

10          THE COURT:  Yes.

11          MR. ALIOTO:  -- something to do with --

12          THE COURT:  Again, you -- you block quoted that

13  statement about 20 times in your briefs.

14          MR. ALIOTO:  Okay.  So, then you -- then the Court

15  is aware that they are supposed to proceed at -- against

16  these mergers at their incipiency, which is at the

17  beginning, and that it is not an issue with regard to

18  ripeness.

19      The whole purpose of the preliminary injunction was to

20  be able to do an -- as all preliminary injunctions, to do

21  the necessary discovery.  We have not been allowed any

22  discovery except what they gave to the FTC.  And I want to

23  make it clear, neither the FTC nor the Department of Justice

24  can approve or disapprove of any merger.  The approval or

25  disapproval of a merger is only in the power of the Court.

22

1          THE COURT:  I understand.

2          MR. ALIOTO:  And not -- and not in any agency.

3 And, so, it doesn't matter what they do.  And the Court may

4 be --

5          THE COURT:  What if they --

6          MR. ALIOTO:  -- aware --

7          THE COURT:  What if they negotiate with the agency

8 and the merger looks dramatically different from what you

9 think it's going to look like?

10          MR. ALIOTO:  The Court should take -- the Court

11 should take notice that when they did that with Albertsons,

12 when they bought Safeway, it turned -- it turned into a

13 disaster.  They were supposed to divest some 200 stores.  It

14 was an absolute disaster, and --

15          THE COURT:  So, I should assume that the

16 negotiation with the current FTC is going to be a similar

17 disaster?

18          MR. ALIOTO:  What you should assume is that the --

19 is that the law is clear that the -- you either stop the

20 merger or you do not.  The FTC is not licensed --

21          THE COURT:  But why can't I --

22          MR. ALIOTO:  -- in the grocery --

23          THE COURT:  -- stop them -- why can't I stop the

24 merger in December or January, once I know what the merger

25 looks like?  Why do I have to stop it now before I know what

23

1 it looks like?

2       MR. ALIOTO:  I'm not saying that.  I'm just saying

3 you can stop it any time you want because you have the power

4 to do it after a trial, but you can't have a trial when we

5 don't have any -- when we're not allowed any discovery.  We

6 have very little discovery.  There's no big burden here.  We

7 do have the documents that they've submitted.  You may

8 discount the idea that -- that this is a joining --

9       THE COURT:  But, Mr. Alioto, I -- maybe you're not

10 understanding what I'm contemplating here, but what I'm --

11 what I'm contemplating is that sort of at the end of the

12 process, if you can file another preliminary injunction

13 motion where you've established a strong likelihood of

14 success, you've established -- you've established

15 irreparable harm, you've established that the balance of

16 hardships tips sharply in favor of your clients, if once the

17 -- once the agreement is finalized, if you can make that

18 showing, then I would grant a preliminary injunction to put

19 a halt to the merger until such time as we can have a trial,

20 and you can do your discovery.

21     And -- and, so, in light of the fact that I can issue

22 an injunction, a preliminary injunction in December or

23 January, once I know what the merger looks like, why would I

24 do it now when I have no idea what the merger is going to

25 look like?

1        MR. ALIOTO:  Well, since -- since counsel for the
2  Defendant has made a statement to the Court that there --
3  that this will not be consummated until January of 2024,
4  notwithstanding what the merger agreement says, which they
5  could close it at any time, only take a day or two, in New
6  York -- 10:00 a.m. I think was there -- was their statement.
7  So, they could do it at any time.  So long as that is not
8  the situation and that they're making a representation to
9  the Court that they're not going to be doing any -- any
10  consummation until January of 2024, then, of course, there's
11  no need for a preliminary injunction, because they are not
12  doing anything, and it gives us time, to the extent that the
13  Court will allow it, to take just regular and ordinary
14  discovery and --
15        THE COURT:  But you haven't even stated a claim
16  for violation of the antitrust laws.
17        MR. ALIOTO:  Okay.
18        THE COURT:  I mean, you -- you -- again, I mean,
19  your complaint is this is number one and this is number two,
20  and this is going to be bad and it's going to be bad for
21  competition, and, so, we've stated a claim for violation of
22  the antitrust laws, and that's so -- I mean, you went
23  through this in the <u>Microsoft</u> case recently.  It's just not
24  -- it' so far from enough.  I mean, you're just -- the
25  bottom line is you have not come close to doing the work

1 that you need to do to get a preliminary injunction, and you

2 have not come close to doing work that you need to do to

3 state a claim.  There's been no analysis of the other

4 competitors and how they're going to be affected by this.

