Joseph M. Alioto (SBN 42680)
Tatiana V. Wallace (SBN 233939)
jmalioto@aliotolaw.com
twallace@aliotolaw.com
**ALIOTO LAW FIRM**
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900

Lawrence G. Papale (SBN 67068)
lgpapale@papalelaw.com
**LAW OFFICES OF LAWRENCE G.
PAPALE**
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704

Josephine Alioto (SNB 282989)
jalioto@veenfirm.com
**THE VEEN FIRM**
20 Haight Street
San Francisco CA 94102
Telephone: (415) 673-4800

Christopher A Nedeau (SBN 81297)
cnedeau@nedeaulaw.net
**NEDEAU LAW PC**
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010

*Attorneys for Plaintiffs*

DANIEL B. ASIMOW (SBN 165661)
Daniel.Asimow@arnoldporter.com
**ARNOLD & PORTER KAYE
SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Fax: (415) 471-3400

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*pro hac vice*)
MICHAEL BERNSTEIN (*pro hac vice*)
KOLYA D. GLICK (*pro hac vice*)
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com
**ARNOLD & PORTER KAYE
SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Attorneys for Defendant The Kroger Co.*

JOHN (JAY) NEUKOM (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

EDWARD D. HASSI (*pro hac vice*)
LEAH S. MARTIN (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

SHANNON R. SELDEN (*pro hac vice*)
J. ROBERT ABRAHAM (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons
Companies, Inc.*

RUSSELL P. COHEN (SBN 213105)
JOEY TRUJILLO (SBN 305170)
russ.cohen@dechert.com
joseph.trujillo@dechert.com
**DECHERT LLP**
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555
ANDREW J. LEVANDER (*pro hac vice*)
andrew.levander@dechert.com
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599

THOMAS J. MILLER (*pro hac vice*)
thomas.miller@dechert.com
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222

*Attorneys for Defendant Cerberus Capital
Management, L.P.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Christine Whalen, et al.,

        Plaintiffs,

    v.

Kroger Co., Albertsons Companies, Inc. and
Cerberus Capital Management, L.P.,

        Defendants.

Case No. 3:23-cv-00459-vc

**JOINT STATUS REPORT**

Date:     October 20, 2023
Time:     10:00 a.m.
Judge:   Hon. Vince Chhabria

On August 4, 2023, the Court ordered the parties to file a Joint Status Report by October 13, 2023, in advance of the status conference scheduled for October 20, 2023 at 10:00 am.  ECF No. 92.  In accordance with that order, the parties submit the below report.

## PLAINTIFFS' POSITION

This is a private antitrust action, brought under Section 16 of the Clayton Antitrust Act to prohibit the acquisition of Albertsons by Kroger.  Plaintiffs filed their original Complaint on February 2, 2023 and filed their First Amended Complaint on October 2, 2023.

<u>Plaintiffs Proposed Schedule of Adjudication</u>

The acquisition will be consummated on January 13, 2024.  Plaintiffs therefore propose and request that the Court set a trial date during the week of December 18 - 22, 2023.

Defendants have produced their Hart-Scott-Rodino documents to the government. Plaintiffs request that these documents be provided to Plaintiffs by October 23, 2023, subject to the protective order already entered in the case.

The following four depositions of Defendants' officers can be taken in five days during the week of  November 6 – 10, 2023.

1. Rodney McMullen, Kroger Chairman and Chief Executive Officer, who will continue serving as Chairman and CEO of the combined company.

2. Vivek Sankaran, CEO of Albertsons Companies.

3. The Executive Vice-Presidents in charge of marketing and sales for each   company.

   The depositions of the Plaintiffs can be taken during the week of November 13 – 17, 2023.

   Expert reports shall be exchanged during the week of November 27 – December 1, 2023.

   Expert depositions shall be completed during the week of December 4 – 8, 2023.

   Trial will take place between December 18 – 22, 2023.

