Joseph M. Alioto (SBN 42680)
Tatiana V. Wallace (SBN 233939)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone: (415) 434-8900
Email:  jmalioto@aliotolaw.com

[Additional Counsel Listed on Last Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Whalen, et al., | Case No.:  23-cv-00459-VC |
| Plaintiffs, | **JOINT CASE MANAGEMENT STATEMENT** |
| v. | Hearing Date:  December 15, 2023 |
| Kroger Co., Albertsons Companies, Inc., and Cerberus Capital Management, L.P., | Time: 10:00 am<br>Place: Videoconference |
| Defendants. | Judge:  Honorable Vince Chhabria |
| | Complaint Filed:  February 2, 2023 |

## JOINT CASE MANAGEMENT STATEMENT

Pursuant to Civil Local Rule 16-9, the Court's November 1, 2018 Standing Order for Civil Cases, and the Court's December 5, 2023 Minute Order, Plaintiffs Christine Whalen, et al., ("Plaintiffs") and Defendants Kroger Co., Albertsons Companies, Inc., and Cerberus Capital Management, L.P. ("Defendants"), hereby submit the following joint statement.

### 1. Scheduling of Case Management Conference

#### a.    Plaintiffs' Statement

The Court has scheduled a Further Case Management Conference for December 15, 2023. Plaintiffs submit that the conference should include an opportunity for oral argument in response to Defendants' Dispositive Motions to Dismiss. Rule 12(d) of the Federal Rules of Civil Procedure (Amendment 5); *Mullane v. Central Hanover Bank and Trust Co*, 339 U.S. 306, at 313 (1950); *Wolff v. McDonnell*, 418 U.S. 539, at 557 (1974).

#### b.    Defendants' Statement

This Court has scheduled a case management conference for December 15, 2023. Although Defendants' position continues to be that Defendants' pending Motions to Dismiss the First Amended Complaint ("FAC") should be granted and the FAC dismissed with prejudice, Defendants are prepared to go forward with the Case Management Conference as scheduled.

### 2. Jurisdiction and Service

#### a.    Plaintiffs' Statement

This Court has subject matter jurisdiction under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, in which the Plaintiffs allege violations of Section 7 of the Clayton Antitrust Act, seeking a permanent injunction prohibiting Kroger, the largest grocery store chain in the

1

United States, from acquiring Albertsons, the second largest grocery store chain in the United States. No issues exist regarding personal jurisdiction or venue, and all Defendants have been served.

    **b.    Defendants' Statement**

Defendants contest this Court's subject matter jurisdiction over Plaintiffs' claim, including because Plaintiffs lack standing. Defendants have not contested venue or personal jurisdiction. All Defendants have been served.

**3.  Facts**

    **a.    Plaintiffs' Statement**

Kroger is the largest supermarket operator by revenue in the United States with 23.6% market share and $138 billion in sales in 2021.  Albertsons is the second-largest supermarket chain in the United States after Kroger controlling over 12.4% of the market and $72 billion in sales in 2021.  Both Kroger and Albertsons have acquired numerous grocery store chains throughout the country. Their combined market share would be 36%, well above the mark that has been held by the Supreme Court in the past to be excessive market concentration. *United States v. Philadelphia National Bank,* 374 U.S. 321 (1963) (nos. 1 and 2 in market combined for 36% market share – merger enjoined).

On October 13, 2022, the Defendants entered into an "Agreement and Plan of Merger By and Among Albertson Companies, Inc., The Kroger Co., And Kettle Merger Sub, Inc." ("Agreement"), pursuant to which Kroger has agreed to pay $24.6 billion in cash to eliminate Albertsons.  This is not a trivial transaction.

 Plaintiffs seek to enjoin the acquisition of Albertsons by Kroger; and further seek an order of disgorgement of the Special Dividend of $4 billion, the total profit of Albertsons

for 2021, which was paid to Albertsons' shareholders, led by Cerberus, for the purpose of forcing Albertsons to accept the acquisition by Kroger.

