DANIEL B. ASIMOW (SBN 165661)
Daniel.Asimow@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Fax: (415) 471-3400

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*pro hac vice*)
MICHAEL BERNSTEIN (*pro hac vice*)
KOLYA D. GLICK (*pro hac vice*)
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999

Attorneys for Defendant THE KROGER CO.

JOHN (JAY) NEUKOM (SBN 275887)
jneukom@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700

EDWARD D. HASSI (*pro hac vice*)
LEAH S. MARTIN (*pro hac vice*)
thassi@debevoise.com
lmartin@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000

SHANNON R. SELDEN (*pro hac vice*)
J. ROBERT ABRAHAM (*pro hac vice*)
srselden@debevoise.com
jrabraham@debevoise.com
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000

Attorneys for Defendant ALBERTSONS
COMPANIES, INC.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE WHALEN, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE KROGER CO., ALBERTSONS COMPANIES, INC., and CERBERUS CAPITAL MANAGEMENT, L.P.,<br><br>        Defendants. | Case No. 3:23-cv-00459-VC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS THE KROGER CO. AND ALBERTSONS COMPANIES, INC. TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Vince Chhabria<br><br>Date: March 7, 2024<br>Time: 10:00 a.m.<br>Courtroom: 4 – 17th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 7, 2024, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 17th Floor, Courtroom 4, Defendants The Kroger Co. ("Kroger") and Albertsons Companies, Inc. ("Albertsons") will and hereby do respectfully move for an order dismissing Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing, they fail to state a claim upon which relief may be granted, and their claim is not ripe.

This motion is based on this notice of motion and motion; the memorandum of points and authorities contained herein; any reply papers that Kroger and Albertsons may file; upon all pleadings, records, and papers on file in this action; and upon such further arguments as may be presented to the Court at or prior to the hearing on the motion.

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

ISSUES TO BE DECIDED ...............................................................................................3

FACTUAL BACKGROUND ..............................................................................................3

        A.    Defendants' Transaction, Proposed Divestiture, and Ongoing Regulatory Review .................................................................................................................4

        B.    Plaintiffs' Allegations ................................................................................5

LEGAL STANDARDS .......................................................................................................6

ARGUMENT ......................................................................................................................6

    I.    Plaintiffs Still Fail to Plausibly Allege Standing ......................................................7

    II.    This Court Should Dismiss Plaintiffs' Claim on the Merits ..................................10

        A.    Plaintiffs Fail to Allege a Plausible Relevant Geographic Market ...........11

        B.    Plaintiffs Fail to Allege a Relevant Product Market ................................12

        C.    Plaintiffs Fail to Allege Anticompetitive Harm ........................................13

    III.    This Court Should Dismiss for Lack of Ripeness.................................................15

    IV.    This Court Should Dismiss Plaintiffs' Claim with Prejudice ...............................15

CONCLUSION..................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AMR Corp.*,
2023 WL 2563897 (2d Cir. Mar. 20, 2023)...........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................6

*Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*,
2023 WL 5989534 (N.D. Cal. Sept. 13, 2023).................................................................13

*Bradt v. T-Mobile US, Inc.*,
2020 WL 1233939 (N.D. Cal. Mar. 13, 2020).......................................................................13

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)...................................................................................................................15

*California v. Sutter Health Sys.*,
130 F. Supp. 2d 1109 (N.D. Cal. 2001) .................................................................................11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..............................................................................................................7, 8, 9

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
817 F.3d 46 (2d Cir. 2016)......................................................................................................11

*DeHoog v. Anheuser-Busch InBev SA/NA*,
899 F.3d 758 (9th Cir. 2018) .............................................................................................10, 13

*Delco LLC v. Giant of Md., LLC*,
2007 WL 3307018 (D.N.J. Nov. 8, 2007) .............................................................................11

*Demartini v. Microsoft Corp.*,
662 F. Supp. 3d 1055 (N.D. Cal. Mar. 20, 2023) ...................................................1, 10, 13, 14

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) .....................................................................................................15

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ...................................................................................................10

*FTC v. RAG-Stiftung*,
436 F. Supp. 3d 278 (D.D.C. 2020) ........................................................................................12

Kroger's and Albertsons' MTD the Second Amended Complaint          Case No. 3:23-cv-00459-VC

*FTC v. Whole Foods Mkt., Inc.*,
    502 F. Supp. 2d 1 (D.D.C. 2007) .........................................................................11

*Hein v. Freedom From Religion Found., Inc.*,
    551 U.S. 587 (2007) ..............................................................................................9

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d 898 (N.D. Cal. 2016) ................................................................13

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) .......................................................................11, 12

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    485 F. Supp. 3d 1137 (N.D. Cal. 2020) ..............................................................12

*Killian Pest Control, Inc. v. HomeTeam Pest Def., Inc.*,
    2015 WL 3766754 (N.D. Cal. June 16, 2015) ....................................................12

*Lanovaz v. Twinings N. Am., Inc.*,
    726 F. App'x 590 (9th Cir. 2018) .........................................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................7, 8, 9

*Med Vets, Inc. v. VIP Petcare Holdings, Inc.*,
    811 F. App'x 422 (9th Cir. 2020) .......................................................................14

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    562 F. Supp. 3d 1073 (E.D. Cal. 2021)...........................................................11, 12

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) ..............................................................12

*S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*,
    191 F.3d 842 (7th Cir. 1999) ..............................................................................15

*Safe Air For Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ..............................................................................6

*Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
    778 F.3d 775, 788 (9th Cir. 2015) .......................................................................10