5 There's nothing.  There's just this intonation over and over

6 again that number one and number two are merging and -- and,

7 you know, these block quotes of the Supreme Court cases, and

8 you haven't even come close to stating a claim, Mr. Alioto.

9 So, I don't see how I can give you discovery.  I have to

10 dismiss the case.  And, of course, when I dismiss -- when

11 the case is dismissed, there's no right to discovery.

12            MR. ALIOTO:  Well, if the Court's attitude is as

13 strong as you are saying and that -- and that the Supreme

14 Court decisions are going to be disregarded because the --

15 because this would be a violation under any one of them and

16 if, instead, just as you say, that we would be required to

17 prove the things you say, which are part of the guidelines,

18 which are not the law, and they're effective all right, but

19 they're not the law.  The law is what the Supreme Court

20 says, and that's it.

21      As far as Microsoft goes, we did -- it is true that

22 the judge leaped -- that the -- allowed the FTC to leapfrog

23 us.  Now --

24            THE COURT:  The judge dismissed your complaint

25 because it was very similar -- very similar to the complaint

26

1   that you filed in this case.  It seems like you're not

2   interested in doing the work that needs to be done, the

3   economic analysis that needs to be done to state an

4   antitrust claim.

5          MR. ALIOTO:  Okay.  Contrary to your Honor's

6   statement, the District Court denied the Defendant's motion

7   to dismiss, and so that is denied at least as to vertical,

8   and the economic analysis that you're talking about is part

9   of the guidelines.  The -- the obvious effort and truth --

10          THE COURT:  As to vertical, but as to horizontal,

11  which is what you're -- you did in that case exactly what

12  you did in your complaint in this case, and -- and Judge

13  Corley dismissed your complaint sort of with the back of her

14  hand, saying that this is unbelievable.  They didn't even --

15  they've barely alleged anything, and even -- you've done the

16  same thing -- you've done the same thing in this case.

17          MR. ALIOTO:  To the contrary, your Honor.

18          THE COURT:  I guess my concern, you know, to the

19  extent that you're -- you're detecting some frustration in

20  my voice it's because this does seem like something that we

21  ought to be concerned about.  Is it an antitrust violation?

22  I have no idea, because you haven't come close to giving me

23  the facts that I would need to assess whether it's an

24  antitrust violation.  But that's why I'm -- the reason I'm

25  frustrated is because it does seem like it's cause for

27

1 concern, but you've made no effort to provide the

2 information -- the allegations or the analysis or the

3 information that a court would need to -- to make a

4 determination as to whether an antitrust violation has

5 occurred.  And I -- you know, I mean, if you -- if you think

6 you -- you are going to succeed in this case, you're going

7 to need to roll up your sleeves and sort of do a lot more

8 work than you've done.

9          MR. ALIOTO:  That's the purpose of the preliminary

10 injunction, so that --

11          THE COURT:  Well, you have to do the work to get a

12 preliminary injunction, and you have to do -- do the work to

13 state a claim for an --

14          MR. ALIOTO:  We're not entitled to --

15          THE COURT:  -- antitrust violation, and you

16 haven't done either of those things.

17          MR. ALIOTO:  We are -- we are private Plaintiffs.

18 We are not the government.  We are not entitled to grand

19 jury.  We are not entitled to FBI investigation.  We are not

20 entitled --

21          THE COURT:  You're entitled to hire economists to

22 do an analysis of the effect of the merger on competition.