The trial issues are: 1) Whether the acquisition may lessen competition; 2) in any section of the country; 3) whether any Plaintiff is threatened with injury or damage by reason of the prospective acquisition; 4) whether the acquisition should be enjoined in its incipiency; 5) whether any post acquisition evidence is entitled to little or no weight.

Although the Court only asked for scheduling, the Defendants have gone beyond and have, in effect, argued their motion to dismiss and have offered extraneous evidence to support their position.

However, Plaintiffs have had no discovery to date and have not even had access to the Hart Scott Rodino documents.

Under Rule 12(d) of the Federal Rules of Civil Procedure and under Rule 56 (d)(2) Plaintiffs should be given a reasonable opportunity to present all the material facts pertinent to the motion if extraneous facts are offered.

In addition, and contrary to Defendants' position,  Plaintiffs believe that disgorgement is in fact a legal remedy available to private plaintiffs under Section 16 of the Clayton Act and also by reason of the decision by the Supreme Court in *California v. American Stores Co.,* 495 U.S. 271 (1990) in which the Court specifically stated that the Plaintiffs would be entitled to all equitable relief, including mandatory injunctive relief.   In *American Stores*, the Court approved divesture after the fact. The cases cited in the Supreme Court's decision in *American Stores* received injunctive relief after the fact.  Section 16 allows the broadest possible use of injunctive relief.  The injunction can be mandatory as well as prohibitory.  In fact, Defendants' authority that disgorgement is not the law does not actually deal with disgorgement, but rather deals with restitution. Plaintiffs believe, therefore, that the dividend which was paid should in fact be disgorged and paid back to Albertson.

And Defendants' reliance upon post-merger conduct of divestiture of stores is either irrelevant or given little weight because it is often engineered for litigation purposes. As Judge Posner stated in *Hospital Corporation of America v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986), "We agree with the Commission that it was not required to take account of a post-acquisition transaction that may have been made to improve Hospital Corporation's litigating position. . . Post-acquisition evidence that is subject to manipulation by the party seeking to use it is entitled to little or no weight. [Citation Omitted.] The Commission was entitled to give it no weight in this case . . . ."[1]

And in response to the Defendants' apparent position that Plaintiffs are required to show threatened injury in ALL the sections of the country, the federal courts have ruled that only one plaintiff seeking an injunction is necessary to carry the claim in ANY section of the country. According to Judge Young who ruled at the hearing on the Defendants' Motion for Summary Judgment in the District of Massachusetts in the pending merger case of *Garavanian v. JetBlue Airways Corp, et al*., 23-cv-10678 (D Mass October 4, 2023): "You only have to have one [Plaintiff]." Judge Young granted in part and denied in part the JetBlue Motion for Summary Judgment. This is consistent with the statute itself that specifically recites "in any section of the country" and it is consistent with the holding in *State of Hawaii v. Standard Oil*, 405 U.S. 251 (1972), in which the Supreme Court ruled in effect that one injunction on behalf of one plaintiff is as good as a hundred.

---

[1] *Hospital Corporation of America v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986).

**DEFENDANTS' POSITION**

> **A.** **Report on Factual Developments Related to the Kroger-Albertsons Transaction**

At the July 27, 2023 hearing, Kroger informed the Court that the Federal Trade Commission's ("FTC's") review of Kroger's proposed acquisition of Albertsons was ongoing, Kroger and Albertsons were continuing to respond to the FTC's Second Request, and Kroger remained in negotiations with potential divestiture buyers. Transcript of Proceedings at 6, 9 ("MTD Hearing") (ECF No. 90). At that hearing and in its order dismissing Plaintiffs' Complaint, the Court requested an update on the "status of the merger" and the FTC's review process in October 2023. Order Granting Motions to Dismiss and Denying Motion for a Preliminary Injunction at 3 ("Order") (ECF No. 91); MTD Hearing at 13, 15.