Kroger has acquired multiple supermarkets throughout the United States including, among others, Ralphs, Dillons, Smith's, King Soopers, Fry's, QFC, City Market, Owen's, Jay C, Pay Less, Bakers, Gerbes, Harris Teeter, Pick N' Save, Metro Market, Mariano's, Fred Myers, Food 4 Less and Food Co.

Albertsons has acquired multiple supermarkets throughout the United States including, among others, Safeway, Vons, Jewel-Osco, Shaw's, Acme, Tom Thumb, Randall's, United Supermarkets, Pavilions, Star Market, Haggen, Carrs, Kings Food Markets and Balducci's Food Lovers Market.

Albertsons and Kroger are the two largest horizontal competitors and potential competitors in the sale of groceries nationally. Albertsons is a publicly traded company and is effectively controlled by a consortium of private equity entities which collectively own approximately 75% of Albertsons stock. These private equity entities include Albertson's largest shareholder, Defendant Cerberus Capital Management, L.P. ("Cerberus). Some of the members of the Board of Directors of Albertsons are members of the Board of Directors of Cerberus, a classic conflict of interest. *Pennsylvania Sugar Refinery v. American Sugar Refining Company*, 166 F. 254 (SDNY 1908).

As part of their proposed merger, and in furtherance of their violation of Section 7 of the Clayton Act, the companies combined to financially cripple Albertsons and to weaken its competitive and potential competitive position relative to Kroger by agreeing that Albertsons will provide a "special dividend" of $4 billion, an amount roughly equivalent to all of its liquid assets and approximately a third of its market capitalization. The effect is to eliminate

3

Albertsons' cash-on-hand and to nearly double its debt.  The major part of this payment will go to Defendant Cerberus.  If the merger is enjoined, Albertsons will not be able to compete with Kroger as effectively as it could have done absent the payment of the dividend.

Kroger's acquisition of Albertson may substantially lessen competition and tend to create a monopoly in the retail grocery store chain markets throughout the United States and in multiple "sections of the country" including areas in which the Plaintiffs purchase groceries, or may purchase groceries.  The acquisition poses an immediate threat and danger of loss in terms of higher prices, less quality, worse services, less innovation, loss of jobs and even closure of Albertsons supermarkets.

Since the merger agreement, which was initiated by Kroger, Kroger has engaged in divestiture manipulation "to secure the necessary approvals [of the FTC] for the transaction". The courts have consistently held that such post agreement activity is to be disregarded or given "little or no weight".  As Judge Posner stated in *Hospital Corporation of America v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986), "We agree with the Commission that it was not required to take account of a post-acquisition transaction that may have been made to improve Hospital Corporation's litigating position. . . Post-acquisition evidence that is subject to manipulation by the party seeking to use it is entitled to little or no weight. [Citation Omitted.] The Commission was entitled to give it no weight in this case . . . "

**b.    Defendants' Statement**

Defendants incorporate by reference the recitation of facts in the Parties' October 13, 2023 Joint Status Report (ECF No. 95) and their pending Motions to Dismiss (ECF Nos. 96, 97).  They provide only a brief summary of the facts here, focusing on recent developments.

Plaintiffs are 24 individual consumers who live in 12 states across the country. First Amended Complaint ("FAC") ¶ 43. Plaintiffs allege that they "have made purchases at the Defendants' stores within the last four years," but many of the Plaintiffs do not allege that they live in states (much less cities or neighborhoods) that have both Albertsons and Kroger stores. *Compare* First Amended Complaint ("FAC") ¶ 43 (Plaintiffs' residences), *with id.* ¶ 64 (map of Defendants' stores). Indeed, the lead plaintiff lives in New Orleans, LA (a city that has *neither* an Albertsons nor a Kroger store), and at least nine of the Plaintiffs live in states in which the companies do *not* both own stores. *Id.* ¶¶ 43, 64.

On October 13, 2022, Kroger signed an agreement to purchase Albertsons ("Merger Agreement"). Kroger and Albertsons strongly believe that the proposed merger would combine two complementary organizations. Plaintiffs seek a nationwide injunction against the merger. FAC, Prayer for Relief.