*Saxton v. Cnty. of Sonoma*,
    2022 WL 3549779 (N.D. Cal. Aug. 17, 2022) ......................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..............................................................................................7

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) ............................................................11

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................................7

*United States v. Baker Hughes Inc.*,
   908 F.2d 981 (D.C. Cir. 1990) ...........................................................13

*United States v. Borden Co.*,
   347 U.S. 514 (1954) .......................................................................9, 15

*United States v. Marine Bancorp., Inc.*,
   418 U.S. 602 (1974) ...........................................................................10

*Washington v. The Kroger Co.*,
   No. 24-2-00977-9 SEA (Wash. Super. Ct. Jan. 15, 2024) ....................2

**Statutes**

15 U.S.C. § 18............................................................................1, 7, 10, 13

15 U.S.C. § 18a(e)(2) ..........................................................................4

**Other Authorities**

DOJ & FTC, Merger Guidelines (2010) .................................................14

DOJ & FTC, Merger Guidelines (2023) .................................................14

Herbert Hovenkamp & Phillip Areeda, *Antitrust Law* (4th ed. 2019) ...........9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs' Second Amended Complaint ("SAC") largely repeats the allegations from their first two failed attempts to state a claim, and it should likewise be dismissed. ECF No. 91 ("1st MTD Order"); ECF No. 120 ("2nd MTD Order"). While Plaintiffs added some new paragraphs to the SAC, their claim rests on the same fundamentally flawed theory as their prior Complaints: that every "non-trivial transaction between significant rivals" constitutes a *per se* violation of the Clayton Act. SAC ¶ 23; *see* First Am. Compl. ("FAC") ¶ 16; Compl. ¶ 13. As explained in Defendants' two prior motions, ECF No. 40 at 1; ECF No. 96 at 1, and as another judge in this district has held, Plaintiffs' "argument ignores binding Ninth Circuit precedent" regarding what is required to state a Clayton Act claim. *Demartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055, 1064 (N.D. Cal. Mar. 20, 2023).

Plaintiffs also continue to conflate the existence of a private cause of action under the Clayton Act with the requirements of Article III standing. Despite new allegations describing where Plaintiffs shop for groceries, the SAC still parrots the Clayton Act, asserting that Plaintiffs "'may' continue" to shop at these vaguely defined stores for unspecified goods at some unknown point in the future. Moreover, many of the Plaintiffs (including the lead plaintiff) do not live or work anywhere near a Kroger or Albertsons store, *see, e.g.*, SAC ¶ 152, and most of the other Plaintiffs live in areas with only one of Defendants' stores, but not the other, *see, e.g.*, *id.* ¶ 155. And despite receiving information about Defendants' proposed divestitures months ago, ECF No. 111 at 2-3, Plaintiffs *still* refuse to consider any divestiture in assessing whether they will be harmed, SAC ¶ 35. Instead, Plaintiffs continue to "simply intone that the federal antitrust statutes give them the right to sue, which of course is beside the point for purposes of constitutional standing." 1st MTD Order at 1.

In the same vein, Plaintiffs continue to assert that they can establish constitutional injury-in-fact through allegations that the merger may decrease competition "*in any section of the country*," SAC ¶ 142 (quoting 15 U.S.C. § 18), including in areas where no Plaintiff lives or works (like the town of Snoqualmie, WA, *id.* ¶ 117). But Plaintiffs do not seek to represent a nationwide class, *contra, e.g.*, *id.* ¶ 182 (purporting to protect "all consumers"); they do not contend that they participate in supplier or labor markets, *contra, e.g.*, *id.* ¶ 194 (alleging harm to suppliers and employees); they maintain their frivolous allegations concerning Albertsons' unilateral payment of a dividend, *id.*

¶¶ 65-66, 197-212; and they stubbornly refuse to acknowledge that they are differently situated from government enforcers when it comes to demonstrating Article III standing. Indeed, after a year of litigation and three separate complaints, Plaintiffs still have not identified *any* case in *any* jurisdiction that has *ever* enjoined a merger pre-closing on a nationwide basis, relying on the allegations of *private* individuals only. This Court should not be the first to do so.[1]

Even assuming Article III standing, the SAC fails to state a viable Clayton Act claim. Plaintiffs fail to plausibly plead a relevant market or the requisite harm in any such market. As to relevant market, Plaintiffs continue to implausibly claim that "[t]he relevant geographic market is the entire United States." *Id.* ¶ 29. By proposing a nationwide market, Plaintiffs again ask this Court to infer that consumers would take cross-country trips to do their grocery shopping in response to small price changes. Plaintiffs fundamentally undermine their proposed nationwide market by acknowledging (as they must) that "[s]upermarkets compete locally for customers as consumers typically do their grocery shopping at stores located close to where they live or work." *Id.* ¶ 81. Plaintiffs' new allegations suggesting that entire "Core Based Statistical Areas" ("CBSAs") constitute well-defined "local" geographic markets are not credible either. *Id.* ¶ 110. CBSAs are massive metropolitan areas, often spanning hundreds of square miles across multiple counties. *See id.* ¶ 113 n.15. The assertion that Plaintiffs might traverse such a region for their weekly grocery shopping is only slightly less outlandish than the notion of cross-country grocery trips.

Plaintiffs also fail to plead a relevant product market, as their proffered market excludes what the SAC's own sources show are three of Defendants' largest competitors—Walmart, Costco, and Target—without any factual allegations explaining why they did so. *Id.* ¶¶ 113 n.15, 114. Plaintiffs' proposed product market is crafted for litigation and fails to align with consumer shopping behavior.