23          MR. ALIOTO:  Okay.  So --

24          THE COURT:  I mean, that's the first thing I did,

25 right, when I was looking through your preliminary

28

1  injunction papers.  First thing I did was, okay, where are

2  the declarations from the economists explaining the effect

3  on competition of this proposed merger.  There's nothing,

4  unless I missed it.  Did I -- did I miss something?

5      (No response.)

6          THE COURT:  I'll take that as a no.

7          MR. ALIOTO:  No.  No, your Honor.  No.  I mean, I

8  -- no.  If you asked whether or not --

9          THE COURT:  Did you submit an analysis from -- did

10 you submit any analysis from any economists in support of

11 your preliminary injunction motion on this?

12         MR. ALIOTO:  All that they have to go on for

13 private plaintiffs, your Honor, is what is in the news.  We

14 have access -- special access as the government does.  We

15 can't ask for its first and second showings.

16     And, so, the evidence -- the whole purpose of the

17 preliminary injunction is to allow us to gather evidence and

18 then submit it to an economist, if the economist is

19 necessary.  The policy of the United States is that this

20 kind of expansion should be internal, not external.  And,

21 so, it's quite obvious that what happens -- they've already

22 said they're going to lay off people.  The idea that they're

23 not going to shut stores or anything like that -- but the

24 whole point of preliminary injunction, which apparently we

25 don't need now, is that don't let them consummate until we

1  get just some effort at some discovery.  We are not the

2  government.  We can't send out private investigators.  We

3  can't compel people to come testify before we file a

4  complaint.

5          THE COURT:  But you can hire an economist.  And

6  the -- the way litigation works nowadays, Mr. Alioto, is

7  that you -- you have to be able to state a claim with

8  specificity before you get discovery.  It used to be, back

9  at the time that those Supreme Court cases were decided that

10  you're citing in your briefs, in the '60's, it used to be

11  that you could just file a lawsuit, not really give much

12  thought to the allegations you were making, and then

13  automatically get discovery.  But it doesn't work that way

14  anymore.  You have to do the work at the front end and

15  especially in an antitrust case like this, you have to do --

16  you have to have the ability to do the work at the front end

17  to adequately allege an antitrust violation and adequately

18  explain how this is likely to harm competition.  And you in

19  your preliminary injunction motion and in your complaint,

20  you -- it appears that you've made virtually no effort to do

21  that.  It appears that you've taken the 1960's approach of

22  just filing a complaint, filing a motion for preliminary

23  injunction, and then getting discovery later on.  That's not

24  how it works anymore.  I'm sorry.

25          MR. ALIOTO:  It's not, as you say, your Honor,

1  harming competition.  What has to be shown is that there's a

2  lessening of competition.  And recently, of course, Justice

3  O'Connor made it very clear --

4          THE COURT:  But you haven't even -- you haven't

5  even -- you haven't even adequately explained how it will

6  lessen competition.

7          MR. ALIOTO:  The --

8          THE COURT:  That's the problem.

9          MR. ALIOTO:  As Justice O'Connor says, the

10  elimination of a significant rival is lessening of

11  competition obviously, and in this case, it's the lessening

12  -- it's the elimination of the second largest grocery store

13  in the United States.  That begins at least to show that

14  something is feasible and that it's -- and that it certain

15  desires -- or deserves discovery.

16      But, as I say, we're private Plaintiffs.  We can get an

17  economist.  I got economists.  You can get economists, as

18  the Court knows, to say almost anything, in all due respect

19  to them.  But if economist is necessary, that -- I -- you

20  know, I've been involved in these cases, not what's

21  happened, but -- but a lessening of competition when the

22  largest store in the United States buys the second largest,

23  certainly that raises issues sufficient to allow me to take

24  some depositions, not very many, three or four, not much

25  more.  At that stage and with the documents -- the documents

1   are no good without the depositions of the -- of the people

2   who wrote it.  At that stage, then an economist would have

3   statistical data and testimony in order to make a reliable

4   opinion.  But the whole point now -- but now they're

5   conceding it.  Okay.

6        So, then, what the Court should do is allow me

7   discovery, just regular discovery in order to be able to do

8   as the -- as your Honor says, just like any other litigant.