As of this date, the FTC's review process remains ongoing. Kroger and Albertsons have not yet certified substantial compliance with the Second Request. On September 8, 2023, Kroger and Albertsons announced that they had entered into a divestiture agreement with C&S Wholesale Grocers, LLC ("C&S") for the sale of 413 stores, eight distribution centers and two offices, the QFC, Mariano's and Carrs brand names, a license to the Albertsons banners in four states, and certain private label brands. *See* Press Release, Kroger, Kroger and Albertsons Companies Announce Comprehensive Divestiture Plan with C&S Wholesale Grocers, LLC in Connection with Proposed Merger (Sept. 8, 2023), https://bitly.ws/WuvK. The agreement allows Kroger to require C&S to purchase, in connection with securing FTC and other governmental clearance, up to an additional 237 stores. The divestiture proposal has been presented to the FTC and state attorneys general. Their review of this divestiture proposal is ongoing and the contours of the divestiture remain subject to change.

Contrary to Plaintiffs' allegations, *see* Amended Complaint ¶ 28 (ECF No. 93), having heard nothing from Plaintiffs' counsel following the announcement of the agreement with C&S, Kroger's counsel notified Plaintiffs about the divestiture proposal and offered to provide Plaintiffs with information about divested stores relevant to the Plaintiffs.  Rather than responding and actually analyzing the effect of the proposed divestitures on their individual claims (or asking the Court for more time to do so, *see* Order at 3), Plaintiffs filed an amended complaint that effectively ignores the divestiture entirely.  *See* Am. Compl. ¶ 30 (arguing that the divestiture agreement is "not relevant to this case").[2]

### B.      Report on Defendants' Legal Position

Like the Complaint, the Amended Complaint fails to state a claim against Defendants.  The Court dismissed Plaintiffs' Complaint for lack of Article III standing and, alternatively, on ripeness grounds.  Order at 1-2.  Because Plaintiffs lacked standing, the Court did not need to address the merits of their claims in dismissing the Complaint, but it made abundantly clear that Plaintiffs "ha[d] not come close to doing the work that [they] need[ed] to do to state a claim."  MTD Hearing at 24-25; *see also id.* at 26-27, 29.  The Court granted Plaintiffs leave to amend their complaint, advising Plaintiffs that they would need to "roll up [their] sleeves" and "do a lot more work than you've done" to state an antitrust claim.  *Id.* at 27.  Plaintiffs have not done that work.

Accordingly, to the extent re-briefing would be helpful to the Court, Defendants intend to move to dismiss the Amended Complaint with prejudice on all the same grounds that they moved to dismiss the Complaint: Plaintiffs lack Article III standing, their claims are not ripe, and they fail to adequately plead the elements of an antitrust violation.

---

[2] Notwithstanding Plaintiffs' false representation that Defendants "refused to identify specific stores and locations that will be divested to C&S," Am. Compl. ¶ 28, on October 9, 2023, Defendants provided Plaintiffs with a list of the stores in the proposed divestiture package that are within 20 miles of the center of any city in which a named Plaintiff lives.

<u>Standing</u>.   The Amended Complaint again fails to adequately allege the imminent, particularized harm necessary to establish Article III standing.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Plaintiffs still "make no effort to explain how the merger would affect any one of them personally, in the area where they live and shop for groceries."  MTD Order at 1. Rather, Plaintiffs continue to confuse statutory language with constitutional requirements, asserting that they can establish standing requirements by vaguely alleging potential competitive harm in areas where they do not live and have never shopped for groceries.  *See, e.g.*, Am. Compl. ¶ 109 (alleging that, for "standing in a Section 7 case a plaintiff need only show that the effect of the merger 'may be substantially to lessen competition … in any line of commerce … *in any section of the country*'" (quoting 15 U.S.C. § 18)).  Accordingly, like the Complaint, the Amended Complaint "simply intone[s] that the federal antitrust statutes give them the right to sue, which of course is beside the point for purposes of constitutional standing."  MTD Order at 1.