Kroger and Albertsons recognized that the transaction would be subject to an extensive regulatory clearance process and expect to make divestitures as a part of that process. The Merger Agreement recognizes that there will be a detailed regulatory review of the transaction prior to closing and requires Kroger to divest up to 650 stores to obtain the necessary approvals for the transaction. Kroger and Albertsons have been in discussions with the Federal Trade Commission ("FTC") and state attorneys general, including the California Attorney General, and are committed to continue doing so to secure the necessary approvals for the transaction.

The regulatory review process is ongoing. In December 2022, the FTC issued Kroger a Request for Additional Information ("Second Request"), which asks Kroger and Albertsons for additional information to assess the proposed merger. The Second Request extends the

5

waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, during which time Kroger and Albertsons cannot consummate their merger until the earlier of (1) 30 days after Kroger and Albertsons substantially comply with the Second Request or (2) the waiting period is terminated by the FTC. *See* 15 U.S.C. §§ 18a(b)(2), 18a(e)(2). On November 15, 2023, Kroger and Albertsons certified their substantial compliance with the FTC's Second Request. Pursuant to a timing agreement with the FTC, Kroger and Albertsons agreed not to consummate the merger prior to January 17, 2024.  Pursuant to this Court's order following the October 27, 2023 Status Conference (ECF No. 103), by November 17, 2023, Kroger and Albertsons produced to Plaintiffs the documents produced in response to the Second Request.

As part of the regulatory review process, on September 8, 2023, Kroger and Albertsons announced that they had entered into a divestiture agreement with C&S Wholesale Grocers, LLC ("C&S") for the sale of 413 stores, eight distribution centers and two offices, the QFC, Mariano's and Carrs banners, a license to the Albertsons banner in four states, and certain private label brands. *See* Press Release, Kroger, Kroger and Albertsons Companies Announce Comprehensive Divestiture Plan with C&S Wholesale Grocers, LLC in Connection with Proposed Merger (Sept. 8, 2023), https://bitly.ws/WuvK. The agreement allows Kroger to require C&S to purchase, in connection with securing FTC and other governmental clearance, up to an additional 237 stores. Discussions regarding additional store divestitures are ongoing at this time.

The FTC and state attorneys general's review of Kroger and Albertsons' divestiture proposal is ongoing and the contours of any divestiture remain subject to change. Because the review process will inform which stores Kroger will divest, the precise scope of the merger (*i.e.*, the stores and other assets that Kroger will ultimately acquire from Albertsons and the

stores and assets that Kroger may be required to divest) is not yet known. While the regulatory review process is ongoing, that scope is uncertain. On October 9, 2023, Defendants voluntarily provided Plaintiffs with a list of the stores in the proposed divestiture package that are within 20 miles of the center of any city in which a named Plaintiff lives.

Cerberus is not a merging party and not a party to the merger agreement. Plaintiffs' claim against Cerberus relates only to Cerberus's receipt of a special dividend paid by Albertsons to all of its shareholders in January 2023. *See* FAC ¶¶ 140-155. (Cerberus is not in fact a shareholder in Albertsons. Cerberus is a registered investment advisor and Cerberus and/or one or more of its affiliates manages certain entities that are indirect shareholders of Albertsons. *See* ECF No. 55-1.) The dividend was paid by Albertsons only after separate challenges by multiple state attorneys general to enjoin Albertsons' payment of the dividend were rejected. Plaintiffs assert that the dividend payment violates Section 7 of the Clayton Act (having now dropped their claim that it violated Section 1 of the Sherman Act) and should be disgorged under Section 16 of the Clayton Act. The portion of the dividend received by Cerberus-affiliated entities has already been distributed by the recipients to independent lenders, investors, and others. *See* ECF No. 55.

4. **Legal Issues**

a. **Plaintiffs' Statement**

Under Section 16 of the Clayton Act, the Plaintiffs are entitled to an injunction to prohibit the acquisition of Albertsons by Kroger and to seek an order of disgorgement with regard to the Defendants' effort in furtherance of their violation of Section 7 to disable and dismantle the competitive effectiveness of Albertsons, if the acquisition does not go through.