Plaintiffs' allegations of anticompetitive harm also fail. Plaintiffs' harm arguments rely purely on their purported market concentration statistics, but these statistics do not map onto any well-

---

[1] In contrast with these private Plaintiffs, the federal and state enforcers who represent the *public* are examining the transaction closely. Defendants remain engaged in discussions with the Federal Trade Commission ("FTC") and state attorneys general. And on January 15, 2024, the Washington Attorney General filed suit against Defendants in Washington Superior Court seeking to enjoin the merger. Compl., *Washington v. The Kroger Co.*, No. 24-2-00977-9 SEA (Wash. Super. Ct. Jan. 15, 2024).

defined market: They are nationwide or CBSA-wide figures, and they do not align with Plaintiffs' relevant product market. *See, e.g.*, *id.* ¶ 113 (market-share figures including Walmart, Costco, and Target). Further, while the SAC adds a little color on select grocery store alternatives near Plaintiffs' homes, it excludes numerous competitors in the CBSAs that Plaintiffs offer as "local" markets. For many Plaintiffs, the SAC fails to name even one other grocery store competitor in the local area in which the Plaintiff lives. And again, no Plaintiff accounts for the proposed divestitures in their area.

The Court should also dismiss the SAC for lack of ripeness. In the 1st MTD Order, the Court noted that the Complaint would have been dismissed or stayed on the alternative basis that it was not ripe because "[t]he contours of the merger ha[d] not yet become clear enough to adequately assess the effects it will have on competition." 1st MTD Order at 2. In the Second MTD Order, this Court criticized Plaintiffs for "continu[ing] to insist (erroneously) that the divestiture is simply not relevant." 2nd MTD Order at 3. Despite those admonitions, the SAC continues to declare in absolute terms that *any* "subsequent divestiture is not relevant." SAC ¶ 35.

This Court should dismiss the SAC with prejudice. Defendants should not be forced to litigate these same issues a fourth time against these same 24 private Plaintiffs.

## ISSUES TO BE DECIDED

The issues to be decided are whether the SAC should be dismissed (1) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

On October 13, 2022, Kroger signed a contract to purchase Albertsons ("Merger Agreement"). SAC ¶ 198. Plaintiffs filed their Complaint nearly four months later, asking this Court to (1) enjoin the merger on a nationwide basis; and (2) enjoin (or order disgorgement of) a dividend that Albertsons had already paid to its shareholders. ECF No. 1; *see* ECF No. 42-5. Defendants Kroger, Albertsons, and Cerberus promptly moved to dismiss (ECF Nos. 40, 42, 48). After a July 27, 2023 hearing, this Court dismissed Plaintiffs' Complaint for lack of standing. MTD Order at 1. In the alternative, the Court stated that it would dismiss or stay Plaintiffs' lawsuit because it was not ripe for resolution. *Id.* at 2. The Court denied Plaintiffs' Motion for Preliminary Injunction. *Id.*

Plaintiffs then filed an amended complaint. ECF No. 120. Defendants again moved to dismiss, ECF Nos. 96, 97, and this Court again granted the motions, this time dismissing Plaintiffs' claims against Defendant Cerberus with prejudice, 2d Dismissal Order at 3-4. As for the claim against Kroger and Albertsons, the Court held that "plaintiffs have again failed to provide enough information about their own situations to adequately allege that they are likely to suffer an injury from the proposed merger," and that they therefore lacked Article III standing. *Id.* at 1. Given that Plaintiffs had already "been given one chance to fix the defects in their jurisdictional allegations," and given that "there continue[d] to be many shortcomings in the allegations relating to the merits," this Court stated that "dismissal without leave to amend could well be appropriate at this point." *Id.* at 3. "In an abundance of caution," however, this Court granted leave to amend. *Id.* The SAC followed.

**A.  Defendants' Transaction, Proposed Divestiture, and Ongoing Regulatory Review**

The closing of the Kroger-Albertsons transaction depends on a number of contingencies, including the FTC's review and approval of the acquisition. *See, e.g.*, 15 U.S.C. § 18a(e)(2). To resolve potential competitive concerns arising from the FTC's review, on September 8, 2023, Kroger and Albertsons announced that they had entered into a divestiture agreement with C&S Wholesale Grocers, LLC ("C&S") for the sale of 413 stores, eight distribution centers and two offices, the QFC, Mariano's, and Carrs brand names, a license to the Albertsons banners in four states, and certain private label brands. Press Release, Kroger, Kroger and Albertsons Co. Announce Comprehensive Divestiture Plan with C&S Wholesale Grocers, LLC in Connection with Proposed Merger (Sept. 8, 2023), https://bitly.ws/WuvK. The agreement allows Kroger to require C&S to purchase, in connection with securing FTC clearance, up to an additional 237 stores. *Id.* Kroger remains in discussions with the FTC concerning a proposed divestiture package.

The SAC does not consider the effects of Defendants' proposed divestiture on their claim, alleging that divestiture is "not relevant" to this case. SAC ¶ 35. Plaintiffs assert that the divestiture agreement is "suspect," illegal, *id.* ¶ 39, and "may not be a viable sale," *id.* ¶ 40. Plaintiffs also accuse C&S of becoming a "[c]o-conspirator" through the divestiture contract. *Id.* ¶ 58.

The Merger Agreement contains a provision that adjusts the per-share price that Kroger will pay to acquire Albertsons in the event that Albertsons unilaterally decides to issue a special dividend

("Dividend"). *See id.* ¶ 65. As Defendants have explained repeatedly since the first briefs they filed in this Court, *see, e.g.*, ECF Nos. 40, 42, 48, four courts previously rejected analogous Dividend-based claims, Albertsons paid the Dividend more than a year ago, and the plaintiff attorneys general in those suits voluntarily dismissed their complaints.