9   But you are comparing us to that you have to -- you say

10  we're not working.  Oh, well, that's -- that's nice to hear,

11  but -- it's not nice to hear, but we're not the government,

12  again.  We don't get to start --

13           THE COURT:  I understand, Mr. Alioto.  I

14  understand you're not the government.

15       Could I -- could I turn to the Defendants and ask you

16  to address the third question that I posed in my order?  And

17  it relates -- I guess it relates in part to your standing

18  argument, but just, you know, all of the cases cited by the

19  Plaintiffs are cases brought by the United States, right,

20  all of those Supreme Court cases from the '60's and '70's

21  are, you know, United States versus so and so.  This is a

22  private plaintiff.  And, again, we've had a number of

23  developments since the '60's about standing and nationwide

24  injunctions and stuff like that.

25       So, what -- I mean, do you agree that if the plaintiff

32

1  -- if a private plaintiff were to file a proposed class

2  action and they filed a motion for preliminary injunction

3  and they were able to show that they were harmed, they were

4  going to be harmed or likely to be harmed by the -- by the

5  merger in their own market, right, in their own grocery

6  store market where they live and if they can satisfy the

7  requirements of Rule 23 to get a nationwide class certified,

8  and if they can show that there is similar competitive harm

9  likely to result from the merger nationwide, then they could

10  get a preliminary injunction.  That's how a private

11  plaintiff would get a preliminary injunction against the

12  merger, right?

13          MR. WOLF:  Your Honor, Matt Wolf for Kroger.  If

14  the hurdles -- numerosity would not be an issue here, but if

15  commonality and typicality in particular could be

16  established --

17          THE COURT:  Yes.

18          MR. WOLF:  -- they could plead for preliminary

19  purposes a class action.  We could decide.  You could

20  decide, your Honor, whether those thresholds have been

21  cleared, again, at the preliminary injunction standard

22  level.

23          THE COURT:  Right.

24          MR. WOLF:  And -- and you could make decisions

25  based on that.  I mean, that is -- that is --

1            THE COURT:  So, that's how a private -- if a

2   private plaintiff wanted to go about stopping a nationwide

3   merger of grocery store chains, right, that's how they would

4   do -- if they were going to do the work to dot their I's and

5   cross their T's and -- that's how they would do it, right?

6   It would be a proposed class action.  It would be the named

7   plaintiff.  The named plaintiff would, of course, need to

8   identify the grocery store market that they are in, right,

9   and they would need to show that they are harmed because

10  they -- otherwise they don't have standing, right?  They

11  would need to show that they're harmed, and then they would

12  need to establish the prerequisites of a Rule 23 class

13  action.  Then you can get the class provisionally certified

14  for the purposes of a preliminary injunction motion.  And if

15  you show that there's commonality and predominance and all

16  of that -- or I guess you may not even need predominance

17  because it's an injunction, but you -- you establish

18  commonality and typicality and all of that, then you get --

19  that -- that's how you get your preliminary injunction.

20           MR. WOLF:  Right.  And, obviously, as a

21  substantive matter, we don't believe they could do that.

22  But, procedurally, that is the most straightforward approach

23  to get to that aim.

24           THE COURT:  And if the -- if the -- if you have a

25  plaintiff and they don't file a proposed class action,

34

1  right, they just file an individual action and let's say

2  they live in San Francisco, obviously the first thing they

3  have to show -- or I think the first thing they have to show

4  is that, you know, in their market, like competition is

5  going to be diminished in a way that's going to harm them,

6  and they -- they can establish that they're -- they have

7  standing and they can state a claim, and then -- but then

8  let's say that Plaintiff is also able to show that the --

9  it's going to be sort of a similar effect on competition

10 throughout the country, net negative effect on competition

11 throughout the country, whatever you want to -- however you

12 want to phrase it.  Can they stop the merger if they haven't

13 -- if they haven't gotten a class provisionally certified or

14 are they limited to getting an injunction preventing the

15 portion of the merger that would take place in San Francisco

16 where they live?