The lone new fact in the Amended Complaint that is arguably relevant to standing is that eight of the 24 plaintiffs have shopped at either a Kroger or Albertsons store in their "local geographic areas."  Am. Compl. ¶¶ 104-107, 113.  Not only does this suggest that two thirds of Plaintiffs have not even shopped at a Kroger or Albertsons store (indeed, the Plaintiff in Florida appears to live more than 300 miles from the closest Kroger or Albertsons store), the mere fact that certain Plaintiffs at some point shopped at a Kroger or Albertsons store does not establish that Plaintiffs have standing to bring the antitrust claims alleged here.  To do so, each Plaintiff would need to allege facts plausibly suggesting that the merger will actually and imminently cause them *particularized* harm "in the area where they live and shop for groceries."  MTD Order at 1 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 495-500 (2009)).  Plaintiffs again make no effort to do so.

<u>Ripeness</u>.  In dismissing the Complaint, the Court noted that Plaintiffs' claims were not yet ripe because "the contours of the merger ha[d] not yet become clear enough to adequately assess the effects it will have on competition."  MTD Order at 2.  Even though the divestiture proposal was announced weeks ago, Plaintiffs do not even attempt to consider the effect of the proposed divestiture on the merits of their claims, instead arguing that "[p]ost-merger agreements evidence . . . is not relevant to this case."  Am. Compl. ¶¶ 29.  Given that the divestiture proposal remains under government review, the contours of the ultimate divestiture package are still subject to change.  *See* MTD Order at 2 (recognizing that "the companies may agree to changes as a condition of the Commission's approval").  Because Plaintiffs do not consider the effect of the divestiture on their claims and because that divestiture may still change, Plaintiffs' claims continue to be unripe.  *See* MTD Order at 2 (citing *S. Austin Coal. Cmty. Council v. SBC Comm'ns Inc.*, 191 F.3d 842, 844-45 (7th Cir. 1999)).

<u>Market Definition</u>.  The Amended Complaint offers no additional facts that would enable the court to define a relevant antitrust market.  Plaintiffs still fail to plausibly allege any local market relevant to any Plaintiff.  Plaintiffs continue to allege a national geographic market, which as explained, is facially implausible.  *See* Kroger's Motion to Dismiss at 6-7 (ECF No. 40).  Plaintiffs state that "smaller local relevant geographic markets exist within individual states," Am. Compl. ¶ 74, but they do not attempt to define any such local markets.  Rather, the only "facts" that Plaintiffs offer about any local area are unsupported statistics purportedly showing the change in market concentration in four metropolitan statistical areas ("MSAs").  Am. Compl. ¶¶ 101, 104-107.  But Plaintiffs do not allege that those MSAs are themselves relevant markets or plead any facts supporting a conclusion that they are.  Similarly, Plaintiffs still provide "no analysis of the

other competitors" in their proposed market or any information on where those competitors are located.  MTD Hearing at 25, 43.

<u>Competitive Effects</u>.  The Amended Complaint also offers no additional facts that would enable the Court to analyze the merger's likely effects in any relevant market.  Despite the Court's admonition, there are no allegations suggesting that Plaintiffs have done any of the "economic analysis that needs to be done to state an antitrust claim."  MTD Hearing at 26.  Plaintiffs again provide no facts supporting a conclusion that competition would be substantially lessened in any properly defined market.   Plaintiffs do not attempt to do any economic analysis identifying the harm to Plaintiffs resulting from the merger.  And Plaintiffs do not even begin to address how the proposed divestiture affects the analysis of the merger's competitive effects.  Instead, Plaintiffs continue to offer rote, fact-free recitations of the bevy of harms purportedly flowing from the merger.