In support of the Plaintiffs' claim seeking an injunction Plaintiffs submit that there have been a series of decisions wherein the Supreme Court has consistently prohibited mergers in their incipiency where there has been the elimination of a significant rival or potential rival in a transaction which is not trivial, which is the case here. These decisions by the Supreme Court, none of which have been overruled, establish the principle that the elimination of a competitor or potential competitor in a non-trivial transaction must be enjoined. They are summarized here:

1. *Brown Shoe Co. v. United States,* 370 U.S. 294 (1962) (Brown Shoe and Kinney combined for only 6% of the manufacturing market – merger enjoined).

2. *United States v. Philadelphia National Bank,* 374 U.S. 321 (1963), (nos. 1 and 2 in market combined for 36% market share – merger enjoined).

3. *United States v. Aluminum Company of America,* 377 U.S. 271 (1964) (elimination of RomeCable with only 1.3% share of national market – merger enjoined).

4. *United States v. Von's Grocery Co,* 384 U.S. 270 (1966)(combination of nos. 3 and 6 becoming no. 2 with 7.5% of the Los Angeles grocery market – merger enjoined.)

5. *United States v. Pabst Brewing Co.,* 384 U.S. 546 (1966) (nos. 10 and 18 in the national market becoming no. 5 with 4.9% - merger enjoined).

6. *United States v. Falstaff Brewing Corp*., 410 U.S. 526 (1973)( the merger with Narragansett added 20% to Falstaff's 0% market share in New England giving it 20% of the New England market – dismissal reversed).

In *Brown Shoe v. United States*, 370 U.S. 294, at 346 (1962), for example, Chief Justice Warren observed that "We cannot avoid the mandate of Congress that tendencies toward concentration in industry are to be curbed in their incipiency . . ."

8

This is the case here.  The question presented is whether this Court must enjoin the merger of the two largest competitors in the grocery market in the United States as a violation of Section 7 of the Clayton Act, pursuant to which Congress prohibited all mergers and acquisitions where the effect "may be substantially to lessen competition, or to tend to create a monopoly."

The Supreme Court has held that Congress specifically sanctioned this broad language requiring only that a Plaintiff show that a merger *may* have a reasonable probability of lessening competition or *may* tend to create a monopoly for it to be held unlawful. *Brown Shoe Co. v. United States*, 370 U.S. 294, 317 (1962).

Section 16 of the Act does not require proof of the fact of damage; rather, it establishes standing upon the Plaintiffs' showing of the threat of probable injury caused by the acquisition, if it is consummated.

And in response to the Defendants' apparent position that Plaintiffs are required to show threatened injury in ALL the sections of the country, the federal courts have ruled that only one plaintiff seeking an injunction is necessary to carry the claim in ANY section of the country. According to Judge Young who ruled at the hearing on the Defendants' Motion for Summary Judgment in the District of Massachusetts in the pending merger case of *Garavanian v. JetBlue Airways Corp*, et al., 23-cv-10678 (D Mass October 4, 2023): "You only have to have one [Plaintiff]." Judge Young granted in part and denied in part the JetBlue Motion for Summary Judgment. This is consistent with the statute itself that specifically recites "in any section of the country" and it is consistent with the holding in State of Hawaii v. Standard Oil, 405 U.S. 251 (1972), in which the Supreme Court ruled in effect that one injunction on behalf of one plaintiff is as good as a hundred.

JOINT CASE MANAGEMENT STATEMENT

And Defendants' reliance upon post-merger conduct of divestiture of stores is either irrelevant or given little weight because it is often engineered for litigation purposes. As Judge Posner stated in Hospital Corporation of America v. FTC, 807 F.2d 1381, 1384 (7th Cir. 1986), "We agree with the Commission that it was not required to take account of a post-acquisition transaction that may have been made to improve Hospital Corporation's litigating position. . . Post- acquisition evidence that is subject to manipulation by the party seeking to use it is entitled to little or no weight. [Citation Omitted.] The Commission was entitled to give it no weight in this case . . . "

In addition to the violation of Section 7 of the Clayton Act in which grocery store customers, actual and potential, are threatened with the probability that prices may be increased and services decreased, the Plaintiffs also claim that the principal investors of Albertsons violated their fiduciary duty by forcing Albertsons to pay a $4 Billion dividend to its shareholders with the purpose and effect of weakening Albertsons' ability to compete so that it will be forced to merge with Kroger.  This practice is not unusual and has been employed in the past in furtherance of antitrust violations.