### B.    Plaintiffs' Allegations

The named plaintiffs in this case are an assortment of 24 individuals in 12 states. SAC ¶ 51. While each Plaintiff has added a few individualized factual allegations about their grocery store options, their participation in this lawsuit still rests on a single common allegation: that they "have made purchases at the Defendants' stores within the last four years." *Id.* Plaintiffs do not allege that they all live in states (much less cities or neighborhoods) that have both Albertsons and Kroger stores. Indeed, at least 18 Plaintiffs live in cities in which Kroger and Albertsons do *not* both own stores; and at least seven of these Plaintiffs live in cities in which neither Kroger nor Albertsons has a store. *Compare id.* ¶ 51 (Plaintiffs' residences), *with id.* ¶¶ 54, 57 (maps of Defendants' stores). Parroting the Clayton Act, Plaintiffs allege that the merger is likely to "substantially lessen[] competition" and "may" increase prices for groceries and other consumer goods. *See, e.g.*, *id.* ¶¶ 12, 34.

As to the critical question of *where* the merger might lessen competition, Plaintiffs allege that "[t]he entire United States is a relevant geographic market." *Id.* ¶ 79. But Plaintiffs then allege that "[s]upermarkets compete locally for customers as consumers typically do their grocery shopping at stores located close to where they live or work." *Id.* ¶ 81. Plaintiffs also gesture towards various broad "local" markets, continuing to name the entire state of California and the cities of Chicago and Seattle as local areas, *id.* ¶ 70, even though no Plaintiff lives in those cities, *see id.* ¶ 51. Plaintiffs also identify seven other "local geographic markets" where they contend competition will be harmed: the CBSAs for Seattle, Reno, Tucson, Colorado Springs, Dallas, and Fairbanks, and the city of Snoqualmie. *Id.* ¶ 110. Plaintiffs allege that the acquisition "'may' be presumptively illegal" in each of these markets (except Snoqualmie and Reno) based on the increase in the Herfindahl-Hirschman Index ("HHI") and post-acquisition HHIs in these areas. *Id.* ¶¶ 115, 120, 123, 128, 134.

Plaintiffs allege that the relevant product market for their claim is "supermarkets," which they define as "any self-service full-line retail grocery store offering customers substantially all of their

weekly food and grocery shopping requirements in a single shopping visit." *Id.* ¶ 73. Apparently using that definition, Plaintiffs state that the merger involves "the first and second largest national competitors in retail sales." *Id.* ¶ 41. But Plaintiffs' national market share allegations rely on a source stating that, in 2023, Walmart and Costco were two of the top three "grocery chains in the U.S. by revenue" and Target was ninth. *See id.* ¶ 16 (citing https://www.foodindustry.com/articles/top-10-grocers-in-the-united-states-2019). Plaintiffs "contend" that "big-box general retail stores," including Walmart, Target, Sam's Club, and Costco, are a separate market, but they do not provide any factual basis for that exclusion. *See, e.g., id.* ¶ 113 n.15.

Plaintiffs seek a litany of remedies, including, *inter alia*, an injunction against the merger, an injunction against or disgorgement of the already-issued Dividend, and a prohibition on any "termination fee" related to the proposed acquisition. *Id.*, Prayer ¶¶ A, C, D, E.

## LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts establishing a plausible claim for relief that exceeds a speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions" and "'naked assertion[s]' devoid of 'further factual enhancement'" do not constitute well-pleaded facts that are entitled to the presumption of truth. *Id.* (citation omitted). This same standard applies in a subject matter jurisdiction challenge under Rule 12(b)(1), including when defendants argue that plaintiffs lack standing or their claim is not ripe for resolution. *See Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## ARGUMENT

Plaintiffs' SAC fails on the same threshold ground on which this Court dismissed the first two complaints: Plaintiffs fail to allege standing. The SAC fares no better on the merits. Plaintiffs have alleged neither a plausible relevant market nor actual or likely anticompetitive effects in any such market. Further, Plaintiffs have still not established that their claim is ripe, ignoring the effect of any proposed divestiture on their claim. Because Plaintiffs have demonstrated that further amendment is futile, this Court should dismiss Plaintiffs' claim with prejudice.

## I.   PLAINTIFFS STILL FAIL TO PLAUSIBLY ALLEGE STANDING

Plaintiffs fail to allege Article III standing. Despite the SAC's new factual allegations, Plaintiffs rest their standing on the flawed legal premise that "[f]or standing in a Section 7 case a plaintiff need only show that the effect of the acquisition 'may be substantially to lessen competition . . . in any line of commerce . . . *in any section of the country*.'" SAC ¶ 142 (quoting 15 U.S.C. § 18). As this Court recognized, Congress's creation of a "right to sue" in the Clayton Act "is beside the point for purposes of constitutional standing." 1st MTD Order at 1; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("[I]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (cleaned up)). Plaintiffs' theoretical cause of action under the Clayton Act does not supplant their burden of establishing Article III standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

"[T]he 'irreducible constitutional minimum' of standing" requires that Plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The alleged injury in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citation omitted). To state a claim, private plaintiffs must therefore show a threat of injury that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted).