17         MR. WOLF:  It's -- it's a good question, and it's

18 challenging because of the specifics of this merger.  They

19 can -- what you're actually doing is seeking to enjoin the

20 merger agreement as written.  And if there is a lessening --

21 a substantial lessening of competition in a given market,

22 all other things -- you know, all other boxes being checked,

23 you can get the merger agreement as written stopped on that

24 ground.  But, of course, what the Supreme Court has told us

25 over and over again is that divestiture, not injunction, is

1 typically the appropriate remedy in those circumstances.

2     So, this San Francisco hypothetical plaintiff you

3 indicated brings the claim.  The San Francisco stores are

4 divested.  They are then no longer irreparably harmed, and,

5 therefore, they lose standing.  So, it's a little bit

6 complicated how this plays out absent class certification,

7 particularly when the agreement we're talking about here,

8 unlike many merger agreements, already expressly

9 contemplates up to 650 stores being divested.  I mean, these

10 are parties that well knew that to -- to maximize

11 competition to do what they were trying to do, what they are

12 trying to do, there will be certain stores that need to be

13 transferred to other owners.

14          THE COURT:  Yeah.  I mean, the -- the -- I mean,

15 putting that comment aside and just speaking -- thinking in

16 more general terms, I'm just -- I'm concerned that if a --

17 if a private plaintiff, you know, files a lawsuit and tries

18 to establish harm in their market and -- and uses that to,

19 you know, stop a merger nationwide, that you could start to

20 brush up against, you know, some of the recent, you know,

21 case law and commentary on, you know, nationwide

22 injunctions.

23          MR. WOLF:  Absolutely, your Honor.  And, of

24 course, the parade of horribles here are apparent.  You

25 have, you know, class -- group one of plaintiffs bring a

1 claim.  That gets resolved.  Then a week later, another

2 group of plaintiffs, 15 plaintiffs in other regions bring a

3 -- absent the class certification, it's administratively

4 difficult.  It's legally challenging.  It is -- it kind of

5 hurts my brain actually to figure out how all of the

6 injunction factors interplay in that context.

7                THE COURT:  Yeah.

8                MR. ALIOTO:  May I respond, your Honor?

9                THE COURT:  Hold on, Mr. Alioto.

10     Yeah.  I mean, it seems to me that at least those -- if

11 I were representing a private plaintiff, you know, I would

12 -- I would seek to alleviate some of those concerns at least

13 by filing a proposed class action.

14                MR. WOLF:  One would thing.  And that's, of

15 course, one of the reasons why an injunction like the one

16 being sought has never been entered, at least in all of our

17 collective research, where you do have private antitrust

18 plaintiffs successful.  It's a narrower situation.  You

19 know, you have the fishermen in the Pacific Northwest who

20 are uniquely injured by supply chain issues or -- or

21 purchase chain issues, and, so, they -- they go after that

22 because they're the -- they're effectively the class of the

23 injured party, even though they're not called a class.

24                THE COURT:  What do you think -- whether it's Mr.

25 Wolf or anybody else on the Defense side, what do you think

37

1  about the second question I posed, which is like let's say

2  I'm -- let's say I'm a private plaintiff and I live in San

3  Francisco and I sue to stop the merger and I file a proposed

4  class action, and I establish that I was harmed or I will be

5  harmed or likely to be harmed in San Francisco because of

6  the way the merger is going to play out here, and then --

7  then what do I -- and imagine that I get the class

8  provisionally certified, I get a nationwide class

9  provisionally certified.  What do I then need to show about

10  the effects on competition nationally to get my injunction?

11           MR. WOLF:  So, it remains -- let me take the first

12  crack of that, your Honor.

13           THE COURT:  Outside the context of your case, just

14  sort --

15           MR. WOLF:  Right.

16           THE COURT:  -- of generally --

17           MR. WOLF:  Right.

18           THE COURT:  -- what do I need to -- what do I need

19  to prove?  Do I need to -- do I need to conduct an analysis

20  of every single, you know, grocery store micro market in the

21  country?  Do I -- or do I need to just show -- sort of

22  present an analysis about the net effect on -- of the merger

23  on competition nationwide?