<u>Special Dividend</u>.  Finally, the Amended Complaint continues to challenge Albertsons' payment of a special dividend, Am. Compl. ¶ 2, but it does not assert a separate count or a violation of the Sherman Act based on that payment, *id.* ¶¶ 140-55.  Instead, Plaintiffs attempt to re-couch the special dividend payment as an act as "in furtherance" of the proposed merger and thus, part of their Clayton Act claim.  Am. Compl. ¶¶ 140-155.  This reframing is baseless.  As multiple courts have found, Albertsons' decision to issue and pay a special dividend was an independent decision; it was not "part of" the proposed merger.  ECF No. 42-10 at 66; ECF No. 42-12 at 4, ¶ 10.   Indeed, aside from the conclusory statement that the special dividend was "made and implemented in furtherance of defendants' violation of Section 7," *id.* ¶ 144, Plaintiffs provide no explanation of how the special dividend is relevant to their Clayton Act claim.  The few new

allegations related to the special dividend that Plaintiffs shunt into their Amended Complaint are wrong, unsupported, not credible, and have been considered and rejected by multiple courts.

The Amended Complaint fails to cure Plaintiffs' lack of standing to challenge Albertsons' payment of a special dividend. *See* MTD Order at 1-2. Plaintiffs plead only conclusory statements, Am. Compl. ¶¶ 60-61, 89, 147-155, and they again fail to allege facts about "Albertsons's financial strength before the dividend or how Albertsons has fared after" or any other facts relevant to whether Plaintiffs face a substantial risk of harm flowing from that payment. MTD Order at 1-2. This failure is unsurprising: as Albertsons previously explained, Albertsons continues to compete vigorously and remains financially strong after paying the special dividend. *See* ECF No. 42 at 17-18; ECF No. 75 at 4-6.

The Amended Complaint also fails to state a proper request for relief related to the special dividend. In dismissing the Complaint, the Court stated that "[i]t's difficult to see how the plaintiffs could ever state a claim for disgorgement of the dividend payment." MTD Order at 3. They have not done so. Further, while Plaintiffs acknowledge that the special dividend "has now in fact been paid," *id.* ¶ 142, they continue to ask this Court to issue an order "permanently enjoining Albertsons from making a Special Dividend payment," *id.*, Prayer for Relief ¶ E. Plaintiffs' request to enjoin Albertsons' payment of the special dividend remains moot: Albertsons paid the special dividend in January 2023, nearly two weeks before Plaintiffs filed the Complaint. *See* ECF No. 42 at 6.

In the Complaint, Plaintiffs "made no effort to provide . . . the analysis or the information that a court would need to . . . make a determination as to whether an antitrust violation has occurred" here or to "adequately explain how [the merger] is likely to harm competition." MTD Hearing at 26-27, 30. Given that the same fatal flaws that led this Court to dismiss the Complaint

continue to be present in the Amended Complaint, Plaintiffs' request for discovery and a trial schedule is – at best – premature.  Moreover, contrary to Plaintiffs' suggestion, Defendants Kroger and Albertsons sent Plaintiffs the Hart-Scott-Rodino forms and documentary attachments related to the merger (which were submitted to the FTC on November 3, 2022) over two months ago.  In light of Plaintiffs' failure to even attempt to remedy their Complaint's deficiencies, Defendants respectfully submit that the Amended Complaint should now be dismissed with prejudice and intend to promptly file a motion to that end.