For example in *Pennsylvania Sugar,* the controlling investors voted to shut down the plant of their competitor in violation of the antitrust laws and their fiduciary duties.

The special $4 billion dividend that Albertsons will pay to its shareholders - primarily to  Defendant Cerberus – is an integral part of the merger agreement between Albertsons and Kroger.

Disgorgement is the remedy that is accorded to private plaintiffs to restore the status quo.  The Defendants should not profit from their illegal conduct and disgorgement will ensure

that will not happen. *Liu v. Securities and Exchange Commission*, 140 S. Ct. 1936 (2020).  In addition, Plaintiffs believe that disgorgement is a legal remedy by reason of the decision by the Supreme Court in *California v. American Stores Co.*, 495 U.S. 271 (1990) in which the Court specifically stated that the Plaintiffs would be entitled to all equitable relief, including mandatory injunctive relief. In American Stores, the Court approved divesture after the fact. The cases cited in the Supreme Court's decision in American Stores received injunctive relief after the fact. Section 16 allows the broadest possible use of injunctive relief. The injunction can be mandatory as well as prohibitory. In fact, Defendants' authority that disgorgement is not the law does not actually deal with disgorgement, but rather deals with restitution. Plaintiffs believe, therefore, that the $4 Billion dollars must be disgorged by those who received it, and it must be returned to Albertsons and / or paid to the treasury of the United States.

The Plaintiffs submit the following issues identified in their motions:

- Plaintiffs have standing to pursue their Clayton Act claim pursuant to Section 16 of the Clayton Act;

- Plaintiffs' Clayton Act claim is ripe at the incipiency of the agreement;

- Plaintiffs have adequately alleged a threat of future loss and damage;

- Plaintiffs are not required to allege an antitrust injury in fact;

- Plaintiffs have stated an antitrust claim pursuant to Section 7 in that the acquisition "may" substantially lessen competition or tend to create a monopoly;

- Plaintiffs have alleged a relevant antitrust product market for retail supermarket chains;

- Plaintiffs are not required to allege any anticompetitive effects in the relevant market, but only the threat and danger of such effects;

- Plaintiffs have standing to challenge the dividend payment as an overt act in furtherance of the violation to force and compel Albertsons to accept an acquisition by Kroger; and

- Plaintiffs are entitle to seek disgorgement as provided by the interpretation of Section 16 by the Supreme Court of the United States and all competent scholarship authority.

**b.   Defendants' Statement**

Defendants incorporate by reference the legal issues identified in their pending Motions to Dismiss.  In brief, the legal issues identified in those Motions include:

- Whether Plaintiffs have standing to pursue their Clayton Act claim;

- Whether Plaintiffs' Clayton Act claim is ripe;

- Whether Plaintiffs have adequately alleged antitrust injury;

- Whether Plaintiffs have stated an antitrust claim under the Clayton Act;

- Whether Plaintiffs have adequately alleged a relevant antitrust market;

- Whether Plaintiffs have adequately alleged anticompetitive effects in a well-defined relevant antitrust market;

- Whether Plaintiffs have standing to challenge the payment of the special dividend;

- Whether Plaintiffs' request for an injunction to block the payment of the special dividend is moot;

- Whether Plaintiffs are entitled to seek disgorgement under Section 16 of the Clayton Act; and

JOINT CASE MANAGEMENT STATEMENT

- Whether Plaintiffs can challenge the payment of the special dividend under Section 7 of the Clayton Act.

5. **Motions**

    a.    **Plaintiffs' Statement**

Each Defendant has filed a Motion to Dismiss the complaint.  Plaintiffs believe that the motions are without merit and must be denied.  Plaintiffs anticipate filing a motion for a permanent injunction pursuant to a trial on the merits after depositions.

    b.    **Defendants' Statement**

Following a hearing on July 27, 2023, this Court previously granted each Defendant's respective Motion to Dismiss and denied Plaintiffs' Motion for a Preliminary Injunction. Plaintiffs filed their First Amended Complaint on October 2, 2023.  Kroger and Albertsons then filed a joint Motion to Dismiss the FAC on October 16, 2023; Cerberus filed a Motion to Dismiss the FAC on the same date.  If Defendants' Motions to Dismiss are denied, Defendants anticipate filing a Motion for Summary Judgment.