Plaintiffs' new allegations of harm do not satisfy their burden of plausibly alleging standing. The SAC alleges that Plaintiffs are all "consumers of the Defendants' goods and shop at the Defendants' stores in their local geographic areas." SAC ¶ 52. But the SAC goes on to directly contradict that conclusory allegation, clarifying that the lead Plaintiff, Ms. Whalen, lives in New Orleans, a city in which *neither* Defendant owns or operates any stores. *Id.* ¶ 152. Six additional Plaintiffs also live in cities where neither Defendant operates any stores. *Id.* ¶¶ 147, 153, 154, 163, 164, 170. Given the SAC's admission that "the majority of consumers' grocery shopping occurs at stores located very close to where they live or work," *id.* ¶ 82, it is unclear how those Plaintiffs could possibly be injured by a merger that would not affect *any* of the grocery options in their local markets. *See* 2nd MTD Order at 1-2. And for another 10 Plaintiffs, the SAC does not allege that they live and

shop in an area where Kroger and Albertsons compete. SAC ¶¶ 148, 155-57, 159, 162, 166-69. For those non-overlap Plaintiffs, it is likewise impossible to decipher a coherent *theory* of injury from the SAC, as even Plaintiffs' broad "elimination of a competitor" allegations would not apply where no competition could *possibly* be displaced as a direct result of the merger. *See* 2nd MTD Order at 1-2.

Although six Plaintiffs allege that there are both Kroger and Albertsons stores in the local areas where they live or work, they *at most* allege that they "'may' continue" to shop at those stores in the future, which does not satisfy Article III's imminence requirement. *See* SAC ¶ 116 (Stensrud); ¶ 149 (Brito); ¶ 150 (Marazzo); ¶ 151 (Freeland); ¶ 160 (Fry); ¶ 165 (Jolly). Even the "profession of an inten[t]" to purchase a product "'is simply not enough' to satisfy Article III." *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 564). Yet here, Plaintiffs do not allege even an intention to continue shopping at either Kroger or Albertsons stores, instead resting their allegedly "impending" injury on the broad language of the Clayton Act and the mere possibility that they "'may' continue" to shop at Defendants' stores for unidentified products at an unidentified point in the future. SAC ¶¶ 116, 118, 121, 124, 129, 135, 137.

Plaintiffs' failure to satisfy the "imminence" requirement is even more apparent for the three Plaintiffs who allege that they "'may' continue" to shop at Defendants' stores outside their local area *when they travel to other states*. *Id.* ¶¶ 116, 118, 129, 147, 163. Thus, for a Plaintiff like Don Fry, the allegedly impending injury is multiple levels removed from imminence: He must visit his son in Snoqualmie, which he does "often"; shop at an Albertsons store in Snoqualmie, which he "'may' continue" to do; or shop at a Kroger store in Snoqualmie, which he "'may' also occasionally" do at some unidentified point in time. *See id.* ¶¶ 118, 160.[2] Such ephemeral possibilities cannot be equated with the "certainly impending" injury that Article III requires. *See Clapper*, 568 U.S. at 409.

Moreover, even assuming Plaintiffs had outlined specific plans for future shopping trips in a local market in which Kroger and Albertsons compete (they have not), it is not clear what Plaintiffs' theory of injury actually *is*. *See Saxton v. Cnty. of Sonoma*, 2022 WL 3549779, at *2 (N.D. Cal. Aug.

---

[2] As a factual matter, there is no Kroger (QFC or Fred Meyer) store in Snoqualmie; the closest QFC store is three miles away in North Bend, and the closest Fred Myer store is more than 10 miles away in Issaquah. *See Store Locator*, Kroger.com, https://bit.ly/3OglwQ5 (last visited Jan. 30, 2024).

17, 2022) ("[T]he plaintiff has the burden of alleging and proving that he has standing to sue."). While specific allegations of increased prices or loss of consumer choice might satisfy Article III's "concreteness" requirement, Plaintiffs have failed to support their generalized allegations of harm with specific *facts*. Rather, like the prior complaints, the SAC relies on sources like the 1776 *Wealth of Nations* and other unidentified "studies" to reach the unnuanced proposition that "prices after mergers normally increase by 12-13%." SAC ¶ 144. But Plaintiffs' generic assertions that "mergers *can* lead to higher prices," *id.* ¶ 178, do not satisfy Plaintiffs' burden of alleging facts establishing that *their* injury of increased prices from *this* merger is "actual or imminent," *Lujan*, 504 U.S. at 564.

Ultimately, Plaintiffs' vague allegations—which assume that *all* mergers lead to impending harm to consumers—do not seek to satisfy constitutional standing requirements so much as to eliminate them altogether. Accepting Plaintiffs' theory, every consumer in the United States (and every plaintiffs' lawyer) could independently sue to enjoin any "non-trivial transaction," SAC ¶ 13, irrespective of whether the merging parties currently compete *at all* in the area in which that consumer lives. That is the opposite of a "particularized" injury. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598-600 (2007) (emphasizing the importance of the constitutional standing requirement where plaintiffs' alleged injuries cannot be differentiated from others' alleged injuries).

It is no accident that Article III's injury-in-fact requirement is difficult for private parties to satisfy when bringing a lawsuit to block a prospective merger. *See Clapper*, 568 U.S. at 401-02 (denying "prospective relief" for "hypothetical future harm that is not certainly impending"). That difficulty is precisely why private pre-closing merger enforcement suits like this one have never been successful, and why government regulators historically have played the *only* relevant role in modern *ex ante* antitrust merger enforcement. *See* Herbert Hovenkamp & Phillip Areeda, *Antitrust Law* ¶ 303e3 (4th ed. 2019) ("[A]ctual or threatened harm to a person with standing is an essential element of the private plaintiff's equity case, but not of the government's."). This reality is a feature, not a bug, of the U.S. antitrust system. *See United States v. Borden Co.*, 347 U.S. 514, 518 (1954) (noting that the government enforces antitrust law "on behalf of the general public," while a private plaintiff may enforce antitrust laws "only when his personal interest will be served").