24           MR. WOLF:  The threshold requirement under FTC,

25  Qualcomm, and every -- and all the other analyses in this

38

1  context is you need to define the market, the product market

2  and geographic market.

3      In this case, there -- let's just pick a number, a

4  thousand geographic markets.  You do need to go market by

5  market, but if you establish that 10 of them, 20 of them, 30

6  of them there's an anti-competitive effect, then you can

7  enjoin that merger, but then we're right back to divestiture

8  is the typical remedy.  You know, in the Dupont case in

9  California versus --

10         THE COURT:  Right.  But, so, in -- let me just

11  pause you for one quick sec.  So, then the Court would -- in

12  that circumstance, the Court would grant the motion for

13  preliminary injunction, and we would decide whether -- fort

14  of after the -- after the granting of the preliminary

15  injunction whether divestiture alleviates the problem?

16         MR. WOLF:  It's typically done in reverse, and I

17  might defer to Ms. Pfaffenroth who was actually in the

18  Department of Justice doing this for a living, about how --

19  but it's typically done in the reverse order.

20      Sonia, would you mind picking up on that?

21         MS. PFAFFENROTH:  Sure.  And I would say it's not

22  -- it's not something that you see a lot, right, but there

23  are cases in which, for example, there is divestiture

24  proposed, a remedy proposed, and the preliminary injunction

25  is denied subject to divestiture.  So, for example, recently

1  last year, Judge Nichols in the <u>United Changed Health</u> case

2  denied the relief the government was seeking but ordered a

3  divestiture to resolve the horizontal overlap concerns in

4  that case.

5       THE COURT:  So, I mean, I guess that begs the

6  question of what do I need to show -- if I'm the Plaintiff

7  that I've described, what do I need to show to enjoin the

8  merger, right?  I mean, if I -- if I'm the Plaintiff and I

9  have a reliable analysis that shows that on balance, like,

10  throughout the country, there is going to be a negative

11  effect on competition.  I guess I'm -- and a significant

12  effect on competition.  I guess I'm having a hard time

13  imagining why I can't -- assuming I'm a plaintiff who has

14  been harmed in my market or is going to be harmed in my

15  market and assuming that I, you know, meet the -- I get a

16  class certified.  If I can then go on to sort of make a

17  reliable showing, then on a net basis, there's going to be a

18  significantly negative effect on competition throughout the

19  United States.  Why can't I get the merger enjoined on that

20  ground?

21       MR. WOLF:  Well, first of all, we're not aware of

22  any situation where the individual markets were aggregated

23  in that way, I mean, if the first question is what are the

24  markets.  Now, as a matter of proof --

25       THE COURT:  But -- but, I mean, it -- it can't be

40

1   that it's -- it's starting to sound like you're saying

2   courts don't have the ability to stop a merger, right?  In a

3   situation where there are thousands upon thousands of

4   individual markets throughout the United States and two

5   companies who occupy all of those markets or most of those

6   markets are seeking to merge, you seem to be saying a court

7   basically can't stop a merger because it would require this

8   sort of super human task of conducting this detailed

9   analysis of each of the, you know, 7,000 markets or whatever

10  it is.

11          MR. WOLF:  Your Honor, this is speculating a

12  little bit, and I'm sure some of my colleagues will correct

13  me if I'm going beyond the bounds, but there are issues of

14  proof here, right.  If -- if you have an economist that

15  comes along and establishes to you that there are eight

16  different types of markets, local markets, and in six of the

17  eight different types that fairly represent the thousand

18  individual markets, there will be, you know, anti-

19  competitive effects, well, then you can -- you know, subject

20  to limitations on time and proof, you can say, well, that's

21  enough for me that I -- I'm satisfied that, you know 650

22  stores or whatever the specific fact pattern are, isn't

23  going to get the job done, and I'm not going to go to every

24  city in every town in America.  You've proven to me that

25  there's -- it's -- there's a likelihood that across enough

41

1  of these specific markets, there's harm that -- that the --

2  that the divestiture route just isn't going to work.  I

3  mean, this is more of a proof issue than a -- a legal -- a

4  rigor of legal analysis issue.