## CERBERUS' SUPPLEMENTAL POSITION

Plaintiffs have done nothing to correct the many deficiencies in their "tag-along" claim against Defendant Cerberus.  Conceding that they cannot plausibly allege a conspiracy in violation of Section 1 of the Sherman Act, Plaintiffs have attempted to plead the same claim as part of an alleged violation of Section 7 of the Clayton Act.  *Compare* Compl. ¶¶ 80-89, *with* Am. Compl. ¶¶ 140-155.  But there is no legal basis to challenge Cerberus' receipt of the special dividend as a violation of Section 7 "in furtherance" of the proposed Kroger-Albertsons merger, and there is no factual basis for the claim as the dividend payment was made unilaterally by Albertsons and independent of the merger.  *See supra* at 8-9.  Nor can Plaintiffs overcome controlling authority holding that disgorgement of the special dividend is not an available remedy under Section 16 of the Clayton Act.  Neither *California v. American Stores Co.*, 495 U.S. 271 (1990), nor any other cases cited by Plaintiffs, have awarded disgorgement under that section.  *See also* MTD Order at 2-3 ("It's difficult to see how the plaintiffs could ever state a claim for disgorgement of the dividend payment.").  For these reasons, and in the absence of any available remedy, Plaintiffs' claim against Cerberus must be dismissed with prejudice.

Dated:  October 13, 2023          By:      /s/ *Joseph M. Alioto*

         Joseph M. Alioto (SBN 42680)
         Tatiana V. Wallace (SBN 233939)
         **ALIOTO LAW FIRM**
         One Sansome Street, 35th Floor
         San Francisco, CA 94104
         Telephone: (415) 434-8900
         jmalioto@aliotolaw.com
         twallace@aliotolaw.com

         Lawrence G. Papale (SBN 67068)
         **LAW OFFICES OF LAWRENCE G. PAPALE**
         1308 Main Street, Suite 117
         St. Helena, CA 94574
         Telephone: (707) 963-1704
         lgpapale@papalelaw.com

         Josephine Alioto (SNB 282989)
         **THE VEEN FIRM**
         20 Haight Street
         San Francisco CA 94102
         Telephone: (415) 673-4800
         jalioto@veenfirm.com

         Christopher A Nedeau (SBN 81297)
         **NEDEAU LAW PC**
         154 Baker Street
         San Francisco, CA 94117-2111
         Telephone: (415) 516-4010
         cnedeau@nedeaulaw.net

         *Attorneys for Plaintiffs*

         /s/ *Daniel B. Asimow*

         DANIEL B. ASIMOW
         **ARNOLD & PORTER KAYE SCHOLER LLP**
         Three Embarcadero Center, 10th Floor
         San Francisco, CA 94111
         Telephone: (415) 471-3100
         Daniel.Asimow@arnoldporter.com

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*pro hac vice*)
MICHAEL BERNSTEIN (*pro hac vice*)
KOLYA D. GLICK (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com

*Attorneys for Defendant The Kroger Co.*

/s/ *John Neukom*

JOHN (JAY) NEUKOM (SBN 275887)
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700
jneukom@debevoise.com

EDWARD D. HASSI (*pro hac vice*)
LEAH S. MARTIN (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000
thassi@debevoise.com
lmartin@debevoise.com

SHANNON R. SELDEN (*pro hac vice*)
J. ROBERT ABRAHAM (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
srselden@debevoise.com
jrabraham@debevoise.com

*Attorneys for Defendant Albertsons Companies, Inc.*

/s/ *Russell P. Cohen*

RUSSELL P. COHEN (SBN 213105)
JOEY TRUJILLO (SBN 305170)
**DECHERT LLP**
One Bush Street, Ste.1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500
Fax: (415) 262-4555
russ.cohen@dechert.com
joseph.trujillo@dechert.com

ANDREW J. LEVANDER (*pro hac vice*)
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500
Fax: (212) 698-3599
andrew.levander@dechert.com

THOMAS J. MILLER (*pro hac vice*)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-2222
thomas.miller@dechert.com

*Attorneys for Defendant Cerberus Capital Management, L.P.*

13

## SIGNATURE ATTESTATION

I, Daniel B. Asimow, am the ECF user whose user ID and password are being utilized to electronically file this JOINT STATUS REPORT.  Pursuant to Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated:  October 13, 2023

/s/ *Daniel B. Asimow*
Daniel B. Asimow