6. **Amendment of Pleadings**

    a.    **Plaintiffs' Statement**

The Plaintiffs do not currently anticipate any further amendments to the pleadings, but reserve the right to file motions to amend or supplement depending upon the depositions of the executives of the Defendants.

    b.    **Defendants' Statement**

For the reasons stated in Defendants' Motions to Dismiss, Defendants object to any further leave to amend the FAC.  Despite this Court's prior order dismissing their Complaint, Plaintiffs failed to add any material factual allegations to their lawsuit and have

13

insisted on reciting a materially identical legal theory in their FAC.  With respect to the claim against Cerberus, Plaintiffs abandoned their previously asserted claim under Section 1 of the Sherman Act and now seek only relief under Section 7 of the Clayton Act, which is unavailable for the reasons set out in Cerberus's Motion to Dismiss.  ECF No. 97. Defendants should not be forced to brief arguments rebutting the same insufficient allegations a third time.

**7. Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.  All Parties have assured the others that they have taken and agreed to continue such steps.

**8. Disclosures**

**a.    Plaintiffs' Statement**

Defendants have not made initial disclosures and should be required to make initial disclosures pursuant to Rule 26(f), in compliance with the Federal Rules of Civil Procedure.

**b.    Defendants' Statement**

Defendants propose deferring service of initial disclosures pursuant to Rule 26(f) until after the Court rules on Defendants' pending Motions to Dismiss.

**9. Discovery**

    **a. Discovery Taken to Date**

        **i. Plaintiffs' Statement**

On July 25, 2023, Plaintiffs received a first production of H-S-R documents from Defendants Albertsons and Kroger which were made available via FTP link which Plaintiffs were able to download in pdf format.

On November 17, 2023, Plaintiffs received a second production of H-S-R documents on external hard drives which were encrypted. Plaintiffs received a total of 16 hard-drives, 11 from Kroger and 5 from Albertsons. These drives contain a total of 95,383,178 files, totaling 32 terabytes of information. In order for Plaintiffs to use the information provided by Defendants, Plaintiffs will need to convert all of the files into pdf documents. Only 4.71% of these files are even searchable by Plaintiffs because they are currently formatted in pdf (.17%), PowerPoint (.95%) and Excel (3.59%). That leaves 95.29% which are not currently searchable. In order to extract all the data from the encrypted hard-drives onto Plaintiff's servers will take days. The extraction cost just to start to upload and convert the encrypted documents by an outside service is estimated to be over $160,000.

Plaintiffs request the assistance of the court to have produced to Plaintiffs the relevant documents that were actually used by the Defendants' boards of directors to make their decisions to go forward with the merger, and any pre-discussions and meetings and exchanges of executive summaries among the executives with regard to the acquisition. Plaintiffs do not need the receipts for purchases at individual stores. Plaintiffs have

15

calculated that, at one minute per file, it would take more than 350 years for two people to review all of the files produced.

ii.      **Defendants' Statement**

Despite this Court's prior dismissal of the Original Complaint—and despite Plaintiffs' failure to state a claim in the FAC, Defendants Kroger and Albertsons have nonetheless produced extensive discovery in this case.

First, after the Court entered the Protective Order in this matter (ECF No. 82), Kroger and Albertsons promptly produced to Plaintiffs on July 25, 2023 the Hart-Scott-Rodino forms and documentary attachments submitted to the FTC on November 3, 2022 related to Kroger's proposed acquisition of Albertsons.

Second, pursuant to this Court's October 27, 2023 Order (ECF No. 103), Defendants Kroger and Albertsons produced to Plaintiffs the documents produced in response to the Second Request.  Kroger and Albertsons' Second Request productions include millions of documents and terabytes of data.  Kroger and Albertsons produced these documents and data to Plaintiffs in the same format in which they were produced to the FTC in response to the Second Request.