Plaintiffs' remaining standing-related allegations can be easily discarded under this Court's prior orders. For instance, the SAC contends that "both Kroger and Albertsons have demonstrated their willingness and intention to expand into markets throughout the United States," SAC ¶ 24, but it fails to allege *any* facts to support *any* such intention in *any* market. The SAC asserts that the proposed "acquisition 'may' affect the stores' employees," *id.* ¶ 91, but it still fails to allege that any plaintiff is an employee of any Defendant's store, a point that Plaintiffs failed to address in either prior round of motion-to-dismiss briefing, *see, e.g.*, ECF No. 111 at 6. Similarly, the SAC alleges harm to the competition for unnamed "national suppliers," SAC ¶ 79, but Plaintiffs do not contend that they are "suppliers" of anything, much less Defendants' products. Plaintiffs also spend pages of their SAC seeking remedies related to a dividend that Albertsons already paid, which four courts declined to enjoin, and over which no existing Defendant has any control. *See, e.g.*, *id.* ¶¶ 65-66, 95, 199, 207-12; *see* 1st MTD Order at 1-2. Finally, while Plaintiffs allege harm to "all grocery store consumers throughout the United States," SAC ¶ 144, they have not asserted a putative class action, and they do not represent anyone besides themselves. None of these allegations were sufficient to establish standing the first two times around, and they remain insufficient now.

## II.     THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIM ON THE MERITS

Plaintiffs again fail to state a plausible claim under the Clayton Act. Section 7 of the Clayton Act prohibits mergers whose effect "may be substantially to lessen competition." 15 U.S.C. § 18. Section 7 requires consumers to "first establish a prima facie case that a merger is anticompetitive." *DeHoog v. Anheuser-Busch InBev SA/NA*, 899 F.3d 758, 763 (9th Cir. 2018) (citation omitted).

The "threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)). "[D]etermination of the relevant product and geographic markets is a *necessary predicate* to deciding whether a merger contravenes the Clayton Act," *Microsoft*, 662 F. Supp. 3d at 1061 (quoting *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 788 (9th Cir. 2015) (emphasis added)), because it is impossible to assess a merger's likely competitive effects without understanding *where* the alleged reduction in competition will occur, *see United States v. Marine Bancorp., Inc.*, 418 U.S.

- 10 -

602, 618 (1974). A relevant product market "must encompass . . . all economic substitutes for the product" at issue. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). The failure to allege a plausible relevant market requires dismissal. *See, e.g.*, *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001); *California v. Sutter Health Sys.*, 130 F. Supp. 2d 1109, 1118 (N.D. Cal. 2001).

### A.  Plaintiffs Fail to Allege a Plausible Relevant Geographic Market

Plaintiffs' allegation that "[t]he relevant geographic market is the entire United States," SAC ¶ 29, is facially implausible. In antitrust law, the relevant geographic market is the "area of effective competition" to which consumers can "turn for alternate sources of supply" (here, alleged to be "supermarkets," *id.* ¶ 72) in response to small price changes, *Tanaka*, 252 F.3d at 1063 (citation omitted). Plaintiffs' allegations of a *nationwide* market require this Court to infer that consumers might fly from San Francisco to Miami for their weekly grocery shopping. *See* SAC ¶¶ 29, 79-80.

Plaintiffs tacitly acknowledge that their proposed nationwide geographic market is implausible, recognizing that "the majority of consumers' grocery shopping occurs at stores located very close to where they live or work," *id.* ¶ 82, admitting that some local markets may be defined by "accessibility . . . by foot or by public transit," *id.* ¶ 85, and alleging that some Plaintiffs find stores only a few miles away are too distant to be viable options, *see id.* ¶¶ 148, 150, 159. Indeed, Courts evaluating prior grocery store mergers have defined the relevant geographic markets in discrete neighborhoods rather than entire cities or states. *See, e.g.*, *FTC v. Whole Foods Mkt., Inc.*, 502 F. Supp. 2d 1, 37 (D.D.C. 2007) (defining relevant geographic markets as ones with healthy grocery stores within a "six mile radius" of one another), *rev'd on other grounds*, 548 F.3d 1028 (D.C. Cir. 2008); *Delco LLC v. Giant of Md., LLC*, 2007 WL 3307018, at *18-19 (D.N.J. Nov. 8, 2007) (rejecting market definition that excluded two supermarkets within six miles).

Given these realities, Plaintiffs' continued insistence on alleging a nationwide market for supermarket competition borders on frivolous, as courts routinely dismiss antitrust complaints based on the failure to allege a coherent geographic market. *See Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1084-85 (E.D. Cal. 2021) (collecting cases properly alleging "'local' geographic markets," but dismissing complaint that failed to identify analogous "limiting principles"); *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 53-54 (2d Cir. 2016).

Plaintiffs' suggestion that "smaller local relevant geographic markets" exist, SAC ¶ 80, does not save their claim, *see Killian Pest Control, Inc. v. HomeTeam Pest Def., Inc.*, 2015 WL 3766754, at *1-3 (N.D. Cal. June 16, 2015) (granting motion to dismiss where plaintiff's alleged geographic market was "vague and conclusory"). Even defining geographic markets based on the six CBSAs that Plaintiffs identify would require an inference that consumers might traverse a major metropolitan area to buy their groceries. *See* SAC ¶ 110. For the smaller city of Snoqualmie (in which *no Plaintiff lives or works*, *id.* ¶ 51), the SAC merely alleges that it contains six grocery stores, *id.* ¶ 117. As explained *supra* at 8 n.2, Plaintiffs misstate the number of grocery stores and the concentration of Kroger and Albertsons stores in Snoqualmie. But even accepting those inaccuracies, Plaintiffs do not allege that the grocery stores in Snoqualmie compete for the same consumers, much less the out-of-town visiting consumers who "'may' also occasionally" shop in that region. *See* SAC ¶ 118.