5          THE COURT:  Uh-huh.  Okay.

6          MR. WOLF:  Does that -- does that answer your

7  question, your Honor?

8          THE COURT:  I mean, I don't know if it fully

9  answers my question, but it's -- I think it -- and I don't

10  know if you necessarily need to fully answer my question

11  right now, but it's an issue that, you know, immediately

12  jumped to mind as I was reading your briefs, right.  That's

13  you -- you seem to be saying that we need to conduct a

14  detailed analysis of each of the 7,000, you know, grocery

15  store markets before we can contemplate shutting down a

16  merger, and I -- I just -- it doesn't -- I mean, that's like

17  -- it seems to be sort of construing antitrust law to

18  prevent a court from finding an antitrust violation at all.

19  So, that's why I was -- that's why -- that's why I asked the

20  question, and your -- your answer is helpful, and I think

21  it's just something -- you know, assuming we are back here

22  at some point on a motion for preliminary injunction by

23  somebody who's able to present, you know, a clear and

24  detailed analysis of the -- of the effect on competition,

25  that's going to be a question I have, and, so, I think I'll

1  -- I'll leave it at that.

2          MR. ALIOTO:  Would you like to hear from the

3  Plaintiffs, your Honor?

4          THE COURT:  If you want to briefly have the last

5  word, go ahead, Mr. Alioto.

6          MR. ALIOTO:  Not necessarily the last word.  I

7  just want to point out that --

8          THE COURT:  No.  It will be the -- it will be the

9  last word.

10          MR. ALIOTO:  Okay.  Very good, your Honor.

11  Section 7 of the Clayton Act specifically says that an

12  action can be brought in any section of the country.  Brown

13  Shoe, a case in the '60's, but not reversed or overruled by

14  anybody, including the FTC and the DOJ, showed that.  By

15  city -- you can do it by city.  You could do it by state or

16  whatever.  And you sue for an injunction.  It's not a class

17  action at all.  Class action assumes impact and damage.

18  Section 7 is strictly threat of what might happen in the

19  future.  So, in all due respect to counsel, I think he's

20  just missing -- he just doesn't understand it.  There have

21  been many Section 16 cases.  The prominent ones in the

22  Supreme Court, of course, are the Zenith case and -- and the

23  Permalife case, and those were private actions and also

24  brought under Section 16, as well as under Section 4.

25          I would point out that the Supreme Court, again, in

43

1  <u>Hawaii v. Standard Oil</u>, private case, the Supreme Court

2  noted that -- that one injunction is as effective as a

3  hundred.  And, so, it doesn't make any difference, because

4  the one injunction covers everyone.

5      I would point out, as your Honor may have seen, that

6  our Plaintiffs are from all over the country, and -- and, in

7  addition to that, although your Honor said we have no

8  evidence or anything like that, we were able to get from the

9  Defendants because they published it -- we were able to show

10 where the stores are throughout the country and how this

11 combination will cover the entire country.  And -- and we're

12 talking about five --

13         THE COURT:  Yeah, but you don't -- you don't have

14 anything in there about where the competitors are.  There's

15 nothing.  I have no information, and that was like the  --

16 just like the <u>Corley</u> case.  I have no information about

17 where the competitors are.  You have this map that shows

18 where Kroger is and where Albertsons is, but there are no

19 dots for any of the competitors in any of these locations.

20 So, I have no ability -- you've given me no ability to

21 assess the effect of this proposed merger on competition.

22         MR. ALIOTO:  To the contrary, your Honor, we have

23 given you the revenues and statements showing that this

24 combination will be approximately four or five times larger

25 than the next closest competitor, whoever it is.  And this

44

1 is far in advance of the -- of Supreme Court cases -- I know

2 you don't like them, but the American Tobacco case, and you

3 have not --

4        THE COURT: Well, but -- but, for example,

5 sticking to your map, right, there was -- in the map that

6 you included, in the northeast, right, you -- you had a map

7 of the -- showing where Albertsons had stores, and you had a

8 map showing where Kroger had stores, right. And in the

9 northeast, one of those -- one of those two companies has no

10 stores, right. I can't remember which one. Which company

11 is it that has no stores in the northeast?