Kroger and Albertsons produced the Second Request documents to Plaintiffs as instructed by the Court – and as requested by Plaintiffs.  Transcript of Status Conference at 7:23-8:3 (Oct. 27, 2023) ("[A]re the Plaintiffs requesting all of the documents that the Defendants provide to the FTC in connection with the Second Request? MR. ALIOTO: Yes, your Honor. THE COURT: Okay. So, I'm going to order that production.")  The Second Request documents should provide Plaintiffs with all the information they could possibly require related to the proposed transaction and Kroger's and Albertsons' businesses.  It is

16

not Defendants' burden to sift through these documents to help Plaintiffs locate documents purportedly relevant to their claim.

Third, Defendants Kroger and Albertsons have voluntarily produced to Plaintiffs a list of proposed divestitures within 20 miles of the center of any city in which a Plaintiff lives notwithstanding Plaintiffs' failure to provide basic information regarding Plaintiffs' residences.

**b.  Scope of Anticipated Discovery and Proposed Limitations or Modifications of the Discovery Rules**

**i.  Plaintiffs' Statement**

Plaintiffs seek to take the depositions of key executives among the Defendants:

1. Rodney McMullen, Kroger Chairman and Chief Executive Officer, who will continue serving as Chairman and CEO of the combined company.

2. Vivek Sankaran, CEO of Albertsons Cos.

3. Chan Galbato, Co-Chair of the Albertsons Cos. Board of Directors and Chief Executive Officer of Cerberus Operations.

4. Gary Millerchip who will serve as Chief Financial Officer of the combined company.

5. The Executive Vice-Presidents in charge of marketing and sales for each company.

Plaintiffs submit that there is no authority for deferring depositions under the federal rules pending decision on the motions to dismiss.

**ii.  Defendants' Statement**

The depositions of Defendants' executives and all other discovery in this matter are unnecessary and should be stayed.  After a July 13, 2023 hearing on a Joint Discovery Letter Brief in which Defendants sought a protective order preventing the depositions of their CEOs,

the Court "defer[red] consideration of the timing of depositions until after an order is issued on the motions to dismiss with the caveat that plaintiff can revisit the issue if the timing of the order becomes problematic." ECF No. 80. In light of this order and the Court's prior dismissal of the Original Complaint, Defendants propose deferring any additional discovery until after the Court has ruled on Defendants' Motions to Dismiss.

**10. Class Actions**

This case has not been filed as a class action.

**11. Related Cases**

There are no related cases pending.

**12. Relief**

Plaintiffs seek a permanent injunction prohibiting Kroger from acquiring Albertsons in whole or in part and seek disgorgement of the dividend payment to allow Albertsons to be able to compete in the future.

Defendants deny that any relief is appropriate.

**13. Settlement and ADR**

The Parties have complied with ADR Local Rule 3-5. No formal ADR has taken place. Plaintiffs have respectfully declined to participate in ADR proceedings, and seek only the prohibition of the acquisition and the disgorgement back to Albertsons. Defendants do not believe ADR would be productive at this stage of the proceeding.

**14. Consent to Magistrate Judge for All Purposes**

On February 6, 2023, Plaintiffs filed a declination to magistrate judge jurisdiction. *See* ECF No. 7. The Parties agree that this case is not suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

18

This Court previously determined that it would resolve any discovery disputes between the parties rather than referring them to a Magistrate Judge. ECF No. 103.

**15. Narrowing Issues**

The Parties have not agreed on any issues that can be narrowed. The Parties may file at a later date one or more motions for summary judgment, or other dispositive motions seeking to narrow the issues.

Defendants are not aware of any issues that can be narrowed by agreement or motion at this time.

**16. Expedited Schedule**

Plaintiffs believe that an expedited schedule in imperative in light of the fact that Defendants intend to close the transaction in January.

Defendants believe that an expedited schedule is inappropriate.

**17. Scheduling**

**a.   Plaintiffs' Statement**

Plaintiffs propose that they be permitted to take the depositions of the executives named above and that a trial begin on January 8 to proceed for 4 days, which date would be prior to January 17, the date submitted by the Defendants to the FTC for closing.