In short, Plaintiffs' inability to allege a local geographic market is evident from their failure to even *articulate* any kind of metric or other logical basis on which such markets could be evaluated. *See Netafim Irrigation, Inc.*, 562 F. Supp. 3d at 1084. Plaintiffs' proposed geographic markets thus remain unsupported by factual allegations and untethered to the realities of consumer behavior.

**B.      Plaintiffs Fail to Allege a Relevant Product Market**

Plaintiffs' alleged product market for "supermarkets" is also implausibly narrow as it excludes significant grocery competitors like Walmart, Costco, and Target—which also provide a "full-line" of retail grocery products and offer customers "substantially all of their weekly food and grocery shopping requirements in a single shopping visit." *See* SAC ¶¶ 73-74; *Hicks*, 897 F.3d at 1121 (rejecting plaintiff's proposed product market because it "omit[ted] many economic substitutes"); *see also Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022) (dismissing complaint where plaintiff failed to "explain[] why seemingly similar products excluded from the market are not substitutes for those in the market"); *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1148-49 (N.D. Cal. 2020); *see also FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 292 (D.D.C. 2020).

Plaintiffs' new allegations provide no explanation for their exclusion of some of Defendants' largest competitors from their alleged product market. Indeed, while Plaintiffs contend that the "big-box general retail stores" should be excluded from the relevant market, SAC ¶ 113 n.15, Plaintiffs'

data sources *include* those competitors in their market-share statistics, *id.* ¶ 113, and at least one individual Plaintiff admits that Walmart is a viable alternative to Kroger, *id*. ¶ 156. Another of Plaintiffs' sources shows that Walmart, Costco, and Target are significant rivals to Defendants, characterizing Walmart and Costco as two of the top three "grocery chains in the U.S. by revenue" and Target as ninth. *Id.* ¶ 16 (citing https://www.foodindustry.com/articles/top-10-grocers-in-the-united-states-2019). Plaintiffs' omission of obvious competitive alternatives in their alleged product market is "[un]natural," "artificial," and "contorted to meet their litigation needs." *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 910 (N.D. Cal. 2016), *aff'd in relevant part*, 897 F.3d 1109 (9th Cir. 2018).

### C. Plaintiffs Fail to Allege Anticompetitive Harm

Even if a state- or city-wide geographic market were plausible (and had been adequately pleaded), Plaintiffs fail to allege any facts indicating that the Kroger-Albertsons merger would substantially lessen competition in any such market. *See* 15 U.S.C. § 18; *DeHoog*, 899 F.3d at 763.

Plaintiffs begin with an untenably broad theory of anticompetitive harm. While they continue to argue that alleging a "non-trivial transaction between significant rivals" is sufficient to demonstrate a Section 7 violation, SAC ¶ 23, courts have uniformly rejected Plaintiffs' *per se* theory of anticompetitive effects. Indeed, even after the *Microsoft* decision, another Judge of this Court recently explained that "[m]erely alleging the elimination of a rival does not plausibly support an inference of an appreciable danger of anticompetitive effects in a relevant market.'" *Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 2023 WL 5989534, at *9 (N.D. Cal. Sept. 13, 2023) (quoting *Microsoft*, 662 F. Supp. 3d at 1065); *Bradt v. T-Mobile US, Inc.*, 2020 WL 1233939, at *4 (N.D. Cal. Mar. 13, 2020); *In re AMR Corp.*, 2023 WL 2563897, at *1 (2d Cir. Mar. 20, 2023) ("reject[ing] Plaintiffs' view," in a case with the same plaintiffs' counsel here, that courts are "obliged by Supreme Court precedent from the 1960s to treat post-merger market share as virtually conclusive of a Section 7 violation"). Because the SAC is built on that flawed premise, it should not be allowed to proceed.

Even ignoring that unstable legal grounding and adopting the most generous reading of the SAC, Plaintiffs' anticompetitive harm allegations rest primarily on market-share statistics (mostly at the nationwide level) and conclusory HHI calculations. To be sure, increased post-merger market concentration is one factor that can sometimes suggest anticompetitive effects. *See United States v.*

*Baker Hughes Inc.*, 908 F.2d 981, 990 (D.C. Cir. 1990) (noting that the Supreme Court has cut back "sharply" on prior exclusive focus on market shares). But even "[i]f market share alone can satisfy a prima facie burden, it at least has to be market share in a relevant market." *Microsoft*, 662 F.Supp.3d at 1065; *see Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 423-24 (9th Cir. 2020).

The closest Plaintiffs come to providing any *factual* detail to support their market concentration statistics for any geography smaller than the entire country is a chart of supermarket competitors in the tri-county Seattle-Tacoma-Bellevue CBSA, which spans hundreds of miles, and includes a range of competitors that Plaintiffs exclude from their alleged market. SAC ¶ 113. As for Plaintiffs' HHI allegations for the Dallas-Fort-Worth-Arlington, Colorado Springs, Fairbanks, and Tucson CBSAs, Plaintiffs have identified no competitors, provided no market share statistics, and offered no allegations to explain how competitive harm to consumers can be assumed based on market concentration statistics for a massive metropolitan region. *Id.* ¶¶ 120, 123, 128, 134.[3]

On top of all that, Plaintiffs "again" fail to "account for the fact that up to 650 stores may be divested before the merger." 2nd MTD Order at 3. Instead, as they did in their prior complaints, "plaintiffs continue to insist (erroneously) that the divestiture is simply not relevant." *Id.* at 3. And despite Defendants providing the *entirety* of their FTC production to Plaintiffs (pursuant to this Court's order), the SAC does not reference a single one of those documents to support its claim.