12        MR. ALIOTO: No. Both of them have stores in the

13 northeast. We have a --

14        THE COURT: Can I ask the -- Mr. Alioto, with all

15 due respect, I think you're just making stuff up right now.

16        MR. ALIOTO: It's right on the --

17        THE COURT: Could I ask the --

18        MR. ALIOTO: -- map, your Honor.

19        THE COURT: Mr. Alioto, can you be quiet for a

20 second? For the -- can the Defendants confirm for me which

21 -- on that map, which is the company that has stores in the

22 northeast, and which is the company that doesn't?

23        MS. PFAFFENROTH: Kroger does not have stores in

24 the Northeast, your Honor.

25        THE COURT: Okay. So, Kroger does not have stores

45

1  in the northeast.  Albertsons has stores in the northeast.
2  Kroger is going to take over Albertsons stores in the
3  northeast.  How does that affect competition in the
4  northeast?

5      MR. ALIOTO:  Again, your Honor, I hate to refer to
6  it I guess, but in the Supreme Court decision --

7      THE COURT:  No, no.  I'm asking you a specific
8  question about this case.

9      MR. ALIOTO:  Yes.

10     THE COURT:  How does that affect competition in
11 the northeast?  Kroger does not have any stores in the
12 northeast.  Albertsons has a bunch of stores in the
13 northeast.  Kroger is going to take over those Albertsons
14 stores, and presumably everything else in the northeast is
15 going to stay the same.  The stores in the northeast
16 currently say Albertsons.  And, presumably, there's going to
17 be a sign put over them that say Kroger.

18     How does that -- you have -- that's all you've done is
19 put that map there which shoes that those -- those stores in
20 the northeast are going to change from Albertsons to Kroger.
21 How does that affect competition?  You've provided no
22 explanation of that.

23     MR. ALIOTO:  That is on four corners of the
24 Supreme Court's decision in <u>Falstaff</u>, in which Falstaff was
25 not in the northeast, as a matter of fact, and the only way

1 it was going to go in was by acquiring the -- the competitor

2 there.  The Supreme Court enjoined it and prohibited them

3 from doing it because of their potential competition.  The

4 Supreme Court made it clear, you want to go in there, you go

5 in and compete.  You don't buy the market.  Exactly what

6 your Honor just said.

7         THE COURT:  Okay.  All right.  I -- I will issue a

8 ruling shortly.  I will just say to -- to the Plaintiffs, my

9 sense is that the Plaintiffs don't really care.  They're

10 just going to say what they want to say, and -- but I will

11 tell you if you're -- if you're serious about pursuing this

12 lawsuit, you have a ton of work to do, and --

13         MR. ALIOTO:  I was --

14         THE COURT:  -- you can -- you can take that for --

15 you can disregard that if you want.  It's your case, but I'm

16 assuring you that if you want -- if -- if you are serious

17 about this case, you have a ton of work to do between now

18 and December.

19     Thank you for your time --

20         MR. COHEN:  Your Honor -- your Honor, if I -- if I

21 may on behalf of the Cerberus Defendant, I would just like

22 to remind the Court that Cerberus is not a Defendant in --

23         THE COURT:  I understand.  Don't -- I understand.

24 You don't need to remind me of anything.  I'll issue a

25 ruling shortly.

47

1          MR. ALIOTO:  Well, I think you've made it clear.
2 I think you --
3          MR. COHEN:  Thank you, your Honor.
4          MR. ALIOTO:  -- to dismiss the --
5          THE COURT:  Mr. Alioto, I said thank you for your
6 time.  Have a nice day.  Okay.
7          MR. WOLF:  Thank you, your Honor.
8          MS. PFAFFENROTH:  Thank you, your Honor.
9          MR. ASIMOW:  Thank you, your Honor.
10      (Proceedings adjourned at 2:01 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

48

1                    CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14  

15

16            Echo Reporting, Inc., Transcriber

17               Wednesday, August 2, 2023

18

19

20

21

22

23

24

25