**b.   Defendants' Statement**

Given this Court's prior dismissal of the Complaint and its indication that it will issue an order on Defendants' pending Motions to Dismiss, Defendants propose deferring any scheduling until the Court rules on Defendants' Motions to Dismiss.

JOINT CASE MANAGEMENT STATEMENT

**18. Trial**

If this matter proceeds to trial, the trial would be a bench trial.  Defendants believe that it is premature to approximate the length of any trial in light of the issues raised in Defendants' Motions to Dismiss.

**19. Disclosure of Non-party Interested Entities or Persons**

Plaintiffs have disclosed no parent companies and no publicly held companies *See* ECF No. 52.

Defendants have complied with Civil Local Rule 3-15.

**20. Professional Conduct**

Undersigned counsel certifies that all attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other**

The Parties are not aware of other matters that may facilitate the resolution of this matter.

Dated:  December 8, 2023                    Respectfully submitted,

                                            */s/ Joseph M. Alioto*
                                            Joseph M. Alioto (SBN 42680)
                                            Tatiana V. Wallace (SBN 233939)
                                            ALIOTO LAW FIRM
                                            One Sansome Street, Suite 3500
                                            San Francisco, CA 94104
                                            Telephone: (415) 434-8900
                                            Email: jmalioto@aliotolaw.com
                                                   twallace@aliotolaw.com

                                            Lawrence G. Papale (SBN 67068)
                                            LAW OFFICES OF LAWRENCE G. PAPALE
                                            1308 Main Street, Suite 117
                                            St. Helena, CA 94574
                                            Telephone: (707) 963-1704
                                            Email: lgpapale@papalelaw.com

                                            Josephine Alioto (SBN 282989)
                                            THE VEEN FIRM
                                            20 Haight Street
                                            San Francisco CA 94102
                                            Telephone: (415) 673-4800
                                            Email: jalioto@veenfirm.com

                                            *Attorneys for Plaintiffs*

                                            */s/ Daniel B. Asimow*
                                            Daniel B. Asimow (SBN 165661)
                                            Daniel.Asimow@arnoldporter.com
                                            ARNOLD & PORTER KAYE SCHOLER LLP
                                            Three Embarcadero Center, 10th Floor
                                            San Francisco, CA 94111
                                            Telephone: (415) 471-3100

JOINT CASE MANAGEMENT STATEMENT

Sonia K. Pfaffenroth (SBN 223984)
Matthew Wolf (*pro hac vice*)
Michael Bernstein (*pro hac vice*)
Kolya D. Glick (*pro hac vice*)
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000

*Attorneys for Defendant The Kroger Co.*


*/s/ Edward D. Hassi*
Edward D. Hassi

John (Jay) Neukom (SBN 275887)
jneukom@debevoise.com
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
Telephone: (415)738-5700

Edward D. Hassi (*pro hac vice*)
Leah S. Martin (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

Shannon R. Selden (*pro hac vice*)
J. Robert Abraham (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

*Attorneys for Defendant Albertsons Companies, Inc.*

22

*/s/ Russell P. Cohen*

Russell P. Cohen (SBN 213105)
Joseph D. Trujillo (SBN 305170)
russ.cohen@dechert.com
joseph.trujillo@dechert.com
DECHERT LLP
One Bush Street, Ste. 1600
San Francisco, CA 94104-4446
Telephone: (415) 262-4500

Andrew J. Levander (*pro hac vice*)
andrew.levander@dechert.com
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3500

Thomas J. Miller (*pro hac vice*)
thomas.miller@dechert.com
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000

*Attorneys for Defendant Cerberus Capital
Management, L.P.*

23

## **SIGNATURE ATTESTATION**

I, Daniel B. Asimow, am the ECF user whose user ID and password are being utilized to electronically file this JOINT CASE MANAGEMENT STATEMENT.  Pursuant to Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: December 8, 2023

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:  */s/ Daniel B. Asimow*
     DANIEL B. ASIMOW

*Attorney for Defendant The Kroger Co.*