In sum, Plaintiffs' product market, geographic market, and market concentration statistics are implausible, unsupported, and disconnected from one another, making it impossible to extract a plausible theory of antitrust harm (or Article III harm) from the SAC, much less defend against it. *See id.* at 2 ("[T]here are no allegations to connect the alleged increased market concentration across entire metropolitan areas to the areas where the plaintiffs could reasonably be expected to shop.").

---

[3] Plaintiffs' alleged market concentration statistics in four "local" markets (Dallas, Colorado Springs, Tucson, and Reno) do not meet the presumption of harm under the 2010 Merger Guidelines. *See* SAC ¶¶ 120, 123, 134, 136; DOJ & FTC, Horizontal Merger Guidelines (2010), https://bit.ly/4bh6naW. Two of these markets (Dallas and Reno) would not even meet the presumption under the newly released Merger Guidelines. *See* DOJ & FTC, Merger Guidelines (2023), https://bit.ly/48S09gb. For Snoqualmie, Plaintiffs do not offer *any* HHI or market share statistics, just a crude "store concentration" number based on a flawed store count. SAC ¶ 117; *supra* at 8 n.2.

## III.    THIS COURT SHOULD DISMISS FOR LACK OF RIPENESS

For similar reasons to those this Court previously recognized, Plaintiffs still have not demonstrated that their claim is ripe. 1st MTD Order at 2; 2nd MTD Order at 3. Plaintiffs' lone attempt to address ripeness is the conclusory allegation: "The acquisition is ripe to be enjoined under the authority of the Supreme Court which has stated time and time again that these acquisitions must be enjoined at their 'incipiency.'" SAC ¶ 20; *see id.* ¶ 33 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), for the proposition that a merger is ripe "at the point of agreement"). But Plaintiffs' citation to Supreme Court Clayton Act cases to demonstrate ripeness is nothing new, *see* Kroger's 1st MTD Reply at 8-9 (ECF No. 74) (analyzing, *inter alia*, *Borden*, 347 U.S. at 518), and Plaintiffs have not even attempted to satisfy their burden of alleging *facts* to demonstrate that this case is ripe. Plaintiffs' claim continues to be unripe because Plaintiffs entirely ignore the effect of any proposed divestitures on their claim, SAC ¶ 35, and the contours of the divestiture are still subject to change, 1st MTD Order at 2.

## IV.    THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIM WITH PREJUDICE

This Court need not—and should not—grant leave to amend when doing so would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996). As Defendants stated in their second motion to dismiss, "Plaintiffs' refusal to drop their allegations related to the Dividend is a picture of futility." ECF 96 at 15. That exact argument rings even louder following the Court's 2nd MTD Order.

Plaintiffs have shown that they are unwilling to address the many fatal deficiencies in their claim. Though this Court's prior orders both emphasized the importance of the divestiture to the analysis of the merger's likely competitive effects, 1st MTD Order at 2; 2nd MTD Order at 3, Plaintiffs still refuse to even consider the divestiture in the SAC, insisting that post-merger evidence "is not relevant," SAC ¶ 35. Without acknowledging—or attempting to develop—key additional facts, Plaintiffs' groundhog-day litigation effort is an "expensive challenge to a moving target" and "a waste of everyone's time." *S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*, 191 F.3d 842, 845 (7th Cir. 1999). On this record, amendment would be "worse than pointless." *Id.*

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice.

Dated: January 31, 2024      By:     */s/ Daniel B. Asimow*

DANIEL B. ASIMOW
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Fax: (415) 471-3400
Daniel.Asimow@arnoldporter.com

SONIA K. PFAFFENROTH (SBN 223984)
MATTHEW WOLF (*pro hac vice*)
MICHAEL BERNSTEIN (*pro hac vice*)
KOLYA D. GLICK (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999
Sonia.Pfaffenroth@arnoldporter.com
Matthew.Wolf@arnoldporter.com
Michael.Bernstein@arnoldporter.com
Kolya.Glick@arnoldporter.com

*Attorneys for Defendant*
THE KROGER CO.

<u>/s/ Edward D. Hassi</u>
EDWARD D. HASSI (*pro hac vice*)

JOHN (JAY) NEUKOM (SBN 275887)
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Telephone: (415) 738-5700
jneukom@debevoise.com

EDWARD D. HASSI (*pro hac vice*)
LEAH S. MARTIN (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 383-8000
thassi@debevoise.com
lmartin@debevoise.com

SHANNON R. SELDEN (*pro hac vice*)
J. ROBERT ABRAHAM (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
srselden@debevoise.com
jrabraham@debevoise.com

*Attorneys for Defendant*
ALBERTSONS COMPANIES, INC.

**SIGNATURE ATTESTATION**

I, Daniel B. Asimow, am the ECF user whose user ID and password are being utilized to electronically file this NOTICE OF MOTION AND MOTION OF DEFENDANTS THE KROGER CO. AND ALBERTSONS COMPANIES, INC. TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT. Pursuant to Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.

Dated: January 31, 2024

/s/ *Daniel B. Asimow*
Daniel B. Asimow